1    ROB BONTA, State Bar No. 202668
     Attorney General of California
2    JULIE T. TRINH, State Bar No. 231276
     Supervising Deputy Attorney General
3    JACQUELYN Y. YOUNG, State Bar No. 306094
     KATHERINE GRAINGER, State Bar No. 333901
4    Deputy Attorneys General
     455 Golden Gate Avenue, Suite 11000
5    San Francisco, CA 94102-7004
     Telephone: (415) 510-3553
6    Fax: (916) 731-2125
     E-mail: Jacquelyn.Young@doj.ca.gov
7    *Attorneys for Defendant Erica Pan, in her official*
     *capacity as the Director of the California*
8    *Department of Public Health*

9              IN THE UNITED STATES DISTRICT COURT

10            FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

| | |
|---|---|
| **FREE NOW FOUNDATION, BRAVE AND FREE SANTA CRUZ, D.Q., by his Next Friend, Alix Mayer, A.R., by his Next Friend, Alix Mayer, T.E., by his Next Friend, Kathleen Lynch, and N.D., by his Next Friend, Kathleen Lynch** | 2:24-cv-03523-DJC-SCR |
| | **DEFENDANT CDPH'S NOTICE OF MOTION TO DISMISS; MOTION; AND MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION** |
| Plaintiffs, | Filed Concurrently with |
| | (1) Request for Judicial Notice |
| **v.** | (2) Declaration of Counsel |
| | (3) Objection to Declarations Attached to Plaintiff's Second Amended Complaint |
| **ERICA PAN, in her Official Capacity as the Director of the California Department of Public Health,** | (4) [Proposed] Order |
| Defendant. | Date: August 21, 2025 |
| | Time: 1:30 p.m. |
| | Dept: 7 |
| | Judge: The Hon. Daniel J. Calabretta |
| | Trial Date: Not Set |
| | Action Filed: December 16, 2024 |

1
2

### <u>NOTICE OF MOTION AND</u>

### <u>MOTION TO DISMISS SECOND AMENDED COMPLAINT</u>

3    TO THE COURT, ALL PARTIES, AND THEIR COUNSEL OF RECORD:

4         PLEASE TAKE NOTICE that on August 21, 2025, at 1:30 p.m., or as soon thereafter as

5    the matter may be heard, in Department 7 of the above-entitled Court, located at 501 I Street,

6    Sacramento, CA 95814, Defendant Dr. Erica Pan, in her official capacity as the Director of the

7    California Department of Public Health (CDPH), will and hereby does move for an order

8    dismissing the entire action, with prejudice.

9         This Motion is brought pursuant to Federal Rules of Civil Procedure 12(b)(6) and 17(c) on

10   the grounds that the individual plaintiffs do not have a duly appointed representative, Plaintiffs

11   lack standing, and Plaintiffs fail to state a claim against CDPH.

12        Pursuant to the Court's Standing Order, counsel for Plaintiffs and counsel for CDPH, met

13   and conferred via video teleconference on May 19, 2025.  The parties discussed the various

14   grounds for this Motion and were unable to reach a resolution.

15        This Motion is based on this Notice, on judicially noticeable matters, on the Memorandum

16   of Points and Authorities in support thereof, on the papers and pleadings on file in this action, and

17   on such oral argument as may be presented at the hearing.

18

19   Dated:  July 16, 2024                              Respectfully submitted,

20                                                       ROB BONTA
                                                         Attorney General of California
21                                                       JULIE T. TRINH
                                                         Supervising Deputy Attorney General
22
                                                         */s/ Jacquelyn Young*
23
                                                         JACQUELYN YOUNG
24                                                       KATHERINE GRAINGER
                                                         Deputy Attorneys General
25                                                       *Attorneys for Defendant Erica Pan, in her*
                                                         *official capacity as the Director of the*
26                                                       *California Department of Public Health*

27
28

# TABLE OF CONTENTS

**Page**

Introduction ........................................................................................................... 1

Legal and Factual Background ............................................................................... 2

      A.   History of Childhood Immunization Requirements in California .............. 2

      B.   Senate Bill 277 and Removal of the Personal Belief Exemption .............. 3

      C.   Requirements for Obtaining a Medical Exemption ................................... 4

Procedural History ................................................................................................. 5

Applicable Legal Standard ..................................................................................... 6

Argument ............................................................................................................... 7

  I.     The Individual Plaintiffs Should Be Dismissed Because They Are Minors Without a Court Order to Protect Them ................................................. 7

  II.    The SAC Should Be Dismissed Because Plaintiffs Lack Standing ...................... 9

      A.   Plaintiffs A.R. and N.D. Did Not Allege a Cognizable Injury ................... 9

      B.   The Individual Plaintiffs Have Not Established Standing for Their Procedural Due Process Claim .............................................................. 10

      C.   The Organizational Plaintiffs Lack Standing ........................................ 11

          1.   Free Now Foundation and Brave and Free Santa Cruz lack organizational standing ............................................................. 11

          2.   Free Now Foundation and Brave and Free Santa Cruz lack associational standing .............................................................. 12

  III.   Plaintiffs Fail to State a Claim for Relief Against CDPH ................................... 12

      A.   Plaintiffs' Allegations Regarding Vaccine Efficacy Are Irrelevant ........ 13

      B.   Plaintiffs' Substantive Due Process Claims Fail as a Matter of Law ....... 13

          1.   School vaccination laws have consistently been held to be a constitutionally permissible exercise of the State's police power to protect the public health ................................................. 14

          2.   Plaintiffs fail to identify a fundamental right that has been violated .................................................................................... 16

          3.   There is no fundamental right to be free from vaccination as a condition of school attendance ................................................ 16

          4.   The right to attend school is not unlimited under federal law ...... 18

          5.   Plaintiffs' unconstitutional conditions claim fails as a matter of law .................................................................................... 19

      C.   Plaintiffs' Procedural Due Process Claim Fails as a Matter of Law ......... 20

      D.   The Vaccination Law Is Rationally Related to a Legitimate State Interest ................................................................................................ 22

      E.   Even If Strict Scrutiny Applied, the Vaccination Law Passes Constitutional Muster .......................................................................... 23

Conclusion ............................................................................................................ 24

i

# TABLE OF CONTENTS

Page

**CASES**

*Ad Hoc Comm. of Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.*
  873 F.2d 25 (2d Cir. 1989) ............................................................................................. 8

*Angel v. Marten*
  No. CV 21-7333, 2021 WL 9721324 (C. D. Cal. Dec. 29, 2021) ........................................... 7

*Ashcroft v. Iqbal*
  556 U.S. 662 (2009) ............................................................................................................... 6

*Bell Atl. Corp. v. Twombly*
  550 U.S. 544 (2007) ............................................................................................................... 6

*Bingham v. Holder*
  637 F.3d 1040 (9th Cir. 2011) ............................................................................................. 20

*Board of Regents of State Colleges v. Roth*
  408 U.S. 564 (1972) ......................................................................................................... 20, 21

*Boone v. Boozman*
  217 F. Supp. 2d 938 (E.D. Ark. 2002) .......................................................................... 14, 18

*Boysen v. PeaceHealth*
  No. 6:23-cv-01229-AA, 2024 U.S. Dist. LEXIS 147502 (D. Or. Aug. 19, 2024) ............... 17

*Brown v. Smith*
  24 Cal.App.5th 1135 (2018) ..................................................................... 15, 17, 18, 24

*Brox v. The Woods Hole*
  590 F. Supp. 3d 359 (D. Mass. 2022) ............................................................................... 16

*Bruesewitz v. Wyeth*
  562 U.S. 223 (2011) ........................................................................................................... 2, 17

*Burcham v. City of Los Angeles*
  562 F.Supp.3d 694 (C.D. Cal. 2022) ................................................................................. 20

*Castillo-Ramirez v. Cty. of Sonoma*
  No. C-09-5938, 2010 WL 1460142 (N.D. Cal. Apr. 9, 2010) ................................................ 9

*Clapper v. Amnesty Int'l USA*
  568 U.S. 398 (2013) ............................................................................................................. 10

*Cleveland Bd. of Ed. v. Loudermill*
  470 U.S. 532 (1985) ............................................................................................................. 21

# TABLE OF AUTHORITIES
### (continued)

**Page**

*Coal. Of Clergy v. Bush*
310 F.3d 1153 (9th Cir. 2002) ............................................................................................. 8, 9

*Cruzan v. Director*
497 U.S. 261 (1990) ............................................................................................................ 16

*Curlott v. Campbell*
598 F.2d 1175 (9th Cir. 1979) ............................................................................................. 21

*DaimlerChrysler Corp. v. Cuno*
547 U.S. 332 (2006) ............................................................................................................ 10

*Developmental Disabilities Advocacy Ctr., Inc. v. Melton*
689 F.2d 281 (1st Cir. 1982) ................................................................................................. 8

*Doescher v. Pan*
NO. 2;23-cv-02995;KLM-JDP, 2025 U.S. Dist. LEXIS 116640, at *43 (E.D.
Cal. June 17, 2025) .............................................................................................................. 22

*Food & Drug Admin. v. All. for Hippocratic Med.*
602 U.S. 367 (2024) ............................................................................................................ 11

*French v. Davidson*
143 Cal. 658 (1904) ............................................................................................................ 18

*Fulton v. City of Philadelphia*
593 U.S. 522 (2021) ............................................................................................................ 23

*Gladstone Realtors v. Vill. of Bellwood*
441 U.S. 91 (1979) .............................................................................................................. 10

*Halverson v. Skagit Cnty.*
42 F.3d 1257 (9th Cir. 1994) ............................................................................................... 21

*Heller v. Doe*
509 U.S. 312 (1993) ............................................................................................................ 22

*Hotel & Motel Ass'n of Oakland v. City of Oakland*
344 F.3d 959 (9th Cir. 2003) ............................................................................................... 21

*In re Ivers*
No. 19-20026-E-13, 2019 WL 6038056 (Bankr. E.D. Cal. Nov. 8, 2019) ............................. 7

*Jacobson v. Massachusetts*
197 U.S. 11 (1905) ................................................................................... 13, 14, 15, 23

### TABLE OF AUTHORITIES
#### (continued)

Page

*Koontz v. St. Johns River Water Mgmt. Dist.*
    570 U.S. 595 (2013) ................................................................................... 19

*L.S., v. Panama-Buena Vista Union High School Dist*.
    No. 1:12-cv-00081-LJO-JLY, 2012 WL 2401404 (E.D. Cal. June 25, 2012) ......................... 7

*Legaretta v. Macias*
    603 F. Supp. 3d 1050 (D.N.M. 2022) ................................................................... 19

*Libertarian Party of Erie Cty. v. Cuomo*
    970 F.3d 106 (2d Cir. 2020) ........................................................................... 10

*Love v. State Dep't of Educ.*
    29 Cal.App.5th 980 (2018) ....................................................................... *passim*

*Lujan v. Defenders of Wildlife*
    504 U.S. 555 (1992) ..................................................................................... 9

*Mary B. v. Kovol*
    No. 3:22-cv-00129-SLG, 2025 WL 1768086 (D. Alaska June 25, 2025) ............................... 8

*Mass. Bd. of Retirement v. Murgia*
    427 U.S. 307 (1976) ................................................................................... 22

*Meyer v. Nebraska*
    262 U.S. 390 (1923) ................................................................................... 18

*Middleton v. Pan*
    No. CV 16-5224, 2017 WL 7053936 (C.D. Cal. Dec. 17, 2017) ......................................... 15

*Norris v. Stanley*
    567 F. Supp. 3d 818 (W.D. Mich. 2021) ................................................................ 19

*Paz v. Arizona*
    No. CV-14-02377-TUC-BPV, 2017 WL 11630876 (D. Ariz. Aug. 16, 2017) ......................... 7

*Phillips v. City of New York*
    775 F.3d 538 (2d Cir. 2015) ...................................................................... 13, 14

*Pisciotta v. Teledyne Industries, Inc.*
    91 F.3d 1326 (9th Cir.1996) ............................................................................. 7

*Plyler v. Doe*
    457 U.S. 202 (1982) ................................................................................... 18

# TABLE OF AUTHORITIES
## (continued)

**Page**

*Prince v. Massachusetts*
 321 U.S. 158 (1944) ................................................................................................ 14, 15

*Romer v. Evans*
 517 U.S. 620 (1996) ...................................................................................................... 22

*Royce v. Bonta*
 725 F.Supp.3d 1126 (S.D. Cal. 2024) .......................................................................... 23

*Royce v. Pan*
 No. 3:23-cv-02012-H-BLM, 2025 WL 834769 (S.D. Cal. Mar. 17, 2025) ........................... 22

*Saul v. United States*
 928 F.2d 829 (9th Cir.1991) ............................................................................................ 7

*Shanks v. Dressel*
 540 F.3d 1082 (9th Cir. 2008) ....................................................................................... 20

*Smith v. Biden*
 No. 1:21-cv-19457, 2021 WL 5195688 (D.N.J. Nov. 8, 2021) ............................................ 19

*Spokeo v. Robins*
 578 U.S. 330 (2016) ........................................................................................................ 9

*Stormans, Inc. v. Wiesman*
 794 F.3d 1064 (9th Cir. 2015) ................................................................................... 16, 18

*Taylor v. Wash. State Dep't of Corr.*
 No. C23-6186-MLP, 2024 WL 2209684 (W.D. Wash. May 16, 2024) ................................. 19

*Torrey-Love v. State of California Dep't of Educ.*
 No. ED CV 16-2410, 2017 WL 11636240 (C.D. Cal. Jan. 12, 2017) ................................... 12

*U.S. v. 30.64 Acres of Land, More or Less, Situated in Klickitat Cnty., State of Wash.*
 795 F.2d 796 (9th Cir. 1986) ........................................................................................... 7

*Underwood v. City of Starkville*
 538 F.Supp.3d 667 (N.D. Miss. 2021) ........................................................................... 21

*United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*
 517 U.S. 544 (1996) ...................................................................................................... 12

*Valley Forge Christian Coll. v. Americans United for Separation of Church & State, Inc.*
 454 U.S. 464 (1982) ...................................................................................................... 11

## TABLE OF AUTHORITIES
### (continued)

Page

*Wade v. Univ. of Conn. Bd. of Trustees*
 554 F. Supp. 3d 366 (D. Conn. 2021) .................................................................. 10

*Warth v. Seldin*
 422 U.S. 490 (1975) .............................................................................................. 11

*Washington v. Glucksberg*
 521 U.S. 702 (1997) .............................................................................................. 16

*Watson Cnty. Of Santa Clara*
 468 F.Supp.2d 1150 (N.D. Cal. 2007) ................................................................... 9

*We The Patriots USA, Inc. v. Conn. Office of Early Childhood Dev.*
 76 F.4th 130 (2d Cir. 2023) ................................................................................... 15

*We The Patriots USA, Inc. v. Hochul*
 17 F.4th 266 (2d Cir. 2021) ................................................................................... 13

*Whitlow v. California*
 203 F. Supp. 3d 1079 (S.D. Cal. 2016) ......................................................... *passim*

*Whitmore v. Arkansas*
 495 U.S. 149 (1990) ................................................................................................ 8

*Workman v. Mingo County Sch.*
 667 F. Supp. 2d 679 (S.D. W. Va. 2009) ............................................................. 14

*Zamani v. Carnes*
 491 F.3d 990 (9th Cir. 2007) .................................................................................. 6

*Zucht v. King*
 260 U.S. 174 (1922) ........................................................................................ 14, 15

**STATUTES**

42 U.S.C.
 § 1983: (1) .............................................................................................................. 6

Cal. Stats. 2019 Reg. Sess., ch. 278
 § 1(c)(1)-(2) ............................................................................................................ 4

# TABLE OF AUTHORITIES
### (continued)

**Page**

California Health and Safety Code
§ 12372 ..................................................................................................... 22
§ 120335 .................................................................................... 3, 17, 22, 24
§ 120340 ..................................................................................................... 21
§ 120370 ............................................................................................... 17, 22
§ 120372 ................................................................................................... 4, 5
§ 120372.05 ................................................................................................. 5

**CONSTITUTIONAL PROVISIONS**

Eighth Amendment ............................................................................................ 5

Fourteenth Amendment ...................................................................... 1, 12, 16, 18

**COURT RULES**

Federal Rules of Civil Procedure
Rule 12(b)(6) ................................................................................................ 6
Rule 17(c) ............................................................................................ *passim*

# MEMORANDUM OF POINTS AND AUTHORITIES

## INTRODUCTION

"State Legislatures have a long history of requiring children to be vaccinated as a condition to school enrollment, and for as many years, both state and federal courts have upheld those requirements against constitutional challenge." *Whitlow v. California* (*Whitlow*) 203 F. Supp. 3d 1079, 1092 (S.D. Cal. 2016). This lawsuit is no different.

For the past 25 years, the California Legislature has sought to protect public health and safety by requiring school children to be vaccinated against ten deadly, but highly preventable, communicable diseases. Plaintiffs, four minors and two advocacy groups opposed to vaccine mandates, challenge the constitutionality of California's school vaccine law by conflating their personal disagreement regarding vaccine efficacy with purported violations of substantive and procedural due process under the Fourteenth Amendment. However, the Second Amended Complaint is replete with procedural and substantive defects and Plaintiffs' claims warrant dismissal with prejudice on several grounds.

First, the individual Plaintiffs should be dismissed pursuant to Federal Rule of Civil Procedure 17(c) because they are minors without duly appointed representatives. Second, Plaintiffs lack standing. Two of the individual Plaintiffs fail to allege a concrete or particularized injury to confer Article III standing. Both advocacy group Plaintiffs fail to establish organizational or associational standing. Third, Plaintiffs' claims, premised on violations of Plaintiffs' purported substantive and procedural due process rights and the unconstitutional conditions doctrine, are unsupported as a matter of federal and state constitutional law, which for decades has consistently held that: (1) a state's exercise of its police powers in protecting the public from communicable diseases is rationally based; and (2) states have a legitimate, if not compelling, interest in requiring children to be vaccinated as a condition of attending school to protect the public health from the rapid spread of life-threatening illness.

Thus, in accord with the long history of protecting vaccine requirements against constitutional challenges, Plaintiffs' claims are not novel and should similarly be rejected. For these reasons, CDPH's motion to dismiss should be granted with prejudice.

1

1 **LEGAL AND FACTUAL BACKGROUND**

2 **A.    History of Childhood Immunization Requirements in California**

3 As the United States Supreme Court has recognized, the elimination of communicable

4 diseases through vaccination is "one of the greatest achievements" of public health in the 20th

5 century. *Bruesewitz v. Wyeth* (*Bruesewitz*), 562 U.S. 223, 226 (2011).  Vaccination reduces a

6 person's risk of infection by bolstering the body's natural defenses to help it safely develop

7 immunity to that disease.  CDPH's Request for Judicial Notice (RJN) Ex. 1 at 2.  While

8 vaccination provides individual immunity, it is also critical to the establishment of "community

9 immunity." *See id*. Ex. 1 at 4-5; Ex. 2 at § 1(f).  Community immunity is achieved when a

10 significant portion of the population has become immune to a disease, such that the transmission

11 of disease from person to person becomes unlikely.  *Id*. Ex. 1 at 4-5; Ex. 2 at § 1(g).  Community

12 immunity protects the health of those who are unvaccinated (including those who are

13 immunocompromised or too young to receive vaccinations) and lessens the risk of outbreaks.  *Id*.

14 Ex. 2 at § 1(f).  For highly contagious diseases, like measles, community immunity is reached

15 when approximately 95 percent of the local population is fully immunized.  *Id*. Ex. 1 at 2.

16 For the past century, states have relied on school vaccination requirements to increase

17 vaccination rates, reduce the incidence of childhood disease, and reduce community spread of

18 disease.  *See Love v. State Dep't of Educ*. (*Love*), 29 Cal.App.5th 980, 992 (2018) ("compulsory

19 immunization has long been recognized as the gold standard for preventing the spread of

20 contagious diseases"); RJN Ex. 3.  In 1961, California started requiring immunization against

21 polio for all students entering public or private school.  *See* RJN Ex. 4.  The law allowed two

22 exemptions: (1) a letter from a parent or guardian stating that immunization was contrary to the

23 parents' beliefs; or (2) a letter from a physician stating immunization was "not considered safe"

24 based on the child's physical condition or medical circumstances.  *Id*. Ex. 4 at 2.  Over the next

25 40 years, the Legislature expanded the list of required immunizations after careful consideration

26 of the public health risks.  *See id.* Ex. 1 at 4.

27 Over the last 25 years, the law has consistently required any student attending a public or

28 private daycare or school in California to be immunized against 10 diseases: diphtheria,

2

1    haemophilus influenzae type b, measles, mumps, pertussis (whooping cough), polio, rubella,

2    tetanus, hepatitis B, and varicella (chickenpox).  Cal. Health & Saf. Code, § 120335(b)[1]; RJN Ex.

3    1 at 4.  These diseases pose serious health risks to children (some life-threatening) and, except for

4    tetanus, can be spread by contact with infected children.  RJN Ex. 1 at 4.

5        **B.**     **Senate Bill 277 and Removal of the Personal Belief Exemption**

6           In 2015, the State Legislature passed Senate Bill 277 (SB 277), which primarily removed

7    the Personal Belief Exemption (PBE) from the school vaccination requirements.  See RJN Ex. 5

8    at 1. SB 277 was prompted by a measles outbreak in 2015 that spread in large part because of

9    communities with large numbers of unvaccinated people; 131 California residents contracted

10   measles and 19 percent were hospitalized.  See RJN Ex. 6 at 4; Ex. 1 at 2, 5.  The Centers for

11   Disease Control and Prevention (CDC) reported that 45 percent of the California patients were

12   known to be unvaccinated and another 43 percent had "unknown or undocumented vaccination

13   status." *Id*. Ex. 7 at 1; Ex 10 at 8.  The overwhelming majority of the vaccine-eligible but

14   unvaccinated patients were intentionally not vaccinated due to personal beliefs; the majority were

15   children. *Id*. Ex. 7 at 1.

16          In considering SB 277, the Legislature reviewed alarming evidence of falling vaccination

17   levels in communities statewide, alongside a rise in PBEs submitted by parents to excuse their

18   children from school vaccination requirements.  This included a report showing that more than a

19   quarter of California schools had measles-immunization rates below the threshold recommended

20   by the CDC.  RJN Ex. 1 at 5.  At the same time, the number of PBEs had tripled between 2000

21   and 2013. *Id*. Ex. 1 at 2; *see Love*, 29 Cal.App.5th at 987.  Legislative analysis and studies

22   confirmed "that when belief exemptions to vaccination guidelines are permitted, vaccination rates

23   decrease."  RJN Ex. 1 at 5.  Most alarming was that "in certain geographic pockets of California,

24   [personal beliefs] exemption rates [we]re 21 percent or more." *Id*. Ex. 1 at 2; Ex. 6 at 2.

25          After reviewing this evidence, the Legislature amended Section 120335 and removed the

26   PBE from the school vaccination law.  Section 120335 allows for a medical exemption for a child

27

28       [1] All further statutory references are to the California Health and Safety Code unless otherwise noted.

1    who has a medical condition that makes vaccination otherwise unsafe; and a homeschool

2    exemption for a child in a home-based private school or an independent study program.

3        **C.    Requirements for Obtaining a Medical Exemption**

4        After an initial increase in statewide school vaccination rates immediately following the

5    passage of SB 277, immunization rates showed signs of decline.  *See* RJN Ex. 8 at 1; Ex. 9 at 1.

6    By the 2018–2019 school year, the Legislature found that 16 percent of California counties had

7    kindergarten immunization rates below 90 percent.  *See id*. Ex. 2 at 3; Cal. Stats. 2019 Reg. Sess.,

8    ch. 278, § 1(c)(1)–(2).  At the same time, in the three years immediately after PBEs were

9    eliminated, the rate of medical exemptions tripled.  *See id*. Ex. 10 at 7.  This increase in medical

10    exemptions was associated with physicians issuing exemptions "without medically-justified

11    contraindications" and "a small number of unethical physicians" selling medical exemptions for

12    profit.  *See id*. Ex. 10 at 7, 9.

13        In response, the Legislature adopted SB 276 in 2019 to prevent misuse of the medical

14    exemption.  Cal. Stats. 2019 Reg. Sess., ch. 278.  Among other changes, the bill enacted objective

15    criteria and standardized requirements for medical exemption certifications, and a process for

16    state-level review of medical exemptions in limited situations.  § 120372(a), (c)-(d).  In the two

17    years after the bill's passage, medical exemptions fell 70 percent for kindergarteners and around

18    75 percent for seventh graders.  *See* RJN Ex. 11 at 3, 5; Ex 12 at 3, 9.

19        Under current law, all medical exemptions must be issued by a California licensed

20    physician through the California Immunization Registry – Medical Exemption website (CAIR-

21    ME) and must meet the applicable criteria set forth by the Centers for Disease Control and

22    Prevention (CDC), Advisory Committee on Immunization Practices (ACIP), and American

23    Academy of Pediatrics (AAP), or otherwise be based on other contraindications or precautions

24    consistent with the relevant standard of care. § 120372(a)(1), (d)(3)(A), d(3)(B).  Medical

25    exemptions may be temporary in duration or permanent, are limited to the specific vaccination or

26    vaccinations that are medically contraindicated.  § 120372(a)(2)(G).

27        If the Department determines that a medical exemption does not meet the required criteria,

28    it may revoke the medical exemption.  § 120372(d)(2)(C).  If revoked, a student's parent or

4

1  guardian may appeal the revocation to the Secretary of California Health and Human Services.  §

2  120372.05(a).  A parent or physician is entitled to present evidence, including medical records or

3  other documentation in support of their appeal.  *Id*.  The revocation is then reviewed by an

4  independent expert review panel comprised of three licensed physicians and surgeons with

5  knowledge, training, and experience relating to primary care and immunization.  § 120372.05(b).

6  The review panel then submits its decision to the Secretary, who adopts the panel's decision and

7  issues a written decision to the student's parent or guardian.  § 120372.05(d).  While a revocation

8  appeal is pending, a child is permitted to remain in school.  § 120372(d)(6). However, if a

9  revocation decision is upheld by the Secretary or not appealed, the child must begin obtaining the

10  required immunizations within 30 days of the revocation decision.  §§ 120372(d)(6),

11  120372.05(e).

12  **PROCEDURAL HISTORY**

13       In December 2024, Plaintiffs Free Now Foundation and Brave and Free Santa Cruz filed

14  suit against the former CDPH Director as well as Governor Newsom, alleging that California's

15  vaccine mandates violated Plaintiffs' procedural due process rights and constituted an excessive

16  fine in violation of the Eighth Amendment.  ECF No. 1.  CDPH and Governor Newsom

17  subsequently moved to dismiss the Complaint.  *See* ECF Nos. 12, 13.

18       On March 24, 2025, Plaintiffs filed a First Amended Complaint (FAC) against the CDPH

19  Director, as well as local defendants in the counties of Ventura and Santa Cruz.  ECF No. 16.  In

20  addition to the two organizational Plaintiffs, four minor children, their parents, and one of the

21  minor children's adult brother joined the suit as individual Plaintiffs.  *Id*.

22       On March 25, 2025, Plaintiffs filed a motion for a temporary restraining order.  ECF No.

23  18.  On March 26, 2025, the Court denied Plaintiffs' motion for a temporary restraining order,

24  ruling that Plaintiffs had failed to establish irreparable harm.  ECF No. 20 at 2.  The Court also

25  noted that it was "skeptical [and] that there are serious questions going to the merits[]" of

26  Plaintiffs' claims, citing *Whitlow*, 203 F. Supp. 3d 1079.  *Id*. at 3.

27       On May 30, 2025, the Court granted Plaintiffs leave to file a second amended complaint

28  (SAC).  ECF No. 38.  By the SAC, Plaintiffs include the same two organizational Plaintiffs, as

5

1  well as four minor children, represented by two purported Next Friends[2].  CDPH is the sole

2  Defendant named in the SAC.  *Id.* ¶¶ 104-06.  The SAC alleges the following five causes of

3  action under 42 U.S.C. § 1983: (1) violation of a substantive due process right to be free from

4  mandated, potentially lethal injections; (2) violation of a substantive due process right to be free

5  from mandated medical injections that have not been shown to serve a public health purpose; (3)

6  violation of a substantive due process right to attend school; (4) violation of the unconstitutional

7  conditions doctrine; and (5) violation of a procedural due process right to exercise a substantive

8  due process right to be free of mandated injections.  *Id.* ¶¶ 266-297.

9       On June 4, 2025, Plaintiffs filed a renewed motion for preliminary injunction based upon

10  the SAC.  ECF No 41.  Plaintiffs seek an order from the Court enjoining CDPH from enforcing

11  California's school vaccine requirements statewide.  *Id.* at 32.  CDPH filed its opposition to the

12  preliminary injunction motion on June 18, 2025.  ECF No. 44.  On June 25, 2025, the Court

13  ordered the motion for preliminary injunction submitted without appearance and oral argument

14  and vacated the hearing.  ECF No. 48.

15                                      **APPLICABLE LEGAL STANDARD**

16       To survive a Federal Rule of Civil Procedure ("Rule") 12(b)(6) motion to dismiss, a

17  complaint must "contain sufficient factual matter … to 'state a claim to relief that is plausible on

18  its face.' " *Ashcroft v. Iqbal* (*Iqbal*), 556 U.S. 662, 678 (2009); *Bell Atl. Corp. v. Twombly*

19  (*Twombly*), 550 U.S. 544, 555 (2007).  While the Court must assume that all well-pleaded facts in

20  the complaint are true, it is not required to accept unreasonable inferences or conclusory

21  allegations cast in the form of factual allegations.  *Twombly*, 550 U.S. at 570.  The Court must

22  also disregard "labels and conclusions" that are not supported by separately alleged facts.  *Iqbal*,

23  556 U.S. at 678.

24       Under Rule 12(b)(6), courts must dismiss a complaint "where there is no cognizable legal

25  theory or an absence of sufficient facts alleged to support a cognizable legal theory." *Zamani v.*

26  *Carnes*, 491 F.3d 990, 996 (9th Cir. 2007).  Although courts may allow parties to amend their

27  _____

28  [2] Plaintiffs have not filed a petition for appointment of Next Friends pursuant to Federal
Rule of Civil Procedure 17(c).

6

1   pleadings, they may not do so where any amendment would be an exercise in futility, or where

2   the amended complaint would also be subject to dismissal. *Pisciotta v. Teledyne Industries, Inc.*,

3   91 F.3d 1326, 1331 (9th Cir.1996); *Saul v. United States*, 928 F.2d 829, 843 (9th Cir.1991).

4   **ARGUMENT**

5   **I.   THE INDIVIDUAL PLAINTIFFS SHOULD BE DISMISSED BECAUSE THEY ARE MINORS
   WITHOUT A COURT ORDER TO PROTECT THEM**

6

7         The four individual Plaintiffs should be dismissed because they are minors proceeding

8   without duly appointed representatives.  Rule 17(c) of the Federal Rules of Civil Procedure (Rule

9   17 (c)) "governs a minor or incompetent's access to federal court." *In re Ivers*, No. 19-20026-E-

10  13, 2019 WL 6038056, at *18 (Bankr. E.D. Cal. Nov. 8, 2019).  It "requires a court to take

11  whatever measures it deems proper to protect [a minor] during litigation." *U.S. v. 30.64 Acres of*

12  *Land, More or Less, Situated in Klickitat Cnty., State of Wash.*, 795 F.2d 796, 805 (9th Cir.

13  1986). "Although the court has broad discretion and need not appoint a guardian ad litem if it

14  determines the person is or can be otherwise adequately protected, it is under a legal obligation to

15  consider whether the person is adequately protected." *Id.*

16        Rule 17(c) directs that a minor may sue in federal court through a duly appointed

17  representative, which includes a general guardian, conservator, or like fiduciary.  Fed. R. Civ. P.

18  17(c)(1).  A minor "who does not have a duly appointed representative may sue by a next friend

19  or by a guardian ad litem." Fed. R. Civ. P. 17(c)(2).[3]  In such cases, "[t]he court *must appoint* a

20  guardian ad litem—or issue another appropriate order—to protect a minor or incompetent person

21  who is unrepresented in an action."  *Id.* (emphasis added); *see also Paz v. Arizona*, No. CV-14-

22  02377-TUC-BPV, 2017 WL 11630876, at *1 (D. Ariz. Aug. 16, 2017) ("in cases where the minor

23  does not have a representative, a 'next friend' or 'guardian ad litem' may, with the court's

24  permission, to represent the minor"); *L.S., v. Panama-Buena Vista Union High School Dist.*, No.

25  1:12-cv-00081-LJO-JLY, 2012 WL 2401404, *2 (E.D. Cal. June 25, 2012) (same).

26        [3] The "terms 'next friend' and 'guardian ad litem' are generally used interchangeably . . .
    The duties and powers of a minor's representative in litigation are of course identical regardless
27  of which title appropriately applies."  *Angel v. Marten*, No. CV 21-7333, 2021 WL 9721324, *2
    (C. D. Cal. Dec. 29, 2021) (quotation omitted)).

28

1   "The burden is on the 'next friend' clearly to establish the propriety of [their] status and

2   thereby justify the jurisdiction of the court." *Whitmore v. Arkansas*, 495 U.S. 149, 164 (1990);

3   *see also Mary B. v. Kovol*, No. 3:22-cv-00129-SLG, 2025 WL 1768086, at *6 (D. Alaska June

4   25, 2025) (analyzing whether Next Friend standing is met for minor plaintiffs).  "In order to

5   establish next-friend standing," a "putative next friend must show . . . the next friend has some

6   *significant relationship* with, and is truly dedicated to the best interests of, the [minor]." *Coal. Of*

7   *Clergy v. Bush*, 310 F.3d 1153, 1159-60 (9th Cir. 2002) (emphasis added) (citing *Massie ex rel.*

8   *Kroll v. Woodford*, 244 F.3d 1192, 1194 (9th Cir. 2001).

9          This suit is brought by two putative Next Friends on behalf of four minor Plaintiffs.  Yet,

10   Plaintiffs fail to explain why Next Friend standing is necessary or applicable.  The SAC alleges

11   that the minor Plaintiffs range in ages 11 through 16 and that each minor Plaintiff has at least one

12   parent and/or guardian.  SAC, ¶¶ 55, 59, 65, 69, 70, 73, 77, 83.  When a minor can be represented

13   by a general guardian or a duly appointed representative, a Next Friend need not be appointed.

14   *See Developmental Disabilities Advocacy Ctr., Inc. v. Melton* (*Melton*), 689 F.2d 281 (1st Cir.

15   1982).  Rule 17(c) "gives a federal court power to authorize someone other than a lawful

16   representative to sue on behalf of [a minor] where that representative is unable, unwilling

17   or refuses to act or has interests which conflict with those of the [minor]." *Ad Hoc Comm. of*

18   *Concerned Teachers v. Greenburgh No. 11 Union Free Sch. Dist.*, 873 F.2d 25, 29 (2d Cir.

19   1989); *Melton*, 689 F.2d at 285 (stating that Rule 17(c) allows federal courts to appoint a Next

20   Friend or guardian ad litem where there is a conflict of interest between the minor and her general

21   representative).

22          Plaintiffs fail to allege any basis for why the minor Plaintiffs cannot be represented by

23   their parents and guardians – their lawful and duly appointed representatives.  The parents are not

24   parties to this suit.  There are no allegations that the parents have interests that conflict with those

25   of their children.  Additionally, the putative Next Friends fail to establish their propriety to

26   represent the minor plaintiffs.  The SAC alleges that the two putative Next Friends are members

27   of the organizational Plaintiffs in this suit.  SAC, ¶¶ 64, 76.  Alix Mayer is a member of Plaintiff

28   Free Now Foundation and Kathleen Lynch is a member of Plaintiff Brave and Free Santa Cruz.

1    *Id*. The SAC does not allege any familial, legal, or otherwise significant relationship between the

2    minors and the putative Next Friends. See SAC, ¶¶ 63, 69, 75, 83. Nor does the SAC explain

3    how the putative Next Friends will be "truly dedicated to the interests" of the minor Plaintiffs as

4    opposed to the interests of the organizational Plaintiffs. *See Coal. Of Clergy*, 310 F.3d at 1160.

5    Plaintiffs' counsel has not sought a court order to appoint these individuals as Next

6    Friends for the minor Plaintiffs. This violates Rule 17(c). Without duly appointed

7    representatives, the minor Plaintiffs should be dismissed from this suit. *See, e.g.*, *Watson Cnty.*

8    *Of Santa Clara*, 468 F.Supp.2d 1150 (N.D. Cal. 2007) (dismissing case where no guardian ad

9    litem had been appointed for minor plaintiffs); *Castillo-Ramirez v. Cty. of Sonoma*, No. C-09-

10   5938, 2010 WL 1460142, at *1 (N.D. Cal. Apr. 9, 2010) (dismissing case without prejudice

11   because plaintiff did not have a court-appointed representative).

12   **II.    THE SAC SHOULD BE DISMISSED BECAUSE PLAINTIFFS LACK STANDING**

13   Plaintiffs lack standing on multiple grounds. First, two of the four individual Plaintiffs

14   have not suffered any cognizable injury. Second, none of the Plaintiffs have established standing

15   to pursue procedural due process claims. Finally, the organizational Plaintiffs also lack standing

16   because they fail to allege any harm to these organizations themselves, nor do they allege facts

17   sufficient to meet associational standing.

18   **A.    Plaintiffs A.R. and N.D. Did Not Allege a Cognizable Injury**

19   As to the named Plaintiffs, Plaintiffs fail to establish that A.R. and N.D. have standing. A

20   plaintiff possesses Article III standing only if he or she has "(1) suffered an injury in fact, (2) that

21   is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed

22   by a favorable judicial decision." *Spokeo v. Robins*, 578 U.S. 330, 338 (2016) (citing *Lujan v.*

23   *Defenders of Wildlife*, 504 U.S. 555, 560 (1992)). To establish an injury in fact, a plaintiff must

24   show a "concrete and particularized" or "de facto" injury. *Id.* at 340; *Lujan,* 504 U.S. at 560.

25   The SAC admits that Plaintiffs A.R. and N.D. are currently attending school. SAC, ¶¶ 66-

26   69, 77-80. There are no allegations that A.R. and N.D. are imminently at risk of sustaining a

27   concrete and particularized injury. Absent concrete allegations that A.R. and N.D. have been

28   excluded, or imminently will be excluded from school, they have not suffered any injury, and

9

1    thus lack standing to participate in this lawsuit.  *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409

2    (2013) ("allegations of possible future injury are not sufficient").

3        **B.    The Individual Plaintiffs Have Not Established Standing for Their**
         **Procedural Due Process Claim**

4

5        Although the remaining individual Plaintiffs, T.E. and D.Q., allege that they have been

6    excluded from school, none of the individual Plaintiffs have established standing with regard to

7    the fifth cause of action alleging a violation of procedural due process.  It is well established that

8    "a plaintiff must demonstrate standing for each claim he seeks to press."  *DaimlerChrysler Corp.*

9    *v. Cuno*, 547 U.S. 332, 335 (2006). Thus, with respect to each asserted claim, "[a] plaintiff must

10   always have suffered a distinct and palpable injury to himself." *Gladstone Realtors v. Vill. of*

11   *Bellwood*, 441 U.S. 91, 100 (1979) (internal quotation marks omitted).

12       "As a general matter, to establish standing to challenge an allegedly unconstitutional policy,

13   a plaintiff must submit to the challenged policy." *Libertarian Party of Erie Cty. v. Cuomo*, 970

14   F.3d 106, 121 (2d Cir. 2020).  Consequently, courts have held that a plaintiff who fails to submit

15   to the procedural requirements of a law or policy that offers an exemption or other relief from its

16   mandate does not have standing to challenge the restrictions imposed by the law or policy.  *Wade*

17   *v. Univ. of Conn. Bd. of Trustees* (*Wade*), 554 F. Supp. 3d 366, 377 (D. Conn. 2021).

18       Plaintiffs argue that California's vaccine statute does not provide for procedural rights or

19   protections for students to attend school notwithstanding their vaccination status, and that medical

20   exemptions are "very difficult" to obtain, violating Plaintiffs' due process rights.  SAC at 79, 85,

21   90.  However, Plaintiffs do not allege that any of the named student Plaintiffs were denied, or

22   ever even sought, a medical exemption from California's school vaccination law.  Because the

23   individual Plaintiffs have not alleged that they have participated in the process available to them,

24   they cannot complain it violated their due process rights.  *See Wade*, 554 F. Supp. 3d at 377.

25   Therefore, the individual Plaintiffs lack standing to pursue their procedural due process claim.

26

27

28

1

**C.    The Organizational Plaintiffs Lack Standing**

2

Plaintiffs Brave and Free Santa Cruz and Free Now Foundation also lack standing because

3

the SAC does not allege any harm to these organizations themselves, nor do Plaintiffs

4

demonstrate that the requirements for associational standing have been met.

5

**1.    Free Now Foundation and Brave and Free Santa Cruz lack organizational standing**

6

7

When a plaintiff is an organization, the standing requirements of Article III can be satisfied

8

in two ways.  Either the organization can claim that it suffered an injury in its own right or,

9

alternatively, it can assert "standing solely as the representative of its members."  *Warth v. Seldin*,

10

422 U.S. 490, 511 (1975); *see also Food & Drug Admin. v. All. for Hippocratic Med.* (*All for*

11

*Hippocratic Med.*), 602 U.S. 367, 394 (2024) ("[A]n organization may not establish standing

12

simply based on the 'intensity of the litigant's interest' or because of strong opposition to the

13

government's conduct").  It is well established that a generalized disagreement with a government

14

policy and the "psychological consequence" of observing "conduct with which one disagrees" is

15

insufficient to confer standing.  *Valley Forge Christian Coll. v. Americans United for Separation*

16

*of Church & State, Inc*., 454 U.S. 464, 485– 86 (1982).  Moreover, "an organization that has not

17

suffered a concrete injury caused by a defendant's action cannot spend its way into standing

18

simply by expending money to gather information and advocate against the defendant's action."

19

*All. for Hippocratic Med.,* 602 U.S. at 370.

20

Plaintiffs Brave and Free Santa Cruz and Free Now Foundation lack organizational

21

standing based on direct injury because they fail to plead that CDPH has directly injured their

22

pre-existing core activities as an organization.  *See All. For Hippocratic Medicine*, 602 U.S. at

23

395–96.  A mere "setback to [an] organization's abstract social interests" is insufficient to

24

establish an injury.  *Id*. at 394–95.  The organizational Plaintiffs fail to assert any allegations

25

demonstrating that the organizations themselves have suffered any direct injury traceable to any

26

actions by CDPH, and thus, they lack organizational standing.

27

28

1
2

### 2. Free Now Foundation and Brave and Free Santa Cruz lack associational standing

3    Plaintiffs have also failed to establish associational standing.  To have associational

4    standing, the organization must show that: (1) its members independently possess standing; (2)

5    the interests it seeks to protect are germane to the organization's purpose; and (3) neither the

6    claim nor the relief requested requires participation of the individual members.  *United Food &*

7    *Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 553 (1996).

8    Here, the ascertainment of justiciable injury by an organization's members necessarily

9    would require those members' participation in this lawsuit.  Standing is an inherently fact-specific

10   inquiry that would require the Court to consider the unique facts and circumstances pertaining to

11   each individual student's situation.  *See Torrey-Love v. State of California Dep't of Educ.*, No.

12   ED CV 16-2410, 2017 WL 11636240, at *3 (C.D. Cal. Jan. 12, 2017) (determining that the

13   organizational plaintiff failed to allege sufficient facts to confer standing to sue).  As discussed

14   above, A.R. and N.D. lack standing because they have suffered no injury, and all individual

15   Plaintiffs lack standing as to their procedural due process claim.  Furthermore, Plaintiffs fail to

16   allege that any of the individual Plaintiffs are members of Brave and Free Santa Cruz or Free

17   Now Foundation.  Accordingly, Free Now Foundation and Brave and Free Santa Cruz failed to

18   establish associational standing.

19   ### III. PLAINTIFFS FAIL TO STATE A CLAIM FOR RELIEF AGAINST CDPH

20   In addition to failing to establish their standing to sue, Plaintiffs also fail to state a

21   cognizable legal claim against CDPH.  The gravamen of Plaintiffs' complaint is that (1) vaccines

22   are allegedly unsafe and ineffective; and (2) CDPH has purportedly violated Plaintiffs'

23   substantive and procedural due process rights under the Fourteenth Amendment by enforcing

24   California's school vaccine law.  However, this claim fails as a matter of law on several grounds.

25   First, Plaintiffs' opinion that vaccines are unsafe and ineffective, untethered from any cause

26   of action, does not constitute a cognizable legal claim against CDPH.  Second, Plaintiffs'

27   substantive due process claims fail as a matter of law because courts have consistently held that

28   school vaccination laws are a constitutionally permissible exercise of a State's police powers to

1   protect public health and safety and there is no fundamental right to be free from vaccination as a

2   condition of school attendance.  Third, Plaintiffs' procedural due process claim lacks factual and

3   legal support.  California's school vaccine law is a law of general applicability, in which

4   individual notice and hearing are not required.  Plaintiffs failed to allege what notice is lacking

5   and how they were deprived of a meaningful opportunity to be exempted from the vaccination

6   requirement.  Finally, the school vaccine law passes rational basis review.  However, even if strict

7   scrutiny review applies, the school vaccine law is narrowly tailored to serve a compelling state

8   interest in protecting public health and safety and preventing the spread of communicable

9   diseases.  Accordingly, the SAC should be dismissed with prejudice because Plaintiffs' claims

10  fail as a matter of law and leave to amend would be futile.

11          **A.      Plaintiffs' Allegations Regarding Vaccine Efficacy Are Irrelevant**

12          The bulk of the Complaint is comprised of Plaintiffs summarizing various articles and

13  studies questioning vaccine efficacy.  *See* SAC, ¶¶ 125-245.  These summaries are immaterial to

14  the disposition of this lawsuit.  "It is no part of the function of a court" to weigh such evidence.

15  *Jacobson v. Massachusetts* (*Jacobson*), 197 U.S. 11, 30 (1905).  Rather, the evaluation of the

16  relative efficacy of vaccines is "a determination for the [policymaker], not the individual

17  objectors."  *Phillips v. City of New York* (*Phillips*),775 F.3d 538, 542 (2d Cir. 2015) (*citing*

18  *Jacobson*, 197 U.S. at 37-38).  Because Plaintiffs fail to allege any actions by the State outside the

19  scope of its proper exercise of its police powers, their constitutional challenges to California's

20  vaccination of students in schools for public health and safety fail as a matter of law.

21          **B.      Plaintiffs' Substantive Due Process Claims Fail as a Matter of Law**

22          Plaintiffs' substantive due process claims are devoid of legal and factual support.  Plaintiffs

23  cannot establish unconstitutional infringement of a substantive due process right.  For more than a

24  century, federal and state courts "have consistently recognized that the Constitution embodies no

25  fundamental right that in and of itself would render vaccine requirements imposed in the public

26  interest . . . unconstitutional."  (*We The Patriots USA, Inc. v. Hochul*, 17 F.4th 266, 293 (2d Cir.

27  2021) (citing *Jacobson*, 197 U.S. at 25-31 and *Phillips*, 775 F.3d at 542-43).  Plaintiffs' personal

28  disagreement with vaccine efficacy does not insulate them from state action in furtherance of

1  public health and safety.  Thus, the SAC is no different from previous due process challenges

2  against California's school vaccine law and should similarly be dismissed.

3       **1.  School vaccination laws have consistently been held to be a constitutionally permissible exercise of the State's police power to protect the public health**

4

5       Plaintiffs allege that, due to their personal beliefs against vaccination, California's school

6  vaccine law violates their substantive due process rights to be free from mandated injections and

7  to attend school.  Similar claims have already been soundly rejected by the courts.

8       It is well-settled that the California Legislature can require student vaccinations to protect

9  the health and safety of other students and the public at large, irrespective of their parents'

10  personal beliefs, which embodies a quintessential and long-recognized function of government to

11  protect the people from preventable harm.  The State has an unquestionably legitimate and

12  compelling interest in protecting public health and safety, as recognized by the Supreme Court in

13  *Jacobson*, 197 U.S. at 25, which upheld the constitutionality of a state's smallpox vaccination

14  requirement and recognized states' ability to make vaccination a pre-condition to enter or remain

15  in public schools.  *Id.* at 32.  Following *Jacobson*, the Supreme Court reiterated in *Zucht v. King*,

16  260 U.S. 174, 175–177 (1922), that "it is within the police power of a state to provide for

17  compulsory vaccination."  The Supreme Court further held in *Prince v. Massachusetts*, 321 U.S.

18  158, 166 (1944), that "neither the rights of religion nor rights of parenthood are beyond

19  limitation," and both can be interfered with when necessary to protect a child.

20       Since these seminal Supreme Court cases, federal courts have repeatedly upheld mandatory

21  vaccination laws over similar constitutional challenges predicated on due process, education

22  rights, parental rights, and privacy rights.  *See, e.g., Phillips v. City of New York,* 775 F.3d 538,

23  543 (2d Cir. 2015) (holding that individual liberty does not "overcome the State's judgment that

24  mandatory vaccination was in the interest of the population as a whole"); *Workman v. Mingo*

25  *County Sch.,* 667 F. Supp. 2d 679, 690–91 (S.D. W. Va. 2009) (holding that the mere existence of

26  a school vaccine mandate "is not enough to support an equal protection or due process claim");

27  *Boone v. Boozman* (*Boone*), 217 F. Supp. 2d 938, 956 (E.D. Ark. 2002) (holding that school

28  vaccine mandate did not violate due process because "requiring school children to be immunized

14

1  rationally furthers the public health and safety); *We The Patriots USA, Inc. v. Conn. Office of*

2  *Early Childhood Dev.*, 76 F.4th 130, 137, 158 (2d Cir. 2023) (holding that mandatory school

3  vaccination laws "do not violate substantive due process rights to privacy and medical freedom").

4      In California, federal district courts have already rejected substantive due process

5  challenges to the State's school vaccine law.  For example, in *Whitlow*, in a challenge to

6  California's elimination of the prior personal beliefs exemption, the Southern District ruled that

7  the plaintiffs were unlikely to prevail on their substantive due process claims because

8  "[u]nquestionably, imposing a mandatory vaccine requirement on school children as a condition

9  of enrollment does not violate substantive due process." *Whitlow*, 203 F. Supp. 3d at 1089.  The

10  court explained that, compared to other school vaccine challenges, California's school vaccine

11  law "is even one more step removed, as it involves the removal of an exemption that is not

12  required under the law . . . the State is well within its powers to condition school enrollment on

13  vaccination." *Id*.  Similarly, in *Middleton v. Pan*, No. CV 16-5224, 2017 WL 7053936, at \*5

14  (C.D. Cal. Dec. 17, 2017), in ruling in relevant part that California's vaccination law "withstands

15  constitutional challenge[,]" the Central District reiterated the holdings of *Jacobson*, *Zucht*, and

16  *Prince* that "[m]andatory vaccination laws are within the scope of a state's police power." *Id*.

17      California state court decisions are in accord.  In *Brown v. Smith* (*Brown*), 24 Cal.App.5th

18  1135, 1148 (2018), the appellate court rejected the plaintiffs' due process claims that California's

19  school vaccine law subjected children to "medical experiments" without informed consent and

20  violated their right to attend school.  And in *Love*, the appellate court rejected the plaintiffs'

21  attempts to distinguish the well-established Supreme Court case law in *Jacobson*, *Zucht*, and

22  *Prince*, holding that, in light of the federal and state authorities, the vaccine statute's legislative

23  history, and the "compelling governmental interest of ensuring health and safety by preventing

24  the spread of contagious diseases[s]," the plaintiffs' substantive due process claim had "no merit."

25  *Love*, 29 Cal.App.5th at 990-993.

26      Nothing alleged in this lawsuit upsets these seminal decisions upholding a state's

27  prerogative, and indeed obligation, to enact laws necessary to protect public health.

28

**2.    Plaintiffs fail to identify a fundamental right that has been violated**

Plaintiffs allege that California's school vaccine law violates their substantive due process rights to be free from mandated injections and to attend school.  This argument fails because the school vaccine law does not infringe upon fundamental rights.

The Fourteenth Amendment's Due Process Clause affords heightened protection to fundamental rights and liberties—those that objectively are "deeply rooted in this Nation's history and tradition" and so "implicit in the concept of ordered liberty" that "neither liberty nor justice would exist if they were sacrificed." *Washington v. Glucksberg* (*Glucksberg*), 521 U.S. 702, 721 (1997).  However, in determining whether a fundamental right is implicated, courts require a "careful description" of the asserted interest.  *Id*.  Laws that do not implicate a fundamental right survive "substantive-due-process scrutiny so long as they are 'rationally related to legitimate government interests.'" *Stormans, Inc. v. Wiesman* (*Stormans*),794 F.3d 1064, 1085 (9th Cir. 2015), citing *Glucksberg*, 521 U.S. at 728.

**3.    There is no fundamental right to be free from vaccination as a condition of school attendance**

In Plaintiffs' first and second causes of action, they allege that the school vaccination law infringes upon two, largely manufactured, purported rights: a right "to be free from mandated, potential lethal, injections that can cause death or serious permanent illness, such as autism and [Sudden Unexpected Infant Death syndrome]," and a right "to be free from mandated medical injections where the injections have not been shown to serve a public health purpose by preventing the transmission of infection."  SAC at 86-88.  However, Plaintiffs' self-styled due process claims fail at conception.

Although Plaintiffs cite to cases regarding medical examinations, administration of antipsychotic medications, and bone marrow donations, cases dealing with forced medical treatment are unavailing here, since the challenged vaccine law does not implicate forced medical treatment.  ECF No. 41-1 at 22-23; see *Cruzan v. Director,* 497 U.S. 261, 278–79, (1990) (holding that the general right to refuse medical treatment is not absolute and can be regulated by the State); *see also*, *Brox v. The Woods Hole*, 590 F. Supp. 3d 359, 368 (D. Mass. 2022) (noting

16

1  that a "*general* liberty interest in refusing medical treatment" is not the same "as a *fundamental*

2  liberty interest") (original emphasis).  A vaccine is a prophylactic measure aimed at preventing

3  the recipient from spreading diseases to others; it is not a medical act that seeks to treat the

4  symptoms or cause of a pre-existing condition.  *Boysen v. PeaceHealth*, No. 6:23-cv-01229-AA,

5  2024 U.S. Dist. LEXIS 147502, at *13 (D. Or. Aug. 19, 2024) (differentiating between vaccines

6  that "provide immunity" and "prevent[] infection" and medical treatment that "mitigat[es]

7  symptoms).  Plaintiffs fail to point to any legal authority that the vaccines at issue should be

8  equated to medical treatment.

9       Moreover, under the State's school vaccine law, California does not *mandate* injections,

10  and parents are not forced to vaccinate their children.  To the contrary, for students who have

11  physical or medical conditions that render vaccination unsafe, parents can request a medical

12  exemption.  §§ 120370; 12372.  For parents who object to vaccines, their children can fulfill their

13  educational requirements by attending homeschool or independent study.  § 120335(f).  Thus,

14  vaccination is optional, and state educational requirements may be satisfied in various ways that

15  do not require vaccination.

16       Furthermore, to the extent Plaintiffs ground these claims in the notion that vaccines "cause

17  death or serious permanent illness," courts have rejected such claims.  "The applicable

18  authorities—legal and scientific—clearly show that immunization is reasonably related to

19  maintaining the health of the subject of the immunization as well as the public health."  *Brown*,

20  24 Cal.App.5th at 1148; *Bruesewitz*, 562 U.S. at 226 and 245 ("routine vaccination is 'one of the

21  most spectacularly effective public health initiatives this country has ever undertaken' ").

22       Finally, there is no legal authority recognizing a purported right to be free from vaccination

23  as "fundamental" in any event.  It is not axiomatic that any state law conditioning school

24  enrollment on vaccination necessarily implicates a fundamental right.  Plaintiffs cannot show that

25  the alleged right to be free from unwanted vaccination is either implicit in the concept of ordered

26  liberty or deeply rooted in the history and tradition of the United States.  Indeed, as a matter of

27  law, Plaintiffs cannot establish a right to refuse vaccination as a condition of school attendance as

28  a "fundamental" right, since that notion has already been squarely rejected by the courts.

1    "Carefully formulated, the question presented by the facts of this case is whether the special

2    protection of the Due Process Clause includes a parent's right to refuse to have her child

3    immunized before attending public or private school where immunization is a precondition to

4    attending school.  The Nation's history, legal traditions, and practices answer with a resounding

5    'no.'"  *Boone*, 217 F.Supp.2d at 956.  Thus, Plaintiffs' allegations fail to implicate a fundamental

6    right, which means that only rational basis review applies.  *Stormans*, 794 F.3d at 1085.

7            **4.**    **The right to attend school is not unlimited under federal law**

8         Plaintiffs' third cause of action asserts a violation of their substantive due process right to

9    attend school.  SAC, ¶¶ 282-285.  But neither federal nor state authorities support this claim, and

10   thus it also fails.

11        Plaintiffs' reliance on the case of *Meyer v. Nebraska*, 262 U.S. 390, 399 (1923) for their

12   contention that their children have an absolute fundamental right to attend school is misplaced.

13   *Meyer* recognized the liberty interest of a language teacher to engage in his chosen profession,

14   and "the right of parents to engage him so to instruct their children."  *Meyer*, 262 U.S. at 400; *see*

15   *Plyler v. Doe*, 457 U.S. 202, 221 (1982) ("a State need not justify by compelling necessity every

16   variation in the manner in which education is provided to its population.") (citing *San Antonio*

17   *Indep. Sch. Dist. v. Rodriguez*, 411 U.S. 1, 35-36 (1973)).

18        And, while the California Constitution does provide a right to an education, numerous

19   courts have held that California's school vaccine law does not violate this right.  See, e.g., *French*

20   *v. Davidson* (1904) 143 Cal. 658, 662, 77 P. 663 ["The legislature no doubt was of the opinion

21   that the proper place to commence in the attempt to prevent the spread of contagion was among

22   the young, where they were kept together in considerable numbers in the same room for long

23   hours each day. ... [The legislation] in no way interferes with the right of the child to attend

24   school."); *Whitlow*, 203 F. Supp. 3d at 1089-91 ("The right of education, fundamental as it may

25   be, is no more sacred than any of the other fundamental rights that have readily given way to a

26   State's interest in protecting the health and safety of its citizens, and particularly, school

27   children."); *Brown*, 24 Cal.App.5th at 1145-47 (agreeing with *Whitlow* and holding that the

28   "removal of the [personal beliefs exemption] is necessary or narrowly drawn to serve the

1    compelling objective of SB 277"); *Love*, 29 Cal.App.5th at 995 (holding that California's school

2    vaccine statute does not violate the right to attend school).  Plaintiffs do not offer any explanation

3    or authority for why their claim should be treated any differently.

4         **5.**     **Plaintiffs' unconstitutional conditions claim fails as a matter of law**

5         Plaintiffs' fourth cause of action alleges that California's school vaccine law violates the

6    "unconstitutional conditions" doctrine because Plaintiffs must waive their right to be free from

7    mandated injections to exercise their right to public education.  SAC, ¶¶ 286-293.  Just as

8    Plaintiffs have failed to state their substantive due process claims, their unconstitutional

9    conditions claim suffers from the same defects.  *See e.g.*, *Taylor v. Wash. State Dep't of Corr.*,

10    No. C23-6186-MLP, 2024 WL 2209684, at *6 (W.D. Wash. May 16, 2024) (dismissing

11    plaintiffs' unconstitutional conditions claim because plaintiffs failed to state due process claims).

12         The "unconstitutional conditions" doctrine "vindicates the Constitution's enumerated rights

13    by preventing the government from coercing people into giving them up."  *Koontz v. St. Johns*

14    *River Water Mgmt. Dist.*, 570 U.S. 595, 604 (2013).  A "predicate for any unconstitutional

15    conditions claim is that the government could not have constitutionally ordered the person

16    asserting the claim to do what it attempted to pressure that person into doing."  *Id*. at 612.  Thus,

17    to allege a challenge under the unconstitutional conditions doctrine, Plaintiffs must first identify a

18    fundamental right that they are forced to give up.  *Legaretta v. Macias*, 603 F. Supp. 3d 1050,

19    1070–71 (D.N.M. 2022) ("Without identifying a fundamental right, Plaintiffs' challenge to the

20    Vaccine Mandate as an unconstitutional condition necessarily fails.").

21         Here, Plaintiffs do not, and cannot, identify a *fundamental right* that they are *forced* to give

22    up.  Plaintiffs have failed to establish that the purported right to refuse vaccinations is a

23    fundamental right given up because of the school vaccine law.  *See e.g.*, *Norris v. Stanley*, 567 F.

24    Supp. 3d 818, 822 (W.D. Mich. 2021) (rejecting plaintiff's unconstitutional conditions claims

25    because the school "vaccine mandate does not violate any of Plaintiff's fundamental rights").

26    Plaintiffs cannot establish that they are being forced to give up a fundamental right because there

27    is no fundamental right to attend school in a classroom setting regardless of one's vaccination

28    status.  *See*, *Smith v. Biden*, No. 1:21-cv-19457, 2021 WL 5195688, at *8 (D.N.J. Nov. 8, 2021)

1   (holding that while plaintiffs "are undeniably being presented with a difficult choice[,]" . . . they

2   nonetheless are "presented with a choice and are not being coerced to give up a fundamental right

3   since there is no fundamental right to refuse vaccination").

4       Moreover, a government entity does not impose an unconstitutional condition "by enforcing

5   a duly enacted, constitutional law," which the school vaccine law is. *Burcham v. City of Los*

6   *Angeles*, 562 F.Supp.3d 694, 707 n.4 (C.D. Cal. 2022). Even if a fundamental right is implicated,

7   which it is not, "the government may condition the grant of a discretionary benefit on a waiver of

8   rights if the condition is rationally related to the benefit conferred." *Bingham v. Holder*, 637 F.3d

9   1040, 1046 (9th Cir. 2011). The condition of receiving vaccinations for certain communicable

10   diseases is closely related to the benefit of attending school in a classroom-based setting.

11   *Whitlow*, 203 F. Supp. 3d at 1091 ("Conditioning school enrollment on vaccination has long been

12   accepted by the courts as a permissible way for States to inoculate large numbers of young people

13   and prevent the spread of contagious diseases.").

14       Because Plaintiffs fail to allege, and cannot establish, that mandating compliance with the

15   State's vaccine law as a condition of public or private school attendance infringes upon a

16   fundamental right, their unconstitutional conditions claim fails as a matter of law.

17       **C.    Plaintiffs' Procedural Due Process Claim Fails as a Matter of Law**

18       Plaintiffs' fifth cause of action alleges a violation of their claimed entitlement to notice and

19   hearing before the school vaccine law can be applied to preclude unvaccinated children without

20   exemptions from attending school. SAC, ¶ 296. This claim fails because, as explained above,

21   Plaintiffs cannot establish the existence of a substantive due process right to which any

22   procedural protections must apply.

23       First, Plaintiffs fail to establish the infringement of a protected property or liberty interest

24   because school attendance without vaccination is not a fundamental right. *See*, *e.g.*, *Shanks v.*

25   *Dressel*, 540 F.3d 1082, 1090 (9th Cir. 2008) (to prevail on a procedural due process claim, a

26   plaintiff must first establish the existence of a constitutionally protected liberty or property

27   interest subject to such protections). A property interest protected by the Constitution is an

28   interest "that a person has already acquired in [a] specific benefit[ ]." *Board of Regents of State*

20

1    *Colleges v. Roth*, 408 U.S. 564, 576 (1972).  A property interest is not created merely by a

2    unilateral expectation, abstract need, or desire for the benefit; it is rather "a legitimate claim of

3    entitlement" to it.  *Id.* at 577.  "Property interests are not created by the Constitution, 'they are

4    created and their dimensions are defined by existing rules or understandings that stem from an

5    independent source such as state law.'"  *Cleveland Bd. of Ed. v. Loudermill*, 470 U.S. 532, 538

6    (1985).  Here, Plaintiffs cannot establish a legal entitlement to attend public or private school

7    absent vaccination. That is, while Plaintiffs may desire that their children attend school without

8    regard to their vaccination status, there is no constitutional authority that establishes such an

9    absolute right.  Quite the opposite: controlling federal law has consistently recognized a state's

10   prerogative to require vaccination as a condition of school attendance.  *See* Section III.A.

11        Second, even if a property interest were implicated, California's school vaccine law is a law

12   of general applicability that applies to all school-aged children statewide and, therefore,

13   individualized notice and hearing procedures are not required.  "[L]aws of general applicability

14   affecting a broad geographic area" do not implicate individual procedural due process concerns.

15   *Hotel & Motel Ass'n of Oakland v. City of Oakland*, 344 F.3d 959, 968-70 (9th Cir. 2003).

16   Indeed, in cases involving laws of general applicability, due process is satisfied when the

17   governmental body "performs its responsibilities in the manner normally prescribed by law."

18   *Halverson v. Skagit Cnty.*, 42 F.3d 1257, 1260 (9th Cir. 1994); *see also Underwood v. City of*

19   *Starkville*, 538 F.Supp.3d 667, 678 (N.D. Miss. 2021) ("It would be impractical—if not

20   nonsensical—to allow every individual member of the public to voice their opinion directly and

21   personally before a rule of general applicability is put into effect.]").  "The proper remedy in

22   [such] circumstances is judicial review."  *Curlott v. Campbell*, 598 F.2d 1175, 1181 (9th Cir.

23   1979).  And, as explained above, California's school vaccine law has consistently survived

24   review by federal and state courts.

25        Although Plaintiffs are not entitled to procedural due process prior to the vaccine law's

26   application, parents and students are afforded an opportunity to request vaccination exemptions

27   and accommodations based on qualifying criteria.  Thus, for students who are behind on their

28   vaccinations, parents can request an accommodation for conditional admission pursuant to section

21

1  120340.  For students who have physical or medical conditions that render vaccination unsafe,

2  parents can request a medical exemption pursuant to sections 120370 and 12372.  Students can

3  also be exempt from vaccination requirements if they elect to attend homeschool or independent

4  study.  § 120335(f).  Each one of these provisions creates a formalized avenue for parental

5  concerns to be presented to and evaluated by the State, with the availability of relief to address

6  those concerns.

7      Finally, even if the school vaccine law implicates procedural due process (and it does not),

8  Plaintiffs lack standing to assert a procedural due process claim.  *See* Section II.A.

9      For all of these reasons, Plaintiffs' procedural due process claim must also be rejected.

10     **D.     The Vaccination Law Is Rationally Related to a Legitimate State Interest**

11     "Federal courts, including courts within this circuit, have routinely analyzed mandatory

12  vaccination cases under rational basis review."  *Royce v. Pan*, No. 3:23-cv-02012-H-BLM, 2025

13  WL 834769, at *9 (S.D. Cal. Mar. 17, 2025) (citing cases discussed in Section III.C.  This suit is

14  no different, and California's school vaccine law clearly satisfies rational basis review.

15     "[T]he rational-basis standard . . . employs a relatively relaxed standard."  *Mass. Bd. of*

16  *Retirement v. Murgia*, 427 U.S. 307, 314 (1976).  Under this standard, a law is upheld "so long as

17  it bears a rational relation to some legitimate end."  *Romer v. Evans*, 517 U.S. 620, 631 (1996).

18  "[C]ourts are compelled . . . to accept a legislature's generalizations even when there is an

19  imperfect fit between means and ends."  *Heller v. Doe*, 509 U.S. 312, 321 (1993).)

20     It is well-established that vaccination laws, such as the California statute, are rationally

21  related to legitimate state interests.  The United States Supreme Court, the California Supreme

22  Court, and numerous other federal and state courts have uniformly held that state vaccination

23  laws serve a rational, if not a compelling, state interest in protecting the public from the spread of

24  communicable diseases.  *See* Section III.C.

25     California's school vaccine law is rationally related to a legitimate state interest in

26  protecting the public from the spread of debilitating, and potentially fatal, diseases.  *See also*

27  *Doescher v. Pan*, NO. 2;23-cv-02995;KLM-JDP, 2025 U.S. Dist. LEXIS 116640, at *43 (E.D.

28  Cal. June 17, 2025) ("California has a legitimate interest in protecting the public health and safety

1    by increasing the number of vaccinated students in the schools within its borders.").  As its

2    legislative history confirms, "[v]accine coverage at the community level is vitally important for

3    people too young to receive immunizations and [for] those unable to receive immunizations due

4    to medical reasons."  RJN Ex. 13 at 6.  "[W]hen belief exemptions to vaccination guidelines are

5    permitted, vaccination rates decrease."  *Id.* Ex. 1 at 5.  "Given the highly contagious nature of

6    [these] diseases . . . vaccination rates of up to 95% are necessary to preserve [community]

7    immunity and prevent future outbreaks."  *Id.* Ex. 13 at 5.  "SB 277's legislative history identified

8    concerns over the significant rise in personal belief exemptions—a 337% increase between 2000

9    and 2012—which places communities at risk of preventable diseases."  *Royce v. Bonta* (*Royce*),

10   725 F.Supp.3d 1126, 1140 (S.D. Cal. 2024).

11          In sum, California's school vaccine statute "is congruent with the State's interest in slowing

12   the spread of infectious diseases," and thus easily passes rational basis review.  *Royce*, 725

13   F.Supp.3d at 1140.

14          **E.    Even If Strict Scrutiny Applied, the Vaccination Law Passes Constitutional**
15          **Muster**

16          Even if this Court were to determine that strict scrutiny applies, the school vaccination law

17   still survives constitutional scrutiny because it is narrowly tailored to achieve a compelling

18   governmental interest.  *See Fulton v. City of Philadelphia*, 593 U.S. 522, 533 (2021).

19          Courts have long recognized that a state has a "compelling" interest in protecting the health

20   and safety of its residents, including the students in its schools, by preventing the spread of

21   communicable diseases.  *Jacobson*, 197 U.S. at 25; *Love*, 29 Cal.App.5th at 990.  More

22   specifically, California has a compelling interest in increasing vaccination rates at schools

23   statewide to prevent outbreaks of communicable diseases in schools, to protect children unable to

24   be vaccinated who attend those schools (because they are too young or are immune-

25   compromised), and to prevent community spread by preventing childhood diseases from taking

26   root.  RJN, Ex. 1 at 4-5, Ex. 2 at § 1(f).  To that end, "[c]onditioning school enrollment on

27   vaccination has long been accepted by the courts as a permissible way for States to inoculate

28   large numbers of young people and prevent the spread of contagious diseases."  *Whitlow*, 203

23

1  F.Supp.3d at 1091; *see also Love*, 29 Cal.App.5th at 992 ("compulsory immunization has long

2  been recognized as the gold standard for preventing the spread of contagious diseases").

3      Moreover, the vaccine statute is narrowly tailored to address the significant health risks the

4  Legislature identified. *Whitlow*, 203 F. Supp. 3d at 1091; *Brown*, 24 Cal.App.5th at 1145; *Love*,

5  29 Cal.App.5th at 996. In 2015—faced with a measles outbreak on the one hand, and alarming

6  pockets of unvaccinated communities on the other—the California Legislature determined that it

7  needed to take significant action to ensure the gold standard of compulsory school vaccination

8  was not undermined. The State did not take blanket action to eliminate all vaccination

9  exemptions, recognizing, for instance, that some children are too young or have medical

10  conditions that make vaccination unsafe. *See* RJN Ex. 1 at 6, 7. Rather, the Legislature took

11  targeted action to eliminate the PBE that evidence had established was a growing and unrestricted

12  loophole preventing schools from reaching community immunity and undermining the

13  effectiveness of the school vaccination law. *See id.* at 2.

14      At the same time, to ensure that elimination of the PBE did not impact students' rights

15  under the State constitution to equal education, the Legislature added an exemption for home-

16  based schools and public-school independent study programs with no classroom component, as

17  these settings do not carry the same risk of transmitting communicable disease as classroom-

18  based instruction. *See* § 120335(f). Consequently, multiple courts have already held that

19  California's vaccine law, as presently written, is narrowly tailored to achieve the State's interests.

20  *Whitlow*, 203 F. Supp. 3d at 1091; *Brown*, 24 Cal.App.5th at 1145; *Love*, 29 Cal.App.5th at 996.

21      Because California's school vaccination law is narrowly tailored to advance the State's

22  compelling interest in preventing childhood communicable diseases, preventing community-wide

23  outbreaks, and protecting uniquely vulnerable students, the law also satisfies strict scrutiny.

24                              **CONCLUSION**

25      For the foregoing reasons, CDPH respectfully requests that the Second Amended

26  Complaint be dismissed with prejudice.

27

28

1    Dated:  July 16, 2025

                                                 Respectfully submitted,

2

                                                 ROB BONTA
Attorney General of California

3                                                  JULIE T. TRINH
Supervising Deputy Attorney General

4

5                                                  */s/ Jacquelyn Young*

6

7                                                  JACQUELYN Y. YOUNG
KATHERINE GRAINGER

8                                                  Deputy Attorneys General
*Defendant Erica Pan, in her official
capacity as the Director of the California
Department of Public Health*

9

10    SF2024804250
Free Now_Motion to Dismiss [Filing].docx

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Defendant CDPH's Motion to Dismiss Plaintiffs' Second Amended Complaint (2:24-cv-03523-DJC-SCR)

# CERTIFICATE OF SERVICE

Case Name:  **Free Now Foundation, et al. v. Pan**    Case No.:    **2:24-cv-03523-DJC-SCR**

I hereby certify that on <u>July 16, 2025</u>, I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT CDPH'S NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT**

I certify that **all** participants in the case are registered CM/ECF users and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, and that this declaration was executed on <u>July 16, 2025</u>, at Los Angeles, California.

<table>
<tr><td>Anthony Conklin</td><td>*Anthony Conklin*</td></tr>
<tr><td>Declarant</td><td>Signature</td></tr>
</table>

SF2024804250
67765285.docx