1 | ROB BONTA, State Bar No. 202668
Attorney General of California
2 | JULIE T. TRINH, State Bar No. 231276
Supervising Deputy Attorney General
3 | JACQUELYN Y. YOUNG, State Bar No. 306094
KATHERINE GRAINGER, State Bar No. 333901
4 | Deputy Attorneys General
  455 Golden Gate Avenue, Suite 11000
5 |   San Francisco, CA  94102-7004
  Telephone:  (415) 510-3553
6 |   Fax:  (916) 731-2125
  E-mail:  Jacquelyn.Young@doj.ca.gov
7 | *Attorneys for Defendant Erica Pan, in her official*
*capacity as the Director of the California*
8 | *Department of Public Health*

9 | IN THE UNITED STATES DISTRICT COURT

10 | FOR THE EASTERN DISTRICT OF CALIFORNIA

11

12

13

| | |
|---|---|
| **FREE NOW FOUNDATION, et al.,** | 2:24-cv-03523-DJC-SCR |
|                       Plaintiffs, | **DEFENDANT CDPH'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFF'S SECOND AMENDED COMPLAINT** |
|     v. | |
| **ERICA PAN IN HER OFFICIAL CAPACITY AS DIRECTOR OF THE CALIFORNIA DEPARTMENT OF PUBLIC HEALTH,** | Filed Concurrently with (1) Motion to Dismiss (2) Declaration of Counsel (3) Objection to Declarations Attached to     Plaintiffs' Second Amended Complaint (4) [Proposed] Order |
|                  Defendant. | Date:        August 21, 2025 Time:       1:30 p.m. Dept:      7 Judge:     The Hon. Daniel J. Calabretta Action Filed:  December 16, 2024 |

1

Pursuant to Federal Rule of Evidence 201, Defendant Erica Pan, in her official capacity as Director of the California Department of Public Health (CDPH), hereby requests that the Court take judicial notice of the following documents in support of CDPH's Motion to Dismiss Plaintiffs' Second Amended Complaint (Motion). These documents are relevant to establish that Plaintiffs have failed to state a cognizable claim for relief against CDPH. *See* Fed. R. Evid. 401.

## MATTERS TO BE NOTICED

1.    The Assembly Committee on Health analysis on California Senate Bill 277 (2015), dated June 9, 2015, a true and correct copy of which is attached hereto as Exhibit 1.

2.    California Senate Bill 276 (2019), modifying the medical exemption to compulsory school vaccination requirements, a true and correct copy of which is attached hereto as Exhibit 2.

3.    California Stats. 1880 chapter 24, establishing compulsory smallpox vaccination for school children, a true and correct copy of which is attached hereto as Exhibit 3.

4.    California Stats. 1961, chapter 837, establishing compulsory polio vaccination for school children (with medical and philosophical exemptions), a true and correct copy of which is attached hereto as Exhibit 4.

5.    California Senate Bill 277 (2015), modifying compulsory school vaccination requirements and repealing the personal belief exemption, a true and correct copy of which is attached hereto as Exhibit 5.

6.    The Senate Committee on Health Analysis of Senate Bill 277, dated April 7, 2015, a true and correct copy of which is attached hereto as Exhibit 6.

7.    The Centers for Disease Control and Prevention, Morbidity and Mortality Weekly Report, Measles Outbreak – California, December 2014–February 2015, a true and correct copy of which is attached hereto as Exhibit 7.

8.    The California Department of Public Health's 2019–2020 7th Grade Immunization Assessment, a true and correct copy of which is attached hereto as Exhibit 8.

9.    The California Department of Public Health's 2019–2020 Kindergarten Immunization Assessment, a true and correct copy of which is attached hereto as Exhibit 9.

1    10.    The Assembly Committee on Health analysis, dated June 20, 2019, for Senate Bill

2    No. 276 related to medical exemptions from vaccination, a true and correct copy of which is

3    attached hereto as Exhibit 10.

4    11.    The California Department of Public Health's Kindergarten Immunization

5    Assessment for 2020–2021 and 2021–2022, and First Grade Immunization Assessment for 2021–

6    2022, a true and correct copy of which is attached hereto as Exhibit 11.

7    12.    The California Department of Public Health's Seventh Grade Immunization

8    Assessment for 2020–2021 and 2021–2022, a true and correct copy of which is attached hereto as

9    Exhibit 12.

10    13.    The Senate Judiciary Committee analysis of Senate Bill 277, dated April 27, 2015, a

11    true and correct copy of which is attached hereto as Exhibit 13.

12                                    **LEGAL STANDARD**

13    Federal Rule of Evidence 201(b) establishes the criteria for judicially noticed facts: a

14    judicially noticed fact must be one not subject to reasonable dispute in that it is either (1)

15    generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and

16    ready determination by resort to sources whose accuracy cannot reasonably be questioned.

17    Further, Federal Rule of Evidence 901(b)(7) provides that evidence a public record or report is

18    from the public office where items of that nature are kept satisfies the requirement that admitted

19    evidence be authenticated. Federal Rule of Evidence 902(5) likewise allows for the self-

20    authentication of official publications issued by a public authority.

21                                    **ARGUMENT**

22  **I.    THE COURT MAY TAKE JUDICIAL NOTICE OF ACTS OF LEGISLATION
          AND LEGISLATIVE COMMITTEE REPORTS (EXHIBITS 1-6, 10, 13)**

23

24    A court may take judicial notice of the legislative history of a piece of legislation,

25    including, for instance, "prior versions of the bill, amendments, committee reports, and the

26    written recommendations of the legislative counsel." *Est. of Graham v. Sotheby's Inc*., 860 F.

27    Supp. 2d 1117, 1125-26 n.6 (C.D. Cal. 2012) (citing *Territory of Alaska v. Am. Can Co*., 358 U.S.

28    224, 226–27 (1959); *Chaker v. Crogan*, 428 F.3d 1215, 1223 n. 8 (9th Cir. 2005); *In re Reeves*,

35 Cal.4th 765, 777 n. 15 (2005)); *Zephyr v. Saxon Mortg. Servs., Inc.*, 873 F. Supp. 2d 1223, 1226 (E.D. Cal. 2012) (granting request for judicial notice of California legislative history documents that were readily available and whose authenticity was not challenged). The legislative committee reports (Exhibits 1, 6, 10, 13) and California legislative acts (Exhibits 2-5) are all publicly available and their accuracy cannot be reasonably questioned. Moreover, the content of these documents is relevant background information in support of CDPH's arguments that Plaintiffs have failed to state a cognizable claim for relief.

## II. THE COURT MAY TAKE JUDICIAL NOTICE OF REPORTS, RECORDS, AND GUIDANCE FROM GOVERNMENT AGENCIES (EXHIBITS 7-9, 11-12)

A court may also take judicial notice of records and reports of state administrative agencies, such as guidance and opinion letters. *Lundquist v. Continental Cas. Co.*, 394 F. Supp. 2d 1230, 1243 (C.D. Cal. 2005) (noting it is "well established" that a court may take judicial notice of the reports of an administrative body, and granting request for judicial notice of an opinion letter and notice issued by California Department of Insurance); *see United States v. 14.02 Acres*, 547 F.3d 943, 955 (9th Cir. 2008) (judicial notice is proper for records and reports of government agencies). This includes information published on government websites. *City and County of San Francisco v. Garland*, 42 F.4th 1078, 1083 n. 3 (9th Cir. 2022) (taking judicial notice of a legal notice document available on government website."); *Veterans for Common Sense v. Shinseki*, 644 F.3d 845, 852 n.3 (9th Cir. 2011) (Veterans Health Administration website for statistics on service), *opinion vacated on reh'g en banc*, 678 F.3d 1013 (9th Cir. 2012); *Cnty. of Santa Clara v. Astra USA, Inc.*, 401 F. Supp. 2d 1022, 1024 (N.D. Cal. 2005) (taking judicial notice of, among other items, a report by and "a description of the price-control regime" on the U.S. Department of Health and Human Services' website).

The annual immunization data reports published by the California Department of Public Health (Exhibits 8-9, 11-12) and the report published by the federal Centers for Disease Control and Prevention (Exhibit 7) are or were publicly available and their accuracy cannot be reasonably questioned. Moreover, the content of these documents, regardless of the underlying truth of the

1    legal analysis therein, is relevant to CDPH's arguments that Plaintiffs have failed to state a

2    cognizable claim for relief.

3                                    **CONCLUSION**

4          For the foregoing reasons, the Court should grant this request for judicial notice.

5

6    Dated:  July 16, 2025                          Respectfully submitted,

7                                                   ROB BONTA
                                                    Attorney General of California
8                                                   JULIE T. TRINH
                                                    Supervising Deputy Attorney General
9
                                                    */s/ Jacquelyn Young*
10
                                                    JACQUELYN Y. YOUNG
11                                                  KATHERINE GRAINGER
                                                    Deputy Attorneys General
12                                                  *Attorneys for Defendant CDPH*

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# Exhibit 1

Date of Hearing:  June 9, 2015

ASSEMBLY COMMITTEE ON HEALTH
Rob Bonta, Chair
SB 277 (Pan and Allen) – As Amended May 7, 2015

**SENATE VOTE**:  25-11

**SUBJECT**:  Public health: vaccinations.

**SUMMARY:**  Eliminates non-medical exemptions from the requirement that children receive vaccines for certain infectious diseases prior to being admitted to any public or private elementary or secondary school, or day care center.  Specifically, **this bill**:

1) Deletes the exemption based on personal beliefs from the existing immunization requirement for children in child care and public and private schools.  Deletes related law requiring a form to accompany a personal belief exemption (PBE).

2) Exempts students enrolled in home-based private schools or in an independent study program from the existing immunization requirement.

3) Permits the California Department of Public Health (DPH) to add diseases to the immunization requirements only if exemptions are allowed for both medical reasons and personal beliefs.

**EXISTING LAW**:

1) Prohibits the governing authority of a school or other institution from unconditionally admitting any person as a pupil of any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless, prior to his or her first admission to that institution, he or she has been fully immunized against diphtheria, *Haemophilus influenzae* type b (Hib meningitis), measles, mumps, pertussis (whooping cough), poliomyelitis, rubella (German measles), tetanus, hepatitis B, and varicella (chickenpox).

2) Permits DPH to add to this list any other disease deemed appropriate, taking into consideration the recommendations of the Centers for Disease Control and Prevention (CDC) Advisory Committee on Immunization Practices (ACIP) and the American Academy of Pediatrics Committee on Infectious Diseases.

3) Waives immunization requirements in 1) above, if the parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances that contraindicate immunization.

4) Waives the above immunization requirements if the parent, guardian, or an emancipated minor, files a letter with the governing authority stating that the immunization is contrary to his or her beliefs.

5) Requires a separate form prescribed by DPH to accompany a letter or affidavit to exempt a child from immunization requirements on the basis that an immunization is contrary to beliefs of the child's parent or guardian. Requires the form to include:

   a) A signed attestation from the health care practitioner that indicates that the parent, guardian, or emancipated minor, was provided with information regarding the benefits and risks of the immunization and the health risks of the specified diseases to the person and to the community. Requires the attestation to be signed not more than six months before the date when the person first becomes subject to the immunization requirement for which exemption is being sought.

   b) A written statement signed by the parent, guardian, or emancipated minor, that indicates that the signer has received the information provided by the health care practitioner pursuant a) above. Requires the statement to be signed not more than six months before the date when the person first becomes subject to the immunization requirements as a condition of admittance.

6) Permits a local health officer to temporarily exclude from the school or institution a child for whom the requirement has been waived, whenever there is good cause to believe that he or she has been exposed to one of the specified communicable diseases, until the local health officer is satisfied that the child is no longer at risk of developing the disease.

**FISCAL EFFECT**: None.

**COMMENTS**:

1) **PURPOSE OF THIS BILL.** According to the author, in early 2015, California became the epicenter of a measles outbreak, which spread in large part because of communities with large numbers of unvaccinated people. According to the CDC, there have been more cases of measles in January 2015 than in any one month in the past 20 years. Between 2000 and 2012, the number of PBEs from vaccinations required for school entry that were filed rose by 337%. In 2000, the PBE rate for kindergartners entering California schools was under 1%. However, by 2013, that number rose to 3.15%. In certain geographic pockets of California, exemption rates are 21% or more, placing our communities at risk for the rapid spread of entirely preventable diseases, according to the author. Given the highly contagious nature of diseases such as measles, vaccination rates of up to 95% are necessary to protect the public health of the community and prevent future outbreaks.

2) **BACKGROUND.** The diseases that vaccines prevent can be dangerous, or even deadly. According to the CDC, vaccines reduce the risk of infection by working with the body's natural defenses to help it safely develop immunity to disease. When bacteria or viruses invade the body, they attack and multiply, creating an infection. The immune system then has to fight the illness. Once it fights off the infection, the body is left with a supply of cells that help recognize and fight that disease in the future. Vaccines contain the same antigens or parts of antigens that cause diseases, but the antigens in vaccines are either killed or greatly weakened. This exposure to the antigens teaches the immune system to develop the same response as it does to the real infection so the body can recognize and fight the disease in the future.

Public health experts agree that vaccines represent one of the greatest achievements of science and medicine in the battle against disease. Vaccines are responsible for the control of many infectious diseases that were once common around the world, including polio, measles, diphtheria, pertussis, rubella, mumps, tetanus, and Hib meningitis. Vaccine helped to eradicate smallpox, one of the most devastating diseases in history. Over the years, vaccines have prevented countless cases of infectious diseases and saved literally millions of lives.

Vaccine-preventable diseases have a costly impact, resulting in doctor's visits, hospitalizations, and premature deaths. Sick children can also cause parents to lose time from work. CDC recommends routine vaccination to prevent 17 vaccine-preventable diseases that occur in infants, children, adolescents, or adults.

In the U.S., the high vaccination rate for routinely recommended immunizations for infant and childhood diseases has brought about dramatic declines in the incidence of polio, measles, mumps, rubella, *Haemophilus influenza* type b, hepatitis, and chickenpox. In the past decade, recommendations for annual influenza vaccination have been expanded to encompass all children six months to eighteen years of age, and new vaccines have been added to the immunization schedule to help protect infants from rotavirus disease and adolescents from meningitis. As a result of the advances in developing vaccines and including them as standard of care, most diseases that are preventable by vaccination are at record low levels in the U.S.

For years many of these diseases were thought to be ordinary childhood experiences and many older adults had these diseases as children. Nevertheless, they are serious deadly diseases for some. For example, measles in children has a mortality rate as high as about one in 500 among healthy children, higher if there are complicating health factors.

In the past couple of decades, controversy has arisen about vaccines and autism, the best number of injections to be administered during a single visit or over the course of the first years of life, and vaccine ingredients which has prompted parents, the media, policy makers, and others to raise concerns about the safety of recommended immunizations as well as the vaccination schedule. Despite their positive impact on health and well-being, vaccines have had a long history of arousing anxiety. The rapid growth of the Internet and social media has made it easier to find and disseminate immunization-related concerns and misperceptions. According to a 2011 study published in the journal *Health Affairs*, results indicate that although the overwhelming majority of parents surveyed intended to vaccinate their children fully, a majority of parents still had questions or concerns about vaccines.

3) **SCHOOL IMMUNIZATION REQUIREMENTS.** States enact laws or regulations that require children to receive certain vaccines before they enter childcare facilities and school, but with some exceptions, including medical, religious, and philosophical objections. School vaccination requirements are thought to serve an important public health function, but can also face resistance.

An article published in the 2001-02 *Kentucky Law Journal* reviewed historical and modern legal, political, philosophical, and social struggles surrounding vaccination requirements. The authors stated that though school vaccination has been an important component of public health practice for decades, it has had a controversial history in the U.S. and abroad. Historical and modern examples of the real, perceived, and potential harms of vaccination,

governmental abuses underlying its widespread practice and strongly held religious beliefs have led to fervent objections among parents and other persons who object to vaccines on legal, ethical, social, and epidemiological grounds. The article states that public health authorities argue that school vaccination requirements have led to a drastic decrease in the incidence of once common childhood diseases. Those who object to vaccines tend to view the consequences of mass vaccination on an individualistic basis, focusing on alleged or actual harms to children from vaccinations. As part of their research, the authors compared childhood immunization rates and rates of vaccine-preventable childhood diseases before and after the introduction of school vaccination requirements. The data suggest that school vaccination requirements have succeeded in increasing vaccination rates and reducing the incidence of childhood disease

Current state law mandates immunization of school-aged children against 10 specific diseases. Each of the 10 diseases was added to California code through legislative action, after careful consideration of the public health risks of these diseases, cost to the state and health system, communicability, and rates of transmission. The Legislature has a long history of thoughtful consideration for which diseases pose the most serious health risks to the public. Following is a brief summary of activity related to mandated immunizations for children enrolling in school:

  1889: School districts first allowed to exclude a student who is not vaccinated against smallpox, and schools were required to maintain a list of unvaccinated children (SB 92, Briceland, Chapter 24).
  1961: Polio immunization added as a requirement, as well as the first appearance of a philosophical exemption (AB 1940, DeLotto and Rumford, Chapter 837).
  1977: Diphtheria, pertussis, tetanus, and measles were added to immunization requirements for children entering school (SB 942, Rains, Chapter 1176).
  1979: Mumps and rubella were added to the list (AB 805, Mangers, Chapter 435).
  1992: *Haemophilus influenzae* type b was added (AB 2798, Floyd, Chapter 1300, and AB 2294, Alpert, Chapter 1320).
  1995 and 1997: Hepatitis B was added (AB 1194, Takasugi, Chapter 291, Statutes of 1995 and AB 381, Takasugi, Chapter 882, Statutes of 1997).
  1999: The Legislature voted to add Hepatitis A to the list, but it was vetoed by Governor Davis (AB 1594, Florez).
  1999: Varicella was added to the list (SB 741, Alpert, Chapter 747).
  2007: The Legislature voted to add pneumococcus to the list, but it was vetoed by Governor Schwarzenegger (SB 533, Yee).
  2010: Tetanus, diphtheria and pertussis (TDaP) booster was required for 7th graders (AB 354, Arambula, Chapter 434).

All of the diseases for which California requires school vaccinations are very serious conditions that pose very real health risks to children. Most of the diseases can be spread by contact with other infected children. Tetanus does not spread from student to student but because it is such a serious potentially fatal disease, and it is easily preventable by vaccine, the vaccination of children is required prior to enrollment in school.

4) **COMMUNITY IMMUNITY**. Herd immunity occurs when a significant proportion of the population (or the herd) has been vaccinated, and this provides protection for unprotected individuals. The larger the number of people who are vaccinated in a population, the lower

the likelihood that a susceptible (unvaccinated) person will physically come into contact with the infection. It is more difficult for diseases to spread between individuals if large numbers of people are already immune, and the chain of infection is broken. The reduction of herd immunity places unvaccinated persons at risk, including those who cannot receive vaccinations for medical reasons. Those who cannot receive vaccines include those with compromised immune systems, older adults, small children and babies, all depending on the vaccine.

There the protective effect of herd immunity wanes as large numbers of children do not receive some or all of the required vaccinations, resulting in the reemergence of vaccine preventable diseases in the U.S. Statewide statistics indicate that in 2014-15 school year, 90.4% of kindergartens received all required immunizations. The widespread reporting of statewide numbers, however, potentially mask a better understanding of more relevant data, such as town, city, or county vaccination rates. Because students are not interacting with every individual in the entire state, the local vaccination rate is more relevant to the discussion of community immunity.

The vaccination rate in various communities varies widely across the state. Those areas become more susceptible to an outbreak than the state's overall vaccination levels may suggest. These communities make it difficult to control the spread of disease and make us vulnerable to having the virus re-establish itself.

Studies find that when belief exemptions to vaccination guidelines are permitted, vaccination rates decrease. An analysis by the *New York Times* found that more than a quarter of schools in California have measles-immunization rates below the 92-94% recommended by the CDC. Research shows that people with lower vaccine acceptance tend to group together in communities. A study recently published in the journal *Pediatrics* found that schools with high PBE rates are clustered in suburbs in the peripheral areas of California cities. The same analysis found that schools with low proportion of white students, or a high proportion of students receiving free or reduced lunch, were more likely to have high vaccination rates (less PBEs).

5) **CALIFORNIA MEASLES OUTBREAK**. The authors point to an outbreak of measles linked to Disneyland in in December 2014 as one of the reasons for the introduction of this bill. This outbreak led to 131 confirmed measles cases reported in California as part of this outbreak. The outbreak, now declared over by DPH, led to 19% of those infected requiring hospitalization. The outbreak likely started from a traveler who became infected overseas with measles, then visited the amusement park while infectious; however, no source was identified. Analysis by CDC scientists showed that the measles virus type in this outbreak (B3) was identical to the virus type that caused the large measles outbreak in the Philippines in 2014.

According to the CDC, measles is one of the first diseases to reappear when vaccination coverage rates fall. In 2014, there were over 600 cases reported to the CDC, the highest in many years. Between 2000 and 2007, the average number of cases was 63 per year, less than half the number of the Disney outbreak, which is one of five outbreaks so far this year reported by the CDC.

Of the confirmed cases, DPH reported:

- Forty-two cases visited Disneyland during December 17-20, 2014 where they are presumed to have been exposed to measles;
- Thirty-one are household or close contacts to a confirmed case;
- Fourteen were exposed in a community setting (e.g., emergency room) where a confirmed case was known to be present;
- Forty-four have unknown exposure source but are presumed to be linked to the outbreak based on a combination of descriptive epidemiology or strain type;
- Five cases are known to have a different genotype from the outbreak strain; and,
- Among measles cases for whom DPH has vaccination documentation, 57 were unvaccinated and 25 had 1 or more doses of measles, mumps, and rubella (MMR) vaccine. A number of those unvaccinated had a personal belief exemption and also include many infants too young to be vaccinated.

6) **NATIONAL CHILDHOOD VACCINE INJURY ACT.** During the mid-1970s, there was an increased focus on personal health and more people became concerned about vaccine safety. Several lawsuits were filed against vaccine manufacturers and healthcare providers by people who believed they had been injured by the TDaP vaccine. Damages were awarded despite the lack of scientific evidence to support vaccine injury claims. In 1976, a preemptive attempt to conduct a nationwide influenza vaccination campaign for the swine flu stoked peoples' fears. The predicted epidemic did not occur and there were some who argued this particular influenza vaccine resulted in serious side effects.

As a result, potential liability costs and vaccine prices soared, and several vaccine manufacturers halted production. A vaccine shortage resulted and public health officials became concerned about the return of epidemic disease.

To reduce liability and respond to public health concerns, Congress passed the National Childhood Vaccine Injury Act (NCVIA) in 1986. The NCVIA established the National Vaccine Program Office (NVPO) to coordinate immunization related activities among various federal agencies and requires health care providers who give vaccines to provide an information statement to the patient or guardian that contains a brief description of the disease as well as the risks and benefits of the vaccine. Additionally, the NCVIA requires health care providers to report certain adverse health events following vaccination to the Vaccine Adverse Event Reporting System (VAERS). The VAERS system remains an important source of information for the CDC and others to monitor the vaccine program, but the system allows self-reporting by any citizen or healthcare provider what they believe to be an adverse vaccine-related event, but the event numbers publicly available have not necessarily been medically verified or scientifically studied. The National Vaccine Injury Compensation Program (NVICP) was created to compensate those injured by vaccines on a "no fault" basis. The NVICP has been loudly criticized by some for inefficient operations, and for providing legal immunity to the pharmaceutical industry.

The NCVIA established a committee from the Institute of Medicine (IOM) to review the literature on vaccine reactions. This group concluded that there are limitations in our knowledge of the risks associated with vaccines. The group looked at 76 health problems to see if they were caused by vaccines. Of those, 50 (66%) had no or inadequate research to form a conclusion. The IOM identified several specific problems, such as a limited understanding of biological processes that underlie adverse events, incomplete and inconsistent information from individual reports, poorly constructed research studies (not enough people enrolled for the period of time), inadequate systems to track vaccine side effects, and few experimental studies were published in the medical literature. The CDC states that in the time since the publication of the IOM reports in the 1990s, significant progress has been made to monitor side effects and conduct research relevant to vaccine safety. In 2011 the IOM published *Adverse Effects of Vaccines: Evidence and Causality*, representing an extensive study of peer-reviewed vaccine related research to date. The IOM Committee reviewed eight vaccines given to children or adults (MMR, varicella, influenza, hepatitis A, hepatitis B, human papillomavirus, meningococcal, and DTP) and again found that vaccines are generally very safe and that serious adverse events are quite rare.

7) **VACCINES AND AUTISM.** The idea that autism is caused by vaccination is influencing public policy, even though rigorous studies do not support this hypothesis. The hypothesis is based on the observation that the number of autism cases increased in the 1980s, coinciding with a push for greater childhood vaccinations, which increased above recommended levels children's exposure to mercury in the vaccine preservative thimerosal. However, autism diagnosis continued to rise even after thimerosal was removed from US childhood vaccines in 2001. A review by the IOM of over 200 studies concluded that that there was no causal link between thimerosal-containing vaccines and autism. Other studies have found that autism is no more common among vaccinated than unvaccinated children.

8) **EXEMPTIONS TO VACCINE REQUIREMENTS.** There are currently three types of exemptions to the requirement that children be vaccinated before entering school: medical; religious; and, philosophical.

a) A medical exemption letter can be written by a licensed physician that believes that vaccination is not safe for the medical conditions of the patient, such as those whose immune systems are compromised, who are allergic to vaccines, are ill at the time of vaccination, or have other medical contraindications to vaccines for that individual patient. Every state allows medical exemptions from school vaccination requirements. This determination is entirely up to the professional clinical judgment of the physician. There are no required medical criteria for diagnosing circumstances that contraindicate vaccination. A physician must base that decision on their professional judgment and the standard of practice for their field. According to the Medical Board of California, the "standard of care" (or "standard of practice") for general practitioners is defined as that level of skill, knowledge and care in diagnosis and treatment ordinarily possessed and exercised by other reasonably careful and prudent physicians in the same or similar circumstances at the time in question. Specialists are held to the standard of skill, knowledge and care ordinarily possessed and exercised by other reasonably careful and prudent specialist in the same or similar circumstances.

b) Religious exemptions allow parents to exempt their children from vaccination if it contradicts their sincere religious beliefs. Many states allow religious exemptions from

school vaccination requirements, although states interpret the enforcement of them differently. In some states, a parent may simply attest that vaccinations are against their religious beliefs, while in other states the parent must show membership in a church, and that the church's official policy is opposed to vaccination. According to the National Conference of State Legislatures (NCSL), as of June 2014, 48 states allow religious exemptions (all but Mississippi and West Virginia).

c) Philosophical exemption, which is defined differently in different states, generally means that the statutory language does not restrict the exemption to purely religious or spiritual beliefs. For example, Maine allows restrictions based on "moral, philosophical or other personal beliefs," and California allows objections based on simply the parent(s) beliefs. According to NCSL, 20 states (Arizona, California, Colorado, Idaho, Louisiana, Maine, Michigan, Minnesota, Missouri (limited to childcare enrollees), New Mexico, North Dakota, Ohio, Oklahoma, Pennsylvania, Texas, Utah, Vermont, Washington, West Virginia, and Wisconsin) permit philosophic exemptions.

As of February, several state legislatures had introduced bills that would address non-medical exemptions. In addition to California, legislators in Oregon, Vermont, and Washington proposed to remove philosophical/personal belief exemptions this year. The bills were tabled in Oregon and Washington. On May 25, 2015, the Governor of Vermont signed legislation removing philosophical exemptions, but not religious ones, in that state.

9) **SPECIAL EDUCATION.** Pursuant to the federal Individuals with Disabilities Education Act (IDEA), children with disabilities are guaranteed the right to a free, appropriate public education, including necessary services for a child to benefit from his or her education. Between 1976 and 1984, to meet this federal mandate, California schools provided mental health services to special education students who needed the services pursuant to an Individualized Education Program (IEP). An IEP is a legally binding document that determines what special education services a child will receive and why. IEPs include a child's classification, placement, specialized services, academic and behavioral goals, a behavior plan if needed, percentage of time in regular education, and progress reports from teachers and therapists. A child may require any related services in order to benefit from special education, including (but not limited to): speech-language pathology and audiology services, early identification and assessment of disabilities in children, medical services, physical and occupational therapy, orientation and mobility services; and psychological services.

According to the California Department of Education (CDE), over 700,000, or approximately 11% of, California students received Special Education services in the 2013-14 academic year.

10) **INDEPENDENT STUDY.** April 22, 2015 amendments to this bill exclude pupils who are enrolled in an independent study program from the immunization requirements of the bill. Independent study is an optional educational alternative, available to students from kindergarten through high school that is meant to respond to the student's specific educational needs, interests, aptitudes, and abilities. Independent study is an alternative to classroom instruction consistent with a school district's regular course of study and is expected to be equal or superior in quality to classroom instruction. Each school district can develop Independent Study options in its own way. Parents and students may also develop

alternative forms of independent study and propose them to the school board. The options are based on the kinds of students being served. The following are some of the ways in which independent study is organized:

a) School-within-a-school;
b) District or county alternative in a community location;
c) School-based independent study offered part-time and full-time;
d) Countywide home-based independent study offered by the county superintendent of schools;
e) District dropout prevention centers at selected community sites;
f) Curricular enrichment options offered to high school students with special abilities and interests, scheduling problems, or individual needs that cannot be met in the regular program;
g) Alternative school-based independent study, on-or off-site; and,
h) Some combination of the above.

Independent study can be operated on a traditional school calendar, with a summer school option for eligible students, or on a year-round calendar within a year-round school. Students must have the option of a classroom setting for a full program at the time independent study is made available. This option must be continuously available the student decide to transfer from independent study. The classroom setting option can be offered by the county office of education if the district and county have a formal agreement that has the effect of providing the student with a program that is equivalent to what is offered in the school of residence.

a) **Seat Time / Average Daily Attendance.** Participation in independent study must be voluntary. For students participating in independent study, a contractual agreement is drawn among the certificated teacher, the student, and his or her parent, guardian, or caregiver. Attendance records are based on a student's work within the terms and conditions of his or her written agreement and not on traditional "seat-time." In independent study, the student's performance, measured by the terms in the agreement, is converted by the supervising teacher into school days. The computed school days are reported as if the student were physically in attendance.

b) **Legal Enrollment Restrictions.** California education law mandates the following for the administration of independent study programs:

   i) No pupil shall be required to participate in independent study;
   ii) Not more than 10% of the students enrolled in an opportunity school or program, or a continuation high school, shall be eligible for independent study. A student who is pregnant or is a parent and primary caregiver for one or more of his or her children shall not be counted within the 10% cap;
   iii) No individual with exceptional needs may participate in independent study unless his or her IEP specifically provides for that participation; and,
   iv) No temporarily disabled pupil may receive individual instruction. However, if the temporarily disabled pupil's parents and the district(s) agree, the pupil may receive instruction through independent study instead of the "home and hospital" instruction.

c) **Enrollment History.** According to CDE, in 2013-14 there were approximately 122,000 independent study students reported by charter schools and 34,000 reported by school

districts.  Independent study enrollment was not collected for the 2009–10 and 2010–11 school years.  In October 2008, data collected from schools reported that 128,000 students in kindergarten through grade twelve were enrolled in independent study.

11) **LEGAL CONSIDERATIONS.**  Courts have determined that the family itself is not beyond regulation in the public interest and neither rights of religion nor rights of parenthood are beyond limitation.  As discussed at length in the Senate Judiciary Committee analysis, extensive case law establishes that the police powers of the state may restrict the parent's control in many ways, such as requiring school attendance and regulating or prohibiting the child's labor.  This authority is not nullified because the parent grounds his claim to control the child's course of conduct on religion or conscience.  Thus, a parent cannot claim freedom from compulsory vaccination for their child more than for himself on religious grounds.  The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death.  For a further discussion of the legal rights and ramifications of this bill, please see the Senate Judiciary Committee Analysis as published on April 28, 2015.

12) **SUPPORT.**  The Superintendent of Public Instruction (SPI), Tom Torlakson, supports this bill, stating that school and child care immunization requirements have proven effective in increasing immunization rates, limiting the spread of disease, and providing an overall public health benefit.  He further states that California has seen a dramatic increase in the PBE rate for students entering kindergarten over the past fifteen years, placing other children, and the overall public health of our citizens, at risk of illness or death from preventable diseases.  The SPI concludes that education is a fundamental right in California, and this bill provides education choices for families opting not to vaccinate their children.

The California Medical Association, a cosponsor of this bill, states that in 2000, the CDC determined that measles had been eradicated in the U.S.  However, since December 2014, California has had 136 confirmed cases of measles across fourteen counties.  Almost 20% of those cases have required hospitalization.  Efforts to contain the outbreak have resulted in mandatory quarantines and the redirection of public health resources to investigations into exposure.  The California Immunization Coalition, writing in support of this bill, notes that in the 2013-14 school year more than 16,800 kindergarteners in California started school with either no vaccinations or only some of their required vaccinations because their parent had chosen to exempt them from vaccinations, representing a 25% increase over the previous two school years.

March of Dimes Foundation and the Medical Oncology Association of Southern California, Inc. state that public participation in immunization programs is critical to their effectiveness.  Protection is greatly affected by rates of immunization:  the more people immunized, the less the risk of exposure to, and illness from, vaccine-preventable infections.

The Medical Board of California states that vaccines have been scientifically proven to be effective in preventing illnesses.  Ensuring that children receive the ACIP recommended vaccination schedule is the standard of care, unless there is a medical reason that the child should not receive the vaccine; this bill would still allow for a medical exemption to address these concerns.  The Children's Specialty Care Coalition notes that high vaccine coverage, particularly at the community level, is extremely important for people who cannot be vaccinated, including people who have medical contraindications to vaccinations and those

who are too young to be vaccinated. Protecting the individual and the community from communicable diseases such as measles, mumps, and pertussis, is important to the public's health.

The Committee notes it has received hundreds of letters in support of this bill. Many letters from individuals in support write to raise similar points regarding reductions in vaccination rates for school children, recent dangerous measles and pertussis outbreaks, concerns for the health of children and medically fragile individuals, and concerns for the safety of communities at large.

13) **OPPOSITION.** Opponents state that this bill is an extreme measure that is not necessary at this time. The California Chiropractic Association states that this bill proffers the notion that health officials will be given the power to nullify the doctor-patient relationship, and veto the judgment of any physician who questions the status quo and believes that a patient should not receive a particular vaccine. A Voice for Choice states that the Legislature should look to alternative approaches that will stop the transmission of disease and continue to allow parents to work with their doctors for the best vaccination schedule for their individual children, and allow their children their constitutional right to a free and public education.

The Committee also notes that it received hundreds of letters in opposition to this bill. A letter from Our Kids Our Choice and many other similar letters argue that the bill removes federally mandated rights of services to students with disabilities under the federal IDEA. This group, like many others, points to the NVIC and the fact that the U.S. government "has paid out more than $3 billion to the victims of vaccine injury" as support for why medical choice is appropriate. "If there is risk of injury or death there must be a choice." In contrast, they argue that "vaccination rates of California schoolchildren are high at 98.64%" and cite the success of recent legislation, AB 2109 (Pan), Chapter 821, Statutes of 2012, which they say has resulted in a 19% decrease in exemptions amongst kindergarteners in just one year. They argue the public health concerns are already adequately addressed with current California laws. Many letters from individuals write to raise relatively similar points regarding various constitutional rights, informed consent, vaccine safety/injuries, absence of a health crisis, lack of educational choice, difficulty in obtaining medical exemptions, and the like.

ParentalRights.Org states that "…while we appreciate the intent of the amendment to exempt homeschoolers from the vaccination requirement, it is not sufficient to protect the rights of parents and children in California. While there are many parents with strong convictions that the risks of vaccines to their child (as reflected in lengthy disclaimers which accompany these products) outweigh the potential benefits, many of these same parents are also deeply convinced that the best educational opportunity they can provide their child is in the public schools. These parents should not be forced to give up their rights in one area to exercise their rights in another. No child should have to forego the best available education for the sake of his best health, nor give up his best health for the sake of a better education."

14) **CONCERNS.** American Civil Liberties Union of California (ACLU-CA) states that "while we appreciate that vaccination against childhood diseases is a prudent step that should be promoted for the general welfare, we do not believe there has been a sufficient showing of need at present to warrant conditioning access to education on mandatory vaccination for each of the diseases covered by this bill for every school district in the state." ACLU-CA

further states that unlike other states where a vaccination mandate may be more permissible, public education is a fundamental right under the California Constitution. Equal access to education must therefore not be limited or denied unless the State demonstrates that its actions are "necessary to achieve a compelling state interest." The California Association of Private School Organizations states that that association has taken no formal position on the measure, and does not oppose the elimination of the PBEs, they are concerned about the increased administrative burden to which schools will be subjected should this bill become law. The association urges amendments that would create a phase-in period, lengthen the time horizon for compliance as per the existing regulations, or enact such other provisions as may produce a combination of increased compliance and a decreased possibility of mandatory exclusion.

15) **RELATED LEGISLATION.** SB 792 (Mendoza) prohibits a person from being employed at a day care center or day care home unless he or she has been immunized against influenza, pertussis, and measles. SB 792 was approved by the Senate on May 22, 2015 by a vote of 34-3 and is currently pending committee referral in the Assembly.

16) **PREVIOUS LEGISLATION.**

   a) AB 2109 requires, on and after January 1, 2014, a separate form prescribed by DPH to accompany a letter or affidavit to exempt a child from immunization requirements under existing law on the basis that an immunization is contrary to beliefs of the child's parent or guardian. Required the form to include:

   i) A signed attestation from the health care practitioner that indicates that the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, was provided with information regarding the benefits and risks of the immunization and the health risks of the communicable diseases listed above to the person and to the community.

   ii) A written statement signed by the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, that indicates that the signer has received the information provided by the health care practitioner pursuant to i) above.

   The Governor included a message with his signature on this bill, which stated, in part: "I will direct (DPH) to allow for a separate religious exemption on the form. In this way, people whose religious beliefs preclude vaccinations will not be required to seek a health care practitioner's signature."

   b) SB 614 (Kehoe, Chapter 123, Statutes of 2011) allows a pupil in grades seven through 12, to conditionally attend school for up to 30 calendar days beyond the pupil's first day of attendance, if that pupil has not been fully immunized with all pertussis boosters appropriate for the pupil's age if specified conditions are met.

   c) AB 354 (Arambula, Chapter 434, Statutes of 2010) allowed DPH to update vaccination requirements for children entering schools and child care facilities and added the

American Academy of Family Physicians to the list of entities whose recommendations DPH must consider when updating the list of required vaccinations. Requires children entering grades seven through 12 receive a TDaP booster prior to admittance to school.

**d)** SB 1179 (Aanestad, 2008) would have deleted DPH's authority to add diseases to the list of those requiring immunizations prior to entry to any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center. SB 1179 died in Senate Health Committee.

## 17) POLICY COMMENTS.

**a) Collecting complete data will provide an accurate picture of partial vaccination rates throughout the state.** To date, we do not have an exact picture of the vaccination status of every student in California. For the 2014-15 school year, less than 95% of schools reported their vaccination numbers to DPH. Of the schools reporting, DPH found that 90.4% of enrolled kindergarteners had received the complete vaccination schedule. Additionally 6.9% of students were conditionally enrolled because they were lacking some immunizations, and were in the process of completing the required vaccination schedule. For the 2014-15 school year, DPH calculated individual antigen vaccination status (such as DTP, Polio, MMR, etc) based only on the number of fully vaccinated students and vaccinations completed by conditionally enrolled students. DPH did not include in this calculation the individual antigen status for partially vaccinated students with PBEs. Therefore, it is likely that individual antigen immunization coverage may be underestimated. Anecdotal evidence suggests that some percentage of students have some, but not all, required immunizations.

DPH is currently developing new regulations that will implement complete data collection for partially vaccinated students holding PBEs and medical exemptions. This will ensure that reported data are a more accurate reflection of the vaccination rate for each immunization.

**b) Identification of partially and non-vaccinated students.** Current law requires that parents filing a PBE must provide the school with documentation for "which immunizations have been given and which immunizations have not been given on the basis that they are contrary to his or her beliefs" for the purposes of immediate identification in case of disease outbreak in the community. As drafted, this requirement would be deleted by SB 277. If SB 277 is enacted, schools will still need to know which specific immunizations have or have not been received by all students, including those that are enrolled in independent study. The author may wish to take an amendment to clarify that schools will collect information for all enrolled students, regardless of immunization status.

## 18) SUGGESTED AMENDMENTS.

**a) A physician's professional judgment.** As previously discussed, it is entirely within the professional judgment of a physician to determine if vaccination is not recommended due to the medical history of the patient. Opponents of this bill have raised concerns that current law regarding the letter of medical exemption does not adequately make clear that

the letter may be written based on the best medical judgment of the physician. To that end, the author may wish to consider amending this bill.

> Section 120370. (a)If the parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances ~~that contraindicate~~ *for which the physician does not recommend* immunization, that child shall be exempt from the requirements of Chapter 1 (commencing with Section 120325, but excluding Section 120380) and Sections 120400, 120405, 120410, and 120415 to the extent indicated by the physician's statement.

b) **Implementation clarification clause.** As discussed in the Senate Judiciary Committee analysis, clarification is needed to address the status of students currently enrolled with an existing PBE upon the operative date of this bill.

> *Section 120335 (g) The governing authority shall allow continued enrollment to pupils who, prior to January 1, 2016, have a letter or affidavit on file in that institution stating beliefs opposed to immunization. On and after July 1, 2016, the governing authority shall not unconditionally admit to that institution for the first time or admit or advance any pupil to the 7th grade level unless the pupil has been immunized as required by this section.*

c) **Special education students must have access to services.** As previously discussed, under federal and state law disabled children are guaranteed the right to a free, appropriate public education, including necessary services for a child to benefit from his or her education. An amendment should be taken to clarify that students with an IEP will still have access to special education related services as directed by their IEP.

> *Section 120335 (h) Nothing in this section shall prohibit a pupil that qualifies for an individualized education program, pursuant to federal law and Section 56026 of the Education Code, from accessing any special education and related services required by their individualized education program.*

d) **Independent study programs are highly variable.** As previously discussed, students enrolled in an independent study program are excluded from the provisions of this bill requiring them to be vaccinated. Independent study courses take many forms and in many places, including both on and off school sites. As currently drafted, there is nothing differentiating classroom based versus non-classroom based independent study instruction. An amendment should be taken to specify that students enrolled in off-campus independent study are not subject to vaccination requirements.

> Section 120335 (f): This section does not apply to a pupil in a home-based private school or a pupil who is enrolled in an independent study program pursuant to Article 5.5 (commencing with Section 51745) of Chapter 5 of Part 28 of the Education Code *and does not receive classroom-based instruction.*

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

California Immunization Coalition (cosponsor)
California Medical Association (cosponsor)
Vaccinate California (cosponsor)
Dave Jones, California Insurance Commissioner
Katie Rice, Supervisor, Marin County
Sheila Kuehl, Los Angeles County Supervisor and former State Senator
Tom Torlakson, California Superintendent of Public Instruction
AIDS Healthcare Foundation
Alameda County Board of Supervisors
Albany Unified School District
American Academy of Pediatrics - California
American College of Emergency Physicians California Chapter
American Federation of State, County and Municipal Employees, AFL-CIO
American Lung Association
American Nurses Association\California
Association of California School Administrators
Association of Northern California Oncologists
BIOCOM
California Academy of Family Physicians
California Academy of Physician Assistants
California Association for Nurse Practitioners
California Association of Physician Groups
California Black Health Network
California Children's Hospital Association
California Coverage and Health Initiatives
California Department of Insurance
California Disability Rights, Inc.
California Healthcare Institute
California Hepatitis Alliance
California Hospital Association
California Immunization Coalition
California Optometric Association
California Pharmacists Association
California Primary Care Association
California Public Health Association-North
California School Boards Association
California School Employees Association
California School Nurses Organization
California State Association of Counties
California State PTA

Carlsbad High School Parent-Teacher-Student Association
Child Care Law Center
Children Now
Children's Defense Fund California
Children's Healthcare Is a Legal Duty, Inc.
Children's Hospital Oakland
Children's Specialty Care Coalition
City and County of San Francisco Board of Supervisors
City of Berkeley
City of Beverly Hills
City of Pasadena
Contra Costa County
County Health Executives Association of California
County of Marin
County of Tehachapi
Democratic Women's Club of Santa Cruz County
Donate Life California
First 5 California
Foundation for Pediatric Health
Gilroy Unified School District
Health Officers Association of California
Jay Hansen, Sacramento County School Board Member
Junior Leagues of California
Kaiser Permanente
Los Angeles Community College District
Los Angeles County Board of Supervisors
Los Angeles County Supervisor Sheila Kuehl
Los Angeles Unified School District
March of Dimes California Chapter
Medical Board of California
Medical Oncology Association of Southern California
MemorialCare Health System Physician Society
National Coalition of 100 Black Women Sacramento Chapter
Osteopathic Physicians and Surgeons of California
Pasadena Public Health Department
Project Inform
Providence Health and Services, Southern California

Reed Union School District
San Dieguito Union High School District
San Francisco Democratic County Central Committee
San Francisco Unified School District
Santa Clara County Board of Supervisors
Santa Cruz County
Santa Cruz County Democratic Party
Santa Monica Malibu Union Unified School District
School for Integrated Academics and Technologies, California
Secular Coalition for California
Silicon Valley Leadership Group
Solano Beach School District
Sonoma County Board of Supervisors

The Children's Partnership
UAW Local 5810, University of California Postdoctoral Researchers
University of California Hastings College of the Law
University of California, Irvine Center for Virus Research
University of California, Irvine School of Medicine
Yolo County Board of Supervisors
Numerous Medical Doctors
Numerous Osteopathic Doctors
Numerous health care professionals, including RNs, PAs and NPs
Hundreds of individuals

**Opposition**

A Voice for Choice
Alliance of California Autism Organizations
Association of American Physicians and Surgeons (Tucson, AZ)
APLUS+ Network Association
Autism Society
AWAKE California
California Chiropractic Association
California Coalition for Health Choice
California Naturopathic Doctors Association
California Nurses for Ethical Standards
California Nurses for Ethical Standards
California ProLife Council
California Right to Life Committee, Inc.
Canary Party
Capitol Resource Institute
Educate. Advocate.
Educate. Advocate.
Faith and Public Policy
Families for Early Autism Treatment
Foundation for Pediatric Health
Gold Mine Natural Food Co.

Homeschool Association of California
HSC Homeschool Association of California
National Autism Association California
National Vaccine Information Center
Our Kids, Our Choice
Pacific Justice Institute
Pacific Justice Institute Center for Public Policy
ParentalRights.Org
Pediatric Alternatives
SafeMinds
Saint Andrew Orthodox Christian Church
Standing Tall Chiropractic: A Creating Wellness Center
Unblind My Mind
Vaccine Choice Canada (Winlaw, British Columbia)
Vaccine-Injury Awareness League
Weston A. Price Foundation
Numerous Chiropractors
Numerous Medical and Osteopathic Doctors
Hundreds of individuals

**Analysis Prepared by**: Dharia McGrew and Paula Villescaz / HEALTH / (916) 319-2097

# Exhibit 2

**Senate Bill No. 276**

CHAPTER 278

An act to amend Sections 120370, 120375, and 120440 of, and to add Sections 120372 and 120372.05 to, the Health and Safety Code, relating to public health.

[Approved by Governor September 9, 2019. Filed with Secretary
of State September 9, 2019.]

LEGISLATIVE COUNSEL'S DIGEST

SB 276, Pan. Immunizations: medical exemptions.

Existing law prohibits the governing authority of a school or other institution from admitting for attendance any pupil who fails to obtain required immunizations within the time limits prescribed by the State Department of Public Health. Existing law exempts from those requirements a pupil whose parents have filed with the governing authority a written statement by a licensed physician to the effect that immunization is not considered safe for that child, indicating the specific nature and probable duration of their medical condition or circumstances, including, but not limited to, family medical history.

This bill would instead require the State Department of Public Health, by January 1, 2021, to develop and make available for use by licensed physicians and surgeons an electronic, standardized, statewide medical exemption request that would be transmitted using the California Immunization Registry (CAIR), and which, commencing January 1, 2021, would be the only documentation of a medical exemption that a governing authority may accept. The bill would specify the information to be included in the medical exemption form, including a certification under penalty of perjury that the statements and information contained in the form are true, accurate, and complete. The bill would, commencing January 1, 2021, require a physician and surgeon to inform a parent or guardian of the bill's requirements and to examine the child and submit a completed medical exemption request form to the department, as specified. By expanding the crime of perjury, the bill would impose a state-mandated local program.

This bill would require a parent or guardian, by January 1, 2021, to submit to the department a copy of a medical exemption granted prior to that date for inclusion in a state database in order for the medical exemption to remain valid. The bill would require the department to annually review immunization reports from schools and institutions to identify schools with an overall immunization rate of less than 95%, physicians and surgeons who submitted 5 or more medical exemption forms in a calendar year, and schools and institutions that do not report immunization rates to the department. The bill would require a clinically trained department staff member who is a

91

physician and surgeon or a registered nurse to review all medical exemption forms submitted meeting those conditions. The bill would authorize the medical exemptions determined by that staff member to be inappropriate or otherwise invalid to be reviewed by the State Public Health Officer or a physician and surgeon designated by the State Public Health Officer, and revoked by the State Public Health Officer or physician and surgeon designee, under prescribed circumstances.

The bill would authorize a parent or guardian to appeal a medical exemption denial or revocation to the Secretary of California Health and Human Services. The appeal would be conducted by an independent expert review panel of licensed physicians and surgeons established by the secretary. The bill would require the independent expert review panel to evaluate appeals consistent with specified guidelines and to submit its decision to the secretary. The bill would require the secretary to adopt the determination of the independent expert review panel and promptly issue a written decision to the child's parent or guardian. The final decision of the secretary would not be subject to further administrative review. The bill would allow a child whose medical exemption revocation is appealed to continue in attendance at the school or institution without being required to commence the immunization schedule required for conditional admittance, provided that the appeal is filed within 30 calendar days of revocation of the medical exemption.

The bill would require the department and the independent expert review panel to comply with all applicable state and federal privacy and confidentiality laws and would authorize disclosure of information submitted in the medical exemption form in accordance with requirements set forth in the bill. The bill would make related conforming changes. The bill would authorize the department to implement and administer the medical exemption provisions through provider bulletins, or similar instructions, without taking regulatory action.

Existing law requires the governing authority of a school or other institution to file a written report on the immunization status of new entrants to the school or institution under their jurisdiction with the department and the local health department at times and on forms prescribed by the department.

This bill would instead require these reports to be filed on at least an annual basis.

The California Constitution requires the state to reimburse local agencies and school districts for certain costs mandated by the state. Statutory provisions establish procedures for making that reimbursement.

This bill would provide that no reimbursement is required by this act for a specified reason.

*The people of the State of California do enact as follows:*

SECTION 1.   The Legislature finds and declares all of the following:

(a)  Immunizations are public health measures to ensure protection against debilitating and sometimes fatal diseases.

(b)  Immunization requirements have led to greatly diminished or eliminated debilitating childhood diseases, such as measles.

(c)  According to the State Department of Public Health immunization assessment for the 2018–19 school year:

(1)  The immunization rate, or the rate at which children attending school are fully vaccinated on schedule, for kindergarten-aged children was 94.8 percent, which is 0.3 percent less than the previous school year.

(2)  Of the schools reporting, 16 percent of California counties had kindergarten immunization rates below 90 percent.

(d)  By May 2019, the federal Centers for Disease Control and Prevention reported 1,022 cases of the measles nationwide. Fifty-one of those incidences were in California.

(e)  For all but a small number of individuals, immunizations are safe and effective.

(f)  Effective immunizations not only protect immunized individuals from disease, but have the ability to provide indirect protection for which immunizations are not effective or safe. This indirect protection is called herd or community immunity.

(g)  Herd immunity successfully occurs if and when a sufficient portion of the community is immune. Herd immunity prevents sustained transmission of disease even when immunization coverage is below 100 percent.

SEC. 2.  Section 120370 of the Health and Safety Code is amended to read:

120370.  (a)  (1)  Prior to January 1, 2021, if the parent or guardian files with the governing authority a written statement by a licensed physician and surgeon to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances, including, but not limited to, family medical history, for which the physician and surgeon does not recommend immunization, that child shall be exempt from the requirements of this chapter, except for Section 120380, and exempt from Sections 120400, 120405, 120410, and 120415 to the extent indicated by the physician and surgeon's statement.

(2)  Commencing January 1, 2021, an exemption issued before January 1, 2021, pursuant to this subdivision is valid only if the parent or guardian has complied with paragraph (2) of subdivision (c) of Section 120372.

(b)  If there is good cause to believe that a child has been exposed to a disease listed in subdivision (b) of Section 120335 and the child's documentary proof of immunization status does not show proof of immunization against that disease, that child may be temporarily excluded from the school or institution until the local health officer is satisfied that the child is no longer at risk of developing or transmitting the disease.

SEC. 3.  Section 120372 is added to the Health and Safety Code, to read:

120372.  (a)  (1)  By January 1, 2021, the department shall develop and make available for use by licensed physicians and surgeons an electronic, standardized, statewide medical exemption certification form that shall be transmitted directly to the department's California Immunization Registry (CAIR) established pursuant to Section 120440. Pursuant to Section 120375, the form shall be printed, signed, and submitted directly to the school or institution at which the child will attend, submitted directly to the governing authority of the school or institution, or submitted to that governing authority through the CAIR where applicable. Notwithstanding Section 120370, commencing January 1, 2021, the standardized form shall be the only documentation of a medical exemption that the governing authority may accept, except as provided in paragraph (2) of subdivision (c).

(2)  At a minimum, the form shall require all of the following information:

(A)  The name, California medical license number, business address, and telephone number of the physician and surgeon who issued the medical exemption, and of the primary care physician of the child, if different from the physician and surgeon who issued the medical exemption.

(B)  The name of the child for whom the exemption is sought, the name and address of the child's parent or guardian, and the name and address of the child's school or other institution.

(C)  A statement certifying that the physician and surgeon has conducted a physical examination and evaluation of the child consistent with the relevant standard of care and complied with all applicable requirements of this section.

(D)  Whether the physician and surgeon who issued the medical exemption is the child's primary care physician. If the issuing physician and surgeon is not the child's primary care physician, the issuing physician and surgeon shall also provide an explanation as to why the issuing physician and not the primary care physician is filling out the medical exemption form.

(E)  How long the physician and surgeon has been treating the child.

(F)  A description of the medical basis for which the exemption for each individual immunization is sought. Each specific immunization shall be listed separately and space on the form shall be provided to allow for the inclusion of descriptive information for each immunization for which the exemption is sought.

(G)  Whether the medical exemption is permanent or temporary, including the date upon which a temporary medical exemption will expire. A temporary exemption shall not exceed one year.

(H)  An authorization for the department to contact the issuing physician and surgeon for purposes of this section and for the release of records related to the medical exemption to the department, the Medical Board of California, and the Osteopathic Medical Board of California.

(I)  A certification by the issuing physician and surgeon, under penalty of perjury, that the statements and information contained in the form are true, accurate, and complete.

(3)  An issuing physician and surgeon shall not charge for either of the following:

(A)  Filling out a medical exemption form pursuant to this section.

(B)  A physical examination related to the renewal of a temporary medical exemption.

(b)  Commencing January 1, 2021, if a parent or guardian requests a licensed physician and surgeon to submit a medical exemption for the parent's or guardian's child, the physician and surgeon shall inform the parent or guardian of the requirements of this section. If the parent or guardian consents, the physician and surgeon shall examine the child and submit a completed medical exemption certification form to the department. A medical exemption certification form may be submitted to the department at any time.

(c)  (1)  By January 1, 2021, the department shall create a standardized system to monitor immunization levels in schools and institutions as specified in Sections 120375 and 120440, and to monitor patterns of unusually high exemption form submissions by a particular physician and surgeon.

(2)  If a medical exemption has been authorized pursuant to Section 120370 prior to the adoption of the statewide standardized form, a parent or guardian shall submit, by January 1, 2021, a copy of the medical exemption to the department for inclusion in a state database in order for the medical exemption to remain valid.

(d)  (1)  The department, at a minimum, shall annually review immunization reports from all schools and institutions in order to identify medical exemption forms submitted to the department pursuant to Section 120370 and under this section that will be subject to paragraph (2).

(2)  A clinically trained immunization department staff member, who is either a physician and surgeon or a registered nurse, shall review all medical exemptions from any of the following:

(A)  Schools or institutions subject to Section 120375 with an overall immunization rate of less than 95 percent.

(B)  Physicians and surgeons who have submitted five or more medical exemptions in a calendar year.

(C)  Schools or institutions subject to Section 120375 that do not provide reports of vaccination rates to the department.

(3)  (A)  The department shall identify those medical exemption forms that do not meet applicable CDC, ACIP, or AAP criteria for appropriate medical exemptions. The department may contact the primary care physician and surgeon or issuing physician and surgeon to request additional information to support the medical exemption.

(B)  Notwithstanding subparagraph (A), the department, based on the medical discretion of the clinically trained immunization staff member, may accept a medical exemption that is based on other contraindications or precautions, including consideration of family medical history, if the issuing physician and surgeon provides written documentation to support the medical exemption that is consistent with the relevant standard of care.

(C)  A medical exemption that the reviewing immunization department staff member determines to be inappropriate or otherwise invalid under

91

subparagraphs (A) and (B) shall also be reviewed by the State Public Health Officer or a physician and surgeon from the department's immunization program designated by the State Public Health Officer. Pursuant to this review, the State Public Health Officer or physician and surgeon designee may revoke the medical exemption.

(4) The department shall notify the parent or guardian, issuing physician and surgeon, the school or institution, and the local public health officer with jurisdiction over the school or institution of a denial or revocation under this subdivision.

(5) If a medical exemption is revoked pursuant to this subdivision, the child shall continue in attendance. However, within 30 calendar days of the revocation, the child shall commence the immunization schedule required for conditional admittance under Chapter 4 (commencing with Section 6000) of Division 1 of Title 17 of the California Code of Regulations in order to remain in attendance, unless an appeal is filed pursuant to Section 120372.05 within that 30-day time period, in which case the child shall continue in attendance and shall not be required to otherwise comply with immunization requirements unless and until the revocation is upheld on appeal.

(6) (A) If the department determines that a physician's and surgeon's practice is contributing to a public health risk in one or more communities, the department shall report the physician and surgeon to the Medical Board of California or the Osteopathic Medical Board of California, as appropriate. The department shall not accept a medical exemption form from the physician and surgeon until the physician and surgeon demonstrates to the department that the public health risk no longer exists, but in no event shall the physician and surgeon be barred from submitting these forms for less than two years.

(B) If there is a pending accusation against a physician and surgeon with the Medical Board of California or the Osteopathic Medical Board of California relating to immunization standards of care, the department shall not accept a medical exemption form from the physician and surgeon unless and until the accusation is resolved in favor of the physician and surgeon.

(7) The department shall notify the Medical Board of California or the Osteopathic Medical Board of California, as appropriate, of any physician and surgeon who has five or more medical exemption forms in a calendar year that are revoked pursuant to this subdivision.

(8) Notwithstanding any other provision of this section, a clinically trained immunization program staff member who is a physician and surgeon or a registered nurse may review any exemption in the CAIR or other state database as necessary to protect public health.

(e) The department, the Medical Board of California, and the Osteopathic Medical Board of California shall enter into a memorandum of understanding or similar agreement to ensure compliance with the requirements of this section.

(f) In administering this section, the department and the independent expert review panel created pursuant to Section 120372.05 shall comply with all applicable state and federal privacy and confidentiality laws, and

may disclose information submitted in the medical exemption form in accordance with Section 120440.

(g) The department shall establish the process and guidelines for review of medical exemptions pursuant to this section. The department shall communicate the process to providers and post this information on the department's website.

(h) If the department or the California Health and Human Services Agency determines that contracts are required to implement this section, the department may award these contracts on a single-source or sole-source basis. The contracts are not subject to Part 2 (commencing with Section 10100) of Division 2 of the Public Contract Code.

(i) Notwithstanding the rulemaking provisions of the Administrative Procedure Act (Chapter 3.5 (commencing with Section 11340) of Part 1 of Division 3 of Title 2 of the Government Code), the department may implement and administer this section through provider bulletins, or similar instructions, without taking regulatory action.

(j) For purposes of administering this section, the department and the California Health and Human Services Agency appeals process shall be exempt from the rulemaking and administrative adjudication provisions in the Administrative Procedure Act Chapter 3.5 (commencing with Section 11340), and Chapter 4 (commencing with Section 11370), Chapter 4.5 (commencing with 11400), and Chapter 5 (commencing with Section 11500) of, Part 1 of Division 3 of Title 2 of the Government Code.

SEC. 4. Section 120372.05 is added to the Health and Safety Code, to read:

120372.05. (a) A medical exemption revoked pursuant to Section 120372 may be appealed by a parent or guardian to the Secretary of California Health and Human Services. Parents or guardians may provide necessary information for purposes of the appeal.

(b) The secretary shall establish an independent expert review panel, consisting of three licensed physicians and surgeons who have relevant knowledge, training, and experience relating to primary care or immunization to review appeals. The agency shall establish the process and guidelines for the appeals process pursuant to this section. The agency shall post this information on the agency's internet website. The agency shall also establish requirements, including conflict-of-interest standards, consistent with the purposes of this chapter, that a physician and surgeon shall meet in order to qualify to serve on the panel.

(c) The independent expert review panel shall evaluate appeals consistent with the federal Centers for Disease Control and Prevention, federal Advisory Committee on Immunization Practices, or American Academy of Pediatrics guidelines or the relevant standard of care, as applicable.

(d) The independent expert review panel shall submit its determination to the secretary. The secretary shall adopt the determination of the independent expert review panel and shall promptly issue a written decision to the child's parent or guardian. The decision shall not be subject to further administrative review.

(e)  A child whose medical exemption revocation pursuant to subdivision (d) of Section 120372 is appealed under this section shall continue in attendance and shall not be required to commence the immunization required for conditional admittance under Chapter 4 (commencing with Section 6000) of Division 1 of Title 17 of the California Code of Regulations, provided that the appeal is filed within 30 calendar days of revocation of the medical exemption.

(f)  For purposes for administering this section, the department and the California Health and Human Services Agency appeals process shall be exempt from the rulemaking and administrative adjudication provisions in the Administrative Procedure Act Chapter 3.5 (commencing with Section 11340), and Chapter 4 (commencing with Section 11370), Chapter 4.5 (commencing with 11400), and Chapter 5 (commencing with Section 11500) of, Part 1 of Division 3 of Title 2 of the Government Code.

SEC. 5.  Section 120375 of the Health and Safety Code is amended to read:

120375.  (a)  The governing authority of each school or institution included in Section 120335 shall require documentary proof of each entrant's immunization status. The governing authority shall record the immunizations of each new entrant in the entrant's permanent enrollment and scholarship record on a form provided by the department. The immunization record of each new entrant admitted conditionally shall be reviewed periodically by the governing authority to ensure that within the time periods designated by regulation of the department the entrant has been fully immunized against all of the diseases listed in Section 120335, and immunizations received after entry shall be added to the pupil's immunization record.

(b)  The governing authority of each school or institution included in Section 120335 shall prohibit from further attendance any pupil admitted conditionally who failed to obtain the required immunizations within the time limits allowed in the regulations of the department until that pupil has been fully immunized against all of the diseases listed in Section 120335, unless the pupil is exempted under Section 120370 or 120372.

(c)  The governing authority shall file a written report, on at least an annual basis, on the immunization status of new entrants to the school or institution under their jurisdiction with the department and the local health department on forms prescribed by the department. As provided in paragraph (4) of subdivision (a) of Section 49076 of the Education Code, the local health department shall have access to the complete health information as it relates to immunization of each student in the schools or other institutions listed in Section 120335 in order to determine immunization deficiencies.

(d)  The governing authority shall cooperate with the county health officer in carrying out programs for the immunization of persons applying for admission to any school or institution under its jurisdiction. The governing board of any school district may use funds, property, and personnel of the district for that purpose. The governing authority of any school or other institution may permit any licensed physician or any qualified registered

91

nurse to administer immunizing agents to any person seeking admission to any school or institution under its jurisdiction.

SEC. 6.   Section 120440 of the Health and Safety Code is amended to read:

120440.   (a)   For the purposes of this chapter, the following definitions shall apply:

(1)   "Health care provider" means any person licensed pursuant to Division 2 (commencing with Section 500) of the Business and Professions Code or a clinic or health facility licensed pursuant to Division 2 (commencing with Section 1200).

(2)   "Schools, child care facilities, and family child care homes" means those institutions referred to in subdivision (b) of Section 120335, regardless of whether they directly provide immunizations to patients or clients.

(3)   "WIC service provider" means any public or private nonprofit agency contracting with the department to provide services under the California Special Supplemental Food Program for Women, Infants, and Children, as provided for in Article 2 (commencing with Section 123275) of Chapter 1 of Part 2 of Division 106.

(4)   "Health care plan" means a health care service plan as defined in subdivision (f) of Section 1345, a government-funded program the purpose of which is paying the costs of health care, or an insurer as described in Sections 10123.5 and 10123.55 of the Insurance Code, regardless of whether the plan directly provides immunizations to patients or clients.

(5)   "County welfare department" means a county welfare agency administering the California Work Opportunity and Responsibility to Kids (CalWORKs) program, pursuant to Chapter 2 (commencing with Section 11200.5) of Part 3 of Division 9 of the Welfare and Institutions Code.

(6)   "Foster care agency" means any of the county and state social services agencies providing foster care services in California.

(7)   "Tuberculosis screening" means an approved intradermal tuberculin test or any other test for tuberculosis infection that is recommended by the federal Centers for Disease Control and Prevention and licensed by the federal Food and Drug Administration.

(b)   (1)   Local health officers may operate immunization information systems pursuant to their authority under Section 120175, in conjunction with the Immunization Branch of the State Department of Public Health. Local health officers and the State Department of Public Health may operate these systems in either or both of the following manners:

(A)   Separately within their individual jurisdictions.

(B)   Jointly among more than one jurisdiction.

(2)   This subdivision does not preclude local health officers from sharing the information set forth in paragraphs (1) to (11), inclusive, of subdivision (c) with other health officers jointly operating the system.

(c)   Notwithstanding Sections 49075 and 49076 of the Education Code, Chapter 5 (commencing with Section 10850) of Part 2 of Division 9 of the Welfare and Institutions Code, or any other provision of law, unless a refusal to permit recordsharing is made pursuant to subdivision (e), health care

providers, and other agencies, including, but not limited to, schools, child care facilities, service providers for the California Special Supplemental Food Program for Women, Infants, and Children (WIC), health care plans, foster care agencies, and county welfare departments, may disclose the information set forth in paragraphs (1) to (11), inclusive, from the patient's medical record, or the client's record, to local health departments operating countywide or regional immunization information and reminder systems and the State Department of Public Health. Local health departments and the State Department of Public Health may disclose the information set forth in paragraphs (1) to (11), inclusive, to each other and, upon a request for information pertaining to a specific person, to health care providers taking care of the patient and to the Medical Board of California and the Osteopathic Medical Board of California. Local health departments and the State Department of Public Health may disclose the information in paragraphs (1) to (7), inclusive, and paragraphs (9) to (11), inclusive, to schools, child care facilities, county welfare departments, and family child care homes to which the person is being admitted or in attendance, foster care agencies in assessing and providing medical care for children in foster care, and WIC service providers providing services to the person, health care plans arranging for immunization services for the patient, and county welfare departments assessing immunization histories of dependents of CalWORKs participants, upon request for information pertaining to a specific person. Determination of benefits based upon immunization of a dependent CalWORKs participant shall be made pursuant to Section 11265.8 of the Welfare and Institutions Code. The following information shall be subject to this subdivision:

(1)  The name of the patient or client and names of the parents or guardians of the patient or client.

(2)  Date of birth of the patient or client.

(3)  Types and dates of immunizations received by the patient or client.

(4)  Manufacturer and lot number for each immunization received.

(5)  Adverse reaction to immunizations received.

(6)  Other nonmedical information necessary to establish the patient's or client's unique identity and record.

(7)  Results of tuberculosis screening.

(8)  Current address and telephone number of the patient or client and the parents or guardians of the patient or client.

(9)  Patient's or client's gender.

(10)  Patient's or client's place of birth.

(11)  Patient's or client's information needed to comply with Chapter 1 (commencing with Section 120325), but excluding Section 120380.

(d) (1)  Health care providers, local health departments, and the State Department of Public Health shall maintain the confidentiality of information listed in subdivision (c) in the same manner as other medical record information with patient identification that they possess. These providers, departments, and contracting agencies are subject to civil action and criminal penalties for the wrongful disclosure of the information listed in subdivision

91

(c), in accordance with existing law. They shall use the information listed in subdivision (c) only for the following purposes:

(A)  To provide immunization services to the patient or client, including issuing reminder notifications to patients or clients or their parents or guardians when immunizations are due.

(B)  To provide or facilitate provision of third-party payer payments for immunizations.

(C)  To compile and disseminate statistical information of immunization status on groups of patients or clients or populations in California, without identifying information for these patients or clients included in these groups or populations.

(D)  In the case of health care providers only, as authorized by Part 2.6 (commencing with Section 56) of Division 1 of the Civil Code.

(2)  Schools, child care facilities, family child care homes, WIC service providers, foster care agencies, county welfare departments, and health care plans shall maintain the confidentiality of information listed in subdivision (c) in the same manner as other client, patient, and pupil information that they possess. These institutions and providers are subject to civil action and criminal penalties for the wrongful disclosure of the information listed in subdivision (c), in accordance with existing law. They shall use the information listed in subdivision (c) only for those purposes provided in subparagraphs (A) to (D), inclusive, of paragraph (1) and as follows:

(A)  In the case of schools, child care facilities, family child care homes, and county welfare departments, to carry out their responsibilities regarding required immunization for attendance or participation benefits, or both, as described in Chapter 1 (commencing with Section 120325), and in Section 11265.8 of the Welfare and Institutions Code.

(B)  In the case of WIC service providers, to perform immunization status assessments of clients and to refer those clients found to be due or overdue for immunizations to health care providers.

(C)  In the case of health care plans, to facilitate payments to health care providers, to assess the immunization status of their clients, and to tabulate statistical information on the immunization status of groups of patients, without including patient-identifying information in these tabulations.

(D)  In the case of foster care agencies, to perform immunization status assessments of foster children and to assist those foster children found to be due or overdue for immunization in obtaining immunizations from health care providers.

(e)  A patient or a patient's parent or guardian may refuse to permit recordsharing. The health care provider administering immunization and any other agency possessing any patient or client information listed in subdivision (c), if planning to provide patient or client information to an immunization system, as described in subdivision (b), shall inform the patient or client, or the parent or guardian of the patient or client, of the following:

(1)  The information listed in subdivision (c) may be shared with local health departments and the State Department of Public Health. The health

care provider or other agency shall provide the name and address of the State Department of Public Health or of the immunization registry with which the provider or other agency will share the information.

(2) Any of the information shared with local health departments and the State Department of Public Health shall be treated as confidential medical information and shall be used only to share with each other, and, upon request, with health care providers, schools, child care facilities, family child care homes, WIC service providers, county welfare departments, foster care agencies, and health care plans. These providers, agencies, and institutions shall, in turn, treat the shared information as confidential, and shall use it only as described in subdivision (d).

(3) The patient or client, or parent or guardian of the patient or client, has the right to examine any immunization-related information or tuberculosis screening results shared pursuant to this section and to correct any errors in it.

(4) The patient or client, or the parent or guardian of the patient or client, may refuse to allow this information to be shared pursuant to this section or to receive immunization reminder notifications at any time, or both. After refusal, the patient's or client's physician may maintain access to this information for the purposes of patient care or protecting the public health. After refusal, the local health department and the State Department of Public Health may maintain access to this information for the purpose of protecting the public health pursuant to Sections 100325, 120140, and 120175, as well as Sections 2500 to 2643.20, inclusive, of Title 17 of the California Code of Regulations.

(f) (1) The health care provider administering the immunization or tuberculosis screening and any other agency possessing any patient or client information listed in subdivision (c), may inform the patient or client, or the parent or guardian of the patient or client, by ordinary mail, of the information in paragraphs (1) to (4), inclusive, of subdivision (e). The mailing shall include a reasonable means for refusal, such as a return form or contact telephone number.

(2) The information in paragraphs (1) to (4), inclusive, of subdivision (e) may also be presented to the parent or guardian of the patient or client during any hospitalization of the patient or client.

(g) If the patient or client, or parent or guardian of the patient or client, refuses to allow the information to be shared, pursuant to paragraph (4) of subdivision (e), the health care provider or other agency may not share this information in the manner described in subdivision (c), except as provided in subparagraph (D) of paragraph (1) of subdivision (d).

(h) (1) Upon request of the patient or client, or the parent or guardian of the patient or client, in writing or by other means acceptable to the recipient, a local health department or the State Department of Public Health that has received information about a person pursuant to subdivision (c) shall do all of the following:

(A) Provide the name and address of other persons or agencies with whom the recipient has shared the information.

(B) Stop sharing the information in its possession after the date of the receipt of the request.

(2) After refusal, the patient's or client's physician may maintain access to this information for the purposes of patient care or protecting the public health. After refusal, the local health department and the State Department of Public Health may maintain access to this information for the purpose of protecting the public health pursuant to Sections 100325, 120140, and 120175, as well as Sections 2500 to 2643.20, inclusive, of Title 17 of the California Code of Regulations.

(i) Upon notification, in writing or by other means acceptable to the recipient, of an error in the information, a local health department or the State Department of Public Health that has information about a person pursuant to subdivision (c) shall correct the error. If the recipient is aware of a disagreement about whether an error exists, information to that effect may be included.

(j) (1) Any party authorized to make medical decisions for a patient or client, including, but not limited to, those authorized by Section 6922, 6926, or 6927 of, Part 1.5 (commencing with Section 6550), Chapter 2 (commencing with Section 6910) of Part 4, or Chapter 1 (commencing with Section 7000) of Part 6, of Division 11 of, the Family Code, Section 1530.6 of the Health and Safety Code, or Sections 727 and 1755.3 of, and Article 6 (commencing with Section 300) of Chapter 2 of Part 1 of Division 2 of, the Welfare and Institutions Code, may permit sharing of the patient's or client's record with any of the immunization information systems authorized by this section.

(2) For a patient or client who is a dependent of a juvenile court, the court or a person or agency designated by the court may permit this recordsharing.

(3) For a patient or client receiving foster care, a person or persons licensed to provide residential foster care, or having legal custody, may permit this recordsharing.

(k) For purposes of supporting immunization information systems, the State Department of Public Health shall assist the Immunization Branch of the State Department of Public Health in both of the following:

(1) Providing department records containing information about publicly funded immunizations.

(2) Supporting efforts for the reporting of publicly funded immunizations into immunization information systems by health care providers and health care plans.

(*l*) Subject to any other provisions of state and federal law or regulation that limit the disclosure of health information and protect the privacy and confidentiality of personal information, local health departments and the State Department of Public Health may share the information listed in subdivision (c) with a state, local health departments, health care providers, immunization information systems, or any representative of an entity designated by federal or state law or regulation to receive this information. The State Department of Public Health may enter into written agreements

to exchange confidential immunization information with other states for the purposes of patient care, protecting the public health, entrance into school, child care and other institutions requiring immunization prior to entry, and the other purposes described in subdivision (d). The written agreement shall provide that the state that receives confidential immunization information must maintain its confidentiality and may only use it for purposes of patient care, protecting the public health, entrance into school, child care and other institutions requiring immunization prior to entry, and the other purposes described in subdivision (d). Information may not be shared pursuant to this subdivision if a patient or client, or parent or guardian of a patient or client, refuses to allow the sharing of immunization information pursuant to subdivision (e).

SEC. 7.  No reimbursement is required by this act pursuant to Section 6 of Article XIII B of the California Constitution because the only costs that may be incurred by a local agency or school district will be incurred because this act creates a new crime or infraction, eliminates a crime or infraction, or changes the penalty for a crime or infraction, within the meaning of Section 17556 of the Government Code, or changes the definition of a crime within the meaning of Section 6 of Article XIII B of the California Constitution.

O

# Exhibit 3

32                                    STATUTES OF CALIFORNIA,

the same manner and at the same time as the ad valorem State taxes for other purposes are assessed and collected.

How expended.

SEC. 19.   The money collected from the special tax herein provided shall be expended in establishing a new asylum according to the provisions of this Act; *provided*, if it be opened before the meeting of the next Legislature, the maintenance thereof shall be temporarily paid out of this special fund until other provisions shall be made by law for its support.

Duty of Controller.

SEC. 20.   The Controller of State is hereby authorized and directed to draw his warrants on the Treasury of State in favor of the respective Directors, on their requisition upon the fund hereby created in accordance with the provisions of this Act; *provided*, not more than fifteen thousand dollars shall be drawn at any one time for building purposes; *and*,

Accounts to be filed with Board of Examiners.

*provided further*, that a detailed account of the expenditures of the sum previously drawn shall be filed with the State Board of Examiners by said Directors before the approval of any other requisition from the same Board of Directors for money for the purposes aforesaid.

SEC. 21.   This Act shall take effect from and after its passage.

———

## CHAPTER XXIV.

*An Act to encourage and provide for a general vaccination in the State of California.*

[Approved February 20, 1889.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows:*

Exclusion of children from schools unless vaccinated.

SECTION 1.   The Trustees of the several common school districts in this State, and Boards of common school government in the several cities and towns, are directed to exclude from the benefits of the common schools therein any child or any person who has not been vaccinated, until such time when said child or person shall be successfully vaccinated; *provided*, that any practicing and licensed physician may certify that the child or person has used due diligence and cannot be vaccinated so as to produce a successful vaccination, whereupon such child or person shall be excepted from the operation of this Act.

Notice by School Trustees.

SEC. 2.   The Trustees or local Boards, annually, or at such special times to be stated by the State Board of Health, must give at least ten days' notice, by posting a notice in two or more public or conspicuous places within their jurisdiction, that provision has been made for the vaccination of any child of suitable age who may desire to attend the common schools, and whose parents or guardians are pecuniarily or otherwise unable to procure vaccination for such child.

List of children not vaccinated.

SEC. 3.   The said Trustees or Board must within sixty days after the passage of this Act, and every year thereafter, ascertain the number of children or persons in their respective

School Districts or subdivision of the City School Government being of an age suitable to attend common schools, who have not been already vaccinated, and make a list of the names of all such children or persons. It also shall be duty of said Trustees or Board to provide, for the vaccination of all such children or persons in their respective school districts, a good and reliable vaccine virus wherewith to vaccinate such children or persons who have not been vaccinated. And when so vaccinated to give a certificate of vaccination, which certificate shall be evidence thereof for the purpose of complying with section one. *Vaccine virus to be supplied.*

SEC. 4. The necessary expenses incurred by the provisions of this Act shall be paid out of the common school moneys apportioned to the district, city, or town. And if there be not sufficient money, the Trustees must notify the Board of Supervisors of the amount of money necessary, and the Board must, at the time of levying the county tax, levy a tax upon the taxable property in the district sufficient to raise the amount needed. The rate of taxation is ascertained by deducting fifteen per cent for delinquencies from the assessment, and the rate must be based upon the remainder. The tax so levied must be computed and entered upon the assessment roll by the County Auditor, and collected at the same time and in the same manner as State and county taxes, and when collected shall be paid into the county treasury for the use of the district. *Expenses for, how paid.* *Rate of taxation, how ascertained.*

SEC. 5. The Trustees of the several school districts of this State are hereby required to include in their annual report, and report to the Secretary of the State Board of Health, the number in their several districts between the ages of five and seventeen years who are vaccinated and the number unvaccinated. *Annual report of Trustees.*

SEC. 6. This Act shall take effect immediately.

---

## CHAPTER XXV.

*An Act to amend section seven hundred and thirty-seven of the Political Code, fixing and providing for the salaries of the Judges of the Superior Courts of the City and County of San Francisco, and of the Counties of Alameda, San Joaquin, Los Angeles, Santa Clara, Santa Cruz, San Mateo, Yuba and Sutter combined, Sacramento, Butte, Nevada, Sonoma, Colusa, Monterey, Santa Barbara, San Diego, Tulare, Fresno, Solano, Amador, San Bernardino, Kern, Placer, Humboldt, Marin, Mendocino, Tehama, El Dorado, Alpine, Stanislaus, and Calaveras.*

[Approved February 21, 1889.]

*The People of the State of California, represented in Senate and Assembly, do enact as follows:*

SECTION 1. Section seven hundred and thirty-seven of the Political Code of the State of California is hereby amended so as to read as follows:

3

# Exhibit 4

pair the completed part of the program and further will
wholly eliminate in the future a continuance of such expanded
program because of lack of continuing finances available from
such excess tax revenues. In order to remove at the earliest
possible time this serious obstacle to the formation of a junior
college district which includes all of the identical territory
comprising a single existing high school district and to con-
tinue the policy of this Legislature in encouraging the forma-
tion of such districts and in order to prevent the hardships
resulting from the termination of the excess tax rate pre-
viously authorized by the identical electorate and to insure
the continuous orderly administration of the entire high school
and junior college program in operation and effect under such
excess tax rate so authorized by the electorate, and all without
interruption or loss of tax income essential to the purposes of
both districts, it is necessary that this act take effect imme-
diately.

———

## CHAPTER 837

*An act to add Chapter 7 (commencing with Section 3380) to
Division 4 of the Health and Safety Code, relating to the
immunization of pupils of schools.*

[Approved by Governor June 13, 1961. Filed with       In effect
Secretary of State June 14, 1961.]                    September
                                                      15, 1961

*The people of the State of California do enact as follows:*

SECTION 1.  Chapter 7 (commencing with Section 3380) is
added to Division 4 of the Health and Safety Code, to read:

### CHAPTER 7.   IMMUNIZATION AGAINST POLIOMYELITIS

3380.  No minor or adult shall be admitted to any public or    Immuniza-
private elementary or secondary school as a pupil unless such   tion against
                                                                poliomyelitis
person has, prior to admission, been immunized against polio-
myelitis in the manner and with immunizing agents approved
by the State Department of Public Health.

3381.  Such immunization shall be evidenced by a written    Same:
record made on a form prescribed by the department. A copy   Written
                                                             record
of the record shall be given to the parent or guardian of the
child, or if the person receiving immunization is an adult, the
copy shall be given to him.

3382.  The county health officer of each county shall or-   Immuniza-
ganize and have in operation by January 1, 1962, an immuni-  tion program
zation program so that immunization is made available to all
persons required by this chapter to be immunized. He shall
also determine how the cost of such a program is to be re-
covered. To the extent that the cost to the county is in excess
of that sum recovered from persons immunized, funds made
available by the school districts may be used to pay the cost of

the immunization of any persons seeking admission to the public schools. The remainder of the cost shall be paid by the county in the same manner as other expenses of the county are paid.

Immunization performed by a private physician shall be acceptable for admission to school if the immunization is performed and records are made in accordance with rules established by the State Department of Public Health.

**Co-operation with county health officer**  3383.  The governing board of each school district and the governing authority of each private school shall co-operate with the county health officer in carrying out the program for immunization of persons applying for admission to any school under its jurisdiction. The governing board of any school district may use any funds, property, and personnel of the district for that purpose. The governing board of any school district and the governing authority of any private school may permit any person licensed as a physician and surgeon to administer immunization agents to the children and adults seeking admission to any school under its jurisdiction.

**Exemption on account of beliefs**  3384.  Immunization of a person shall not be required for admission to a public or private elementary or secondary school if the parent or guardian (in the case of a minor), or the person seeking admission (if an adult), files with the governing board of the school district or the governing authority of the private school, as the case may be, a letter stating that such immunization is contrary to his or her beliefs. However, whenever there is good cause to believe that a person is suffering from poliomyelitis, the person may be temporarily excluded from the school until the governing board of the school district or the governing authority of the private school is satisfied that the disease does not exist.

**Exemption on account of medical circumstances**  3385.  If the parent or guardian (in the case of a minor) or the person seeking admission (if an adult) files with the governing board of the school district or the governing authority of the private school a written statement by a licensed physician to the effect that the physical condition of the child or adult is such, or medical circumstances relating to the child or adult are such that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances which contraindicate immunization, such person shall be exempt from the requirements of this chapter to the extent indicated by the physician's statement.

**Rules and regulations**  3386.  The department shall adopt and enforce all rules and regulations necessary to carry out the provisions of this chapter.

# Exhibit 5

**Senate Bill No. 277**

CHAPTER 35

An act to amend Sections 120325, 120335, 120370, and 120375 of, to add Section 120338 to, and to repeal Section 120365 of, the Health and Safety Code, relating to public health.

[Approved by Governor June 30, 2015. Filed with
Secretary of State June 30, 2015.]

LEGISLATIVE COUNSEL'S DIGEST

SB 277, Pan. Public health: vaccinations.

Existing law prohibits the governing authority of a school or other institution from unconditionally admitting any person as a pupil of any public or private elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless prior to his or her admission to that institution he or she has been fully immunized against various diseases, including measles, mumps, and pertussis, subject to any specific age criteria. Existing law authorizes an exemption from those provisions for medical reasons or because of personal beliefs, if specified forms are submitted to the governing authority. Existing law requires the governing authority of a school or other institution to require documentary proof of each entrant's immunization status. Existing law authorizes the governing authority of a school or other institution to temporarily exclude a child from the school or institution if the authority has good cause to believe that the child has been exposed to one of those diseases, as specified.

This bill would eliminate the exemption from existing specified immunization requirements based upon personal beliefs, but would allow exemption from future immunization requirements deemed appropriate by the State Department of Public Health for either medical reasons or personal beliefs. The bill would exempt pupils in a home-based private school and students enrolled in an independent study program and who do not receive classroom-based instruction, pursuant to specified law from the prohibition described above. The bill would allow pupils who, prior to January 1, 2016, have a letter or affidavit on file at a private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center stating beliefs opposed to immunization, to be enrolled in any private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center within the state until the pupil enrolls in the next grade span, as defined. Except as under the circumstances described above, on and after July 1, 2016, the bill would prohibit a governing authority from unconditionally admitting to any of those institutions for the first time or

91

admitting or advancing any pupil to the 7th grade level, unless the pupil has been immunized as required by the bill. The bill would specify that its provisions do not prohibit a pupil who qualifies for an individualized education program, pursuant to specified laws, from accessing any special education and related services required by his or her individualized education program. The bill would narrow the authorization for temporary exclusion from a school or other institution to make it applicable only to a child who has been exposed to a specified disease and whose documentary proof of immunization status does not show proof of immunization against one of the diseases described above. The bill would make conforming changes to related provisions.

*The people of the State of California do enact as follows:*

SECTION 1.   Section 120325 of the Health and Safety Code is amended to read:

120325.   In enacting this chapter, but excluding Section 120380, and in enacting Sections 120400, 120405, 120410, and 120415, it is the intent of the Legislature to provide:

(a)  A means for the eventual achievement of total immunization of appropriate age groups against the following childhood diseases:

(1)  Diphtheria.

(2)  Hepatitis B.

(3)  Haemophilus influenzae type b.

(4)  Measles.

(5)  Mumps.

(6)  Pertussis (whooping cough).

(7)  Poliomyelitis.

(8)  Rubella.

(9)  Tetanus.

(10)  Varicella (chickenpox).

(11)  Any other disease deemed appropriate by the department, taking into consideration the recommendations of the Advisory Committee on Immunization Practices of the United States Department of Health and Human Services, the American Academy of Pediatrics, and the American Academy of Family Physicians.

(b)  That the persons required to be immunized be allowed to obtain immunizations from whatever medical source they so desire, subject only to the condition that the immunization be performed in accordance with the regulations of the department and that a record of the immunization is made in accordance with the regulations.

(c)  Exemptions from immunization for medical reasons.

(d)  For the keeping of adequate records of immunization so that health departments, schools, and other institutions, parents or guardians, and the persons immunized will be able to ascertain that a child is fully or only partially immunized, and so that appropriate public agencies will be able

to ascertain the immunization needs of groups of children in schools or other institutions.

(e) Incentives to public health authorities to design innovative and creative programs that will promote and achieve full and timely immunization of children.

SEC. 2.  Section 120335 of the Health and Safety Code is amended to read:

120335.  (a)  As used in this chapter, "governing authority" means the governing board of each school district or the authority of each other private or public institution responsible for the operation and control of the institution or the principal or administrator of each school or institution.

(b)  The governing authority shall not unconditionally admit any person as a pupil of any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless, prior to his or her first admission to that institution, he or she has been fully immunized. The following are the diseases for which immunizations shall be documented:

(1)  Diphtheria.

(2)  Haemophilus influenzae type b.

(3)  Measles.

(4)  Mumps.

(5)  Pertussis (whooping cough).

(6)  Poliomyelitis.

(7)  Rubella.

(8)  Tetanus.

(9)  Hepatitis B.

(10)  Varicella (chickenpox).

(11)  Any other disease deemed appropriate by the department, taking into consideration the recommendations of the Advisory Committee on Immunization Practices of the United States Department of Health and Human Services, the American Academy of Pediatrics, and the American Academy of Family Physicians.

(c)  Notwithstanding subdivision (b), full immunization against hepatitis B shall not be a condition by which the governing authority shall admit or advance any pupil to the 7th grade level of any private or public elementary or secondary school.

(d)  The governing authority shall not unconditionally admit or advance any pupil to the 7th grade level of any private or public elementary or secondary school unless the pupil has been fully immunized against pertussis, including all pertussis boosters appropriate for the pupil's age.

(e)  The department may specify the immunizing agents that may be utilized and the manner in which immunizations are administered.

(f)  This section does not apply to a pupil in a home-based private school or a pupil who is enrolled in an independent study program pursuant to Article 5.5 (commencing with Section 51745) of Chapter 5 of Part 28 of the Education Code and does not receive classroom-based instruction.

(g) (1) A pupil who, prior to January 1, 2016, submitted a letter or affidavit on file at a private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center stating beliefs opposed to immunization shall be allowed enrollment to any private or public elementary or secondary school, child day care center, day nursery, nursery school, family day care home, or development center within the state until the pupil enrolls in the next grade span.

(2) For purposes of this subdivision, "grade span" means each of the following:

(A) Birth to preschool.

(B) Kindergarten and grades 1 to 6, inclusive, including transitional kindergarten.

(C) Grades 7 to 12, inclusive.

(3) Except as provided in this subdivision, on and after July 1, 2016, the governing authority shall not unconditionally admit to any of those institutions specified in this subdivision for the first time, or admit or advance any pupil to 7th grade level, unless the pupil has been immunized for his or her age as required by this section.

(h) This section does not prohibit a pupil who qualifies for an individualized education program, pursuant to federal law and Section 56026 of the Education Code, from accessing any special education and related services required by his or her individualized education program.

SEC. 3.  Section 120338 is added to the Health and Safety Code, to read:

120338.  Notwithstanding Sections 120325 and 120335, any immunizations deemed appropriate by the department pursuant to paragraph (11) of subdivision (a) of Section 120325 or paragraph (11) of subdivision (b) of Section 120335, may be mandated before a pupil's first admission to any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, only if exemptions are allowed for both medical reasons and personal beliefs.

SEC. 4.  Section 120365 of the Health and Safety Code is repealed.

SEC. 5.  Section 120370 of the Health and Safety Code is amended to read:

120370.  (a)  If the parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances, including, but not limited to, family medical history, for which the physician does not recommend immunization, that child shall be exempt from the requirements of Chapter 1 (commencing with Section 120325, but excluding Section 120380) and Sections 120400, 120405, 120410, and 120415 to the extent indicated by the physician's statement.

(b)  If there is good cause to believe that a child has been exposed to a disease listed in subdivision (b) of Section 120335 and his or her documentary proof of immunization status does not show proof of

immunization against that disease, that child may be temporarily excluded from the school or institution until the local health officer is satisfied that the child is no longer at risk of developing or transmitting the disease.

SEC. 6.  Section 120375 of the Health and Safety Code is amended to read:

120375.  (a) The governing authority of each school or institution included in Section 120335 shall require documentary proof of each entrant's immunization status. The governing authority shall record the immunizations of each new entrant in the entrant's permanent enrollment and scholarship record on a form provided by the department. The immunization record of each new entrant admitted conditionally shall be reviewed periodically by the governing authority to ensure that within the time periods designated by regulation of the department he or she has been fully immunized against all of the diseases listed in Section 120335, and immunizations received subsequent to entry shall be added to the pupil's immunization record.

(b) The governing authority of each school or institution included in Section 120335 shall prohibit from further attendance any pupil admitted conditionally who failed to obtain the required immunizations within the time limits allowed in the regulations of the department, unless the pupil is exempted under Section 120370, until that pupil has been fully immunized against all of the diseases listed in Section 120335.

(c) The governing authority shall file a written report on the immunization status of new entrants to the school or institution under their jurisdiction with the department and the local health department at times and on forms prescribed by the department. As provided in paragraph (4) of subdivision (a) of Section 49076 of the Education Code, the local health department shall have access to the complete health information as it relates to immunization of each student in the schools or other institutions listed in Section 120335 in order to determine immunization deficiencies.

(d) The governing authority shall cooperate with the county health officer in carrying out programs for the immunization of persons applying for admission to any school or institution under its jurisdiction. The governing board of any school district may use funds, property, and personnel of the district for that purpose. The governing authority of any school or other institution may permit any licensed physician or any qualified registered nurse as provided in Section 2727.3 of the Business and Professions Code to administer immunizing agents to any person seeking admission to any school or institution under its jurisdiction.

O

# Exhibit 6

# SENATE COMMITTEE ON HEALTH
## Senator Ed Hernandez, O.D., Chair

**BILL NO:**        SB 277
**AUTHOR:**         Pan and Allen
**VERSION:**        February 19, 2015
**HEARING DATE:**   April 8, 2015
**CONSULTANT:**     Melanie Moreno

**SUBJECT:** Public health:  vaccinations

**SUMMARY:** Eliminates the personal belief exemption from the requirement that children receive specified vaccines for certain infectious diseases prior to being admitted to any public or private elementary or secondary school or day care center.

**Existing law:**

1. Prohibits the governing authority of a school or other institution from unconditionally admitting any person as a pupil of any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless, prior to his or her first admission to that institution, he or she has been fully immunized against diphtheria, haemophilus influenzae type b (Hib), measles, mumps, pertussis, poliomyelitis, rubella, tetanus, hepatitis b (except after 7th grade), and chickenpox, as specified.

2. Permits the Department of Public Health (DPH) to add to this list any other disease deemed appropriate, taking into consideration the recommendations of the Centers for Disease Control and Prevention (CDC) Advisory Committee on Immunization Practices (ACIP) and the American Academy of Pediatrics (AAP) Committee on Infectious Diseases.

3. Waives the above immunization requirements if the parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances that contraindicate immunization.

4. Waives the above immunization requirements if the parent or guardian or adult who has assumed responsibility for the child's care and custody, or the person seeking admission, if an emancipated minor, files a letter with the governing authority stating that the immunization is contrary to his or her beliefs.

5. Requires a separate form prescribed by DPH to accompany a letter or affidavit to exempt a child from immunization requirements on the basis that an immunization is contrary to beliefs of the child's parent or guardian.  Requires the form to include:

   a. A signed attestation from the health care practitioner that indicates that the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, was provided with information regarding the benefits and risks of the immunization and the health risks of the communicable diseases listed above to the person and to the community. Requires the attestation to be signed not more than six months before the date when the person first

becomes subject to the immunization requirement for which exemption is being sought.

  b. A written statement signed by the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, that indicates that the signer has received the information provided by the health care practitioner pursuant a) above. Requires the statement to be signed not more than six months before the date when the person first becomes subject to the immunization requirements as a condition of admittance.

6. Permits a child for whom the requirement has been waived, whenever there is good cause to believe that he or she has been exposed to one of the specified communicable diseases, to be temporarily excluded from the school or institution until the local health officer is satisfied that the child is no longer at risk of developing the disease.

**This bill:**

1. Deletes the exemption for personal beliefs in #4 above and related existing law requiring a specified form to accompany a letter to exempt a child from immunization requirements on the basis that an immunization is contrary to beliefs of the child's parent or guardian.

2. Requires school districts, at the beginning of the first semester or quarter of the regular school term, to notify parents or guardians of students of the immunization rates for the school in which a pupil is enrolled, as specified.

<u>FISCAL EFFECT:</u>  This bill has not yet been analyzed by a fiscal committee.

<u>COMMENTS:</u>

1. **Author's statement.** According to the author, in early 2015, California became the epicenter of a measles outbreak which was the result of unvaccinated individuals infecting vulnerable individuals including children who are unable to receive vaccinations due to health conditions or age requirements. According to the CDC, there were been more cases of measles in January 2015 in the U.S. than in any one month in the past 20 years. Measles has spread through California and the U.S., in large part, because of communities with large numbers of unvaccinated people. Between 2000 and 2012, the number of Personal Belief Exemptions (PBE) from vaccinations required for school entry that were filed rose by 337 percent. In 2000, the PBE rate for Kindergartners entering California schools was under one percent. However, as of 2012, that number rose to 2.6 percent. From 2012 to 2014, the number of children entering Kindergarten without receiving some or all of their required vaccinations due to their parent's personal beliefs increased to 3.15 percent (a 25 percent increase over the previous two years). In certain pockets of California, exemption rates are as high as 21 percent which places our communities at risk for preventable diseases. Given the highly contagious nature of diseases such as measles, vaccination rates of up to 95 percent are necessary to preserve herd immunity and prevent future outbreaks.

2. **Immunizations.** According to the CDC, vaccines contain the same antigens or parts of antigens that cause diseases, but the antigens in vaccines are either killed or greatly weakened. Vaccine antigens are not strong enough to cause disease, but they are strong enough to make the immune system produce antibodies against them. Memory cells prevent re-infection when they encounter that disease again in the future. Vaccines are responsible

for the control of many infectious diseases that were once common around the world, including polio, measles, diphtheria, pertussis (whooping cough), rubella (German measles), mumps, tetanus, and Hib. Vaccine eradicated smallpox, one of the most devastating diseases in history. Over the years, vaccines have prevented countless cases of infectious diseases and saved literally millions of lives. Vaccine-preventable diseases have a costly impact, resulting in doctor's visits, hospitalizations, and premature deaths. Sick children can also cause parents to lose time from work. CDC recommends routine vaccination to prevent 17 vaccine-preventable diseases that occur in infants, children, adolescents, or adults.

3.  **ACIP.** According to ACIP, it consists of 15 experts who are voting members and are responsible for making vaccine recommendations. The Secretary of the U.S. Department of Health and Human Services selects these members after an application, interview, and nomination process. Fourteen of the members have expertise in vaccinology, immunology, pediatrics, internal medicine, nursing, family medicine, virology, public health, infectious diseases, and/or preventive medicine; one member is a consumer representative who provides perspectives on the social and community aspects of vaccination. ACIP develops written recommendations for the routine administration of vaccines to pediatric and adult populations, along with schedules regarding the appropriate periodicity, dosage, and contraindications applicable to the vaccines and is the only entity within the federal government which makes such recommendations. The overall goals of ACIP are to provide advice to assist in reducing the incidence of vaccine-preventable diseases and to increase the safe usage of vaccines and related biological products.

    ACIP, along with AAP, the American Academy of Family Physicians, and the American College of Obstetricians and Gynecologists, approved the 2015 Recommended Immunization Schedules for Persons Aged 0 Through 18 Years. Children under six are recommended to receive vaccines for: hepatitis b; rotavirus; diphtheria, tetanus, and pertussis (DTaP); Hib; pneumococcal; polio; influenza; measles, mumps, rubella (MMR); varicella; hepatitis a; and meningococcal.

4.  **School vaccination requirements.** States enact laws or regulations that require children to receive certain vaccines before they enter childcare facilities and school, but with some exceptions, including medical, religious, and philosophical objections. School vaccination requirements are thought to serve an important public health function, but can also face resistance. An article published in the 2001-2002 Kentucky Law Journal reviewed historical and modern legal, political, philosophical, and social struggles surrounding vaccination requirements. The authors stated that though school vaccination has been an important component of public health practice for decades, it has had a controversial history in the United States and abroad. Historical and modern examples of the real, perceived, and potential harms of vaccination, governmental abuses underlying its widespread practice and strongly held religious beliefs have led to fervent objections among parents and other persons who object to vaccines on legal, ethical, social, and epidemiological grounds. The article states that public health authorities argue that school vaccination requirements have led to a drastic decrease in the incidence of once common childhood diseases. Those who object to vaccines tend to view the consequences of mass vaccination on an individualistic basis, focusing on alleged or actual harms to children from vaccinations. As part of their research, the authors compared childhood immunization rates and rates of vaccine-preventable childhood diseases before and after the introduction of school vaccination requirements. The data suggest that school vaccination requirements have succeeded in increasing vaccination rates and reducing the incidence of childhood disease

5. **Exemptions to vaccine requirements.** There are two types of non-medical exemptions to the requirement that children be vaccinated before entering school: religious exemption and philosophical exemption. Religious exemption means that there is a provision in the statute that allows parents to exempt their children from vaccination if it contradicts their sincere religious beliefs. Philosophical exemption means that the statutory language does not restrict the exemption to purely religious or spiritual beliefs. For example, Maine allows restrictions based on "moral, philosophical or other personal beliefs," and California allows objections based on simply the parent(s) beliefs. According to the National Conference of State Legislatures, as of June 2014, 48 states allow religious exemptions (all but Mississippi and West Virginia), and 20 states (Arizona, California, Colorado, Idaho, Louisiana, Maine, Michigan, Minnesota, Missouri (limited to childcare enrollees), New Mexico, North Dakota, Ohio, Oklahoma, Pennsylvania, Texas, Utah, Vermont, Washington, West Virginia and Wisconsin) permit philosophic exemptions. As of February, several state legislatures had introduced bills that would address non-medical exemptions. In addition to California, legislators in Oregon, Vermont, and Washington proposed to remove philosophical/personal belief exemption this year. Those bills were tabled in Oregon and Washington.

6. **California vaccination rates.** According to an August 2014 DPH fact sheet, vaccination coverage in California is at or near all-time high levels. DPH states that the implementation of current vaccine requirements has been effective in maintaining greater than or equal to 92 percent immunization coverage among children in licensed child care facilities and kindergartens. The DPH Immunization Branch maintains data on its website related to vaccination rates and is searchable statewide and by school (kindergarten and 7th grade rates) and child care facility. For school year 2014-15, DPH reported that 90.4 percent of the 535,332 students enrolled in reporting kindergartens received all required immunizations, which is a 0.2 percent increase from last year. In addition, the percentage of conditional entrants increased by 0.4 percent from last year. The percentage of students with permanent medical exemptions (PMEs) stayed the same at 0.19 percent, and there was a 0.61 percent decrease in students with PBEs compared with last year. Immunization coverage remained above 92 percent for each vaccine for all schools since last year.

7. **California measles outbreak.** The authors point to an outbreak of measles that began in December 2014 in Disneyland (Orange County) as one of the reasons for the introduction of this bill. There have been 134 confirmed measles cases reported in California residents as part of this outbreak. The latest confirmed measles case had rash onset on March 2nd, and DPH will consider the outbreak over when 42 days have elapsed from the end of the infectious period of the last known measles cases that was a not a new importation. As of the most recent DPH Surveillance Update, that date will be April 17, 2015. Of the confirmed cases: 40 cases visited Disneyland between December 17 and 20 where they are presumed to have been exposed to measles; 30 are household or close contacts to a confirmed case; 11 were exposed in a community setting (e.g., emergency room) where a confirmed case was known to be present; 50 have an unknown exposure source but are presumed to be linked to the outbreak based on a combination of descriptive epidemiology or strain type; and, three cases are known to have a different genotype from the outbreak strain. The ages of those infected with the measles during this outbreak varied, with 56 percent being 20 years or older, 18 percent were between the ages of five and 19, 15 percent were ages one to four, and 11 percent were under the age of one. Among measles cases for whom DPH have vaccination documentation, 57 were unvaccinated and 25 had one or more doses of MMR vaccine.

8. **Triple referral.** This bill has been triple referred to the Committees on Health, Education, and Judiciary. Should it pass out of this Committee, it will be heard in Senate Education Committee next.

9. **Related legislation.** SB 792 (Mendoza) would prohibit a person from being employed at a day care center or day care home unless he or she has been immunized against influenza, pertussis, and measles. *SB 792 is set to be heard in this Committee on April 15, 2015.*

10. **Prior legislation.** SB 2109 (Pan), Chapter 821, Statutes of 2012, requires, on and after January 1, 2014, a separate form prescribed by DPH to accompany a letter or affidavit to exempt a child from immunization requirements under existing law on the basis that an immunization is contrary to beliefs of the child's parent or guardian. Requires the form to include:

    a. A signed attestation from the health care practitioner that indicates that the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, was provided with information regarding the benefits and risks of the immunization and the health risks of the communicable diseases listed above to the person and to the community.

    b. A written statement signed by the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, that indicates that the signer has received the information provided by the health care practitioner pursuant a) above.

The Governor included a message with his signature on this bill, which stated, in part:

> "*I will direct (DPH) to allow for a separate religious exemption on the form. In this way, people whose religious beliefs preclude vaccinations will not be required to seek a health care practitioner's signature.*"

AB 2064 (V. Manuel Pérez), would have required a health care service plan or health insurer that provides coverage for childhood and adolescent immunizations to reimburse a physician or physician group in an amount not less than the actual cost of acquiring the vaccine plus the cost of administration of the vaccine, as specified. *AB 2064 was held on the Assembly Appropriations Committee suspense file.*

SB 614 (Kehoe), Chapter 123, Statutes of 2011, allowed a pupil in grades seven through 12, to conditionally attend school for up to 30 calendar days beyond the pupil's first day of attendance for the 2011-12 school year, if that pupil has not been fully immunized with all pertussis boosters appropriate for the pupil's age if specified conditions are met.

AB 354 (Arambula), Chapter 434, Statutes of 2010, allows DPH to update vaccination requirements for children entering schools and child care facilities and adds the American Academy of Family Physicians to the list of entities whose recommendations DPH must consider when updating the list of required vaccinations. Requires children entering grades 7 through 12 receive a TDaP booster prior to admittance to school.

AB 1201 (V. Manuel Pérez), of 2009, would have required a health care service plan or health insurer that provides coverage for childhood and adolescent immunizations to reimburse a physician or physician group the entire cost of acquiring and administering the vaccine, and prohibits a health plan or insurer from requiring cost-sharing for immunizations. *AB 1201 was held on the Assembly Appropriations Committee suspense file.*

SB 1179 (Aanestad), of 2008, would have deleted DPH's authority to add diseases to the list of those requiring immunizations prior to entry to any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center. *SB 1179 died in Senate Health Committee.*

AB 2580 (Arambula), of 2008, would have required pupils entering the seventh grade to be fully immunized against pertussis by receiving any necessary adolescent booster immunization. *AB 2580 was held on the Senate Appropriations Committee suspense file.*

SB 676 (Ridley-Thomas), of 2007, would have required pupils entering the seventh grade to be fully immunized against pertussis. *SB 676 was held on suspense in Assembly Appropriations Committee.*

SB 533 (Yee), of 2007, would have added pneumococcus to the list of diseases that pupils are required to be immunized against before entry into any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, except for children who are 24 months of age or older. *SB 533 was vetoed by the Governor, who stated that a mandate for this vaccination was not necessary.*

11. **Support.** Vaccinate California, the sponsor of this bill, writes that there is an overwhelming scientific consensus that vaccines work, and vaccines prevent terrible diseases that kill and maim. Vaccinate California states that when too many people forego vaccines, everyone is put at risk since no vaccine is 100 percent effective, and there are always people too young or too frail to be vaccinated. Vaccinate California asserts that experts can explain the science in detail, but the bottom line is that even though vaccine-refusers are small in number, their impact on the state is huge, and it is scary. The Health Officers Association of California (HOAC) states that despite the effectiveness of vaccines, California's public health departments have seen a rise in vaccine-preventable diseases such as pertussis and measles largely because many residents are choosing to selectively immunize or opt out of vaccinating their children. HOAC writes that these decisions risk the health of the community and can be particularly detrimental, even fatal, to newborns, infants, toddlers, and those living with immunocompromising health conditions. The Los Angeles County Board of Supervisors states that increased immunizations of school children can avoid preventable illnesses that could result in additional visits to hospital emergency rooms. The California Medical Association states that vaccines have undergone significant rigorous scientific review and continue to have ongoing safety tracking and that this indisputably shows that vaccines are effective and have very low risks. The California School Nurses Organization states that changing the school entry requirement to a medical exemption only will serve the public and schools well as "community immunity" varies by vaccine but it provides protection for those students and staff who, for medical reasons are unable to be vaccinated or are immunocompromised. California Coverage & Health Initiatives, Children NOW, The Children's Partnership, and Children's Defense Fund write that benefits of immunizations outweigh costs, and the social and direct economic costs of ensuring each child receives the ACIP recommended schedule of vaccines far outweighs the costs of not providing routine

immunizations. This coalition states that it is estimated that for every $1 spent on immunizations, as many as $29 can be saved in direct and indirect costs. The California State PTA recognizes that there are children in our schools who cannot receive vaccines and immunizations due to medical reasons and are therefore susceptible to diseases should an outbreak occur, and it is our duty as a community protect vulnerable children and families by vaccinating those children who can be vaccinated. The California Immunization Coalition writes that although AB 2109 helped tighten up the personal belief exemption process, it is not enough and California needs to take stronger measures to protect children in our schools and in our communities. Insurance Commissioner Dave Jones writes that that the higher number of unvaccinated students is jeopardizing public health not only in schools but in the broader community, and that we need to take steps to keep schools safe and students healthy by preventing serious and potentially life-threatening diseases.

12. **Support if amended.** The Marin County Board of Supervisors writes that in order to address concerns of parents who home school their children in their own home, they request that this bill be amended to clarify that it does not apply in a home school setting.

13. **Concerns.** The ACLU of California writes that while they appreciate that vaccination against childhood diseases is a prudent step that should be promoted for the general welfare, they do not believe there has been a sufficient showing of need at present to warrant conditioning access to education on mandatory vaccination for each of the diseases covered by this bill. ACLU of California writes that unlike other states, public education is a fundamental right under the California Constitution, and equal access to education must therefore not be limited or denied unless the State demonstrates that its actions are "necessary to achieve a compelling state interest." ACLU of California writes that this bill does not declare what this interest might be, nor does it explain why denying students access to education is necessary to advance that interest. If there is, in fact, a compelling governmental interest in mandating that all students in every school be vaccinated against each of the enumerated diseases except for medical reasons, the bill should be amended to explain specifically what that interest is, where it exists, and under what conditions and circumstances it arises.

ACLU of California further states that the reforms enacted by AB 2109 had been in effect for only about 12 months before this bill was announced, and that those reforms should be allowed an opportunity to work before they are stricken and replaced by an approach that restricts the fundamental right to education. If AB 2109 is thought not to be working, its effects should be analyzed and any deficiencies should be corrected. If for example herd-immunity levels have not been achieved for certain diseases in geographic areas where school districts may not be not fully complying with the law, those districts should be provided with additional resources and/or compliance incentives. ACLU of California writes that in some cases it appears the deficiencies may reflect a need for better data-keeping and reporting, rather than the actual rate of vaccinations. It has been reported for example that in just one week the Los Angeles Unified School District increased its vaccination rates significantly after the recent measles outbreak by temporarily hiring additional staff to replace nursing and clerical staff that had been laid off. Other media reports indicate that some districts may not be complying with existing law because there is no penalty and no mechanism for enforcement. ACLU of California states that in any event, herd immunity is a concept that applies to the entire population in a geographic area, not simply to public school students.

14. **Opposition.** The Association of American Physicians and Surgeons Inc. state that the need for informed consent is a firmly established principal of medical ethics and human rights and that the state has no right to force medical interventions on people without their consent. ParentalRights.Org contends that this measure violates the fundamental right of parents to direct the care and upbringing of their child and that it disenfranchises children whose parents oppose vaccinations from receiving free public education as provided by their parents' taxes. The California Chiropractic Association mentions that the Mayo Clinic warns against undermining the principle of informed consent in favor of universal vaccination and further states we ought not let a handful of measles cases at Disneyland turn into a full-scale assault on civil and human rights in America. The National Vaccine Information Center argues that it's particularly disturbing that physicians in the American Medical Association Code of Ethics affirm philosophical and religious exemptions for themselves yet want to remove this right for California parents. The Pacific Justice Institute argues that statewide vaccination rates exceed the threshold for herd immunity and, to the extent that a few communities have fallen below vaccination levels needed for herd immunity, the Legislature could consider approaches that allow greater local decision-making and accountability rather than imposing across-the-board statewide mandates. Families for Early Autism Treatment contend that this bill is contrary to the rights protected by the State and Federal Constitutions as it denies rights to privacy, education, free assembly, religious expression, consensual use of one's physical body and liberty. Educate. Advocate. writes that every medical intervention has both benefits and risks and that parents, not the State of California, have the right to decide which medical interventions their children receive. The Canary Party maintains that the United States Justice System deems each and every vaccine on the market as "unavoidably unsafe", which means that even when used as directed, someone will be harmed, or may even die from the vaccine. The Capitol Resource Institute notes that following the passage of AB 2109 the personal belief exemption rate fell from 3.1 percent in 2013 to 2.5 percent in 2014 after only a partial implementation of the law, and that this bill is far reaching and unnecessary. The Homeschool Association of California states this bill will negatively impact the freedom to homeschool and would make it impossible for many families to choose to homeschool legally. They argue that almost all homeschooling families use a legal option that involves attendance at some form of public or private school, either operated by a third party or operated by parents who file a private school affidavit, yet current law requires children admitted to private schools be fully vaccinated in accordance with existing law.

15. **Oppose unless amended.** California Naturopathic Doctors Association (CNDA) states that it supports immunization for the prevention of disease and the public health objective of achieving high rates of immunity to infectious disease. CNDA states that as licensed primary care doctors who can diagnose medical conditions such as anaphylaxis and immunodeficiency, reasons outlined in the CDC's list of contraindications to common pediatric vaccinations, naturopathic doctors must also be able to sign medical waivers for vaccination, when such medical conditions exist. CNDA opposes this bill unless it is amended to include NDs as providers who can sign medical waivers for vaccination.

16. **Amendments.** The author requests that the committee approve the following amendments:

    a. On page 5, delete lines 17-25, and move language contained in lines 26-31 to HSC 120370.

    b. *On page 5, beginning on line 26:*

(b) When there is good cause to believe that ~~the~~ _a_ person _who has not filed proof of immunization_ has been exposed to one of the communicable diseases listed in subdivision of Section 120325

    c.   _Add a new section:_

        120335 (b) "The governing authority shall not unconditionally admit any person as a pupil of any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless, prior to his or her first admission to that institution, he or she has been fully immunized. This section shall not apply to home-based private schools whose students are all members of the household or all members of a single family."

**SUPPORT AND OPPOSITION:**

**Support:**    Vaccinate California (sponsor)
           American Academy of Pediatrics
           American Lung Association
           Biocom
           California Association of Nurse Practitioners
           California Chapter of the American College of Emergency Physicians
           California Children's Hospital Association
           California Coverage and Health Initiatives
           California Immunization Coalition
           California Medical Association
           California Optometric Association
           California School Nurses Organization
           California State Parent-Teacher Association
           Children Now
           Children's Defense Fund California
           Children's Specialty Care Coalition
           County of Los Angeles
           County of Santa Cruz
           Health Officers Association of California
           Insurance Commissioner Dave Jones
           Kaiser Permanente
           March of Dimes California Chapter
           Providence Health and Services Southern California
           San Francisco Unified School District
           Secular Coalition for California
           Silicon Valley Leadership Group
           Solano Beach School District
           The Children's Partnership
           Hundreds of individuals

**Oppose:**    Association of American Physicians and Surgeons
           California Chiropractic Association
           California Naturopathic Doctors Association (unless amended)

**SB 277 (Pan and Allen)**                                                      Page 10 of 10

California Nurses for Ethical Standards
California ProLife Council
California Right to Life Committee, Inc.
Canary Party
Capitol Resource Institute
Educate. Advocate.
Families for Early Autism Treatment
Homeschool Association of California
National Vaccine Information Center
Pacific Justice Institute Center for Public Policy
ParentalRights.org
SafeMinds
Hundreds of individuals

**-- END --**

# Exhibit 7

Case 2:24-cv-03523-DJC-SCR    Document 51-1    Filed 07/16/25    Page 62 of 227

**CDC** Centers for Disease Control and Prevention
CDC 24/7: Saving Lives. Protecting People.™

## Morbidity and Mortality Weekly Report (*MMWR*)

# Measles Outbreak — California, December 2014–February 2015

*Please note:* An erratum has been published for this article. To view the erratum, please click here.

*Weekly*

**February 20, 2015 / 64(06);153-154**

*On February 13, 2015, this report was posted as an* MMWR *Early Release on the* MMWR *website (http://www.cdc.gov/mmwr).*

Jennifer Zipprich, PhD1, Kathleen Winter, MPH1, Jill Hacker, PhD1, Dongxiang Xia, MD, PhD1, James Watt, MD1, Kathleen Harriman, PhD1 (Author affiliations at end of text)

On January 5, 2015, the California Department of Public Health (CDPH) was notified about a suspected measles case. The patient was a hospitalized, unvaccinated child, aged 11 years with rash onset on December 28. The only notable travel history during the exposure period was a visit to one of two adjacent Disney theme parks located in Orange County, California. On the same day, CDPH received reports of four additional suspected measles cases in California residents and two in Utah residents, all of whom reported visiting one or both Disney theme parks during December 17–20. By January 7, seven California measles cases had been confirmed, and CDPH issued a press release and an Epidemic Information Exchange (Epi-X) notification to other states regarding this outbreak. Measles transmission is ongoing (Figure).

As of February 11, a total of 125 measles cases with rash occurring during December 28, 2014–February 8, 2015, had been confirmed in U.S. residents connected with this outbreak. Of these, 110 patients were California residents. Thirty-nine (35%) of the California patients visited one or both of the two Disney theme parks during December 17–20, where they are thought to have been exposed to measles, 37 have an unknown exposure source (34%), and 34 (31%) are secondary cases. Among the 34 secondary cases, 26 were household or close contacts, and eight were exposed in a community setting. Five (5%) of the California patients reported being in one or both of the two Disney theme parks during their exposure period outside of December 17–20, but their source of infection is unknown. In addition, 15 cases linked to the two Disney theme parks have been reported in seven other states: Arizona (seven), Colorado (one), Nebraska (one), Oregon (one), Utah (three), and Washington (two), as well as linked cases reported in two neighboring countries, Mexico (one) and Canada (10).

Among the 110 California patients, 49 (45%) were unvaccinated; five (5%) had 1 dose of measles-containing vaccine, seven (6%) had 2 doses, one (1%) had 3 doses, 47 (43%) had unknown or undocumented vaccination status, and one (1%) had immunoglobulin G seropositivity documented, which indicates prior vaccination or measles infection at an undetermined time. Twelve of the unvaccinated patients were infants too young to be vaccinated. Among the 37 remaining vaccine-eligible patients, 28 (67%) were intentionally unvaccinated because of personal beliefs, and one was on an alternative plan for vaccination. Among the 28 intentionally unvaccinated patients, 18 were children (aged <18 years), and 10 were adults. Patients range in age from 6 weeks to 70 years; the median age is 22 years. Among the 84 patients with known hospitalization status, 17 (20%) were hospitalized.

The source of the initial Disney theme park exposure has not been identified. Specimens from 30 California patients were genotyped; all were measles genotype B3, which has caused a large outbreak recently in the Philippines, but has also been detected in at least 14 countries and at least six U.S. states in the last 6 months (*1*).

Annual attendance at Disney theme parks in California is estimated at 24 million (*2*), including many international visitors from countries where measles is endemic. The December holiday season coincides with the exposure period of interest. Since 2011, six confirmed measles cases have been reported to CDPH in persons whose notable exposure was to large theme parks that attract international tourists. International travel to countries where measles is endemic is a well-known risk factor for measles, and measles importations continue to occur in the United States; the number of measles cases reported to CDC is updated weekly at http://www.cdc.gov/measles/cases-outbreaks.html. However, U.S. residents also can be exposed to measles in the United States at venues with large numbers of international visitors, such as other tourist attractions and airports. This outbreak illustrates the continued importance of ensuring high measles vaccination coverage in the United States.

## Acknowledgments

California local health jurisdictions. Regina Chase, Giorgio Cosentino, Alex Espinosa, Natasha Espinosa, Ashraf Fadol, Carlos Gonzalez, Kristina Hsieh, Ruth Lopez, Chris Preas, Maria Salas, Diana Singh, Abiy Tadesse, Patricia Stoll, Kim Hansard,

Viral and Rickettsial Disease Laboratory, California Department of Public Health; Seema Jain, Kathleen Harriman, Cynthia Yen, Anthony Moore, Anna Clayton, Shrimati Datta, Rosie Glenn-Finer, Immunization Branch, California Department of Public Health.

1California Department of Public Health (Corresponding author: Jennifer Zipprich, jennifer.zipprich@cdph.ca.gov, 510-620-3848)

## References

1. CDC. U.S. multi-state measles outbreak, December 2014–January 2015. Atlanta, GA: US Department of Health and Human Services, CDC; 2015. Available at http://emergency.cdc.gov/han/han00376.asp.
2. Themed Entertainment Association, AECOM. Global attractions attendance report. Burbank, CA: Themed Entertainment Association, AECOM; 2014. Available at http://www.aecom.com/deployedfiles/Internet/Capabilities/Economics/_documents/ThemeMuseumIndex_2013.pdf .

**FIGURE. Number of confirmed measles cases (N = 110),* by date of rash onset — California, December 2014–February 2015**



* Reported to the California Department of Public Health as of February 11, 2015.

**Alternate Text:** The figure above is a histogram showing the number of confirmed measles cases (N = 110), by date of rash onset in California during December 2014-February 2015.

Use of trade names and commercial sources is for identification only and does not imply endorsement by the U.S. Department of Health and Human Services.

References to non-CDC sites on the Internet are provided as a service to *MMWR* readers and do not constitute or imply endorsement of these organizations or their programs by CDC or the U.S. Department of Health and Human Services. CDC is not responsible for the content of pages found at these sites. URL addresses listed in *MMWR* were current as of the date of publication.

All *MMWR* HTML versions of articles are electronic conversions from typeset documents. This conversion might result in character translation or format errors in the HTML version. Users are referred to the electronic PDF version (http://www.cdc.gov/mmwr) and/or the original *MMWR* paper copy for printable versions of official text, figures, and tables. An original paper copy of this issue can be obtained from the Superintendent of

Case 2:24-cv-00523-DJC-SCR    Document 51-1    Filed 07/16/25    Page 64 of 227

Documents, U.S. Government Printing Office, Washington, DC 20402-9371; telephone 202-512-1800. Contact GPO for current prices.

**Questions or messages regarding errors in formatting should be addressed to mmwrq@cdc.gov.

---

Page last reviewed: February 20, 2015
Page last updated: February 20, 2015
Content source: Centers for Disease Control and Prevention

---

Centers for Disease Control and Prevention   1600 Clifton Road Atlanta, GA 30329-4027, USA
800-CDC-INFO (800-232-4636) TTY: (888) 232-6348 - Contact CDC–INFO



# Exhibit 8

**2019-2020 7th Grade Immunization Assessment – Executive Summary**
**California Department of Public Health, Immunization Branch**

Immunization requirements for school entry help protect children and communities from vaccine-preventable diseases. Each autumn California schools are required to report to the California Department of Public Health (CDPH) the status of their students under state immunization requirement laws. In recent years there have been changes to these laws and how public health departments assist schools to implement them. To align with longstanding national recommendations, starting in 2019 students entering 7th grade in California have been required to receive two doses of Varicella (chickenpox) vaccine. In 2014 and 2015 Assembly Bill (AB) 2109 added requirements for exemptions to required immunizations based on personal beliefs. 2019-2020 was the fourth full school year that entrants have been subject to Senate Bill (SB) 277, which no longer permits them to receive such personal beliefs exemptions (PBEs).

Reported immunization rates remain at high levels but have decreased over the last few years. The proportion of students attending 7th grade in 2019-2020 reported to have received the tetanus, diphtheria and pertussis (Tdap) booster immunization was 97.3%, a 0.1 percentage point decrease from the 2019-2020 school year, a 1.1 percentage point decrease from the 2016-2017 school year, and a 0.8 percentage point increase over six years since 2013-2014.

Regarding the ongoing requirement for Tdap immunization, compared to 2018-2019, in 2019-2020 the proportion of 7th graders reported as:
- Lacking immunization for other reasons specified under SB 277 increased from 1.4% to 1.5%, with 1.0% reported as being enrolled in independent study programs.
- Having permanent medical exemptions remained at 0.4%.
- Conditional entrants because of a temporary medical exemption remained at 0.1%.
- Being overdue for immunization increased from 0.6% to 0.7%.

Regarding the new requirement for a second dose of Varicella vaccine, 97.1% of students were reported in 2019-2020 as having received two doses. The proportion of 7th graders in 2019-2020 reported as:
- Lacking immunization for other reasons specified under SB 277 was 1.0%, with 0.7% reported as being enrolled in independent study programs.
- Having permanent medical exemption was 0.9%, of which 0.4% were associated with a history of varicella disease.
- Conditional entrants was 0.1% or overdue was 0.7%, the same values as for Tdap immunization.

Because of SB 277, the proportion of 7th graders reported with PBEs for Tdap has remained at 0.0% since 2016-2017. Previously during measures specified in AB 2109, the rate of PBEs had decreased from 3.3% in 2013-2014 to 1.7% in 2015-2016.

CDPH and local health departments in California continue to closely monitor immunization coverage and to support schools in protecting the health of their students and communities. The effects on the issuance of medical exemptions from legislation signed in 2019, SB 277 and SB 714, will be assessable after full implementation in 2021 and future years.

**2019-2020 7th Grade Immunization Assessment – Technical Notes**

## Introduction

Each autumn all schools with 7th grades in California are required to report student compliance with California School Immunization Laws (California Health and Safety Code Sections 120325-120375). This report summarizes data for the 2019-2020 school year reported by public and private schools with 7th grades, both statewide (Table 1, Figures 1-8) and by county (Tables 2-4, Figure 8).

To align with longstanding national recommendations, starting in 2019 changes to the California Code of Regulations have required students entering 7th grade in California to receive two doses of Varicella (chickenpox) vaccine.

In the 2014-2015 and 2015-2016 school years, entrants were subject to Assembly Bill (AB) 2109, which added requirements for exemptions to required immunizations based on personal beliefs. 2019-2020 was the fourth full school year that entrants have been subject to Senate Bill (SB) 277, which no longer permits them to receive such personal beliefs exemptions (PBEs).

Two additional bills signed in 2019, SB 277 and SB 714, base criteria for medical exemptions to required immunizations on national standards of care. The effects of these laws on the issuance of medical exemptions will be assessable after full implementation in 2021 and future years.

## Methods

During the autumn of 2019, California schools registered with the California Department of Education reported data on 7th graders in the 2019-2020 school year to the California Department of Public Health (CDPH). Based on their reported immunization status, students were classified by school staff into the following categories:

- Students immunized with required vaccines:
  - 1 or more doses of Tetanus, diphtheria and pertussis booster (Tdap) vaccine
  - 2 or more doses of Varicella vaccine ['2+ Var'].
- Conditional entrants who had a temporary medical exemption (TME) to Tdap or Varicella vaccine or were not yet due for their second dose of Varicella vaccine.
- Students with a permanent medical exemption (PME) to either Tdap or Varicella vaccine. For Varicella vaccine, PMEs were further distinguished between
  - Physician (MD/DO) verification of varicella disease
  - Medical reasons other than varicella disease
- Other students lacking required immunizations: Under SB 277, entrants since the 2016-2017 school year have not been required to have immunizations if they attend:
  - A home-based private school or
  - An independent study program and do not receive classroom-based instruction.
  - In addition, students who have an individualized education program (IEP) may continue to receive all necessary services identified in their IEP regardless of their immunization status.
  Students in these settings were classified in this category if they lacked required immunizations and did not meet the criteria for other categories.
- Students overdue for required immunizations and subject to exclusion from school until the overdue requirement has been met.

Under SB 277, personal belief exemptions (PBEs) have no longer been an option for 7th graders since the 2016-2017 school year.

Due to rounding, total figures may differ from the sums of their components. Differences were calculated between exact figures, varying at times by 0.1% from the differences between rounded figures.

## Results

The number of 7th graders in California whose immunization status was reported was 519,454 in 2018-2019 and 505,017 in 2019-2020 (Table 1). The number of schools that reported was 4,749 in 2018-2019 and 4,750 in 2019-2020, and the number of schools that did not report decreased from 263 to 207 (Tables 1 and 2). The number of public schools that reported increased from 2,989 in 2018-2019 to 3,014 in 2019-2020 (Tables 1 and 2). The number of private schools that reported was 1,760 in 2018-2019 and 1,736 in 2019-2020. Private schools accounted for 7% (35,952 / 505,017) of all 7th graders about whom data was reported in 2019-2020, 37% (1,736 / 4,750) of all schools that reported data on 7th graders and 80% (165/207) of schools that did not report.

Figures 1-3 and 8 show trends for 7th grade students in all, public or private schools reported as having: been immunized with Tdap; PBEs; and PMEs. Figures 4-8 display for recent school years the distribution of major reporting categories for students reported from: all schools; public schools; and private schools.

Immunized with Tdap: Of 505,017 7th graders whose schools reported their status in 2019-2020, 505,017 (97.3%) have been immunized with Tdap, a decrease from the previous school year of 0.1 percentage points (difference of unrounded values) and an increase over the six school years since 2013-2014 of 0.8 percentage points (Tables 1 and 3, Figures 1 and 4). For counties reporting at least 35 students, the highest rates of at least 99% were reported in Inyo, San Benito, Monterey, and Imperial counties (Table 3.

In 2019-2020 12 (21%) counties in California reported rates of 7th graders with Tdap of less than 95% compared to 13 (22%) of 58 counties in 2019-2020 (Table 3, Figure 8). The rate in some of these counties is influenced by online or virtual schools that are based in the county but that may enroll children who reside in other counties (Box); many students in virtual schools qualify for exemptions from requirements under SB 277 (see Methods and below).

| % of Pupils Reported to Receive Tdap or Varicella | | | | | % of Pupils Reported to Attend Virtual Schools* |
|---|---|---|---|---|---|
| County | Vaccine | All Schools | Classroom-Based Schools | Virtual Schools | |
| El Dorado | Tdap | 88.8% | 96.5% | 27.3% | 11.2% |
| Sutter | Tdap | 82.8% | 88.6% | 34.3% | 10.7% |
| | Varicella | 88.0% | 92.3% | 51.7% | 10.7% |

As in past years, a higher proportion of students in public compared to private schools were reported as being immunized with Tdap (97.6% vs. 94.1%; difference of 3.5 percentage points) (Table 1, Figures 6 and 7). This gap is 0.2 percentage points larger compared with 2018-2019 (97.7% vs. 94.4%).

Immunized with Varicella vaccine: 2019-2020 was the first school year that two or more doses of Varicella vaccine has been required for 7th graders in California. 97.1% were reported as having completed a two-dose series in 2019-2020 (Table 1). For counties reporting at least 35 students, the highest rates of at least 99% were reported in San Benito, Kings, Merced, and Tulare.

In 2019-2020, 16 (28%) counties in California reported rates of 7th graders with Varicella immunization less than 95% (Table 4, Figure 9). A higher proportion of students in public compared to private schools were reported as being immunized with Varicella (97.3% vs.94.6%; difference of 2.7 percentage points) (Table 1).

Conditional entrants: Over the last four school years, the proportion of students reported as conditional entrants because of a temporary medical exemption for Tdap immunization has remained at 0.1% (Tables 1 and 3), whether in all schools or in public schools. The proportion of 7th graders reported as conditional entrants for Varicella immunization in 2019-2020 was 0.3% (Table 1), of which 0.1% were reported as having had a temporary medical exemption and 0.3% were not yet due for their second dose.

In 2019-2020, 0.4% of 7th graders in private schools were reported as conditional entrants for Tdap, compared with 0.6% in 2018-2019, while 0.7% of 7th graders in private schools were reported as conditional entrants for Varicella.

PMEs: The percentage of students with PMEs for Tdap decreased from 0.5% in 2018-2019 to 0.4% in 2019-2020 (Tables 1 and 3, Figures 3 and 4). In public schools, the number (but not the percentage) of students reported with PMEs for Tdap decreased from 1,942 (0.4%) to 1,769 (0.4%) (Figure 6), while for private schools, the number of students decreased from 536 (1.5%) to 483 (1.3%) (Figure 7).

The proportion of students reported with PMEs for Varicella was 0.9% (Tables 1 and 4), of whom 0.4% were reported as having had physician verification of varicella disease and 0.4% were reported as having had other reasons for their exemptions (Tables 1 and 4).

Other students lacking required immunizations: The proportion of 7th graders reported to be lacking Tdap immunization and to attend an independent study program and do not receive classroom-based instruction, attend a home-based private school, or receive services in an IEP increased for Tdap from 1.4% in 2018-2019 to 1.5% in 2019-2020 (Tables 1 and 3, Figure 4). Children reported as being enrolled in independent study programs continue to account for most students in this category (1.0%, or 5,222) (Table 1), and for the increase compared to the previous year (0.1 of the 0.1 percentage point increase). The proportion of students in this category increased from 1.3% to 1.5% in public schools (Table 1, Figure 6), and decreased from 2.0% to 1.8% in private schools (Figure 7).

The proportion of 7th graders in this category reported to be lacking two doses of Varicella vaccine was reported as 1.0% (Tables 1and 4, Figure 5), including 1.0% in public schools (Table 1), and 1.7% in private schools.

Nearly 70% of the number of children enrolled in independent study programs and lacking immunizations were reported from schools based in 10 counties: San Diego, Kern, Los Angeles, San Bernardino, Riverside, Sacramento, Sutter, El Dorado, Orange, and Fresno. Some of these students are enrolled in virtual schools and reside in other counties.

Overdue: The percentage of students reported as being overdue for Tdap immunization (Tables 1 and 3, Figure 4) increased from 0.6% in 2018-2019 to 0.7% in 2019-2020, including 0.5% (2,528) in public schools (Figure 6) and 2.4% (852) in private schools (Figure 7).

The percentage of students reported as being overdue for Varicella immunization (Tables 1 and 4) was 0.7%, including 0.6% (3,022) in public schools and 1.3% (468) in private schools.

Combined categories: 7th graders who are required to receive immunization are reported in three categories: having been immunized; conditional entrants; and being overdue for required doses. After rounding, the 7th graders who were reported in the sum of these three categories:
- For Tdap, decreased by 0.1 percentage points from 98.2% in 2018-2019 to 98.1% in 2019-2020.
- For Varicella vaccine was also 98.1% in 2019-2020.

Conversely, the sum of 7th graders reported as not having to receive a required vaccine because of PMEs or for other criteria specified in SB 277 was 1.9% in 2019-2020 for either Tdap or Varicella vaccine.

## Discussion

Reported immunization rates remain at high levels but have decreased over the last three school years. The proportion of students reported to enter 7th grade in California after receiving Tdap increased by 1.8 percentage points from 96.6% to 98.4% between the four school years from 2013-2014 to 2016-2017 and further decreased by 1.1 percentage points to 97.3% in 2019-2020. The number of 7th graders (505,017) whose status was reported in 2019-2020 remains at amongst the largest numbers since the Tdap requirement began in the 2011-2012 school year.

The total proportion of 7th graders reported in 2019-2020 as exempted from required immunizations was 1.9% for both Tdap and Varicella vaccine. However, the proportion lacking required immunizations under other criteria introduced in SB 277 was 0.5% higher for Tdap than Varicella vaccine (1.5% vs. 1.0%), while the proportion with PMEs was 0.5% higher for Varicella vaccine than Tdap (0.4% vs 0.9%). The proportion of 7th graders with a PME due to a history or varicella disease (0.4%) might represent much of the difference between the two vaccines. As CDPH receives aggregate counts from each school rather than records on each student, it is not clear how many pupils with PMEs to varicella vaccine:
- Because of a history of varicella disease were also exempted from Tdap vaccine because of criteria introduced in SB 277.
- For reasons other than a history of varicella disease (0.4% of cohort) also had a PME to Tdap (0.4%)
Future assessments will continue to follow the trends for these categories.

Most 7th graders exempted from Tdap vaccine because of criteria introduced in SB 277 (1.0% of 1.5% for Tdap, 0.7% of 1.0% for Varicella vaccine) continue to be reported as being enrolled in

independent study programs, representing an increase for Tdap from 2019-2020 of 0.1 percentage points.

Adolescents categorized at the beginning of the school year as overdue entrants for Tdap represented 0.7% of 7th graders reported in 2019-2020, compared with 0.4% in both 2016-2017 and 2015-2016. Ongoing efforts to educate schools and support immunization services might reduce the number of children in this category in the future.

Adolescents who have not been immunized remain at higher risk of contracting vaccine-preventable diseases. In 2019-2020, rates of immunization less than 95% were reported for Tdap in 12 (21%) counties in California and for Varicella vaccine in 16 (28%) counties. As an additional source of vulnerability, recent changes to California's school immunization laws have not been applicable to many high school students. Ongoing efforts to further improve adolescent immunization are warranted.

## Limitations

This report is subject to limitations that include:
- 207 California schools that might have had students in 7th grade, including 165 private schools and 42 public schools, did not report their immunization data; in the absence of reporting, CDPH does not know how many of these schools enrolled 7th graders this year or the immunization status of any 7th graders enrolled there. Local health departments continue to work with schools to increase reporting.
- As in previous years, additional private home schools that did not register with the California Department of Education may not have reported data to CDPH, which would result in continued underestimates of their enrollment.
- It is possible that some immunization records provided to schools have been incomplete. The presence of incomplete records would underestimate immunization coverage. Any improvements over time in completion of records since reporting would increase estimates of coverage.
- Changes over time in the quality of reporting by schools are another potential explanation for changes in immunization rates.

*For further information, please contact the CDPH Immunization Branch at SchoolAssessments@cdph.ca.gov.*

*For media inquiries, please contact CDPH Office of Public Affairs via e-mail cdphpress@cdph.ca.gov or phone 916-440-7259.*

**Figures**

Figure 1. Percentage of 7th Grade Students with 1 or More Doses of Tdap Vaccine, by School Type and School Year, 2011-2012 to 2019-2020

Figure 2. Percentage of 7th Grade Students with Personal Belief Exemptions (PBEs), by School Type and School Year, 2011-2012 to 2019-2020

Figure 3. Percentage of 7th Grade Students with Permanent Medical Exemptions (PMEs), by School Type and School Year, 2011-2012 to 2019-2020

Figure 4. Percentage of All 7th Grade Students by Reported Admission Status by School Year, 2013-2014 to 2019-2020

Figure 5. Percentage of All 7th Grade Students by Reported Admission Status by School Year, Tdap and Varicella Vaccine, 2019-2020

Figure 6. Percentage of Public School 7th Grade Students by Reported Admission Status by School Year, 2018-2019 and 2019-2020

Figure 7. Percentage of Private School 7th Grade Students by Reported Admission Status by School Year, 2018-2019 and 2019-2020

Figure 8. Map: 7th Grade Students with 1 or More Doses of Tdap Vaccine, by County, 2018-2019 and 2019-2020 School Years

Figure 9. Map: 7th Grade Students with 2 or More Doses of Varicella Vaccine, by County, 2019-2020 School Years

**Tables**

Table 1. 7th Grade Immunization Assessment Summary, 2018-2019 and 2019-2020 School Years

Table 2. Number and Percentage of Schools Reporting, by County and School Type

Table 3. Total Enrollment and Admission Status, Tdap Vaccine, 2019-2020 and 2018-2019, by County

Table 4. Total Enrollment and Admission Status, Varicella Vaccine, by County



**Figure 1. Percentage of 7th Grade Students with 1 or More Doses of Tdap Vaccine, by School Type and School Year, 2011-2012 to 2019-2020**



**Figure 2. Percentage of 7th Grade Students with Personal Beliefs Exemptions (PBEs) to 1 or More Doses of Tdap Vaccine, by School Type and  School Year, 2011-2012 to 2019-2020**



**Figure 3. Percentage of 7th Grade Students with Permanent Medical Exemptions (PMEs) to 1 or More Doses of Tdap Vaccine, by School Type and  School Year, 2011-2012 to 2019-2020**

**Figure 4. Percentage of All 7th Grade Students by Reported Admission Status Related to Tdap Vaccine by School Year, 2013-2014 to 2019-2020.** In the 2014-2015 and 2015-2016 school years, entrants were subject to AB 2109. In the 2016-2017 school year and forward, entrants have been subject to SB 277.

*Other children lacking required immunizations under criteria specified in SB 277.



**Figure 5. Percentage of All 7th Grade Students by Reported Admission Status by School Year, Tdap and Varicella Vaccine, 2019-2020**



*Other children lacking required immunizations under criteria specified in SB 277

**Figure 6. Percentage of Public School 7th Grade Students with 1 or More Doses of Tdap Vaccine, by Reported Admission Status by School Year, 2018-2019 and 2019-2020**



*Other children lacking required immunizations under criteria specified in SB 277.

**Figure 7. Percentage of Private School 7th Grade Students with 1 or More Doses of Tdap Vaccine, by Reported Admission Status by School Year, 2018-2019 and 2019-2020**



**Figure 8.  7th Grade Students with 1 or More Doses of Tdap Vaccine, by County, 2018-2019 and 2019-2020 School Years**



**Figure 9.  7th Grade Students with 2 or More Doses of Varicella Vaccine, by County, 2019-2020 School Year**

**Table 1. 7th Grade Immunization Assessment Summary, 2018-2019 and 2019-2020 School Years**

| | 2019-2020 | | | 2018-2019 | | | 1-Year Percentage Point Change | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | All | Public | Private | All | Public | Private | All | Public | Private |
| Number of Schools | 4,750 | 3,014 | 1,736 | 4,749 | 2,989 | 1,760 | | | |
| Number of Students | 505,017 | 469,065 | 35,952 | 519,454 | 483,429 | 36,025 | | | |
| **Received Tdap*** | 97.3% | 97.6% | 94.1% | 97.5% | 97.7% | 94.4% | -0.1% | -0.1% | -0.4% |
| Conditional Entrants for Tdap | 0.1% | 0.1% | 0.4% | 0.1% | 0.1% | 0.6% | -0.1% | -0.1% | -0.2% |
| Permanent Medical Exemptions for Tdap | 0.4% | 0.4% | 1.3% | 0.5% | 0.4% | 1.5% | 0.0% | 0.0% | -0.1% |
| Personal Belief Exemptions for Tdap | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking Tdap | 1.5% | 1.5% | 1.8% | 1.4% | 1.3% | 2.0% | 0.1% | 0.2% | -0.1% |
| *Independent Study* | *1.0%* | *1.1%* | *0.1%* | *1.0%* | *1.0%* | *0.0%* | *0.1%* | *0.1%* | *0.1%* |
| *IEP Services* | *0.3%* | *0.3%* | *0.5%* | *0.3%* | *0.3%* | *0.6%* | *0.0%* | *0.1%* | *-0.1%* |
| *Home-Based Private* | *0.1%* | *0.0%* | *1.3%* | *0.1%* | *0.0%* | *1.4%* | *0.0%* | *0.0%* | *-0.1%* |
| Overdue for Tdap Vaccine | 0.7% | 0.5% | 2.4% | 0.6% | 0.5% | 1.5% | 0.1% | 0.0% | 0.8% |
| **Received 2+ Varicella**** | 97.1% | 97.3% | 94.6% | | | | | | |
| Conditional Entrants for Varicella | 0.3% | 0.3% | 0.7% | | | | | | |
| Permanent Medical Exemptions for Varicella | 0.9% | 0.8% | 1.8% | | | | | | |
| *Medical Reason Other Than Varicella* | *0.4%* | *0.4%* | *1.3%* | | | | | | |
| *MD/DO Verification of Varicella Disease* | *0.4%* | *0.4%* | *0.5%* | | | | | | |
| Personal Belief Exemptions for Varicella | 0.0% | 0.0% | 0.0% | | | | | | |
| Others Lacking Varicella† | 1.0% | 1.0% | 1.7% | | | | | | |
| *Independent Study* | *0.7%* | *0.7%* | *0.1%* | | | | | | |
| *IEP Services* | *0.2%* | *0.2%* | *0.4%* | | | | | | |
| *Home-Based Private* | *0.1%* | *0.0%* | *1.3%* | | | | | | |
| Overdue for 2 Doses of Varicella Vaccine | 0.7% | 0.6% | 1.3% | | | | | | |

\* Received pertussis-containing immunization on or after 7th birthday.

\*\* Received 2 doses of varicella vaccine

7TH GRADE ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 2: NUMBER AND PERCENTAGE OF SCHOOLS REPORTING
BY COUNTY AND SCHOOL TYPE

| COUNTY | ALL | | | PUBLIC | | | PRIVATE | | |
|---|---|---|---|---|---|---|---|---|---|
| | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING |
| STATE TOTAL | 4,957 | 4,750 | 95.8% | 3,056 | 3,014 | 98.6% | 1,901 | 1,736 | 91.3% |
| ALAMEDA | 184 | 182 | 98.9% | 106 | 106 | 100.0% | 78 | 76 | 97.4% |
| ALPINE | 1 | 1 | 100.0% | 1 | 1 | 100.0% | 0 | 0 | 0.0% |
| AMADOR | 3 | 3 | 100.0% | 2 | 2 | 100.0% | 1 | 1 | 100.0% |
| BUTTE | 47 | 45 | 95.7% | 38 | 37 | 97.4% | 9 | 8 | 88.9% |
| CALAVERAS | 9 | 5 | 55.6% | 5 | 5 | 100.0% | 4 | 0 | 0.0% |
| COLUSA | 6 | 6 | 100.0% | 5 | 5 | 100.0% | 1 | 1 | 100.0% |
| CONTRA COSTA | 151 | 138 | 91.4% | 77 | 76 | 98.7% | 74 | 62 | 83.8% |
| DEL NORTE | 8 | 7 | 87.5% | 6 | 6 | 100.0% | 2 | 1 | 50.0% |
| EL DORADO | 38 | 38 | 100.0% | 26 | 26 | 100.0% | 12 | 12 | 100.0% |
| FRESNO | 113 | 113 | 100.0% | 91 | 91 | 100.0% | 22 | 22 | 100.0% |
| GLENN | 14 | 14 | 100.0% | 12 | 12 | 100.0% | 2 | 2 | 100.0% |
| HUMBOLDT | 50 | 50 | 100.0% | 45 | 45 | 100.0% | 5 | 5 | 100.0% |
| IMPERIAL | 30 | 27 | 90.0% | 22 | 22 | 100.0% | 8 | 5 | 62.5% |
| INYO | 8 | 7 | 87.5% | 6 | 6 | 100.0% | 2 | 1 | 50.0% |
| KERN | 108 | 108 | 100.0% | 84 | 84 | 100.0% | 24 | 24 | 100.0% |
| KINGS | 30 | 29 | 96.7% | 24 | 24 | 100.0% | 6 | 5 | 83.3% |
| LAKE | 23 | 19 | 82.6% | 17 | 16 | 94.1% | 6 | 3 | 50.0% |
| LASSEN | 12 | 12 | 100.0% | 12 | 12 | 100.0% | 0 | 0 | 0.0% |
| LOS ANGELES | 1,117 | 1,011 | 90.5% | 587 | 567 | 96.6% | 530 | 444 | 83.8% |
| MADERA | 34 | 28 | 82.4% | 30 | 26 | 86.7% | 4 | 2 | 50.0% |
| MARIN | 52 | 51 | 98.1% | 23 | 23 | 100.0% | 29 | 28 | 96.6% |
| MARIPOSA | 9 | 8 | 88.9% | 8 | 8 | 100.0% | 1 | 0 | 0.0% |
| MENDOCINO | 27 | 24 | 88.9% | 23 | 20 | 87.0% | 4 | 4 | 100.0% |
| MERCED | 48 | 39 | 81.3% | 34 | 30 | 88.2% | 14 | 9 | 64.3% |
| MODOC | 4 | 4 | 100.0% | 4 | 4 | 100.0% | 0 | 0 | 0.0% |
| MONO | 5 | 5 | 100.0% | 4 | 4 | 100.0% | 1 | 1 | 100.0% |
| MONTEREY | 52 | 52 | 100.0% | 36 | 36 | 100.0% | 16 | 16 | 100.0% |
| NAPA | 24 | 24 | 100.0% | 11 | 11 | 100.0% | 13 | 13 | 100.0% |
| NEVADA | 24 | 24 | 100.0% | 18 | 18 | 100.0% | 6 | 6 | 100.0% |

7TH GRADE ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 2: NUMBER AND PERCENTAGE OF SCHOOLS REPORTING
BY COUNTY AND SCHOOL TYPE

| COUNTY | ALL | | | PUBLIC | | | PRIVATE | | |
|---|---|---|---|---|---|---|---|---|---|
| | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING |
| STATE TOTAL | 4,957 | 4,750 | 95.8% | 3,056 | 3,014 | 98.6% | 1,901 | 1,736 | 91.3% |
| ORANGE | 292 | 292 | 100.0% | 135 | 135 | 100.0% | 157 | 157 | 100.0% |
| PLACER | 59 | 59 | 100.0% | 44 | 44 | 100.0% | 15 | 15 | 100.0% |
| PLUMAS | 7 | 7 | 100.0% | 5 | 5 | 100.0% | 2 | 2 | 100.0% |
| RIVERSIDE | 207 | 196 | 94.7% | 132 | 132 | 100.0% | 75 | 64 | 85.3% |
| SACRAMENTO | 178 | 178 | 100.0% | 115 | 115 | 100.0% | 63 | 63 | 100.0% |
| SAN BENITO | 20 | 20 | 100.0% | 15 | 15 | 100.0% | 5 | 5 | 100.0% |
| SAN BERNARDINO | 220 | 220 | 100.0% | 147 | 147 | 100.0% | 73 | 73 | 100.0% |
| SAN DIEGO | 378 | 378 | 100.0% | 241 | 241 | 100.0% | 137 | 137 | 100.0% |
| SAN FRANCISCO | 104 | 101 | 97.1% | 28 | 28 | 100.0% | 76 | 73 | 96.1% |
| SAN JOAQUIN | 159 | 159 | 100.0% | 135 | 135 | 100.0% | 24 | 24 | 100.0% |
| SAN LUIS OBISPO | 33 | 33 | 100.0% | 20 | 20 | 100.0% | 13 | 13 | 100.0% |
| SAN MATEO | 105 | 105 | 100.0% | 50 | 50 | 100.0% | 55 | 55 | 100.0% |
| SANTA BARBARA | 61 | 61 | 100.0% | 35 | 35 | 100.0% | 26 | 26 | 100.0% |
| SANTA CLARA | 217 | 217 | 100.0% | 104 | 104 | 100.0% | 113 | 113 | 100.0% |
| SANTA CRUZ | 47 | 42 | 89.4% | 26 | 25 | 96.2% | 21 | 17 | 81.0% |
| SHASTA | 68 | 68 | 100.0% | 54 | 54 | 100.0% | 14 | 14 | 100.0% |
| SIERRA | 2 | 2 | 100.0% | 2 | 2 | 100.0% | 0 | 0 | 0.0% |
| SISKIYOU | 27 | 27 | 100.0% | 24 | 24 | 100.0% | 3 | 3 | 100.0% |
| SOLANO | 55 | 46 | 83.6% | 34 | 34 | 100.0% | 21 | 12 | 57.1% |
| SONOMA | 88 | 80 | 90.9% | 57 | 54 | 94.7% | 31 | 26 | 83.9% |
| STANISLAUS | 70 | 70 | 100.0% | 53 | 53 | 100.0% | 17 | 17 | 100.0% |
| SUTTER | 30 | 30 | 100.0% | 26 | 26 | 100.0% | 4 | 4 | 100.0% |
| TEHAMA | 29 | 24 | 82.8% | 24 | 22 | 91.7% | 5 | 2 | 40.0% |
| TRINITY | 8 | 8 | 100.0% | 8 | 8 | 100.0% | 0 | 0 | 0.0% |
| TULARE | 95 | 89 | 93.7% | 79 | 77 | 97.5% | 16 | 12 | 75.0% |
| TUOLUMNE | 17 | 16 | 94.1% | 12 | 12 | 100.0% | 5 | 4 | 80.0% |
| VENTURA | 106 | 105 | 99.1% | 60 | 60 | 100.0% | 46 | 45 | 97.8% |
| YOLO | 29 | 29 | 100.0% | 21 | 21 | 100.0% | 8 | 8 | 100.0% |
| YUBA | 15 | 14 | 93.3% | 13 | 13 | 100.0% | 2 | 1 | 50.0% |

7TH GRADE IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 3: TOTAL ENROLLMENT AND ADMISSION STATUS, TDAP VACCINE, 2019-2020 AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | ENTRANTS WITH TDAP VACCINE | CONDITIONAL ENTRANTS | ENTRANTS WITH PME | OTHERS LACKING TDAP VACCINE† | OVERDUE FOR TDAP VACCINE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 505,017 | 97.3% | 0.1% | 0.4% | 1.5% | 0.7% |
| | 2018-19 | 519,454 | 97.5% | 0.1% | 0.5% | 1.4% | 0.6% |
| ALAMEDA | 2019-20 | 18,849 | 98.0% | 0.1% | 0.3% | 0.2% | 1.5% |
| | 2018-19 | 19,471 | 98.2% | 0.1% | 0.2% | 0.4% | 1.0% |
| ALPINE | 2019-20 | <35* | --* | --* | --* | --* | --* |
| | 2018-19 | <35* | --* | --* | --* | --* | --* |
| AMADOR | 2019-20 | 325 | 94.2% | 0.0% | 1.8% | 3.4% | 0.6% |
| | 2018-19 | 341 | 95.6% | 0.6% | 1.2% | 1.2% | 1.5% |
| BUTTE | 2019-20 | 2,396 | 97.3% | 0.2% | 0.6% | 1.3% | 0.6% |
| | 2018-19 | 2,617 | 96.5% | 0.2% | 0.9% | 1.8% | 0.5% |
| CALAVERAS | 2019-20 | 403 | 95.0% | 0.0% | 1.5% | 2.7% | 0.7% |
| | 2018-19 | 415 | 92.0% | 0.7% | 0.7% | 5.8% | 0.7% |
| COLUSA | 2019-20 | 394 | 98.5% | 0.0% | 0.0% | 0.0% | 1.5% |
| | 2018-19 | 399 | 98.5% | 0.0% | 0.0% | 0.0% | 1.5% |
| CONTRA COSTA | 2019-20 | 14,765 | 98.3% | 0.0% | 0.3% | 0.5% | 0.8% |
| | 2018-19 | 15,330 | 98.7% | 0.2% | 0.3% | 0.6% | 0.3% |
| DEL NORTE | 2019-20 | 331 | 97.3% | 0.0% | 0.0% | 0.3% | 2.4% |
| | 2018-19 | 351 | 97.7% | 0.0% | 0.6% | 1.7% | 0.0% |
| EL DORADO | 2019-20 | 2,644 | 88.8% | 0.7% | 1.5% | 8.9% | 0.2% |
| | 2018-19 | 2,392 | 94.3% | 0.6% | 1.4% | 3.6% | 0.2% |
| FRESNO | 2019-20 | 15,839 | 98.3% | 0.0% | 0.1% | 1.3% | 0.2% |
| | 2018-19 | 16,432 | 98.1% | 0.1% | 0.3% | 1.1% | 0.4% |
| GLENN | 2019-20 | 442 | 94.3% | 0.0% | 0.0% | 5.0% | 0.7% |
| | 2018-19 | 504 | 99.0% | 0.0% | 0.4% | 0.0% | 0.6% |
| HUMBOLDT | 2019-20 | 1,380 | 90.7% | 0.7% | 3.2% | 1.5% | 3.9% |
| | 2018-19 | 1,455 | 93.7% | 0.3% | 2.8% | 0.8% | 2.3% |
| IMPERIAL | 2019-20 | 2,935 | 99.1% | 0.1% | 0.0% | 0.2% | 0.5% |
| | 2018-19 | 3,092 | 99.1% | 0.1% | 0.3% | 0.1% | 0.4% |
| INYO | 2019-20 | 213 | 98.6% | 0.0% | 0.9% | 0.5% | 0.0% |
| | 2018-19 | 236 | ≥99.5% | ≤0.5% | 0.0% | 0.0% | 0.0% |
| KERN | 2019-20 | 15,219 | 94.0% | 0.0% | 0.2% | 5.2% | 0.5% |
| | 2018-19 | 15,588 | 96.1% | 0.0% | 0.2% | 3.2% | 0.4% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Tdap immunization.

* County reporting fewer than 35 children in 7th grade.

7TH GRADE IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 3: TOTAL ENROLLMENT AND ADMISSION STATUS, TDAP VACCINE, 2019-2020 AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | ENTRANTS WITH TDAP VACCINE | CONDITIONAL ENTRANTS | ENTRANTS WITH PME | OTHERS LACKING TDAP VACCINE† | OVERDUE FOR TDAP VACCINE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 505,017 | 97.3% | 0.1% | 0.4% | 1.5% | 0.7% |
| | 2018-19 | 519,454 | 97.5% | 0.1% | 0.5% | 1.4% | 0.6% |
| KINGS | 2019-20 | 2,294 | 98.7% | 0.2% | 0.0% | 1.0% | 0.1% |
| | 2018-19 | 2,326 | 99.1% | 0.0% | 0.1% | 0.0% | 0.9% |
| LAKE | 2019-20 | 736 | 95.4% | 0.1% | 1.1% | 2.2% | 1.2% |
| | 2018-19 | 750 | 96.5% | 0.1% | 0.7% | 1.9% | 0.8% |
| LASSEN | 2019-20 | 288 | 95.1% | 0.0% | 3.8% | 1.0% | 0.0% |
| | 2018-19 | 286 | 95.5% | 0.0% | 0.3% | 2.8% | 1.4% |
| LOS ANGELES | 2019-20 | 119,392 | 98.0% | 0.1% | 0.3% | 0.9% | 0.7% |
| | 2018-19 | 120,491 | 97.8% | 0.1% | 0.3% | 1.2% | 0.6% |
| MADERA | 2019-20 | 2,014 | 96.9% | 0.0% | 0.2% | 1.1% | 1.7% |
| | 2018-19 | 2,656 | 96.6% | 0.0% | 0.2% | 0.8% | 2.4% |
| MARIN | 2019-20 | 3,245 | 97.7% | 0.4% | 1.3% | 0.3% | 0.4% |
| | 2018-19 | 3,289 | 97.7% | 0.4% | 0.9% | 0.2% | 0.7% |
| MARIPOSA | 2019-20 | 130 | 98.5% | 0.0% | 0.8% | 0.8% | 0.0% |
| | 2018-19 | 164 | 90.9% | 1.2% | 0.6% | 6.1% | 1.2% |
| MENDOCINO | 2019-20 | 1,039 | 95.0% | 0.5% | 1.1% | 1.6% | 1.8% |
| | 2018-19 | 1,045 | 92.8% | 0.5% | 2.3% | 2.3% | 2.1% |
| MERCED | 2019-20 | 4,597 | 98.5% | 0.0% | 0.1% | 0.9% | 0.5% |
| | 2018-19 | 5,104 | 98.8% | 0.0% | 0.1% | 0.8% | 0.2% |
| MODOC | 2019-20 | 102 | 96.1% | 0.0% | 1.0% | 0.0% | 2.9% |
| | 2018-19 | 128 | 98.4% | 0.0% | 1.6% | 0.0% | 0.0% |
| MONO | 2019-20 | 125 | 97.6% | 0.0% | 2.4% | 0.0% | 0.0% |
| | 2018-19 | 145 | 97.9% | 0.0% | 1.4% | 0.0% | 0.7% |
| MONTEREY | 2019-20 | 6,397 | 99.2% | 0.0% | 0.4% | 0.2% | 0.3% |
| | 2018-19 | 7,016 | 99.5% | 0.1% | 0.3% | 0.1% | 0.1% |
| NAPA | 2019-20 | 1,682 | 98.5% | 0.0% | 0.3% | 0.9% | 0.4% |
| | 2018-19 | 1,870 | 97.0% | 0.2% | 0.5% | 1.6% | 0.7% |
| NEVADA | 2019-20 | 842 | 89.2% | 0.7% | 5.5% | 4.3% | 0.4% |
| | 2018-19 | 821 | 89.8% | 1.3% | 3.7% | 4.9% | 0.4% |
| ORANGE | 2019-20 | 39,699 | 97.9% | 0.1% | 0.5% | 1.0% | 0.5% |
| | 2018-19 | 41,320 | 98.2% | 0.2% | 0.6% | 0.7% | 0.3% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.
^ Overdue for Tdap immunization.
* County reporting fewer than 35 children in 7th grade.

7TH GRADE IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 3: TOTAL ENROLLMENT AND ADMISSION STATUS, TDAP VACCINE, 2019-2020 AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | ENTRANTS WITH TDAP VACCINE | CONDITIONAL ENTRANTS | ENTRANTS WITH PME | OTHERS LACKING TDAP VACCINE† | OVERDUE FOR TDAP VACCINE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 505,017 | 97.3% | 0.1% | 0.4% | 1.5% | 0.7% |
| | 2018-19 | 519,454 | 97.5% | 0.1% | 0.5% | 1.4% | 0.6% |
| PLACER | 2019-20 | 5,990 | 95.9% | 0.1% | 1.4% | 2.0% | 0.6% |
| | 2018-19 | 6,145 | 96.2% | 0.3% | 1.4% | 1.4% | 0.7% |
| PLUMAS | 2019-20 | 197 | 98.0% | 0.0% | 1.0% | 1.0% | 0.0% |
| | 2018-19 | 180 | 94.4% | 1.1% | 2.8% | 1.1% | 0.6% |
| RIVERSIDE | 2019-20 | 35,413 | 97.6% | 0.0% | 0.3% | 1.5% | 0.5% |
| | 2018-19 | 35,923 | 98.7% | 0.1% | 0.4% | 0.5% | 0.4% |
| SACRAMENTO | 2019-20 | 19,967 | 96.9% | 0.1% | 0.6% | 2.1% | 0.4% |
| | 2018-19 | 20,558 | 96.5% | 0.2% | 0.7% | 2.1% | 0.5% |
| SAN BENITO | 2019-20 | 955 | 99.7% | 0.0% | 0.2% | 0.1% | 0.0% |
| | 2018-19 | 986 | 99.6% | 0.0% | 0.2% | 0.0% | 0.2% |
| SAN BERNARDINO | 2019-20 | 32,605 | 96.6% | 0.0% | 0.2% | 2.4% | 0.8% |
| | 2018-19 | 33,380 | 96.9% | 0.0% | 0.2% | 2.1% | 0.8% |
| SAN DIEGO | 2019-20 | 41,159 | 96.2% | 0.1% | 0.7% | 2.8% | 0.2% |
| | 2018-19 | 42,454 | 96.0% | 0.1% | 0.9% | 2.6% | 0.5% |
| SAN FRANCISCO | 2019-20 | 6,118 | 96.7% | 0.1% | 0.3% | 0.5% | 2.4% |
| | 2018-19 | 6,076 | 96.8% | 0.1% | 0.2% | 0.4% | 2.5% |
| SAN JOAQUIN | 2019-20 | 12,155 | 97.6% | 0.0% | 0.2% | 1.6% | 0.5% |
| | 2018-19 | 12,541 | 98.1% | 0.1% | 0.2% | 1.0% | 0.6% |
| SAN LUIS OBISPO | 2019-20 | 3,151 | 97.3% | 0.0% | 1.0% | 1.0% | 0.7% |
| | 2018-19 | 3,056 | 97.6% | 0.1% | 1.2% | 0.9% | 0.1% |
| SAN MATEO | 2019-20 | 8,234 | 97.8% | 0.1% | 0.3% | 0.5% | 1.3% |
| | 2018-19 | 8,618 | 98.4% | 0.2% | 0.3% | 0.0% | 1.0% |
| SANTA BARBARA | 2019-20 | 5,670 | 98.1% | 0.1% | 0.9% | 0.7% | 0.2% |
| | 2018-19 | 5,733 | 98.2% | 0.2% | 0.7% | 0.8% | 0.1% |
| SANTA CLARA | 2019-20 | 22,852 | 98.7% | 0.1% | 0.3% | 0.3% | 0.6% |
| | 2018-19 | 24,120 | 98.9% | 0.2% | 0.4% | 0.2% | 0.4% |
| SANTA CRUZ | 2019-20 | 3,539 | 91.5% | 0.0% | 1.5% | 6.3% | 0.7% |
| | 2018-19 | 3,620 | 91.6% | 0.3% | 1.4% | 6.0% | 0.7% |
| SHASTA | 2019-20 | 2,130 | 93.3% | 0.4% | 1.7% | 3.5% | 1.0% |
| | 2018-19 | 2,260 | 91.6% | 0.8% | 1.5% | 5.1% | 1.0% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.
^ Overdue for Tdap immunization.
* County reporting fewer than 35 children in 7th grade.

7TH GRADE IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 3: TOTAL ENROLLMENT AND ADMISSION STATUS, TDAP VACCINE, 2019-2020 AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | ENTRANTS WITH TDAP VACCINE | CONDITIONAL ENTRANTS | ENTRANTS WITH PME | OTHERS LACKING TDAP VACCINE† | OVERDUE FOR TDAP VACCINE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 505,017 | 97.3% | 0.1% | 0.4% | 1.5% | 0.7% |
| | 2018-19 | 519,454 | 97.5% | 0.1% | 0.5% | 1.4% | 0.6% |
| SIERRA | 2019-20 | <35* | --* | --* | --* | --* | --* |
| | 2018-19 | <35* | --* | --* | --* | --* | --* |
| SISKIYOU | 2019-20 | 499 | 96.8% | 0.2% | 0.6% | 1.6% | 0.8% |
| | 2018-19 | 491 | 92.1% | 1.2% | 0.6% | 5.1% | 1.0% |
| SOLANO | 2019-20 | 5,130 | 98.8% | 0.0% | 0.4% | 0.1% | 0.6% |
| | 2018-19 | 5,169 | 99.4% | 0.0% | 0.2% | 0.3% | 0.1% |
| SONOMA | 2019-20 | 5,422 | 95.9% | 0.2% | 1.4% | 1.6% | 0.9% |
| | 2018-19 | 5,794 | 94.5% | 0.3% | 1.5% | 2.1% | 1.6% |
| STANISLAUS | 2019-20 | 8,837 | 97.6% | 0.0% | 0.4% | 0.3% | 1.6% |
| | 2018-19 | 9,003 | 97.5% | 0.1% | 0.3% | 1.8% | 0.3% |
| SUTTER | 2019-20 | 1,927 | 82.8% | 0.0% | 0.4% | 16.7% | 0.2% |
| | 2018-19 | 2,039 | 76.5% | 0.1% | 0.1% | 20.8% | 2.5% |
| TEHAMA | 2019-20 | 870 | 98.0% | 0.0% | 0.7% | 0.2% | 1.0% |
| | 2018-19 | 928 | 95.3% | 0.3% | 1.6% | 1.0% | 1.8% |
| TRINITY | 2019-20 | 115 | 92.2% | 0.0% | 4.3% | 2.6% | 0.9% |
| | 2018-19 | 164 | 95.7% | 0.0% | 4.3% | 0.0% | 0.0% |
| TULARE | 2019-20 | 8,232 | 98.2% | 0.0% | 0.6% | 0.9% | 0.2% |
| | 2018-19 | 8,183 | 99.3% | 0.0% | 0.1% | 0.6% | 0.0% |
| TUOLUMNE | 2019-20 | 481 | 93.8% | 0.2% | 1.5% | 3.3% | 1.2% |
| | 2018-19 | 543 | 90.6% | 1.7% | 1.7% | 4.4% | 1.7% |
| VENTURA | 2019-20 | 11,004 | 97.0% | 0.2% | 0.8% | 1.2% | 0.8% |
| | 2018-19 | 11,685 | 97.6% | 0.1% | 0.6% | 1.3% | 0.3% |
| YOLO | 2019-20 | 2,416 | 96.9% | 0.1% | 0.7% | 0.6% | 1.7% |
| | 2018-19 | 2,591 | 97.6% | 1.4% | 0.8% | 0.1% | 0.2% |
| YUBA | 2019-20 | 1,194 | 96.9% | 0.0% | 0.2% | 1.6% | 1.3% |
| | 2018-19 | 1,133 | 96.7% | 0.0% | 0.4% | 1.9% | 1.0% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.
^ Overdue for Tdap immunization.
* County reporting fewer than 35 children in 7th grade.

7TH GRADE ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 4: TOTAL ENROLLMENT AND ADMISSION STATUS, VARICELLA VACCINE,
BY COUNTY

| | TOTAL STUDENTS | ENTRANTS WITH VARICELLA VACCINE | CONDITIONAL ENTRANTS TO VARICELLA VACCINE | ENTRANTS WITH PME TO VARICELLA | OTHERS LACKING VARICELLA VACCINE† | OVERDUE FOR VARICELLA VACCINE^ |
|---|---|---|---|---|---|---|
| | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 505,026 | 97.1% | 0.3% | 0.9% | 1.0% | 0.7% |
| COUNTY | | | | | | |
| ALAMEDA | 18,849 | 97.1% | 0.3% | 0.7% | 0.1% | 1.8% |
| ALPINE | <35* | --* | --* | --* | --* | --* |
| AMADOR | 325 | 92.3% | 1.8% | 2.2% | 3.7% | 0.0% |
| BUTTE | 2,396 | 97.1% | 0.5% | 1.0% | 0.7% | 0.8% |
| CALAVERAS | 403 | 97.0% | 0.0% | 1.5% | 1.0% | 0.5% |
| COLUSA | 394 | 96.7% | 0.0% | 0.8% | 0.0% | 2.5% |
| CONTRA COSTA | 14,765 | 97.9% | 0.3% | 0.9% | 0.4% | 0.5% |
| DEL NORTE | 331 | 97.6% | 0.3% | 0.0% | 0.3% | 1.8% |
| EL DORADO | 2,644 | 91.7% | 0.8% | 1.6% | 5.4% | 0.5% |
| FRESNO | 15,839 | 98.5% | 0.2% | 0.4% | 0.7% | 0.2% |
| GLENN | 442 | 94.8% | 0.2% | 0.5% | 3.8% | 0.7% |
| HUMBOLDT | 1,380 | 92.5% | 1.7% | 3.4% | 0.7% | 1.7% |
| IMPERIAL | 2,935 | 98.2% | 0.5% | 0.3% | 0.1% | 0.9% |
| INYO | 213 | 97.2% | 0.5% | 1.9% | 0.5% | 0.0% |
| KERN | 15,219 | 95.4% | 0.2% | 0.4% | 3.5% | 0.5% |
| KINGS | 2,294 | 99.4% | 0.2% | 0.0% | 0.3% | 0.1% |
| LAKE | 736 | 94.8% | 0.7% | 2.2% | 1.0% | 1.4% |
| LASSEN | 288 | 95.1% | 0.0% | 4.2% | 0.7% | 0.0% |
| LOS ANGELES | 119,392 | 97.4% | 0.3% | 0.7% | 0.7% | 0.9% |
| MADERA | 2,014 | 97.4% | 0.1% | 0.3% | 0.7% | 1.4% |
| MARIN | 3,245 | 94.9% | 1.1% | 3.3% | 0.3% | 0.4% |
| MARIPOSA | 130 | 94.6% | 3.1% | 1.5% | 0.8% | 0.0% |
| MENDOCINO | 1,039 | 94.1% | 1.1% | 1.6% | 1.3% | 1.9% |
| MERCED | 4,597 | 99.1% | 0.3% | 0.2% | 0.2% | 0.2% |
| MODOC | 102 | 96.1% | 1.0% | 1.0% | 0.0% | 2.0% |
| MONO | 125 | 97.6% | 0.0% | 2.4% | 0.0% | 0.0% |
| MONTEREY | 6,397 | 98.6% | 0.3% | 0.7% | 0.1% | 0.4% |
| NAPA | 1,682 | 97.3% | 0.2% | 1.2% | 1.0% | 0.3% |
| NEVADA | 842 | 88.6% | 1.5% | 6.3% | 3.0% | 0.6% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Varicella vaccine.

* County reporting fewer than 35 children in 7th grade.

7TH GRADE ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 4: TOTAL ENROLLMENT AND ADMISSION STATUS, VARICELLA VACCINE,
BY COUNTY

| | TOTAL STUDENTS | ENTRANTS WITH VARICELLA VACCINE | CONDITIONAL ENTRANTS TO VARICELLA VACCINE | ENTRANTS WITH PME TO VARICELLA | OTHERS LACKING VARICELLA VACCINE† | OVERDUE FOR VARICELLA VACCINE^ |
|---|---|---|---|---|---|---|
| | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 505,026 | 97.1% | 0.3% | 0.9% | 1.0% | 0.7% |
| COUNTY | | | | | | |
| ORANGE | 39,699 | 97.5% | 0.5% | 1.0% | 0.7% | 0.3% |
| PLACER | 5,990 | 95.0% | 0.6% | 1.8% | 1.7% | 0.9% |
| PLUMAS | 197 | 96.4% | 1.5% | 2.0% | 0.0% | 0.0% |
| RIVERSIDE | 35,413 | 97.3% | 0.2% | 0.6% | 0.9% | 0.9% |
| SACRAMENTO | 19,967 | 96.5% | 0.4% | 1.1% | 1.6% | 0.3% |
| SAN BENITO | 955 | 99.5% | 0.1% | 0.3% | 0.1% | 0.0% |
| SAN BERNARDINO | 32,605 | 97.0% | 0.2% | 0.3% | 1.8% | 0.7% |
| SAN DIEGO | 41,159 | 96.4% | 0.4% | 1.2% | 1.9% | 0.2% |
| SAN FRANCISCO | 6,118 | 96.6% | 0.4% | 0.9% | 0.2% | 1.9% |
| SAN JOAQUIN | 12,155 | 97.7% | 0.1% | 0.4% | 1.1% | 0.8% |
| SAN LUIS OBISPO | 3,151 | 96.7% | 0.3% | 1.6% | 0.5% | 0.9% |
| SAN MATEO | 8,234 | 98.0% | 0.4% | 1.0% | 0.2% | 0.4% |
| SANTA BARBARA | 5,670 | 97.4% | 0.5% | 1.2% | 0.5% | 0.4% |
| SANTA CLARA | 22,852 | 97.7% | 0.3% | 1.4% | 0.3% | 0.4% |
| SANTA CRUZ | 3,539 | 93.9% | 0.5% | 2.5% | 2.9% | 0.3% |
| SHASTA | 2,130 | 92.8% | 1.0% | 2.2% | 2.6% | 1.5% |
| SIERRA | <35* | --* | --* | --* | --* | --* |
| SISKIYOU | 499 | 94.6% | 1.6% | 1.0% | 1.6% | 1.2% |
| SOLANO | 5,130 | 97.8% | 0.2% | 0.4% | 0.0% | 1.5% |
| SONOMA | 5,422 | 95.3% | 0.8% | 2.0% | 1.0% | 0.9% |
| STANISLAUS | 8,846 | 97.2% | 0.4% | 0.8% | 0.4% | 1.3% |
| SUTTER | 1,927 | 88.0% | 0.2% | 0.5% | 11.2% | 0.2% |
| TEHAMA | 870 | 97.8% | 0.3% | 1.4% | 0.2% | 0.2% |
| TRINITY | 115 | 92.2% | 0.0% | 4.3% | 2.6% | 0.9% |
| TULARE | 8,232 | 99.1% | 0.2% | 0.2% | 0.5% | 0.1% |
| TUOLUMNE | 481 | 94.0% | 1.0% | 1.7% | 2.1% | 1.2% |
| VENTURA | 11,004 | 96.6% | 0.5% | 1.1% | 1.0% | 0.8% |
| YOLO | 2,416 | 96.0% | 0.4% | 1.7% | 0.6% | 1.2% |
| YUBA | 1,194 | 97.1% | 0.2% | 0.2% | 0.4% | 2.2% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Tdap immunization.

* County reporting fewer than 35 children in 7th grade.

# Exhibit 9

**2019-2020 Kindergarten Immunization Assessment – Executive Summary**
**California Department of Public Health, Immunization Branch**

Immunization requirements for school entry help protect children and communities from vaccine-preventable diseases. Each autumn California schools are required to report to the California Department of Public Health (CDPH) the status of their students under state immunization requirement laws. In recent years there have been changes to these laws and how public health departments assist schools to implement them. To reflect longstanding national recommendations, starting in 2019 students entering kindergarten in California have been required to receive two rather than one dose of Varicella (chickenpox) vaccine. In 2014 and 2015 Assembly Bill (AB) 2109 added requirements for exemptions to required immunizations based on personal beliefs. 2019-2020 is the fourth full school year that entrants have been subject to Senate Bill (SB) 277, which no longer permits them to receive such personal beliefs exemptions (PBEs).

Reported immunization rates remain at high levels but have decreased in the last few years. The proportion of students attending kindergarten in 2019-2020 reported to have received all required vaccines is 94.3%, a 0.5 percentage point decrease from the 2018-2019 school year, a 0.8 percentage point decrease from the 2017-2018 school year, and a 4.1 percentage point increase over six years since 2013-2014.

The decrease in the combined rate reflects observance of the new requirement for a second dose of Varicella vaccine, for which 96.0% were reported as having completed in 2019-2020. In comparison, 97.9% in 2018-2019 were reported as having received the prior standard of at least one dose of vaccine or having had a history of chickenpox disease.

Compared to 2018-2019, completion rates for other specific immunization series were unchanged for Polio, Hepatitis B, and Measles, Mumps and Rubella (MMR) vaccine and increased 0.1 percentage points for Diphtheria, Tetanus and Pertussis (DTP) vaccine. In 2019-2020 and 2018-2019, 17 (29%) counties reported fewer than 95% of their kindergarteners as having had two doses of MMR vaccine, compared to 14 (24%) counties in 2016-2017 and 31 (53%) counties in 2015-2016.

Compared to 2018-2019, in 2019-2020, the proportion of kindergartners reported as:
- Being overdue for required immunizations increased from 1.1% to 1.5%.
- Lacking immunizations for other reasons specified under SB 277 increased from 1.5% to 1.6%, with 1.3% reported as being enrolled in independent study programs.
- Having permanent medical exemptions increased from 0.9% to 1.0%.
- Conditional entrants remained unchanged at 1.7% in both 2018-2019 and 2019-2020 school years, a 5.2 percentage point decrease over the five years since 2014-2015.
- PBEs remained unchanged at 0.0%, reflecting their cessation under SB 277. Previously during measures specified in AB 2109, the rate of PBEs had decreased from 3.2% in 2013-2014 to 2.4% in 2015-2016.

CDPH and local health departments in California continue to closely monitor immunization coverage and to support schools in protecting the health of their students and communities.

**2019-2020 Kindergarten Immunization Assessment – Technical Notes**

**Introduction**

Each autumn all schools with kindergartens in California are required to report student compliance with California School Immunization Laws (California Health and Safety Code Sections 120325-120375). This report summarizes data for the 2019-2020 school year reported by public and private kindergartens statewide (Table 1, Figures 1-8) and by county (Tables 2-11).

To reflect longstanding national recommendations, starting in 2019 changes to the California Code of Regulations have required students entering kindergarten in California to receive two rather than one dose of Varicella (chickenpox) vaccine.

In the 2014-2015 and 2015-2016 school years, entrants were subject to Assembly Bill (AB) 2109, which added requirements for exemptions to required immunizations based on personal beliefs. 2019-2020 is the fourth full school year that entrants have been subject to Senate Bill (SB) 277, which no longer permits them to receive such personal beliefs exemptions (PBEs).

Starting in the 2015-2016 school year, many public health departments in California have worked with schools to improve their application of the Conditional Admission Immunization Schedule for the conditional admission of eligible students.

**Methods**

During the autumn of 2019, California schools registered with the California Department of Education reported data on kindergarteners in the 2019-2020 school year to the California Department of Public Health (CDPH). Based on their immunization status, students were classified by school staff into the following categories:

- Received underlined all required immunizations, including the following doses:
  - 5 or more of Diphtheria, Tetanus and Pertussis (DTP) vaccine (4 doses are acceptable if at least 1 dose was received on or after the fourth birthday): ['4+DTP'];
  - 3 or more of Polio vaccine (3 doses are acceptable if at least 1 dose was received on or after the fourth birthday): ['3+ Polio'];
  - 2 or more of Measles-containing and Mumps-containing vaccines received on or after the first birthday, and 1 or more of Rubella vaccine, typically combined as Measles, Mumps and Rubella (MMR) vaccine: ['2+ MMR'].Through 2018-2019, the requirement was for one rather two doses of Mumps-containing vaccine but was no different for Measles and Rubella vaccine;
  - 3 or more of Hepatitis B (Hep B) vaccine: ['3+ Hep B'], and
  - 2 or more of Varicella (Var): ['2+ Var']. In contrast, from 2000-2001 through 2018-2019, the requirement was for 1 or more doses of Varicella vaccine or a history documented by a physician of having had chickenpox disease. History of disease is currently requested to be reported as a permanent medical exemption.
- Conditional entrants who had:
  - Not received all required doses but were not overdue for required doses, or
  - A temporary medical exemption to one or more required immunizations.
  Conditional entrants are required to receive additional doses after entry.

- Have a permanent medical exemption (PME) to one or more required immunizations.
- Other students lacking immunizations. Under SB 277, entrants since the 2016-2017 school year have not been required to have immunizations if they attend:
  - A home-based private school or
  - A public independent study program and do not receive classroom-based instruction.
  - In addition, students who have an individualized education program (IEP) may continue to receive all necessary services identified in their IEP regardless of their immunization status.

  Students in these settings were classified in this category if they lacked required immunizations and did not meet the criteria for other categories.
- Children overdue for one or more required immunizations and subject to exclusion from school until the overdue requirements have been met.

Under SB 277, since the 2016-2017 school year personal beliefs exemptions (PBEs) have no longer been an option for children entering kindergarten.

To simplify reporting, in 2015-2016 and earlier school years any immunizations received by children with PBEs or PMEs were not reported in the completion rates of each specific required immunization series (e.g., 4+ DTP, 2+ MMR, etc.). To improve accuracy, CDPH has requested schools to include these doses when reporting completion rates of specific immunizations since the 2016-2017 school year.

Due to rounding, figures may differ from the sums of their components. Differences were calculated between exact figures, varying at times by 0.1% from the differences between rounded figures.

## Results

The number of kindergarteners in California whose immunization status was reported decreased from 555,735 in 2018-2019 to 554,250 in the 2019-2020 school year (Table 1). This is consistent with recent statewide declines in school enrollment, as the number of schools that reported increased marginally from 7,964 in 2018-2019 to 8,000 in 2019-2020, and the number of schools that did not report decreased from 236 to 133 (Tables 1 and 2). Private schools account for 8% (43,146 / 554,250) of all kindergarteners about whom data was reported in 2019-2020, 24% (1,891 / 8,000) of all schools that reported data on kindergarteners and 89% (118 / 133) of schools that did not report.

Figures 1-5 show trends for students in public and private schools reported as having: received all required immunizations; entered conditionally; PMEs; PBEs; and completed specific immunization series. Figures 6-8 display for recent school years the distribution of major reporting categories for students reported from: all schools; public schools; and private schools.

All required immunizations: Of 554,250 kindergarteners whose schools reported their status, 522,581 (94.3%) had received all required immunizations, a decrease from the previous school year of 0.5 percentage points (Tables 1 and 5) and an increase over the six school years since 2013-2014 of 4.1 percentage points (Figures 1 and 6). For counties reporting at least 25 students, the highest rates, at least 97.0%, are reported in Monterey, Inyo, and Del Norte (Tables 3-5).

In 2019-2020, 11 (19%) of 58 counties in California have rates of kindergarteners with all required vaccines that are below 90%, compared with nine (16%) in 2018-2019 (Tables 4 and 5, Figure 9). The rate in some of these counties is influenced by online or virtual schools that are based in the county but that may enroll children who reside in other counties (Box); many students in virtual schools qualify for exemptions from requirements under SB 277 (see Methods and below).

| % of Pupils Receiving All Required Immunizations | | | | For Schools Based in County, % of Pupils Reported as Enrolled in Virtual Schools* |
|---|---|---|---|---|
| **County** | All Schools Based in County | Classroom-Based Schools | Virtual Schools* | |
| El Dorado | 79.7% | 92.7% | 24.5% | 19.2% |
| Sutter | 85.3% | 96.1% | 33.0% | 17.1% |
| Glenn | 86.1% | 96.8% | 22.9% | 14.4% |
| Kern | 88.6% | 96.1% | 23.3% | 10.3% |

* Virtual schools are based in the specified county but may enroll children who reside in other counties.

As in past years, a higher proportion of students in public compared to private schools were reported as having had all required immunizations (94.4% vs. 92.4%; difference of 2.0 percentage points) (Table 1, Figures 7 and 8). However, this gap is smaller by 0.1 percentage points than it was in 2018-2019, as there was a one-year decrease of 0.5 percentage points for students in public schools and 0.4 percentage points for those in private schools.

Specific immunization series: Completion rates for specific immunization series varied between 96.0% for Varicella vaccine and 97.4% for Hepatitis B vaccine (Tables 1 and 11, Figure 5).

2019-2020 is the first school year that two or more doses of Varicella vaccine have been required for kindergarteners in California. 96.0% were reported as having completed a two-dose series in 2019-2020, whereas 97.9% in 2018-2019 were reported as having received at least one dose of vaccine or having had a history of chickenpox disease. (Data from 2019-2020 on receipt of at least one dose of Varicella vaccine or from prior years on receipt of two doses are not available.) History of chickenpox disease, which as a result of widespread immunization is now infrequent and often more difficult to diagnose, has since 2019-2020 been requested to be reported as a permanent medical exemption to immunization.

Rates in 2019-2020 remained the same for Polio, MMR, and Hep B vaccines and increased 0.1 percentage points for DTP vaccine. Rates for receipt remain higher in public schools; for MMR, 96.7% of students at public schools and 94.7% at private schools are reported as having received two doses, a decrease from 2018-2019 respectively of 0.0 percentage points and 0.3 percentage points, and an increase compared to 2015-2016 respectively of 1.8 percentage points and 4.2 percentage points. In both 2019-2020 and 2018-2019, 17 (29%) counties reported fewer than 95% of their kindergarteners as having had two doses of MMR (Table 11, Figure 10), compared to 16 (28%) counties in 2017-2018, 14 (24%) counties in 2016-2017 and 31 (53%) counties in 2015-2016.

Conditional entrants: Over the last five school years, the proportion of students reported as conditional entrants has decreased from 6.9% in 2014-2015 to 1.7% in 2019-2020 (Table 1, Figures 2 and 6). Compared to the 2018-2019 school year, the proportion of conditional entrants

in 2019-2020 remained the same in all schools and public schools while decreasing in private schools by 0.6 percentage points (Table 1). Of the 1.7% (9,188) of all students reported as conditional entrants in 2019-2020, 0.2% (1,097) were reported as having had a temporary medical exemption, a 0.1 percentage point decrease from 2018-2019.

PMEs: The percentage of students with PMEs increased from 0.9% in 2018-2019 to 1.0% in 2019-2020 (Tables 1 and 7, Figure 3). In public schools, the number of students reported with PMEs increased from 3,805 (0.7%) to 4,179 (0.8%) (Figure 7), while for private schools, the number of students increased from 1,007 (2.4%) to 1,089 (2.5%) (Figure 8).

Other students lacking required immunizations: The proportion of kindergarteners reported to be lacking one or more required immunizations and to attend an independent study program and do not receive classroom-based instruction, attend a home-based private school, or receive services in an IEP (Tables 1, 8 and 9) increased from 1.5% (8,318) in 2018-2019 to 1.6% (8,986) in 2019-2020. Children reported as being enrolled in public independent study programs accounted for most students in this category (1.3% or 7,018) (Table 9), and for most of the increase compared to the previous year (0.10 of the 0.14 percentage point increase).  The percentage increase of enrollment in independent study is 10.9% (63 students) in Glenn County. Some of these students are enrolled in virtual schools and reside in other counties.

Overdue: The percentage of students reported as being overdue for one or more immunizations (Tables 1 and 3) increased from 1.1% in 2018-2019 to 1.5% in 2019-2020 (Table 1, Figure 6). In public schools the number of students reported as overdue increased from 5,448 (1.1%) to 7,215 (1.4%) (Figure 7). For private schools the number of students reported as overdue increased from 635 (1.5%) to 1,012 (2.3%) (Figure 8).

PBEs: With the option of PBEs no longer available to new entrants under SB 277, the percentage of kindergarteners with PBEs remains unchanged at 0.0% since 2017-2018, compared to 2.4% in 2015-2016 and 3.2% in 2013-2014 (Figures 4 and 6, Table 8).

Combined categories: Kindergarteners who are required to receive all mandated vaccines are reported in three categories: having received all required vaccines; conditional entrants; and being overdue for required doses. The kindergarteners who were reported in the sum of these three categories decreased by 0.2% percentage points from 97.6% in 2018-2019 to 97.4% in 2019-2020.

Conversely the sum of kindergarteners reported as not having to receive all required immunizations in elementary school because of PMEs; PBEs; or for other criteria specified in SB 277, increased by 0.2 percentage points from 2.4% in 2018-2019 to 2.6% in 2019-2020; the combined rate for public schools increased from 2.3% to 2.5% and for private schools increased from 2.8% to 2.9%. Over time the combined rate has been 3.3% in 2013-2014, 2.5% in 2015-2016, 1.5% in 2016-2017, and 2.6% in 2019-2020.

## Discussion

The numbers of kindergarteners (554,250) and public schools (6,109) whose status was reported in 2019-2020 remain at amongst the highest levels since the 2001-2002 school year, when Varicella vaccine became the most recent addition to the immunizations required for kindergarteners.

Reported immunization rates remain at high levels but have decreased over the last three school years. Compared to 2018-2019, the proportion of students reported to enter kindergarten in California in 2019-2020 after receiving all required immunizations decreased by 0.5 percentage points to 94.3%, following an increase by 5.2 percentage points to 95.6% between the two school years from 2014-2015 to 2016-2017.

The decrease in the combined rate reflects observance of the new requirement for a second dose of Varicella vaccine, for which 96.0% were reported as having completed in 2019-2020. In comparison, 97.9% in 2018-2019 were reported as having received the prior standard of at least one dose of vaccine or having had a history of chickenpox disease; in contrast to Varicella vaccine, rates for the other required vaccines were stable. The 0.5 percentage point decrease in the rate of all required vaccines is similar in magnitude to the 0.4 percentage point increase in kindergarteners reported as overdue for one or more required immunizations, suggesting that many overdue students had not received their second dose of Varicella vaccine by the beginning of the school year. CDPH will closely monitor these trends to see whether additional experience and support with the increased Varicella vaccine requirement will help schools reduce the number of overdue students.

The proportion of children reported in other categories of exemptions increased in 2019-2020, as 1.6% lacked required immunizations under other criteria introduced in SB 277.  Most of these children were reported as being enrolled in independent study programs, representing an increase of 0.1 percentage points from 2018-2019. Another 1.0% were reported as having PMEs, an increase of 0.1% from 2018-2019. In sum, 2.6% of entrants were reported as not having had required immunizations because of PMEs, PBEs, or other criteria related to SB 277, compared to 2.4% in 2018-2019. Over the recent period of multiple changes in policies and laws in California; the combined rate has been 3.3% in 2013-2014, 2.6% in 2015-2016, 1.5% in 2016-2017, and 2.6% in 2019-2020. Future assessments will continue to monitor these categories.

The proportion of conditional entrants in 2019-2020 remained unchanged since 2018-2019 after a decrease of 5.1 percentage points in the three school years between 2014-2015 and 2017-2018. The current reported rate of conditional entrants, 1.5%, remains the lowest reported since the 2001-2002 school year. Measures to support schools on the proper use of conditional admission criteria have been described in previous reports.

It is possible that children who in previous school years would have been inaccurately categorized as conditional entrants represent some of the 1.5% of entrants reported as overdue in 2019-2020. Continued efforts to educate schools and support immunization services might further reduce the number of children who in future years are categorized either as conditional entrants or overdue; in sum these categories account for 3.1% of kindergarteners reported in 2019-2020, compared to 2.8% reported in 2018-2019.

Children in schools and communities with lower immunization rates remain at higher risk of contracting and transmitting vaccine preventable diseases. In 2019-2020, 11 (19%) of 58 counties in California have had rates of kindergarteners with all required vaccines that are below 90% (Figure 9). 17 (29%) counties, compared to 14 (24%) in 2016-2017 and 31 (53%) in 2015-2016, report fewer than 95% of their kindergarteners as having had two doses of MMR (Table 11, Figure 10), an approximate threshold necessary to prevent the transmission of measles. In addition, recent changes to California's school immunization laws did not apply to earlier cohorts of children who are no longer of school age. Unimmunized older children and adults were amongst those who caught measles during recent outbreaks in California. For these individuals,

decisions that were made in previous decades to not immunize have had lingering consequences for themselves and their communities.

---

**Limitations**

This report is subject to limitations that include:

- 133 California elementary schools, including 118 private schools and 15 public schools, did not report their immunization data; in the absence of reporting, CDPH does not know how many of them enrolled kindergarteners this year or the immunization status of their kindergarteners.
- As in previous years, private home schools that did not register with the California Department of Education may not have reported data to CDPH, which would result in continued underestimates of their enrollment.
- Nineteen schools, including at least two virtual schools, that registered with the California Department of Education as being public schools, and which appear to enroll both public and private students, reported 161 students as attending home-based private schools. In this report these students are classified as attending public schools. Any misclassification of enrollment between public and private schools, or between independent study and home-based private schools, has not affected the total of students in the category of other students lacking immunization, but has affected its subcategories.
- Part of the relative improvements in the completion rates of specific immunization series starting in the 2016-2017 school year may have been due to the inclusion in reporting of doses received by partially immunized children who had PBEs or PMEs to other required immunizations. In reporting to CDPH during prior school years, doses received by children with exemptions were not included in completion rates for any specific vaccine. This may have resulted in underestimates of completion rates for specific vaccines in prior years and overestimates of their increases between recent and prior years. The magnitude of the resultant increase to the rate of any immunization series in 2019-2020 resulting from this change in reporting could be no greater than 2.6%, the total of students reported in categories as not having to receive all required immunizations (PMEs or other criteria specified in SB 277). This reporting change should not have affected rates, or changes in rates, for the category of having received all required vaccines.
- The timing of immunization is often not included in the assessment criteria; if doses were given at inappropriate ages or intervals, the reported rates may overestimate levels of immunity.
- It is possible that some immunization records provided to schools have been incomplete. The presence of incomplete records would underestimate immunization coverage. Any improvements over time in completion of records since the time of reporting would increase estimates of coverage.
- Changes over time in the quality of reporting by schools are another potential explanation for changes in immunization rates.

*For further information, please contact CDPH Immunization Branch at SchoolAssessments@cdph.ca.gov.*

*For media inquiries, please contact CDPH Office of Public Affairs via e-mail cdphpress@cdph.ca.gov or phone 916-440-7259.*

**Figures**

Figure 1. Percentage of Kindergarten Students with All Required Immunizations, by School Type and School Year, 2012-2013 to 2019-2020

Figure 2. Percentage of Conditional Entrants into Kindergarten, by School Type and School Year, 2012-2013 to 2019-2020

Figure 3. Percentage of Kindergarten Students with Permanent Medical Exemptions (PMEs), by School Type and School Year, 2012-2013 to 2019-2020

Figure 4. Percentage of Kindergarten Students with Personal Belief Exemptions (PBEs), by School Type and School Year, 2012-2013 to 2019-2020

Figure 5. Percentage of Kindergarten Students with Specific Required Immunizations by Series and School Year, 2012-2013 to 2019-2020

Figure 6. Percentage of All Kindergarten Students by Reported Admission Status by School Year, 2013-2014 to 2019-2020

Figure 7. Percentage of Public School Kindergarten Students by Reported Admission Status by School Year, 2018-2019 and 2019-2020

Figure 8. Percentage of Private School Kindergarten Students by Reported Admission Status by School Year, 2018-2019 and 2019-2020

Figure 9. Map: Kindergarten Students with All Required Immunizations, by County, 2018-2019 and 2019-2020 School Years

Figure 10. Map: Kindergarten Students with Two or More Doses of MMR Vaccine, by County, 2018-2019 and 2019-2020 School Years

**Tables**

Table 1. Kindergarten Immunization Assessment Summary, 2018-2019 and 2019-2020 School Years

Table 2. Number and Percentage of Schools Reporting in 2019-2020, by County and Type

Table 3. Total Enrollment and Admission Status in 2019-2020, by County

Table 4. Total Enrollment and Admission Status, 2019-2020 and 2018-2019, by County

Table 5. Number and Percentage of Students with All Required Immunizations in 2019-2020 and 2018-2019, and 1-Year Percentage Point Change, by County

Table 6. Number and Percentage of Conditional Entrants in 2019-2020 and 2018-2019, and 1-Year Percentage Point Change, by County

Table 7. Number and Percentage of Students with a Permanent Medical Exemption (PME) in 2019-2020 and 2018-2019, and 1-Year Percentage Point Change, by County

Table 8. Number and Percentage of Other Students Lacking Required Immunizations in 2019-2020 and 2018-2019, and 1-Year Percentage Point Change, by County

Table 9. Number and Percentage of Other Students Lacking Required Immunizations in 2019-2020, by Subgroup and County

Table 10. Number and Percentage of Students with Overdue Status in 2019-2020 and 2018-2019, and 1-Year Percentage Point Change, by County

Table 11. Number and Percentage of Students with Required Immunizations by Vaccine Series, by County



**Figure 1. Percentage of Kindergarten Students with All Required Immunizations, by School Type and School Year, 2012-2013 to 2019-2020**



**Figure 2. Percentage of Conditional Entrants into Kindergarten, by School Type and School Year, 2012-2013 to 2019-2020**



**Figure 3. Percentage of Kindergarten Students with Permanent Medical Exemptions (PMEs), by School Type and School Year, 2012-2013 to 2019-2020**



**Figure 4. Percentage of Kindergarten Students with Personal Belief Exemptions (PBEs), by School Type and School Year, 2012-2013 to 2019-2020**



*One or more doses of varicella required through the 2018-2019 school year. Two or more doses of varicella required for the 2019-20 school year and forward.

**Figure 5. Percentage of Kindergarten Students with Specific Required Immunizations by Series and School Year, 2012-2013 to 2019-2020.**



*Other children lacking required immunizations under criteria specified in SB 277.

**Figure 6. Percentage of All Kindergarten Students by Reported Admission Status by School Year, 2013-2014 to 2019-2020.** In the 2014-2015 and 2015-2016 school years, entrants were subject to AB 2109. Since the 2016-2017 school year, entrants have been subject to SB 277. Starting from the 2019-20 school year and forward, the varicella requirement changed from one or more to two or more doses



*Other children lacking required immunizations under criteria specified in SB 277.

**Figure 7. Percentage of Public School Kindergarten Students by Reported Admission Status by School Year, 2018-2019 and 2019-2020**



*Other children lacking required immunizations under criteria specified in SB 277.

**Figure 8. Percentage of Private School Kindergarten Students by Reported Admission Status by School Year, 2018-2019 and 2019-2020**



**Figure 9. Kindergarten Students with All Required Immunizations, by County, 2018-2019 and 2019-2020 School Years**
See pages 3 and 4 for additional information.



**Figure 10. Kindergarten Students with Two or More Doses of MMR Vaccine, by County, 2018-2019 and 2019-2020 School Years**

**Table 1: Kindergarten Immunization Assessment Summary, 2018-2019 and 2019-2020 School Years**

| | 2019-2020 | | | 2018-2019 | | | 1-Year Percentage Point Change* | | |
|---|---|---|---|---|---|---|---|---|---|
| | All | Public | Private | All | Public | Private | All | Public | Private |
| Number of Schools Reporting Kindergarten Students | 8,000 | 6,109 | 1,891 | 7,964 | 6,068 | 1,896 | | | |
| Number of Kindergarten Students | 554,250 | 511,104 | 43,146 | 555,735 | 512,908 | 42,827 | | | |
| All Required Immunizations | 94.3% | 94.4% | 92.4% | 94.8% | 95.0% | 92.9% | -0.5% | -0.5% | -0.4% |
| Conditional Entrants | 1.7% | 1.6% | 2.4% | 1.7% | 1.6% | 2.9% | -0.1% | 0.0% | -0.6% |
| Permanent Medical Exemptions | 1.0% | 0.8% | 2.5% | 0.9% | 0.7% | 2.4% | 0.1% | 0.1% | 0.2% |
| Personal Belief Exemptions | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking immunizations† | 1.6% | 1.7% | 0.3% | 1.5% | 1.6% | 0.4% | 0.1% | 0.1% | -0.1% |
| Overdue^ | 1.5% | 1.4% | 2.3% | 1.1% | 1.1% | 1.5% | 0.4% | 0.3% | 0.9% |
| 4+ DTP | 96.2% | 96.3% | 94.6% | 96.0% | 96.1% | 94.8% | 0.1% | 0.2% | -0.2% |
| 3+ Polio | 96.5% | 96.7% | 94.8% | 96.5% | 96.7% | 94.8% | 0.0% | 0.0% | 0.1% |
| 2+ MMR | 96.5% | 96.7% | 94.7% | 96.5% | 96.6% | 95.0% | 0.0% | 0.0% | -0.3% |
| 3+ Hep B | 97.4% | 97.5% | 96.1% | 97.4% | 97.5% | 96.3% | 0.0% | 0.0% | -0.2% |
| 2+ Var (or physician-documented disease)** | 96.0% | 96.2% | 94.4% | 97.9% | 98.0% | 96.5% | -1.9% | -1.8% | -2.2% |

* Differences between exact percentages may vary from the differences between the rounded percentages listed to the left in table.

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more required immunizations.

** 1+ doses of varicella vaccine was required through the 2018-2019 school year. Starting in the 2019-2020 school year and forward, 2+ doses of varicella vaccine were required.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 2: NUMBER AND PERCENTAGE OF SCHOOLS REPORTING,
BY COUNTY AND TYPE

| | ALL | | | PUBLIC | | | PRIVATE | | |
|---|---|---|---|---|---|---|---|---|---|
| | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING |
| STATE TOTAL | 8,133 | 8,000 | 98.4% | 6,124 | 6,109 | 99.8% | 2,009 | 1,891 | 94.1% |
| COUNTY | | | | | | | | | |
| ALAMEDA | 317 | 317 | 100.0% | 225 | 225 | 100.0% | 92 | 92 | 100.0% |
| ALPINE | 2 | 2 | 100.0% | 2 | 2 | 100.0% | 0 | 0 | 0.0% |
| AMADOR | 7 | 7 | 100.0% | 6 | 6 | 100.0% | 1 | 1 | 100.0% |
| BUTTE | 56 | 56 | 100.0% | 48 | 48 | 100.0% | 8 | 8 | 100.0% |
| CALAVERAS | 14 | 11 | 78.6% | 11 | 11 | 100.0% | 3 | 0 | 0.0% |
| COLUSA | 6 | 6 | 100.0% | 5 | 5 | 100.0% | 1 | 1 | 100.0% |
| CONTRA COSTA | 233 | 223 | 95.7% | 168 | 166 | 98.8% | 65 | 57 | 87.7% |
| DEL NORTE | 10 | 10 | 100.0% | 10 | 10 | 100.0% | 0 | 0 | 0.0% |
| EL DORADO | 46 | 44 | 95.7% | 40 | 40 | 100.0% | 6 | 6 | 100.0% |
| FRESNO | 226 | 223 | 98.7% | 202 | 202 | 100.0% | 24 | 24 | 100.0% |
| GLENN | 15 | 14 | 93.3% | 12 | 12 | 100.0% | 3 | 3 | 100.0% |
| HUMBOLDT | 58 | 58 | 100.0% | 52 | 52 | 100.0% | 6 | 6 | 100.0% |
| IMPERIAL | 46 | 45 | 97.8% | 38 | 38 | 100.0% | 8 | 7 | 87.5% |
| INYO | 6 | 6 | 100.0% | 6 | 6 | 100.0% | 0 | 0 | 0.0% |
| KERN | 185 | 182 | 98.4% | 162 | 162 | 100.0% | 23 | 23 | 100.0% |
| KINGS | 39 | 36 | 92.3% | 33 | 33 | 100.0% | 6 | 5 | 83.3% |
| LAKE | 18 | 15 | 83.3% | 15 | 14 | 93.3% | 3 | 2 | 66.7% |
| LASSEN | 12 | 12 | 100.0% | 12 | 12 | 100.0% | 0 | 0 | 0.0% |
| LOS ANGELES | 1,928 | 1,847 | 95.8% | 1,328 | 1,324 | 99.7% | 600 | 531 | 88.5% |
| MADERA | 43 | 38 | 88.4% | 40 | 38 | 95.0% | 3 | 2 | 66.7% |
| MARIN | 72 | 72 | 100.0% | 46 | 46 | 100.0% | 26 | 26 | 100.0% |
| MARIPOSA | 8 | 8 | 100.0% | 8 | 8 | 100.0% | 0 | 0 | 0.0% |
| MENDOCINO | 34 | 32 | 94.1% | 28 | 26 | 92.9% | 6 | 6 | 100.0% |
| MERCED | 68 | 64 | 94.1% | 55 | 55 | 100.0% | 13 | 9 | 69.2% |
| MODOC | 4 | 4 | 100.0% | 4 | 4 | 100.0% | 0 | 0 | 0.0% |
| MONO | 6 | 6 | 100.0% | 5 | 5 | 100.0% | 1 | 1 | 100.0% |
| MONTEREY | 96 | 96 | 100.0% | 83 | 83 | 100.0% | 13 | 13 | 100.0% |
| NAPA | 37 | 37 | 100.0% | 23 | 23 | 100.0% | 14 | 14 | 100.0% |
| NEVADA | 24 | 24 | 100.0% | 20 | 20 | 100.0% | 4 | 4 | 100.0% |

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 2: NUMBER AND PERCENTAGE OF SCHOOLS REPORTING,
BY COUNTY AND TYPE

| | ALL | | | PUBLIC | | | PRIVATE | | |
|---|---|---|---|---|---|---|---|---|---|
| | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING | NUMBER OF SCHOOLS | NUMBER REPORTING | PERCENT REPORTING |
| STATE TOTAL | 8,133 | 8,000 | 98.4% | 6,124 | 6,109 | 99.8% | 2,009 | 1,891 | 94.1% |
| COUNTY | | | | | | | | | |
| ORANGE | 615 | 609 | 99.0% | 413 | 413 | 100.0% | 202 | 202 | 100.0% |
| PLACER | 95 | 95 | 100.0% | 81 | 81 | 100.0% | 14 | 14 | 100.0% |
| PLUMAS | 8 | 8 | 100.0% | 5 | 5 | 100.0% | 3 | 3 | 100.0% |
| RIVERSIDE | 405 | 388 | 95.8% | 307 | 306 | 99.7% | 98 | 88 | 89.8% |
| SACRAMENTO | 304 | 304 | 100.0% | 241 | 241 | 100.0% | 63 | 63 | 100.0% |
| SAN BENITO | 20 | 20 | 100.0% | 16 | 16 | 100.0% | 4 | 4 | 100.0% |
| SAN BERNARDINO | 440 | 435 | 98.9% | 364 | 364 | 100.0% | 76 | 76 | 100.0% |
| SAN DIEGO | 614 | 607 | 98.9% | 479 | 479 | 100.0% | 135 | 135 | 100.0% |
| SAN FRANCISCO | 157 | 155 | 98.7% | 86 | 86 | 100.0% | 71 | 70 | 98.6% |
| SAN JOAQUIN | 183 | 180 | 98.4% | 162 | 162 | 100.0% | 21 | 21 | 100.0% |
| SAN LUIS OBISPO | 60 | 60 | 100.0% | 46 | 46 | 100.0% | 14 | 14 | 100.0% |
| SAN MATEO | 164 | 163 | 99.4% | 108 | 108 | 100.0% | 56 | 56 | 100.0% |
| SANTA BARBARA | 106 | 105 | 99.1% | 82 | 82 | 100.0% | 24 | 24 | 100.0% |
| SANTA CLARA | 384 | 384 | 100.0% | 262 | 262 | 100.0% | 122 | 122 | 100.0% |
| SANTA CRUZ | 63 | 61 | 96.8% | 46 | 46 | 100.0% | 17 | 17 | 100.0% |
| SHASTA | 59 | 58 | 98.3% | 50 | 50 | 100.0% | 9 | 9 | 100.0% |
| SIERRA | 2 | 2 | 100.0% | 2 | 2 | 100.0% | 0 | 0 | 0.0% |
| SISKIYOU | 27 | 27 | 100.0% | 24 | 24 | 100.0% | 3 | 3 | 100.0% |
| SOLANO | 83 | 73 | 88.0% | 61 | 61 | 100.0% | 22 | 12 | 54.5% |
| SONOMA | 131 | 122 | 93.1% | 109 | 106 | 97.2% | 22 | 19 | 86.4% |
| STANISLAUS | 127 | 127 | 100.0% | 112 | 112 | 100.0% | 15 | 15 | 100.0% |
| SUTTER | 33 | 29 | 87.9% | 30 | 30 | 100.0% | 3 | 3 | 100.0% |
| TEHAMA | 24 | 22 | 91.7% | 21 | 21 | 100.0% | 3 | 2 | 66.7% |
| TRINITY | 10 | 10 | 100.0% | 10 | 10 | 100.0% | 0 | 0 | 0.0% |
| TULARE | 126 | 121 | 96.0% | 113 | 113 | 100.0% | 13 | 10 | 76.9% |
| TUOLUMNE | 16 | 16 | 100.0% | 11 | 11 | 100.0% | 5 | 5 | 100.0% |
| VENTURA | 186 | 183 | 98.4% | 135 | 135 | 100.0% | 51 | 50 | 98.0% |
| VIRTUAL | 68 | 0 | 0.0% | 0 | 0 | 0.0% | 0 | 0 | 0.0% |
| YOLO | 48 | 47 | 97.9% | 36 | 36 | 100.0% | 12 | 12 | 100.0% |

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 3: TOTAL ENROLLMENT AND ADMISSION STATUS, BY COUNTY

| | TOTAL STUDENTS | STUDENTS WITH ALL REQUIRED IMMUNIZATIONS | | CONDITIONAL ENTRANTS | | STUDENTS WITH PME | | OTHERS LACKING REQUIRED IMMUNIZATIONS† | | OVERDUE^ | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | NUMBER | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
| STATE TOTAL | 554,250 | 522,581 | 94.3% | 9,188 | 1.7% | 5,268 | 1.0% | 8,986 | 1.6% | 8,227 | 1.5% |
| COUNTY | | | | | | | | | | | |
| ALAMEDA | 21,622 | 20,855 | 96.5% | 237 | 1.1% | 141 | 0.7% | 36 | 0.2% | 353 | 1.6% |
| ALPINE | 9 | <20* | -* | <20* | -* | <20* | -* | <20* | -* | <20* | -* |
| AMADOR | 308 | 281 | 91.2% | 13 | 4.2% | 6 | 1.9% | 2 | 0.6% | 6 | 1.9% |
| BUTTE | 2,742 | 2,609 | 95.1% | 74 | 2.7% | 21 | 0.8% | 27 | 1.0% | 11 | 0.4% |
| CALAVERAS | 455 | 427 | 93.8% | 8 | 1.8% | 7 | 1.5% | 8 | 1.8% | 5 | 1.1% |
| COLUSA | 372 | 360 | 96.8% | 1 | 0.3% | 0 | 0.0% | 0 | 0.0% | 11 | 3.0% |
| CONTRA COSTA | 15,692 | 15,092 | 96.2% | 249 | 1.6% | 118 | 0.8% | 45 | 0.3% | 188 | 1.2% |
| DEL NORTE | 394 | 382 | 97.0% | 3 | 0.8% | 0 | 0.0% | 3 | 0.8% | 6 | 1.5% |
| EL DORADO | 2,909 | 2,318 | 79.7% | 65 | 2.2% | 125 | 4.3% | 392 | 13.5% | 9 | 0.3% |
| FRESNO | 18,461 | 17,802 | 96.4% | 187 | 1.0% | 55 | 0.3% | 294 | 1.6% | 123 | 0.7% |
| GLENN | 576 | 496 | 86.1% | 8 | 1.4% | 4 | 0.7% | 63 | 10.9% | 5 | 0.9% |
| HUMBOLDT | 1,715 | 1,510 | 88.0% | 46 | 2.7% | 96 | 5.6% | 12 | 0.7% | 51 | 3.0% |
| IMPERIAL | 3,117 | 2,982 | 95.7% | 79 | 2.5% | 6 | 0.2% | 12 | 0.4% | 38 | 1.2% |
| INYO | 271 | 263 | 97.0% | 7 | 2.6% | 1 | 0.4% | 0 | 0.0% | 0 | 0.0% |
| KERN | 18,327 | 16,240 | 88.6% | 251 | 1.4% | 128 | 0.7% | 1,462 | 8.0% | 246 | 1.3% |
| KINGS | 2,576 | 2,497 | 96.9% | 51 | 2.0% | 6 | 0.2% | 11 | 0.4% | 11 | 0.4% |
| LAKE | 796 | 723 | 90.8% | 25 | 3.1% | 6 | 0.8% | 6 | 0.8% | 36 | 4.5% |
| LASSEN | 350 | 322 | 92.0% | 19 | 5.4% | 5 | 1.4% | 3 | 0.9% | 1 | 0.3% |
| LOS ANGELES | 133,622 | 126,230 | 94.5% | 2,249 | 1.7% | 825 | 0.6% | 1,048 | 0.8% | 3,270 | 2.4% |
| MADERA | 2,727 | 2,622 | 96.1% | 40 | 1.5% | 7 | 0.3% | 21 | 0.8% | 37 | 1.4% |
| MARIN | 3,252 | 3,055 | 93.9% | 75 | 2.3% | 94 | 2.9% | 10 | 0.3% | 18 | 0.6% |
| MARIPOSA | 160 | 149 | 93.1% | 9 | 5.6% | 0 | 0.0% | 2 | 1.3% | 0 | 0.0% |
| MENDOCINO | 1,218 | 1,044 | 85.7% | 88 | 7.2% | 37 | 3.0% | 7 | 0.6% | 42 | 3.4% |
| MERCED | 5,321 | 5,143 | 96.7% | 83 | 1.6% | 6 | 0.1% | 33 | 0.6% | 56 | 1.1% |
| MODOC | 120 | 115 | 95.8% | 1 | 0.8% | 1 | 0.8% | 0 | 0.0% | 3 | 2.5% |
| MONO | 138 | 125 | 90.6% | 7 | 5.1% | 4 | 2.9% | 0 | 0.0% | 2 | 1.4% |
| MONTEREY | 6,733 | 6,537 | 97.1% | 95 | 1.4% | 56 | 0.8% | 4 | 0.1% | 41 | 0.6% |
| NAPA | 1,746 | 1,687 | 96.6% | 14 | 0.8% | 24 | 1.4% | 6 | 0.3% | 15 | 0.9% |
| NEVADA | 985 | 783 | 79.5% | 33 | 3.4% | 129 | 13.1% | 30 | 3.0% | 10 | 1.0% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more immunizations.

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten. For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%; 50-99 enrollees, values of 98% or higher are listed ≥98%; 100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 3: TOTAL ENROLLMENT AND ADMISSION STATUS, BY COUNTY

| | TOTAL STUDENTS | STUDENTS WITH ALL REQUIRED IMMUNIZATIONS | | CONDITIONAL ENTRANTS | | STUDENTS WITH PME | | OTHERS LACKING REQUIRED IMMUNIZATIONS† | | OVERDUE^ | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | NUMBER | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
| STATE TOTAL | 554,250 | 522,581 | 94.3% | 9,188 | 1.7% | 5,268 | 1.0% | 8,986 | 1.6% | 8,227 | 1.5% |
| COUNTY | | | | | | | | | | | |
| ORANGE | 41,381 | 39,527 | 95.5% | 622 | 1.5% | 457 | 1.1% | 338 | 0.8% | 437 | 1.1% |
| PLACER | 6,709 | 6,074 | 90.5% | 162 | 2.4% | 219 | 3.3% | 88 | 1.3% | 166 | 2.5% |
| PLUMAS | 208 | 192 | 92.3% | 8 | 3.8% | 3 | 1.4% | 1 | 0.5% | 4 | 1.9% |
| RIVERSIDE | 36,134 | 33,827 | 93.6% | 673 | 1.9% | 314 | 0.9% | 932 | 2.6% | 388 | 1.1% |
| SACRAMENTO | 21,495 | 20,057 | 93.3% | 464 | 2.2% | 342 | 1.6% | 407 | 1.9% | 225 | 1.0% |
| SAN BENITO | 1,099 | 1,058 | 96.3% | 14 | 1.3% | 6 | 0.5% | 6 | 0.1% | 20 | 1.8% |
| SAN BERNARDINO | 34,542 | 32,441 | 93.9% | 617 | 1.8% | 147 | 0.4% | 866 | 2.5% | 471 | 1.4% |
| SAN DIEGO | 45,956 | 42,717 | 93.0% | 697 | 1.5% | 658 | 1.4% | 1,633 | 3.6% | 251 | 0.5% |
| SAN FRANCISCO | 6,963 | 6,637 | 95.3% | 77 | 1.1% | 52 | 0.7% | 1 | 0.0% | 196 | 2.8% |
| SAN JOAQUIN | 12,320 | 11,710 | 95.0% | 214 | 1.7% | 48 | 0.4% | 176 | 1.4% | 172 | 1.4% |
| SAN LUIS OBISPO | 3,095 | 2,915 | 94.2% | 57 | 1.8% | 68 | 2.2% | 26 | 0.8% | 29 | 0.9% |
| SAN MATEO | 9,168 | 8,857 | 96.6% | 121 | 1.3% | 64 | 0.7% | 10 | 0.1% | 116 | 1.3% |
| SANTA BARBARA | 6,500 | 6,253 | 96.2% | 94 | 1.4% | 91 | 1.4% | 27 | 0.4% | 35 | 0.5% |
| SANTA CLARA | 24,963 | 24,068 | 96.4% | 313 | 1.3% | 187 | 0.7% | 57 | 0.2% | 338 | 1.4% |
| SANTA CRUZ | 3,415 | 3,049 | 89.3% | 74 | 2.2% | 94 | 2.8% | 158 | 4.6% | 40 | 1.2% |
| SHASTA | 2,525 | 2,259 | 89.5% | 82 | 3.2% | 68 | 2.7% | 72 | 2.9% | 44 | 1.7% |
| SIERRA | 25 | -* | ≥95% | -* | ≤5% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| SISKIYOU | 530 | 503 | 94.9% | 10 | 1.9% | 6 | 1.1% | 3 | 0.6% | 8 | 1.5% |
| SOLANO | 5,966 | 5,638 | 94.5% | 92 | 1.5% | 29 | 0.5% | 5 | 0.1% | 202 | 3.4% |
| SONOMA | 6,043 | 5,576 | 92.3% | 127 | 2.1% | 189 | 3.1% | 43 | 0.7% | 108 | 1.8% |
| STANISLAUS | 9,366 | 8,961 | 95.7% | 186 | 2.0% | 62 | 0.7% | 27 | 0.3% | 130 | 1.4% |
| SUTTER | 2,017 | 1,720 | 85.3% | 13 | 0.6% | 18 | 0.9% | 263 | 13.0% | 3 | 0.1% |
| TEHAMA | 1,073 | 1,004 | 93.6% | 23 | 2.1% | 7 | 0.7% | 13 | 1.2% | 26 | 2.4% |
| TRINITY | 138 | 120 | 87.0% | 6 | 4.3% | 7 | 5.1% | 1 | 0.7% | 4 | 2.9% |
| TULARE | 9,535 | 9,205 | 96.5% | 112 | 1.2% | 23 | 0.2% | 168 | 1.8% | 27 | 0.3% |
| TUOLUMNE | 584 | 527 | 90.2% | 21 | 3.6% | 21 | 3.6% | 8 | 1.4% | 7 | 1.2% |
| VENTURA | 11,466 | 10,951 | 95.5% | 198 | 1.7% | 125 | 1.1% | 69 | 0.6% | 123 | 1.1% |
| YOLO | 2,959 | 2,791 | 94.3% | 60 | 2.0% | 48 | 1.6% | 27 | 0.9% | 33 | 1.1% |
| YUBA | 1,361 | 1,263 | 92.8% | 33 | 2.4% | 6 | 0.4% | 29 | 2.1% | 30 | 2.2% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more immunizations.

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten. For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%; 50-99 enrollees, values of 98% or higher are listed as ≥98%; 100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 4: TOTAL ENROLLMENT AND ADMISSION STATUS, 2019-2020  AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | STUDENTS WITH ALL REQUIRED IMMUNIZATION | CONDITIONAL ENTRANTS | STUDENTS WITH PME | OTHERS LACKING REQUIRED | OVERDUE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| | 2018-19 | 555,735 | 94.8% | 1.7% | 0.8% | 1.5% | 1.1% |
| ALAMEDA | 2019-20 | 21,622 | 96.5% | 1.1% | 0.7% | 0.2% | 1.6% |
| | 2018-19 | 21,818 | 96.6% | 1.1% | 0.6% | 0.2% | 1.5% |
| ALPINE | 2019-20 | 9 | --* | --* | --* | --* | --* |
| | 2018-19 | 10 | --* | --* | --* | --* | --* |
| AMADOR | 2019-20 | 308 | 91.2% | 4.2% | 1.9% | 0.6% | 1.9% |
| | 2018-19 | 279 | 91.8% | 3.9% | 1.1% | 2.9% | 0.4% |
| BUTTE | 2019-20 | 2,742 | 95.1% | 2.7% | 0.8% | 1.0% | 0.4% |
| | 2018-19 | 2,822 | 94.2% | 2.6% | 1.2% | 1.6% | 0.4% |
| CALAVERAS | 2019-20 | 455 | 93.8% | 1.8% | 1.5% | 1.8% | 1.1% |
| | 2018-19 | 437 | 90.2% | 3.2% | 2.7% | 3.9% | 0.0% |
| COLUSA | 2019-20 | 372 | 96.8% | 0.3% | 0.0% | 0.0% | 3.0% |
| | 2018-19 | 360 | 97.5% | 2.5% | 0.0% | 0.0% | 0.0% |
| CONTRA COSTA | 2019-20 | 15,692 | 96.2% | 1.6% | 0.8% | 0.3% | 1.2% |
| | 2018-19 | 15,192 | 96.4% | 1.6% | 0.9% | 0.3% | 0.8% |
| DEL NORTE | 2019-20 | 394 | 97.0% | 0.8% | 0.0% | 0.8% | 1.5% |
| | 2018-19 | 382 | 94.2% | 1.8% | 1.0% | 2.1% | 0.8% |
| EL DORADO | 2019-20 | 2,909 | 79.7% | 2.2% | 4.3% | 13.5% | 0.3% |
| | 2018-19 | 2,453 | 87.8% | 3.2% | 3.8% | 5.1% | 0.1% |
| FRESNO | 2019-20 | 18,461 | 96.4% | 1.0% | 0.3% | 1.6% | 0.7% |
| | 2018-19 | 18,758 | 96.6% | 1.4% | 0.3% | 1.3% | 0.5% |
| GLENN | 2019-20 | 576 | 86.1% | 1.4% | 0.7% | 10.9% | 0.9% |
| | 2018-19 | 540 | 96.3% | 0.9% | 0.6% | 0.0% | 2.2% |
| HUMBOLDT | 2019-20 | 1,715 | 88.0% | 2.7% | 5.6% | 0.7% | 3.0% |
| | 2018-19 | 1,708 | 88.2% | 3.1% | 5.8% | 1.4% | 1.5% |
| IMPERIAL | 2019-20 | 3,117 | 95.7% | 2.5% | 0.2% | 0.4% | 1.2% |
| | 2018-19 | 3,134 | 97.3% | 1.9% | 0.2% | 0.3% | 0.4% |
| INYO | 2019-20 | 271 | 97.0% | 2.6% | 0.4% | 0.0% | 0.0% |
| | 2018-19 | 231 | 95.7% | 4.3% | 0.0% | 0.0% | 0.0% |
| KERN | 2019-20 | 18,327 | 88.6% | 1.4% | 0.7% | 8.0% | 1.3% |
| | 2018-19 | 18,110 | 91.1% | 2.6% | 0.3% | 5.5% | 0.5% |
| KINGS | 2019-20 | 2,576 | 96.9% | 2.0% | 0.2% | 0.4% | 0.4% |
| | 2018-19 | 2,686 | 97.5% | 1.7% | 0.2% | 0.1% | 0.5% |
| LAKE | 2019-20 | 796 | 90.8% | 3.1% | 0.8% | 0.8% | 4.5% |
| | 2018-19 | 848 | 92.3% | 5.1% | 1.4% | 0.1% | 1.1% |
| LASSEN | 2019-20 | 350 | 92.0% | 5.4% | 1.4% | 0.9% | 0.3% |
| | 2018-19 | 385 | 94.3% | 2.6% | 0.8% | 2.3% | 0.0% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more immunizations.

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with:  Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 4: TOTAL ENROLLMENT AND ADMISSION STATUS, 2019-2020 AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | STUDENTS WITH ALL REQUIRED IMMUNIZATION | CONDITIONAL ENTRANTS | STUDENTS WITH PME | OTHERS LACKING REQUIRED | OVERDUE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| | 2018-19 | 555,735 | 94.8% | 1.7% | 0.8% | 1.5% | 1.1% |
| LOS ANGELES | 2019-20 | 133,622 | 94.5% | 1.7% | 0.6% | 0.8% | 2.4% |
| | 2018-19 | 136,039 | 94.5% | 1.7% | 0.6% | 1.3% | 1.9% |
| MADERA | 2019-20 | 2,727 | 96.1% | 1.5% | 0.3% | 0.8% | 1.4% |
| | 2018-19 | 2,762 | 95.5% | 1.3% | 0.4% | 1.3% | 1.4% |
| MARIN | 2019-20 | 3,252 | 93.9% | 2.3% | 2.9% | 0.3% | 0.6% |
| | 2018-19 | 3,170 | 94.3% | 2.7% | 2.6% | 0.2% | 0.3% |
| MARIPOSA | 2019-20 | 160 | 93.1% | 5.6% | 0.0% | 1.3% | 0.0% |
| | 2018-19 | 156 | 91.0% | 6.4% | 1.3% | 1.3% | 0.0% |
| MENDOCINO | 2019-20 | 1,218 | 85.7% | 7.2% | 3.0% | 0.6% | 3.4% |
| | 2018-19 | 1,204 | 85.0% | 2.2% | 4.2% | 0.5% | 8.1% |
| MERCED | 2019-20 | 5,321 | 96.7% | 1.6% | 0.1% | 0.6% | 1.1% |
| | 2018-19 | 5,240 | 97.5% | 1.6% | 0.2% | 0.3% | 0.4% |
| MODOC | 2019-20 | 120 | 95.8% | 0.8% | 0.8% | 0.0% | 2.5% |
| | 2018-19 | 111 | 99.1% | 0.0% | 0.0% | 0.0% | 0.9% |
| MONO | 2019-20 | 138 | 90.6% | 5.1% | 2.9% | 0.0% | 1.4% |
| | 2018-19 | 150 | 90.7% | 4.0% | 2.7% | 0.0% | 2.7% |
| MONTEREY | 2019-20 | 6,733 | 97.1% | 1.4% | 0.8% | 0.1% | 0.6% |
| | 2018-19 | 6,926 | 97.5% | 1.2% | 0.8% | 0.0% | 0.6% |
| NAPA | 2019-20 | 1,746 | 96.6% | 0.8% | 1.4% | 0.3% | 0.9% |
| | 2018-19 | 1,429 | 94.5% | 2.9% | 1.7% | 0.5% | 0.3% |
| NEVADA | 2019-20 | 985 | 79.5% | 3.4% | 13.1% | 3.0% | 1.0% |
| | 2018-19 | 990 | 80.3% | 4.3% | 10.6% | 4.6% | 0.1% |
| ORANGE | 2019-20 | 41,381 | 95.5% | 1.5% | 1.1% | 0.8% | 1.1% |
| | 2018-19 | 41,734 | 95.7% | 1.8% | 1.1% | 0.7% | 0.7% |
| PLACER | 2019-20 | 6,709 | 90.5% | 2.4% | 3.3% | 1.3% | 2.5% |
| | 2018-19 | 6,470 | 91.7% | 2.9% | 2.4% | 0.9% | 2.0% |
| PLUMAS | 2019-20 | 208 | 92.3% | 3.8% | 1.4% | 0.5% | 1.9% |
| | 2018-19 | 210 | 86.2% | 7.1% | 3.8% | 2.9% | 0.0% |
| RIVERSIDE | 2019-20 | 36,134 | 93.6% | 1.9% | 0.9% | 2.6% | 1.1% |
| | 2018-19 | 35,422 | 96.3% | 1.7% | 0.7% | 0.5% | 0.8% |
| SACRAMENTO | 2019-20 | 21,495 | 93.3% | 2.2% | 1.6% | 1.9% | 1.0% |
| | 2018-19 | 21,501 | 93.4% | 2.5% | 1.4% | 1.8% | 0.9% |
| SAN BENITO | 2019-20 | 1,099 | 96.3% | 1.3% | 0.5% | 0.1% | 1.8% |
| | 2018-19 | 1,052 | 97.0% | 1.3% | 0.2% | 0.0% | 1.5% |
| SAN BERNARDINO | 2019-20 | 34,542 | 93.9% | 1.8% | 0.4% | 2.5% | 1.4% |
| | 2018-19 | 33,920 | 95.1% | 1.9% | 0.4% | 1.6% | 0.8% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more immunizations.

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten. For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%; 50-99 enrollees, values of 98% or higher are listed as ≥98%; 100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 4: TOTAL ENROLLMENT AND ADMISSION STATUS, 2019-2020  AND 2018-2019,
BY COUNTY

| | SCHOOL YEAR | TOTAL STUDENTS | STUDENTS WITH ALL REQUIRED IMMUNIZATION | CONDITIONAL ENTRANTS | STUDENTS WITH PME | OTHERS LACKING REQUIRED | OVERDUE^ |
|---|---|---|---|---|---|---|---|
| | | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| | 2018-19 | 555,735 | 94.8% | 1.7% | 0.8% | 1.5% | 1.1% |
| SAN DIEGO | 2019-20 | 45,956 | 93.0% | 1.5% | 1.4% | 3.6% | 0.5% |
| | 2018-19 | 46,256 | 92.5% | 1.7% | 1.3% | 4.0% | 0.5% |
| SAN FRANCISCO | 2019-20 | 6,963 | 95.3% | 1.1% | 0.7% | 0.0% | 2.8% |
| | 2018-19 | 6,840 | 95.7% | 1.0% | 0.7% | 0.0% | 2.6% |
| SAN JOAQUIN | 2019-20 | 12,320 | 95.0% | 1.7% | 0.4% | 1.4% | 1.4% |
| | 2018-19 | 12,410 | 96.7% | 1.4% | 0.2% | 1.2% | 0.4% |
| SAN LUIS OBISPO | 2019-20 | 3,095 | 94.2% | 1.8% | 2.2% | 0.8% | 0.9% |
| | 2018-19 | 3,012 | 94.7% | 1.8% | 2.3% | 0.8% | 0.4% |
| SAN MATEO | 2019-20 | 9,168 | 96.6% | 1.3% | 0.7% | 0.1% | 1.3% |
| | 2018-19 | 9,275 | 96.6% | 1.1% | 0.5% | 0.0% | 1.7% |
| SANTA BARBARA | 2019-20 | 6,500 | 96.2% | 1.4% | 1.4% | 0.4% | 0.5% |
| | 2018-19 | 6,273 | 96.7% | 1.2% | 1.1% | 0.7% | 0.2% |
| SANTA CLARA | 2019-20 | 24,963 | 96.4% | 1.3% | 0.7% | 0.2% | 1.4% |
| | 2018-19 | 25,505 | 97.3% | 1.0% | 0.5% | 0.2% | 1.0% |
| SANTA CRUZ | 2019-20 | 3,415 | 89.3% | 2.2% | 2.8% | 4.6% | 1.2% |
| | 2018-19 | 3,579 | 90.9% | 1.8% | 2.7% | 4.0% | 0.6% |
| SHASTA | 2019-20 | 2,525 | 89.5% | 3.2% | 2.7% | 2.9% | 1.7% |
| | 2018-19 | 2,466 | 87.8% | 3.7% | 3.0% | 3.5% | 1.9% |
| SIERRA | 2019-20 | 25 | ≥95% | ≤5% | 0.0% | 0.0% | 0.0% |
| | 2018-19 | 36 | 97.2% | 0.0% | 0.0% | 2.8% | 0.0% |
| SISKIYOU | 2019-20 | 530 | 94.9% | 1.9% | 1.1% | 0.6% | 1.5% |
| | 2018-19 | 561 | 88.9% | 3.2% | 1.4% | 5.0% | 1.4% |
| SOLANO | 2019-20 | 5,966 | 94.5% | 1.5% | 0.5% | 0.1% | 3.4% |
| | 2018-19 | 5,933 | 97.5% | 1.7% | 0.4% | 0.2% | 0.2% |
| SONOMA | 2019-20 | 6,043 | 92.3% | 2.1% | 3.1% | 0.7% | 1.8% |
| | 2018-19 | 6,343 | 91.3% | 2.4% | 3.4% | 1.5% | 1.4% |
| STANISLAUS | 2019-20 | 9,366 | 95.7% | 2.0% | 0.7% | 0.3% | 1.4% |
| | 2018-19 | 9,346 | 95.9% | 1.7% | 0.7% | 1.1% | 0.6% |
| SUTTER | 2019-20 | 2,017 | 85.3% | 0.6% | 0.9% | 13.0% | 0.1% |
| | 2018-19 | 2,310 | 71.9% | 0.6% | 1.2% | 25.5% | 0.9% |
| TEHAMA | 2019-20 | 1,073 | 93.6% | 2.1% | 0.7% | 1.2% | 2.4% |
| | 2018-19 | 983 | 93.9% | 3.0% | 0.8% | 1.5% | 0.8% |
| TRINITY | 2019-20 | 138 | 87.0% | 4.3% | 5.1% | 0.7% | 2.9% |
| | 2018-19 | 124 | 91.1% | 3.2% | 3.2% | 0.8% | 1.6% |
| TULARE | 2019-20 | 9,535 | 96.5% | 1.2% | 0.2% | 1.8% | 0.3% |
| | 2018-19 | 9,105 | 98.1% | 1.1% | 0.2% | 0.4% | 0.2% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more immunizations.

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with:  Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 4: TOTAL ENROLLMENT AND ADMISSION STATUS, 2019-2020  AND 2018-2019,
BY COUNTY

|  | SCHOOL YEAR | TOTAL STUDENTS | STUDENTS WITH ALL REQUIRED IMMUNIZATION | CONDITIONAL ENTRANTS | STUDENTS WITH PME | OTHERS LACKING REQUIRED | OVERDUE^ |
|---|---|---|---|---|---|---|---|
|  |  | NUMBER | PERCENT | PERCENT | PERCENT | PERCENT | PERCENT |
| STATE TOTAL | 2019-20 | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
|  | 2018-19 | 555,735 | 94.8% | 1.7% | 0.8% | 1.5% | 1.1% |
|  |  |  |  |  |  |  |  |
| TUOLUMNE | 2019-20 | 584 | 90.2% | 3.6% | 3.6% | 1.4% | 1.2% |
|  | 2018-19 | 614 | 87.5% | 3.9% | 3.3% | 2.6% | 2.8% |
| VENTURA | 2019-20 | 11,466 | 95.5% | 1.7% | 1.1% | 0.6% | 1.1% |
|  | 2018-19 | 11,814 | 96.1% | 1.5% | 1.2% | 0.7% | 0.5% |
| YOLO | 2019-20 | 2,959 | 94.3% | 2.0% | 1.6% | 0.9% | 1.1% |
|  | 2018-19 | 2,907 | 95.6% | 2.9% | 1.2% | 0.2% | 0.1% |
| YUBA | 2019-20 | 1,361 | 92.8% | 2.4% | 0.4% | 2.1% | 2.2% |
|  | 2018-19 | 1,404 | 92.5% | 2.1% | 0.4% | 1.6% | 3.3% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more immunizations.

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with:  Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 5: NUMBER AND PERCENTAGE OF STUDENTS WITH ALL REQUIRED IMMUNIZATIONS IN 2019-2020 AND 2018-2019,
AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | NUMBER WITH ALL REQUIRED IMMUNIZATIONS | PERCENT | TOTAL STUDENTS | NUMBER WITH ALL REQUIRED IMMUNIZATIONS | PERCENT | PERCENT | NUMBER WITH ALL REQUIRED IMMUNIZATIONS |
| STATE TOTAL | 554,250 | 522,581 | 94.3% | 555,735 | 526,923 | 94.8% | -0.5% | -4,342 |
| COUNTY | | | | | | | | |
| ALAMEDA | 21,622 | 20,855 | 96.5% | 21,818 | 21,078 | 96.6% | -0.2% | -223 |
| ALPINE | 9 | <20* | --* | 10 | <20* | --* | --* | --* |
| AMADOR | 308 | 281 | 91.2% | 279 | 256 | 91.8% | -0.5% | 25 |
| BUTTE | 2,742 | 2,609 | 95.1% | 2,822 | 2,657 | 94.2% | 1.0% | -48 |
| CALAVERAS | 455 | 427 | 93.8% | 437 | 394 | 90.2% | 3.7% | 33 |
| COLUSA | 372 | 360 | 96.8% | 360 | 351 | 97.5% | -0.7% | 9 |
| CONTRA COSTA | 15,692 | 15,092 | 96.2% | 15,192 | 14,644 | 96.4% | -0.2% | 448 |
| DEL NORTE | 394 | 382 | 97.0% | 382 | 360 | 94.2% | 2.7% | 22 |
| EL DORADO | 2,909 | 2,318 | 79.7% | 2,453 | 2,153 | 87.8% | -8.1% | 165 |
| FRESNO | 18,461 | 17,802 | 96.4% | 18,758 | 18,113 | 96.6% | -0.1% | -311 |
| GLENN | 576 | 496 | 86.1% | 540 | 520 | 96.3% | -10.2% | -24 |
| HUMBOLDT | 1,715 | 1,510 | 88.0% | 1,708 | 1,507 | 88.2% | -0.2% | 3 |
| IMPERIAL | 3,117 | 2,982 | 95.7% | 3,134 | 3,049 | 97.3% | -1.6% | -67 |
| INYO | 271 | 263 | 97.0% | 231 | 221 | 95.7% | 1.4% | 42 |
| KERN | 18,327 | 16,240 | 88.6% | 18,110 | 16,495 | 91.1% | -2.5% | -255 |
| KINGS | 2,576 | 2,497 | 96.9% | 2,686 | 2,620 | 97.5% | -0.6% | -123 |
| LAKE | 796 | 723 | 90.8% | 848 | 783 | 92.3% | -1.5% | -60 |
| LASSEN | 350 | 322 | 92.0% | 385 | 363 | 94.3% | -2.3% | -41 |
| LOS ANGELES | 133,622 | 126,230 | 94.5% | 136,039 | 128,618 | 94.5% | -0.1% | -2,388 |
| MADERA | 2,727 | 2,622 | 96.1% | 2,762 | 2,637 | 95.5% | 0.7% | -15 |
| MARIN | 3,252 | 3,055 | 93.9% | 3,170 | 2,989 | 94.3% | -0.3% | 66 |
| MARIPOSA | 160 | 149 | 93.1% | 156 | 142 | 91.0% | 2.1% | 7 |
| MENDOCINO | 1,218 | 1,044 | 85.7% | 1,204 | 1,024 | 85.0% | 0.7% | 20 |
| MERCED | 5,321 | 5,143 | 96.7% | 5,240 | 5,109 | 97.5% | -0.8% | 34 |
| MODOC | 120 | 115 | 95.8% | 111 | 110 | 99.1% | -3.3% | 5 |
| MONO | 138 | 125 | 90.6% | 150 | 136 | 90.7% | -0.1% | -11 |
| MONTEREY | 6,733 | 6,537 | 97.1% | 6,926 | 6,750 | 97.5% | -0.4% | -213 |
| NAPA | 1,746 | 1,687 | 96.6% | 1,429 | 1,350 | 94.5% | 2.1% | 337 |
| NEVADA | 985 | 783 | 79.5% | 990 | 795 | 80.3% | -0.8% | -12 |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with:  Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 5: NUMBER AND PERCENTAGE OF STUDENTS WITH ALL REQUIRED IMMUNIZATIONS IN 2019-2020 AND 2018-2019, AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| COUNTY | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | NUMBER WITH ALL REQUIRED IMMUNIZATIONS | PERCENT | TOTAL STUDENTS | NUMBER WITH ALL REQUIRED IMMUNIZATIONS | PERCENT | PERCENT | NUMBER WITH ALL REQUIRED IMMUNIZATIONS |
| STATE TOTAL | 554,250 | 522,581 | 94.3% | 555,735 | 526,923 | 94.8% | -0.5% | -4,342 |
| ORANGE | 41,381 | 39,527 | 95.5% | 41,734 | 39,951 | 95.7% | -0.2% | -424 |
| PLACER | 6,709 | 6,074 | 90.5% | 6,470 | 5,936 | 91.7% | -1.2% | 138 |
| PLUMAS | 208 | 192 | 92.3% | 210 | 181 | 86.2% | 6.1% | 11 |
| RIVERSIDE | 36,134 | 33,827 | 93.6% | 35,422 | 34,104 | 96.3% | -2.7% | -277 |
| SACRAMENTO | 21,495 | 20,057 | 93.3% | 21,501 | 20,087 | 93.4% | -0.1% | -30 |
| SAN BENITO | 1,099 | 1,058 | 96.3% | 1,052 | 1,020 | 97.0% | -0.7% | 38 |
| SAN BERNARDINO | 34,542 | 32,441 | 93.9% | 33,920 | 32,266 | 95.1% | -1.2% | 175 |
| SAN DIEGO | 45,956 | 42,717 | 93.0% | 46,256 | 42,807 | 92.5% | 0.4% | -90 |
| SAN FRANCISCO | 6,963 | 6,637 | 95.3% | 6,840 | 6,547 | 95.7% | -0.4% | 90 |
| SAN JOAQUIN | 12,320 | 11,710 | 95.0% | 12,410 | 12,005 | 96.7% | -1.7% | -295 |
| SAN LUIS OBISPO | 3,095 | 2,915 | 94.2% | 3,012 | 2,852 | 94.7% | -0.5% | 63 |
| SAN MATEO | 9,168 | 8,857 | 96.6% | 9,275 | 8,958 | 96.6% | 0.0% | -101 |
| SANTA BARBARA | 6,500 | 6,253 | 96.2% | 6,273 | 6,069 | 96.7% | -0.5% | 184 |
| SANTA CLARA | 24,963 | 24,068 | 96.4% | 25,505 | 24,817 | 97.3% | -0.9% | -749 |
| SANTA CRUZ | 3,415 | 3,049 | 89.3% | 3,579 | 3,252 | 90.9% | -1.6% | -203 |
| SHASTA | 2,525 | 2,259 | 89.5% | 2,466 | 2,165 | 87.8% | 1.7% | 94 |
| SIERRA | 25 | -* | ≥95% | 36 | 35 | 97.2% | -* | -* |
| SISKIYOU | 530 | 503 | 94.9% | 561 | 499 | 88.9% | 6.0% | 4 |
| SOLANO | 5,966 | 5,638 | 94.5% | 5,933 | 5,786 | 97.5% | -3.0% | -148 |
| SONOMA | 6,043 | 5,576 | 92.3% | 6,343 | 5,793 | 91.3% | 0.9% | -217 |
| STANISLAUS | 9,366 | 8,961 | 95.7% | 9,346 | 8,959 | 95.9% | -0.2% | 2 |
| SUTTER | 2,017 | 1,720 | 85.3% | 2,310 | 1,660 | 71.9% | 13.4% | 60 |
| TEHAMA | 1,073 | 1,004 | 93.6% | 983 | 923 | 93.9% | -0.3% | 81 |
| TRINITY | 138 | 120 | 87.0% | 124 | 113 | 91.1% | -4.2% | 7 |
| TULARE | 9,535 | 9,205 | 96.5% | 9,105 | 8,936 | 98.1% | -1.6% | 269 |
| TUOLUMNE | 584 | 527 | 90.2% | 614 | 537 | 87.5% | 2.8% | -10 |
| VENTURA | 11,466 | 10,951 | 95.5% | 11,814 | 11,353 | 96.1% | -0.6% | -402 |
| YOLO | 2,959 | 2,791 | 94.3% | 2,907 | 2,779 | 95.6% | -1.3% | 12 |
| YUBA | 1,361 | 1,263 | 92.8% | 1,404 | 1,299 | 92.5% | 0.3% | -36 |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten. For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%; 50-99 enrollees, values of 98% or higher are listed as ≥98%; 100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 6: NUMBER AND PERCENTAGE OF CONDITIONAL ENTRANTS IN 2019-2020 AND 2018-2019, AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL | CONDITIONAL ENTRANTS | PERCENT | TOTAL | CONDITIONAL ENTRANTS | PERCENT | PERCENT | CONDITIONAL ENTRANTS |
| STATE TOTAL | 554,250 | 9,188 | 1.7% | 555,735 | 9,599 | 1.7% | -0.1% | -411 |
| COUNTY | | | | | | | | |
| ALAMEDA | 21,622 | 237 | 1.1% | 21,818 | 231 | 1.1% | 0.0% | 6 |
| ALPINE | 9 | <20* | --* | 10 | <20* | --* | --* | --* |
| AMADOR | 308 | 13 | 4.2% | 279 | 11 | 3.9% | 0.3% | 2 |
| BUTTE | 2,742 | 74 | 2.7% | 2,822 | 73 | 2.6% | 0.1% | 1 |
| CALAVERAS | 455 | 8 | 1.8% | 437 | 14 | 3.2% | -1.4% | -6 |
| COLUSA | 372 | 1 | 0.3% | 360 | 9 | 2.5% | -2.2% | -8 |
| CONTRA COSTA | 15,692 | 249 | 1.6% | 15,192 | 247 | 1.6% | 0.0% | 2 |
| DEL NORTE | 394 | 3 | 0.8% | 382 | 7 | 1.8% | -1.1% | -4 |
| EL DORADO | 2,909 | 65 | 2.2% | 2,453 | 78 | 3.2% | -0.9% | -13 |
| FRESNO | 18,461 | 187 | 1.0% | 18,758 | 256 | 1.4% | -0.4% | -69 |
| GLENN | 576 | 8 | 1.4% | 540 | 5 | 0.9% | 0.5% | 3 |
| HUMBOLDT | 1,715 | 46 | 2.7% | 1,708 | 53 | 3.1% | -0.4% | -7 |
| IMPERIAL | 3,117 | 79 | 2.5% | 3,134 | 58 | 1.9% | 0.7% | 21 |
| INYO | 271 | 7 | 2.6% | 231 | 10 | 4.3% | -1.7% | -3 |
| KERN | 18,327 | 251 | 1.4% | 18,110 | 474 | 2.6% | -1.2% | -223 |
| KINGS | 2,576 | 51 | 2.0% | 2,686 | 45 | 1.7% | 0.3% | 6 |
| LAKE | 796 | 25 | 3.1% | 848 | 43 | 5.1% | -1.9% | -18 |
| LASSEN | 350 | 19 | 5.4% | 385 | 10 | 2.6% | 2.8% | 9 |
| LOS ANGELES | 133,622 | 2,249 | 1.7% | 136,039 | 2,252 | 1.7% | 0.0% | -3 |
| MADERA | 2,727 | 40 | 1.5% | 2,762 | 36 | 1.3% | 0.2% | 4 |
| MARIN | 3,252 | 75 | 2.3% | 3,170 | 85 | 2.7% | -0.4% | -10 |
| MARIPOSA | 160 | 9 | 5.6% | 156 | 10 | 6.4% | -0.8% | -1 |
| MENDOCINO | 1,218 | 88 | 7.2% | 1,204 | 27 | 2.2% | 5.0% | 61 |
| MERCED | 5,321 | 83 | 1.6% | 5,240 | 83 | 1.6% | 0.0% | 0 |
| MODOC | 120 | 1 | 0.8% | 111 | 0 | 0.0% | 0.8% | 1 |
| MONO | 138 | 7 | 5.1% | 150 | 6 | 4.0% | 1.1% | 1 |
| MONTEREY | 6,733 | 95 | 1.4% | 6,926 | 81 | 1.2% | 0.2% | 14 |
| NAPA | 1,746 | 14 | 0.8% | 1,429 | 42 | 2.9% | -2.1% | -28 |
| NEVADA | 985 | 33 | 3.4% | 990 | 43 | 4.3% | -1.0% | -10 |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten. For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%; 50-99 enrollees, values of 98% or higher are listed as ≥98%; 100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 6: NUMBER AND PERCENTAGE OF CONDITIONAL ENTRANTS IN 2019-2020 AND 2018-2019, AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| COUNTY | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL | CONDITIONAL ENTRANTS | PERCENT | TOTAL | CONDITIONAL ENTRANTS | PERCENT | PERCENT | CONDITIONAL ENTRANTS |
| STATE TOTAL | 554,250 | 9,188 | 1.7% | 555,735 | 9,599 | 1.7% | -0.1% | -411 |
| COUNTY | | | | | | | | |
| ORANGE | 41,381 | 622 | 1.5% | 41,734 | 741 | 1.8% | -0.3% | -119 |
| PLACER | 6,709 | 162 | 2.4% | 6,470 | 190 | 2.9% | -0.5% | -28 |
| PLUMAS | 208 | 8 | 3.8% | 210 | 15 | 7.1% | -3.3% | -7 |
| RIVERSIDE | 36,134 | 673 | 1.9% | 35,422 | 598 | 1.7% | 0.2% | 75 |
| SACRAMENTO | 21,495 | 464 | 2.2% | 21,501 | 527 | 2.5% | -0.3% | -63 |
| SAN BENITO | 1,099 | 14 | 1.3% | 1,052 | 14 | 1.3% | -0.1% | 0 |
| SAN BERNARDINO | 34,542 | 617 | 1.8% | 33,920 | 660 | 1.9% | -0.2% | -43 |
| SAN DIEGO | 45,956 | 697 | 1.5% | 46,256 | 770 | 1.7% | -0.1% | -73 |
| SAN FRANCISCO | 6,963 | 77 | 1.1% | 6,840 | 71 | 1.0% | 0.1% | 6 |
| SAN JOAQUIN | 12,320 | 214 | 1.7% | 12,410 | 176 | 1.4% | 0.3% | 38 |
| SAN LUIS OBISPO | 3,095 | 57 | 1.8% | 3,012 | 54 | 1.8% | 0.0% | 3 |
| SAN MATEO | 9,168 | 121 | 1.3% | 9,275 | 105 | 1.1% | 0.2% | 16 |
| SANTA BARBARA | 6,500 | 94 | 1.4% | 6,273 | 78 | 1.2% | 0.2% | 16 |
| SANTA CLARA | 24,963 | 313 | 1.3% | 25,505 | 258 | 1.0% | 0.2% | 55 |
| SANTA CRUZ | 3,415 | 74 | 2.2% | 3,579 | 66 | 1.8% | 0.3% | 8 |
| SHASTA | 2,525 | 82 | 3.2% | 2,466 | 91 | 3.7% | -0.4% | -9 |
| SIERRA | 25 | –* | ≤5% | 36 | 0 | 0.0% | –* | –* |
| SISKIYOU | 530 | 10 | 1.9% | 561 | 18 | 3.2% | -1.3% | -8 |
| SOLANO | 5,966 | 92 | 1.5% | 5,933 | 103 | 1.7% | -0.2% | -11 |
| SONOMA | 6,043 | 127 | 2.1% | 6,343 | 152 | 2.4% | -0.3% | -25 |
| STANISLAUS | 9,366 | 186 | 2.0% | 9,346 | 162 | 1.7% | 0.3% | 24 |
| SUTTER | 2,017 | 13 | 0.6% | 2,310 | 14 | 0.6% | 0.0% | -1 |
| TEHAMA | 1,073 | 23 | 2.1% | 983 | 29 | 3.0% | -0.8% | -6 |
| TRINITY | 138 | 6 | 4.3% | 124 | 4 | 3.2% | 1.1% | 2 |
| TULARE | 9,535 | 112 | 1.2% | 9,105 | 98 | 1.1% | 0.1% | 14 |
| TUOLUMNE | 584 | 21 | 3.6% | 614 | 24 | 3.9% | -0.3% | -3 |
| VENTURA | 11,466 | 198 | 1.7% | 11,814 | 179 | 1.5% | 0.2% | 19 |
| YOLO | 2,959 | 60 | 2.0% | 2,907 | 83 | 2.9% | -0.8% | -23 |
| YUBA | 1,361 | 33 | 2.4% | 1,404 | 30 | 2.1% | 0.3% | 3 |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten. For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%; 50-99 enrollees, values of 98% or higher are listed as ≥98%; 100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 7: NUMBER AND PERCENTAGE OF STUDENTS WITH A PERMANENT MEDICAL EXEMPTION (PME) IN 2019-2020 AND 2018-2019,
AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| COUNTY | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | PME | PERCENT | TOTAL STUDENTS | PME | PERCENT | PERCENT | NUMBER PME |
| STATE TOTAL | 554,250 | 5,268 | 1.0% | 555,735 | 4,812 | 0.9% | 0.1% | 456 |
| ALAMEDA | 21,622 | 141 | 0.7% | 21,818 | 132 | 0.6% | 0.0% | 9 |
| ALPINE | 9 | <20* | --* | 10 | <20* | --* | --* | --* |
| AMADOR | 308 | 6 | 1.9% | 279 | 3 | 1.1% | 0.9% | 3 |
| BUTTE | 2,742 | 21 | 0.8% | 2,822 | 34 | 1.2% | -0.4% | -13 |
| CALAVERAS | 455 | 7 | 1.5% | 437 | 12 | 2.7% | -1.2% | -5 |
| COLUSA | 372 | 0 | 0.0% | 360 | 0 | 0.0% | 0.0% | 0 |
| CONTRA COSTA | 15,692 | 118 | 0.8% | 15,192 | 132 | 0.9% | -0.1% | -14 |
| DEL NORTE | 394 | 0 | 0.0% | 382 | 4 | 1.0% | -1.0% | -4 |
| EL DORADO | 2,909 | 125 | 4.3% | 2,453 | 93 | 3.8% | 0.5% | 32 |
| FRESNO | 18,461 | 55 | 0.3% | 18,758 | 52 | 0.3% | 0.0% | 3 |
| GLENN | 576 | 4 | 0.7% | 540 | 3 | 0.6% | 0.1% | 1 |
| HUMBOLDT | 1,715 | 96 | 5.6% | 1,708 | 99 | 5.8% | -0.2% | -3 |
| IMPERIAL | 3,117 | 6 | 0.2% | 3,134 | 6 | 0.2% | 0.0% | 0 |
| INYO | 271 | 1 | 0.4% | 231 | 0 | 0.0% | 0.4% | 1 |
| KERN | 18,327 | 128 | 0.7% | 18,110 | 57 | 0.3% | 0.4% | 71 |
| KINGS | 2,576 | 6 | 0.2% | 2,686 | 5 | 0.2% | 0.0% | 1 |
| LAKE | 796 | 6 | 0.8% | 848 | 12 | 1.4% | -0.7% | -6 |
| LASSEN | 350 | 5 | 1.4% | 385 | 3 | 0.8% | 0.6% | 2 |
| LOS ANGELES | 133,622 | 825 | 0.6% | 136,039 | 783 | 0.6% | 0.0% | 42 |
| MADERA | 2,727 | 7 | 0.3% | 2,762 | 12 | 0.4% | -0.2% | -5 |
| MARIN | 3,252 | 94 | 2.9% | 3,170 | 82 | 2.6% | 0.3% | 12 |
| MARIPOSA | 160 | 0 | 0.0% | 156 | 2 | 1.3% | -1.3% | -2 |
| MENDOCINO | 1,218 | 37 | 3.0% | 1,204 | 50 | 4.2% | -1.1% | -13 |
| MERCED | 5,321 | 6 | 0.1% | 5,240 | 8 | 0.2% | 0.0% | -2 |
| MODOC | 120 | 1 | 0.8% | 111 | 0 | 0.0% | 0.8% | 1 |
| MONO | 138 | 4 | 2.9% | 150 | 4 | 2.7% | 0.2% | 0 |
| MONTEREY | 6,733 | 56 | 0.8% | 6,926 | 52 | 0.8% | 0.1% | 4 |
| NAPA | 1,746 | 24 | 1.4% | 1,429 | 25 | 1.7% | -0.4% | -1 |
| NEVADA | 985 | 129 | 13.1% | 990 | 105 | 10.6% | 2.5% | 24 |

* County reporting fewer than 20 children in kindergarten.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 7: NUMBER AND PERCENTAGE OF STUDENTS WITH A PERMANENT MEDICAL EXEMPTION (PME) IN 2019-2020 AND 2018-2019, AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| COUNTY | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | PME | PERCENT | TOTAL STUDENTS | PME | PERCENT | PERCENT | NUMBER PME |
| STATE TOTAL | 554,250 | 5,268 | 1.0% | 555,735 | 4,812 | 0.9% | 0.1% | 456 |
| ORANGE | 41,381 | 457 | 1.1% | 41,734 | 456 | 1.1% | 0.0% | 1 |
| PLACER | 6,709 | 219 | 3.3% | 6,470 | 155 | 2.4% | 0.9% | 64 |
| PLUMAS | 208 | 3 | 1.4% | 210 | 8 | 3.8% | -2.4% | -5 |
| RIVERSIDE | 36,134 | 314 | 0.9% | 35,422 | 232 | 0.7% | 0.2% | 82 |
| SACRAMENTO | 21,495 | 342 | 1.6% | 21,501 | 309 | 1.4% | 0.2% | 33 |
| SAN BENITO | 1,099 | 6 | 0.5% | 1,052 | 2 | 0.2% | 0.4% | 4 |
| SAN BERNARDINO | 34,542 | 147 | 0.4% | 33,920 | 147 | 0.4% | 0.0% | 0 |
| SAN DIEGO | 45,956 | 658 | 1.4% | 46,256 | 599 | 1.3% | 0.1% | 59 |
| SAN FRANCISCO | 6,963 | 52 | 0.7% | 6,840 | 46 | 0.7% | 0.1% | 6 |
| SAN JOAQUIN | 12,320 | 48 | 0.4% | 12,410 | 26 | 0.2% | 0.2% | 22 |
| SAN LUIS OBISPO | 3,095 | 68 | 2.2% | 3,012 | 68 | 2.3% | -0.1% | 0 |
| SAN MATEO | 9,168 | 64 | 0.7% | 9,275 | 49 | 0.5% | 0.2% | 15 |
| SANTA BARBARA | 6,500 | 91 | 1.4% | 6,273 | 72 | 1.1% | 0.3% | 19 |
| SANTA CLARA | 24,963 | 187 | 0.7% | 25,505 | 129 | 0.5% | 0.2% | 58 |
| SANTA CRUZ | 3,415 | 94 | 2.8% | 3,579 | 97 | 2.7% | 0.0% | -3 |
| SHASTA | 2,525 | 68 | 2.7% | 2,466 | 75 | 3.0% | -0.3% | -7 |
| SIERRA | 25 | 0 | 0.0% | 36 | 0 | 0.0% | 0.0% | 0 |
| SISKIYOU | 530 | 6 | 1.1% | 561 | 8 | 1.4% | -0.3% | -2 |
| SOLANO | 5,966 | 29 | 0.5% | 5,933 | 22 | 0.4% | 0.1% | 7 |
| SONOMA | 6,043 | 189 | 3.1% | 6,343 | 213 | 3.4% | -0.2% | -24 |
| STANISLAUS | 9,366 | 62 | 0.7% | 9,346 | 66 | 0.7% | 0.0% | -4 |
| SUTTER | 2,017 | 18 | 0.9% | 2,310 | 28 | 1.2% | -0.3% | -10 |
| TEHAMA | 1,073 | 7 | 0.7% | 983 | 8 | 0.8% | -0.2% | -1 |
| TRINITY | 138 | 7 | 5.1% | 124 | 4 | 3.2% | 1.8% | 3 |
| TULARE | 9,535 | 23 | 0.2% | 9,105 | 22 | 0.2% | 0.0% | 1 |
| TUOLUMNE | 584 | 21 | 3.6% | 614 | 20 | 3.3% | 0.3% | 1 |
| VENTURA | 11,466 | 125 | 1.1% | 11,814 | 140 | 1.2% | -0.1% | -15 |
| YOLO | 2,959 | 48 | 1.6% | 2,907 | 35 | 1.2% | 0.4% | 13 |
| YUBA | 1,361 | 6 | 0.4% | 1,404 | 6 | 0.4% | 0.0% | 0 |

* County reporting fewer than 20 children in kindergarten.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 8: NUMBER AND PERCENTAGE OF OTHER STUDENTS LACKING REQUIRED IMMUNIZATIONS† IN 2019-2020 AND 2018-2019, AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| COUNTY | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | OTHERS LACKING REQUIRED IMMUNIZATIONS† | PERCENT | TOTAL STUDENTS | OTHERS LACKING REQUIRED IMMUNIZATIONS† | PERCENT | PERCENT | OTHERS LACKING REQUIRED IMMUNIZATIONS† |
| STATE TOTAL | 554,250 | 8,986 | 1.6% | 555,735 | 8,318 | 1.5% | 0.1% | 668 |
| ALAMEDA | 21,622 | 36 | 0.2% | 21,818 | 41 | 0.2% | 0.0% | -5 |
| ALPINE | 9 | <20* | -* | 10 | <20* | -* | -* | -* |
| AMADOR | 308 | 2 | 0.6% | 279 | 8 | 2.9% | -2.2% | -6 |
| BUTTE | 2,742 | 27 | 1.0% | 2,822 | 46 | 1.6% | -0.6% | -19 |
| CALAVERAS | 455 | 8 | 1.8% | 437 | 17 | 3.9% | -2.1% | -9 |
| COLUSA | 372 | 0 | 0.0% | 360 | 0 | 0.0% | 0.0% | 0 |
| CONTRA COSTA | 15,692 | 45 | 0.3% | 15,192 | 40 | 0.3% | 0.0% | 5 |
| DEL NORTE | 394 | 3 | 0.8% | 382 | 8 | 2.1% | -1.3% | -5 |
| EL DORADO | 2,909 | 392 | 13.5% | 2,453 | 126 | 5.1% | 8.3% | 266 |
| FRESNO | 18,461 | 294 | 1.6% | 18,758 | 237 | 1.3% | 0.3% | 57 |
| GLENN | 576 | 63 | 10.9% | 540 | 0 | 0.0% | 10.9% | 63 |
| HUMBOLDT | 1,715 | 12 | 0.7% | 1,708 | 24 | 1.4% | -0.7% | -12 |
| IMPERIAL | 3,117 | 12 | 0.4% | 3,134 | 10 | 0.3% | 0.1% | 2 |
| INYO | 271 | 0 | 0.0% | 231 | 0 | 0.0% | 0.0% | 0 |
| KERN | 18,327 | 1,462 | 8.0% | 18,110 | 996 | 5.5% | 2.5% | 466 |
| KINGS | 2,576 | 11 | 0.4% | 2,686 | 2 | 0.1% | 0.4% | 9 |
| LAKE | 796 | 6 | 0.8% | 848 | 1 | 0.1% | 0.6% | 5 |
| LASSEN | 350 | 3 | 0.9% | 385 | 9 | 2.3% | -1.5% | -6 |
| LOS ANGELES | 133,622 | 1,048 | 0.8% | 136,039 | 1,746 | 1.3% | -0.5% | -698 |
| MADERA | 2,727 | 21 | 0.8% | 2,762 | 37 | 1.3% | -0.6% | -16 |
| MARIN | 3,252 | 10 | 0.3% | 3,170 | 6 | 0.2% | 0.1% | 4 |
| MARIPOSA | 160 | 2 | 1.3% | 156 | 2 | 1.3% | 0.0% | 0 |
| MENDOCINO | 1,218 | 7 | 0.6% | 1,204 | 6 | 0.5% | 0.1% | 1 |
| MERCED | 5,321 | 33 | 0.6% | 5,240 | 18 | 0.3% | 0.3% | 15 |
| MODOC | 120 | 0 | 0.0% | 111 | 0 | 0.0% | 0.0% | 0 |
| MONO | 138 | 0 | 0.0% | 150 | 0 | 0.0% | 0.0% | 0 |
| MONTEREY | 6,733 | 4 | 0.1% | 6,926 | 3 | 0.0% | 0.0% | 1 |
| NAPA | 1,746 | 6 | 0.3% | 1,429 | 7 | 0.5% | -0.1% | -1 |
| NEVADA | 985 | 30 | 3.0% | 990 | 46 | 4.6% | -1.6% | -16 |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

* County reporting fewer than 20 children in kindergarten.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 8: NUMBER AND PERCENTAGE OF OTHER STUDENTS LACKING REQUIRED IMMUNIZATIONS† IN 2019-2020 AND 2018-2019, AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | TOTAL STUDENTS | OTHERS LACKING REQUIRED IMMUNIZATIONS† | PERCENT | TOTAL STUDENTS | OTHERS LACKING REQUIRED IMMUNIZATIONS† | PERCENT | PERCENT | OTHERS LACKING REQUIRED IMMUNIZATIONS† |
| STATE TOTAL | 554,250 | 8,986 | 1.6% | 555,735 | 8,318 | 1.5% | 0.1% | 668 |
| COUNTY | | | | | | | | |
| ORANGE | 41,381 | 338 | 0.8% | 41,734 | 310 | 0.7% | 0.1% | 28 |
| PLACER | 6,709 | 88 | 1.3% | 6,470 | 57 | 0.9% | 0.4% | 31 |
| PLUMAS | 208 | 1 | 0.5% | 210 | 6 | 2.9% | -2.4% | -5 |
| RIVERSIDE | 36,134 | 932 | 2.6% | 35,422 | 194 | 0.5% | 2.0% | 738 |
| SACRAMENTO | 21,495 | 407 | 1.9% | 21,501 | 395 | 1.8% | 0.1% | 12 |
| SAN BENITO | 1,099 | 1 | 0.1% | 1,052 | 0 | 0.0% | 0.1% | 1 |
| SAN BERNARDINO | 34,542 | 866 | 2.5% | 33,920 | 559 | 1.6% | 0.9% | 307 |
| SAN DIEGO | 45,956 | 1,633 | 3.6% | 46,256 | 1,843 | 4.0% | -0.4% | -210 |
| SAN FRANCISCO | 6,963 | 1 | 0.0% | 6,840 | 0 | 0.0% | 0.0% | 1 |
| SAN JOAQUIN | 12,320 | 176 | 1.4% | 12,410 | 154 | 1.2% | 0.2% | 22 |
| SAN LUIS OBISPO | 3,095 | 26 | 0.8% | 3,012 | 25 | 0.8% | 0.0% | 1 |
| SAN MATEO | 9,168 | 10 | 0.1% | 9,275 | 4 | 0.0% | 0.1% | 6 |
| SANTA BARBARA | 6,500 | 27 | 0.4% | 6,273 | 44 | 0.7% | -0.3% | -17 |
| SANTA CLARA | 24,963 | 57 | 0.2% | 25,505 | 45 | 0.2% | 0.1% | 12 |
| SANTA CRUZ | 3,415 | 158 | 4.6% | 3,579 | 144 | 4.0% | 0.6% | 14 |
| SHASTA | 2,525 | 72 | 2.9% | 2,466 | 87 | 3.5% | -0.7% | -15 |
| SIERRA | 25 | 0 | 0.0% | 36 | 1 | 2.8% | -2.8% | -1 |
| SISKIYOU | 530 | 3 | 0.6% | 561 | 28 | 5.0% | -4.4% | -25 |
| SOLANO | 5,966 | 5 | 0.1% | 5,933 | 12 | 0.2% | -0.1% | -7 |
| SONOMA | 6,043 | 43 | 0.7% | 6,343 | 98 | 1.5% | -0.8% | -55 |
| STANISLAUS | 9,366 | 27 | 0.3% | 9,346 | 106 | 1.1% | -0.8% | -79 |
| SUTTER | 2,017 | 263 | 13.0% | 2,310 | 588 | 25.5% | -12.4% | -325 |
| TEHAMA | 1,073 | 13 | 1.2% | 983 | 15 | 1.5% | -0.3% | -2 |
| TRINITY | 138 | 1 | 0.7% | 124 | 1 | 0.8% | -0.1% | 0 |
| TULARE | 9,535 | 168 | 1.8% | 9,105 | 35 | 0.4% | 1.4% | 133 |
| TUOLUMNE | 584 | 8 | 1.4% | 614 | 16 | 2.6% | -1.2% | -8 |
| VENTURA | 11,466 | 69 | 0.6% | 11,814 | 86 | 0.7% | -0.1% | -17 |
| YOLO | 2,959 | 27 | 0.9% | 2,907 | 7 | 0.2% | 0.7% | 20 |
| YUBA | 1,361 | 29 | 2.1% | 1,404 | 22 | 1.6% | 0.6% | 7 |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

* County reporting fewer than 20 children in kindergarten.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 9: NUMBER AND PERCENTAGE OF OTHER STUDENTS LACKING REQUIRED IMMUNIZATIONS† IN 2019-2020
BY SUBGROUP AND COUNTY

| | TOTAL STUDENTS | OTHERS LACKING REQUIRED IMMUNIZATIONS† | | OTHERS LACKING REQUIRED IMMUNIZATIONS† | | | | | |
| | | | | INDEPENDENT STUDY | | IEP SERVICES | | HOME-BASED PRIVATE SCHOOL | |
| | NUMBER | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
|---|---|---|---|---|---|---|---|---|---|
| STATE TOTAL | 554,250 | 8,986 | 1.6% | 7,018 | 1.3% | 1,673 | 0.3% | 295 | 0.1% |
| COUNTY | | | | | | | | | |
| ALAMEDA | 21,622 | 36 | 0.2% | 0 | 0.0% | 34 | 0.2% | 2 | 0.0% |
| ALPINE | 9 | <20* | –* | <20* | –* | <20* | –* | –* | –* |
| AMADOR | 308 | 2 | 0.6% | 0 | 0.0% | 2 | 0.6% | 0 | 0.0% |
| BUTTE | 2,742 | 27 | 1.0% | 23 | 0.8% | 4 | 0.1% | 0 | 0.0% |
| CALAVERAS | 455 | 8 | 1.8% | 6 | 1.3% | 2 | 0.4% | 0 | 0.0% |
| COLUSA | 372 | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| CONTRA COSTA | 15,692 | 45 | 0.3% | 15 | 0.1% | 30 | 0.2% | 0 | 0.0% |
| DEL NORTE | 394 | 3 | 0.8% | 3 | 0.8% | 0 | 0.0% | 0 | 0.0% |
| EL DORADO | 2,909 | 392 | 13.5% | 386 | 13.3% | 6 | 0.2% | 0 | 0.0% |
| FRESNO | 18,461 | 294 | 1.6% | 278 | 1.5% | 15 | 0.1% | 1 | 0.0% |
| GLENN | 576 | 63 | 10.9% | 63 | 10.9% | 0 | 0.0% | 0 | 0.0% |
| HUMBOLDT | 1,715 | 12 | 0.7% | 6 | 0.3% | 5 | 0.3% | 1 | 0.1% |
| IMPERIAL | 3,117 | 12 | 0.4% | 0 | 0.0% | 12 | 0.4% | 0 | 0.0% |
| INYO | 271 | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| KERN | 18,327 | 1,462 | 8.0% | 1,390 | 7.6% | 70 | 0.4% | 2 | 0.0% |
| KINGS | 2,576 | 11 | 0.4% | 7 | 0.3% | 4 | 0.2% | 0 | 0.0% |
| LAKE | 796 | 6 | 0.8% | 4 | 0.5% | 2 | 0.3% | 0 | 0.0% |
| LASSEN | 350 | 3 | 0.9% | 3 | 0.9% | 0 | 0.0% | 0 | 0.0% |
| LOS ANGELES | 133,622 | 1,048 | 0.8% | 473 | 0.4% | 553 | 0.4% | 22 | 0.0% |
| MADERA | 2,727 | 21 | 0.8% | 19 | 0.7% | 2 | 0.1% | 0 | 0.0% |
| MARIN | 3,252 | 10 | 0.3% | 0 | 0.0% | 10 | 0.3% | 0 | 0.0% |
| MARIPOSA | 160 | 2 | 1.3% | 1 | 0.6% | 1 | 0.6% | 0 | 0.0% |
| MENDOCINO | 1,218 | 7 | 0.6% | 5 | 0.4% | 2 | 0.2% | 0 | 0.0% |
| MERCED | 5,321 | 33 | 0.6% | 0 | 0.0% | 33 | 0.6% | 0 | 0.0% |
| MODOC | 120 | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| MONO | 138 | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| MONTEREY | 6,733 | 4 | 0.1% | 0 | 0.0% | 4 | 0.1% | 0 | 0.0% |
| NAPA | 1,746 | 6 | 0.3% | 0 | 0.0% | 0 | 0.0% | 6 | 0.3% |
| NEVADA | 985 | 30 | 3.0% | 25 | 2.5% | 5 | 0.5% | 0 | 0.0% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or receiving IEP services or home-based private schools.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 9:  NUMBER AND PERCENTAGE OF OTHER STUDENTS LACKING REQUIRED IMMUNIZATIONS† IN 2019-2020 BY SUBGROUP AND COUNTY

| | TOTAL STUDENTS | OTHERS LACKING REQUIRED IMMUNIZATIONS† | | OTHERS LACKING REQUIRED IMMUNIZATIONS† | | | | | |
| | | | | INDEPENDENT STUDY | | IEP SERVICES | | HOME-BASED PRIVATE SCHOOL | |
| | NUMBER | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
|---|---|---|---|---|---|---|---|---|---|
| STATE TOTAL | 554,250 | 8,986 | 1.6% | 7,018 | 1.3% | 1,673 | 0.3% | 295 | 0.1% |
| COUNTY | | | | | | | | | |
| ORANGE | 41,381 | 338 | 0.8% | 130 | 0.3% | 192 | 0.5% | 16 | 0.0% |
| PLACER | 6,709 | 88 | 1.3% | 55 | 0.8% | 33 | 0.5% | 0 | 0.0% |
| PLUMAS | 208 | 1 | 0.5% | 0 | 0.0% | 1 | 0.5% | 0 | 0.0% |
| RIVERSIDE | 36,134 | 932 | 2.6% | 843 | 2.3% | 64 | 0.2% | 25 | 0.1% |
| SACRAMENTO | 21,495 | 407 | 1.9% | 257 | 1.2% | 103 | 0.5% | 47 | 0.2% |
| SAN BENITO | 1,099 | 1 | 0.1% | 1 | 0.1% | 0 | 0.0% | 0 | 0.0% |
| SAN BERNARDINO | 34,542 | 866 | 2.5% | 747 | 2.2% | 104 | 0.3% | 15 | 0.0% |
| SAN DIEGO | 45,956 | 1,633 | 3.6% | 1,489 | 3.2% | 114 | 0.2% | 30 | 0.1% |
| SAN FRANCISCO | 6,963 | 1 | 0.0% | 0 | 0.0% | 1 | 0.0% | 0 | 0.0% |
| SAN JOAQUIN | 12,320 | 176 | 1.4% | 48 | 0.4% | 63 | 0.5% | 65 | 0.5% |
| SAN LUIS OBISPO | 3,095 | 26 | 0.8% | 2 | 0.1% | 24 | 0.8% | 0 | 0.0% |
| SAN MATEO | 9,168 | 10 | 0.1% | 8 | 0.1% | 2 | 0.0% | 0 | 0.0% |
| SANTA BARBARA | 6,500 | 27 | 0.4% | 26 | 0.4% | 1 | 0.0% | 0 | 0.0% |
| SANTA CLARA | 24,963 | 57 | 0.2% | 0 | 0.0% | 57 | 0.2% | 0 | 0.0% |
| SANTA CRUZ | 3,415 | 158 | 4.6% | 141 | 4.1% | 17 | 0.5% | 0 | 0.0% |
| SHASTA | 2,525 | 72 | 2.9% | 58 | 2.3% | 11 | 0.4% | 3 | 0.1% |
| SIERRA | 25 | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% | 0 | 0.0% |
| SISKIYOU | 530 | 3 | 0.6% | 3 | 0.6% | 0 | 0.0% | 0 | 0.0% |
| SOLANO | 5,966 | 5 | 0.1% | 5 | 0.1% | 0 | 0.0% | 0 | 0.0% |
| SONOMA | 6,043 | 43 | 0.7% | 20 | 0.3% | 22 | 0.4% | 1 | 0.0% |
| STANISLAUS | 9,366 | 27 | 0.3% | 10 | 0.1% | 14 | 0.1% | 3 | 0.0% |
| SUTTER | 2,017 | 263 | 13.0% | 219 | 10.9% | 7 | 0.3% | 37 | 1.8% |
| TEHAMA | 1,073 | 13 | 1.2% | 10 | 0.9% | 3 | 0.3% | 0 | 0.0% |
| TRINITY | 138 | 1 | 0.7% | 0 | 0.0% | 1 | 0.7% | 0 | 0.0% |
| TULARE | 9,535 | 168 | 1.8% | 160 | 1.7% | 8 | 0.1% | 0 | 0.0% |
| TUOLUMNE | 584 | 8 | 1.4% | 3 | 0.5% | 2 | 0.3% | 3 | 0.5% |
| VENTURA | 11,466 | 69 | 0.6% | 36 | 0.3% | 19 | 0.2% | 14 | 0.1% |
| YOLO | 2,959 | 27 | 0.9% | 24 | 0.8% | 3 | 0.1% | 0 | 0.0% |
| YUBA | 1,361 | 29 | 2.1% | 16 | 1.2% | 11 | 0.8% | 2 | 0.1% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or receiving IEP services or home-based private schools.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 10: NUMBER AND PERCENTAGE OF STUDENTS WITH OVERDUE STATUS^ IN 2019-2020 AND 2018-2019, AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| COUNTY | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| | TOTAL STUDENTS | OVERDUE^ | PERCENT | TOTAL STUDENTS | OVERDUE^ | PERCENT | PERCENT | OVERDUE^ |
| STATE TOTAL | 554,250 | 8,227 | 1.5% | 555,735 | 6,083 | 1.1% | 0.4% | 2,144 |
| COUNTY | | | | | | | | |
| ALAMEDA | 21,622 | 353 | 1.6% | 21,818 | 336 | 1.5% | 0.1% | 17 |
| ALPINE | 9 | <20* | --* | 10 | <20* | --* | --* | --* |
| AMADOR | 308 | 6 | 1.9% | 279 | 1 | 0.4% | 1.6% | 5 |
| BUTTE | 2,742 | 11 | 0.4% | 2,822 | 12 | 0.4% | 0.0% | -1 |
| CALAVERAS | 455 | 5 | 1.1% | 437 | 0 | 0.0% | 1.1% | 5 |
| COLUSA | 372 | 11 | 3.0% | 360 | 0 | 0.0% | 3.0% | 11 |
| CONTRA COSTA | 15,692 | 188 | 1.2% | 15,192 | 129 | 0.8% | 0.3% | 59 |
| DEL NORTE | 394 | 6 | 1.5% | 382 | 3 | 0.8% | 0.7% | 3 |
| EL DORADO | 2,909 | 9 | 0.3% | 2,453 | 3 | 0.1% | 0.2% | 6 |
| FRESNO | 18,461 | 123 | 0.7% | 18,758 | 100 | 0.5% | 0.1% | 23 |
| GLENN | 576 | 5 | 0.9% | 540 | 12 | 2.2% | -1.4% | -7 |
| HUMBOLDT | 1,715 | 51 | 3.0% | 1,708 | 25 | 1.5% | 1.5% | 26 |
| IMPERIAL | 3,117 | 38 | 1.2% | 3,134 | 11 | 0.4% | 0.9% | 27 |
| INYO | 271 | 0 | 0.0% | 231 | 0 | 0.0% | 0.0% | 0 |
| KERN | 18,327 | 246 | 1.3% | 18,110 | 88 | 0.5% | 0.9% | 158 |
| KINGS | 2,576 | 11 | 0.4% | 2,686 | 14 | 0.5% | -0.1% | -3 |
| LAKE | 796 | 36 | 4.5% | 848 | 9 | 1.1% | 3.5% | 27 |
| LASSEN | 350 | 1 | 0.3% | 385 | 0 | 0.0% | 0.3% | 1 |
| LOS ANGELES | 133,622 | 3,270 | 2.4% | 136,039 | 2,640 | 1.9% | 0.5% | 630 |
| MADERA | 2,727 | 37 | 1.4% | 2,762 | 40 | 1.4% | -0.1% | -3 |
| MARIN | 3,252 | 18 | 0.6% | 3,170 | 8 | 0.3% | 0.3% | 10 |
| MARIPOSA | 160 | 0 | 0.0% | 156 | 0 | 0.0% | 0.0% | 0 |
| MENDOCINO | 1,218 | 42 | 3.4% | 1,204 | 97 | 8.1% | -4.6% | -55 |
| MERCED | 5,321 | 56 | 1.1% | 5,240 | 22 | 0.4% | 0.6% | 34 |
| MODOC | 120 | 3 | 2.5% | 111 | 1 | 0.9% | 1.6% | 2 |
| MONO | 138 | 2 | 1.4% | 150 | 4 | 2.7% | -1.2% | -2 |
| MONTEREY | 6,733 | 41 | 0.6% | 6,926 | 40 | 0.6% | 0.0% | 1 |
| NAPA | 1,746 | 15 | 0.9% | 1,429 | 5 | 0.3% | 0.5% | 10 |
| NEVADA | 985 | 10 | 1.0% | 990 | 1 | 0.1% | 0.9% | 9 |

^ Overdue for one or more immunizations.

* County reporting fewer than 20 children in kindergarten.

KINDERGARTEN ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 10: NUMBER AND PERCENTAGE OF STUDENTS WITH OVERDUE STATUS^ IN 2019-2020 AND 2018-2019, AND 1-YEAR PERCENTAGE POINT CHANGE, BY COUNTY

| | 2019-2020 | | | 2018-2019 | | | 1-YEAR PERCENTAGE POINT CHANGE | |
|---|---|---|---|---|---|---|---|---|
| COUNTY | TOTAL STUDENTS | OVERDUE^ | PERCENT | TOTAL STUDENTS | OVERDUE^ | PERCENT | PERCENT | OVERDUE^ |
| STATE TOTAL | 554,250 | 8,227 | 1.5% | 555,735 | 6,083 | 1.1% | 0.4% | 2,144 |
| ORANGE | 41,381 | 437 | 1.1% | 41,734 | 276 | 0.7% | 0.4% | 161 |
| PLACER | 6,709 | 166 | 2.5% | 6,470 | 132 | 2.0% | 0.4% | 34 |
| PLUMAS | 208 | 4 | 1.9% | 210 | 0 | 0.0% | 1.9% | 4 |
| RIVERSIDE | 36,134 | 388 | 1.1% | 35,422 | 294 | 0.8% | 0.2% | 94 |
| SACRAMENTO | 21,495 | 225 | 1.0% | 21,501 | 183 | 0.9% | 0.2% | 42 |
| SAN BENITO | 1,099 | 20 | 1.8% | 1,052 | 16 | 1.5% | 0.3% | 4 |
| SAN BERNARDINO | 34,542 | 471 | 1.4% | 33,920 | 288 | 0.8% | 0.5% | 183 |
| SAN DIEGO | 45,956 | 251 | 0.5% | 46,256 | 237 | 0.5% | 0.0% | 14 |
| SAN FRANCISCO | 6,963 | 196 | 2.8% | 6,840 | 176 | 2.6% | 0.2% | 20 |
| SAN JOAQUIN | 12,320 | 172 | 1.4% | 12,410 | 49 | 0.4% | 1.0% | 123 |
| SAN LUIS OBISPO | 3,095 | 29 | 0.9% | 3,012 | 13 | 0.4% | 0.5% | 16 |
| SAN MATEO | 9,168 | 116 | 1.3% | 9,275 | 159 | 1.7% | -0.4% | -43 |
| SANTA BARBARA | 6,500 | 35 | 0.5% | 6,273 | 10 | 0.2% | 0.4% | 25 |
| SANTA CLARA | 24,963 | 338 | 1.4% | 25,505 | 256 | 1.0% | 0.4% | 82 |
| SANTA CRUZ | 3,415 | 40 | 1.2% | 3,579 | 20 | 0.6% | 0.6% | 20 |
| SHASTA | 2,525 | 44 | 1.7% | 2,466 | 48 | 1.9% | -0.2% | -4 |
| SIERRA | 25 | 0 | 0.0% | 36 | 0 | 0.0% | 0.0% | 0 |
| SISKIYOU | 530 | 8 | 1.5% | 561 | 8 | 1.4% | 0.1% | 0 |
| SOLANO | 5,966 | 202 | 3.4% | 5,933 | 10 | 0.2% | 3.2% | 192 |
| SONOMA | 6,043 | 108 | 1.8% | 6,343 | 87 | 1.4% | 0.4% | 21 |
| STANISLAUS | 9,366 | 130 | 1.4% | 9,346 | 53 | 0.6% | 0.8% | 77 |
| SUTTER | 2,017 | 3 | 0.1% | 2,310 | 20 | 0.9% | -0.7% | -17 |
| TEHAMA | 1,073 | 26 | 2.4% | 983 | 8 | 0.8% | 1.6% | 18 |
| TRINITY | 138 | 4 | 2.9% | 124 | 2 | 1.6% | 1.3% | 2 |
| TULARE | 9,535 | 27 | 0.3% | 9,105 | 14 | 0.2% | 0.1% | 13 |
| TUOLUMNE | 584 | 7 | 1.2% | 614 | 17 | 2.8% | -1.6% | -10 |
| VENTURA | 11,466 | 123 | 1.1% | 11,814 | 56 | 0.5% | 0.6% | 67 |
| YOLO | 2,959 | 33 | 1.1% | 2,907 | 3 | 0.1% | 1.0% | 30 |
| YUBA | 1,361 | 30 | 2.2% | 1,404 | 47 | 3.3% | -1.1% | -17 |

^ Overdue for one or more immunizations.

* County reporting fewer than 20 children in kindergarten.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020
TABLE 11: NUMBER AND PERCENTAGE OF STUDENTS WITH REQUIRED IMMUNIZATIONS BY VACCINE SERIES, BY COUNTY

| COUNTY | TOTAL STUDENTS NUMBER | DTP 4+ NUMBER | DTP 4+ PERCENT | POLIO 3+ NUMBER | POLIO 3+ PERCENT | MMR 2 NUMBER | MMR 2 PERCENT | HEP B 3+ NUMBER | HEP B 3+ PERCENT | VAR 2+ NUMBER | VAR 2+ PERCENT |
|---|---|---|---|---|---|---|---|---|---|---|---|
| STATE TOTAL | 554,250 | 532,988 | 96.2% | 535,112 | 96.5% | 534,929 | 96.5% | 539,760 | 97.4% | 532,349 | 96.0% |
| ALAMEDA | 21,622 | 21,208 | 98.1% | 21,285 | 98.4% | 21,301 | 98.5% | 21,342 | 98.7% | 21,127 | 97.7% |
| ALPINE | 9 | <20* | -* | <20* | -* | <20* | -* | <20* | -* | <20* | -* |
| AMADOR | 308 | 289 | 93.8% | 293 | 95.1% | 291 | 94.5% | 292 | 94.8% | 287 | 93.2% |
| BUTTE | 2,742 | 2,646 | 96.5% | 2,665 | 97.2% | 2,674 | 97.5% | 2,683 | 97.8% | 2,666 | 97.2% |
| CALAVERAS | 455 | 434 | 95.4% | 434 | 95.4% | 435 | 95.6% | 441 | 96.9% | 432 | 94.9% |
| COLUSA | 372 | 369 | 99.2% | 370 | 99.5% | 369 | 99.2% | 371 | 99.7% | 363 | 97.6% |
| CONTRA COSTA | 15,692 | 15,303 | 97.5% | 15,346 | 97.8% | 15,370 | 97.9% | 15,464 | 98.5% | 15,294 | 97.5% |
| DEL NORTE | 394 | 386 | 98.0% | 390 | 99.0% | 388 | 98.5% | 389 | 98.7% | 387 | 98.2% |
| EL DORADO | 2,909 | 2,397 | 82.4% | 2,422 | 83.3% | 2,404 | 82.6% | 2,518 | 86.6% | 2,377 | 81.7% |
| FRESNO | 18,461 | 17,963 | 97.3% | 18,034 | 97.7% | 18,071 | 97.9% | 18,163 | 98.4% | 18,039 | 97.7% |
| GLENN | 576 | 506 | 87.8% | 510 | 88.5% | 510 | 88.5% | 523 | 90.8% | 507 | 88.0% |
| HUMBOLDT | 1,715 | 1,581 | 92.2% | 1,578 | 92.0% | 1,583 | 92.3% | 1,582 | 92.2% | 1,570 | 91.5% |
| IMPERIAL | 3,117 | 3,050 | 97.9% | 3,079 | 98.8% | 3,056 | 98.0% | 3,096 | 99.3% | 3,051 | 97.9% |
| INYO | 271 | 265 | 97.8% | 267 | 98.5% | 268 | 98.9% | 268 | 98.9% | 267 | 98.5% |
| KERN | 18,327 | 17,149 | 93.6% | 16,754 | 91.4% | 16,726 | 91.3% | 17,223 | 94.0% | 16,632 | 90.8% |
| KINGS | 2,576 | 2,520 | 97.8% | 2,548 | 98.9% | 2,552 | 99.1% | 2,561 | 99.4% | 2,542 | 98.7% |
| LAKE | 796 | 738 | 92.7% | 754 | 94.7% | 759 | 95.4% | 770 | 96.7% | 757 | 95.1% |
| LASSEN | 350 | 329 | 94.0% | 337 | 96.3% | 337 | 96.3% | 337 | 96.3% | 332 | 94.9% |
| LOS ANGELES | 133,622 | 129,305 | 96.8% | 129,772 | 97.1% | 129,649 | 97.0% | 131,279 | 98.2% | 128,836 | 96.4% |
| MADERA | 2,727 | 2,652 | 97.2% | 2,663 | 97.7% | 2,673 | 98.0% | 2,675 | 98.1% | 2,668 | 97.8% |
| MARIN | 3,252 | 3,123 | 96.0% | 3,140 | 96.6% | 3,152 | 96.9% | 3,147 | 96.8% | 3,116 | 95.8% |
| MARIPOSA | 160 | 152 | 95.0% | 153 | 95.6% | 153 | 95.6% | 156 | 97.5% | 153 | 95.6% |
| MENDOCINO | 1,218 | 1,081 | 88.8% | 1,095 | 89.9% | 1,092 | 89.7% | 1,092 | 89.7% | 1,080 | 88.7% |
| MERCED | 5,321 | 5,191 | 97.6% | 5,254 | 98.7% | 5,250 | 98.7% | 5,275 | 99.1% | 5,225 | 98.2% |
| MODOC | 120 | 116 | 96.7% | 116 | 96.7% | 117 | 97.5% | 119 | 99.2% | 116 | 96.7% |
| MONO | 138 | 127 | 92.0% | 125 | 90.6% | 128 | 92.8% | 127 | 92.0% | 128 | 92.8% |
| MONTEREY | 6,733 | 6,613 | 98.2% | 6,626 | 98.4% | 6,641 | 98.6% | 6,654 | 98.8% | 6,611 | 98.2% |
| NAPA | 1,746 | 1,716 | 98.3% | 1,716 | 98.3% | 1,711 | 98.0% | 1,707 | 97.8% | 1,709 | 97.9% |
| NEVADA | 985 | 822 | 83.5% | 819 | 83.1% | 820 | 83.2% | 823 | 83.6% | 803 | 81.5% |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten. For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%; 50-99 enrollees, values of 98% or higher are listed as ≥98%; 100 or more enrollees, values of 99% or higher are listed as ≥99%.

KINDERGARTEN IMMUNIZATION ASSESSMENT - CALIFORNIA, 2019-2020

TABLE 11: NUMBER AND PERCENTAGE OF STUDENTS WITH REQUIRED IMMUNIZATIONS BY VACCINE SERIES, BY COUNTY

| | TOTAL STUDENTS | DTP 4+ | | POLIO 3+ | | MMR 2 | | HEP B 3+ | | VAR 2+ | |
|---|---|---|---|---|---|---|---|---|---|---|---|
| | NUMBER | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT | NUMBER | PERCENT |
| STATE TOTAL | 554,250 | 532,988 | 96.2% | 535,112 | 96.5% | 534,929 | 96.5% | 539,760 | 97.4% | 532,349 | 96.0% |
| COUNTY | | | | | | | | | | | |
| ORANGE | 41,381 | 40,222 | 97.2% | 40,341 | 97.5% | 40,303 | 97.4% | 40,613 | 98.1% | 40,171 | 97.1% |
| PLACER | 6,709 | 6,301 | 93.9% | 6,337 | 94.5% | 6,283 | 93.7% | 6,375 | 95.0% | 6,260 | 93.3% |
| PLUMAS | 208 | 200 | 96.2% | 198 | 95.2% | 201 | 96.6% | 201 | 96.6% | 195 | 93.8% |
| RIVERSIDE | 36,134 | 34,370 | 95.1% | 34,591 | 95.7% | 34,624 | 95.8% | 34,737 | 96.1% | 34,448 | 95.3% |
| SACRAMENTO | 21,495 | 20,421 | 95.0% | 20,622 | 95.9% | 20,602 | 95.8% | 20,752 | 96.5% | 20,522 | 95.5% |
| SAN BENITO | 1,099 | 1,075 | 97.8% | 1,075 | 97.8% | 1,070 | 97.4% | 1,085 | 98.7% | 1,076 | 97.9% |
| SAN BERNARDINO | 34,542 | 32,895 | 95.2% | 33,177 | 96.0% | 33,221 | 96.2% | 33,668 | 97.5% | 33,179 | 96.1% |
| SAN DIEGO | 45,956 | 43,421 | 94.5% | 43,594 | 94.9% | 43,556 | 94.8% | 43,887 | 95.5% | 43,376 | 94.4% |
| SAN FRANCISCO | 6,963 | 6,778 | 97.3% | 6,805 | 97.7% | 6,793 | 97.6% | 6,814 | 97.9% | 6,748 | 96.9% |
| SAN JOAQUIN | 12,320 | 11,890 | 96.5% | 12,008 | 97.5% | 12,008 | 97.5% | 12,132 | 98.5% | 11,941 | 96.9% |
| SAN LUIS OBISPO | 3,095 | 2,968 | 95.9% | 2,979 | 96.3% | 2,978 | 96.2% | 3,007 | 97.2% | 2,961 | 95.7% |
| SAN MATEO | 9,168 | 8,973 | 97.9% | 8,995 | 98.1% | 8,996 | 98.1% | 9,038 | 98.6% | 8,930 | 97.4% |
| SANTA BARBARA | 6,500 | 6,341 | 97.6% | 6,369 | 98.0% | 6,364 | 97.9% | 6,384 | 98.2% | 6,333 | 97.4% |
| SANTA CLARA | 24,963 | 24,494 | 98.1% | 24,578 | 98.5% | 24,503 | 98.2% | 24,661 | 98.8% | 24,372 | 97.6% |
| SANTA CRUZ | 3,415 | 3,157 | 92.4% | 3,155 | 92.4% | 3,161 | 92.6% | 3,178 | 93.1% | 3,179 | 93.1% |
| SHASTA | 2,525 | 2,350 | 93.1% | 2,356 | 93.3% | 2,368 | 93.8% | 2,405 | 95.2% | 2,345 | 92.9% |
| SIERRA | 25 | --* | ≥95% | --* | ≥95% | --* | ≥95% | --* | ≥95% | --* | ≥95% |
| SISKIYOU | 530 | 515 | 97.2% | 516 | 97.4% | 517 | 97.5% | 518 | 97.7% | 517 | 97.5% |
| SOLANO | 5,966 | 5,807 | 97.3% | 5,848 | 98.0% | 5,850 | 98.1% | 5,868 | 98.4% | 5,820 | 97.6% |
| SONOMA | 6,043 | 5,720 | 94.7% | 5,728 | 94.8% | 5,723 | 94.7% | 5,758 | 95.3% | 5,699 | 94.3% |
| STANISLAUS | 9,366 | 9,054 | 96.7% | 9,151 | 97.7% | 9,162 | 97.8% | 9,199 | 98.2% | 9,143 | 97.6% |
| SUTTER | 2,017 | 1,748 | 86.7% | 1,760 | 87.3% | 1,772 | 87.9% | 1,812 | 89.8% | 1,786 | 88.5% |
| TEHAMA | 1,073 | 1,024 | 95.4% | 1,039 | 96.8% | 1,037 | 96.6% | 1,051 | 97.9% | 1,026 | 95.6% |
| TRINITY | 138 | 123 | 89.1% | 121 | 87.7% | 126 | 91.3% | 127 | 92.0% | 127 | 92.0% |
| TULARE | 9,535 | 9,281 | 97.3% | 9,332 | 97.9% | 9,337 | 97.9% | 9,385 | 98.4% | 9,317 | 97.7% |
| TUOLUMNE | 584 | 541 | 92.6% | 548 | 93.8% | 547 | 93.7% | 555 | 95.0% | 546 | 93.5% |
| VENTURA | 11,466 | 11,115 | 96.9% | 11,157 | 97.3% | 11,156 | 97.3% | 11,238 | 98.0% | 11,084 | 96.7% |
| YOLO | 2,959 | 2,845 | 96.1% | 2,849 | 96.3% | 2,858 | 96.6% | 2,886 | 97.5% | 2,842 | 96.0% |
| YUBA | 1,361 | 1,296 | 95.2% | 1,306 | 96.0% | 1,301 | 95.6% | 1,317 | 96.8% | 1,299 | 95.4% |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten. For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%; 50-99 enrollees, values of 98% or higher are listed as ≥98%; 100 or more enrollees, values of 99% or higher are listed as ≥99%.

# Exhibit 10

Date of Hearing:   June 20, 2019

ASSEMBLY COMMITTEE ON HEALTH
Jim Wood, Chair
SB 276 (Pan) – As Amended June 17, 2019

**SENATE VOTE**: 24-10

**SUBJECT**:  Immunizations: medical exemptions.

**SUMMARY:** Requires the Department Public Health (DPH) to annually review immunization reports from all schools and institutions to identify medical exemptions subject to review. Requires a clinically trained DPH staff member to review exemptions from schools or institutions with an immunization rate of less than 95% or physicians and surgeons who submit five or more medical exemptions in a calendar year. Permits DPH to deny or revoke a medical exemption determined to be inappropriate or invalid, as specified. Establishes an appeals process for medical exemptions that are denied or revoked and creates an independent review panel made up of three physicians for purposes of appeals. Requires DPH to create a standardized statewide form for the purpose of obtaining a medical exemption or medical exemptions for immunization requirements. Requires the form to include specific information, including the name; California medical license of the physician issuing the medical exemption; and, certification that the physician has conducted a physical examination and evaluation of the child consistent with the standard care. States that medical exemptions granted prior to January 1, 2021 that are founfd to be fraudulent or inconsistent, as specified, may be revoked or denied. Specifically, **this bill**:

1) Requires DPH, by January 1, 2021, to develop and make available for use by licensed physicians and surgeons an electronic, standardized, and statewide medical exemption certification form that will be transmitted directly using the existing California Immunization Registry (CAIR).

2) Requires medical exemption certification forms to be printed, signed, and submitted directly to the governing authority of the school or institution or to the governing authority of the school or institution through CAIR, when applicable.

3) Requires, commencing January 1, 2021, the standardized form to be the only documentation of a medical exemption that the governing authority can accept, except for those medical exemptions authorized prior to the adoption of the standardized form under this bill.

4) Requires the standardized form, at a minimum, to require all of the following information:

   a) The name, California medical license number, and business address and telephone number of the physician and surgeon who issued the medical exemption, and of the primary care physician (PCP) of the child, if different from the physician and surgeon who issued the medical exemption;

   b) The name of the child for whom the exemption is sought and the name and address of the child's parent or guardian, and the name and address of the child's school or institution;

c) A statement certifying that the issuing physician and surgeon has conducted a physical examination and evaluation of the child consistent with the relevant standard of care, and complied with all the requirements of this bill;

d) Whether the issuing physician and surgeon is the child's PCP. Requires that if the issuing physician and surgeon is not the child's PCP and has not been treating the child for at least one year, the issuing physician must attest that the PCP has been contacted and advised of the submission of the medical exemption form;

e) A description of the medical basis for which the exemption for each individual immunization is sought. Requires each specific immunization to be listed separately and space to be provided on the form for the inclusion of descriptive information for each immunization for which the exemption is sought;

f) Whether the medical exemption is permanent or temporary, including the date upon which a temporary medical exemption will expire. Prohibits a temporary exemption from exceeding one year;

g) An authorization for DPH to contact the issuing physician for purposes of this bill and for the release of records related to the medical exemption to DPH, the Medical Board of California (MBC) and the Osteopathic Medical Board of California (OMB); and,

h) A certification by the issuing physician and surgeon, under penalty of perjury, that the statements and information contained in the form are true, accurate, and complete.

5) Prohibits a physician and surgeon from charging for either of the following:

a) Filling out a medical exemption form; or,

b) An examination related to the renewal of a temporary medical exemption.

6) Requires, commencing January 1, 2021, if a parent or guardian requests a licensed physician and surgeon to submit a medical exemption for the parent's or guardian's child, the physician and surgeon to inform the parent or guardian of the requirements of this bill. Provides that if a parent or guardian consents, the physician and surgeon must examine the child and submit a completed medical exemption certification form to DPH. Allows a medical exemption form to be submitted to DPH at any time.

7) Requires DPH, by January 1, 2021, to create a standardized system to monitor immunization levels in schools and institutions as defined in existing law, and to monitor patterns of unusually high exemption form submissions by a particular physician and surgeon or a medical practice.

8) Permits DPH to review any medical exemption granted by a physician and surgeon before January 1, 2021. States the following for medical exemptions that were authorized prior to the adoption of the standardized form under this bill (prior to January 1, 2021):

a) A parent or guardian must submit by January 1, 2021, a copy of the medical exemption to DPH for inclusion in CAIR in order for the medical exemption to remain valid;

b) If the local health officer (LHO) determines that a medical exemption granted prior to January 1, 2021, and submitted to DPH is fraudulent or inconsistent with applicable Centers for Disease Control and Prevention (CDC), federal Advisory Committee on Immunization Practices (ACIP), or American Academy of Pediatrics (AAP) criteria for appropriate medical exemptions, the LHO may provide the information to the State Public Health Officer (SPHO) who may revoke the exemption upon the request of the LHO; and,

c) Requires DPH to annually review immunization reports from all schools and institutions in order to identify medical exemptions granted prior to January 1, 2021, for inconsistencies with CDC, ACIP, and AAP guidelines.

9) Requires a clinically trained immunization DPH staff member to review all medical exemptions from either of the following:

a) Schools or institutions with an immunization rate of less than 95%; and,

b) Physicians and surgeons who have submitted five or more medical exemptions in a calendar year.

10) Requires DPH to identify those medical exemption forms that do not meet applicable CDC, ACIP, or AAP criteria for appropriate medical exemptions. Permits DPH to contact the PCP or issuing physician and surgeon to request additional information to support the medical exemption.

11) Permits DPH, based on the medical discretion of the clinically trained immunization staff member, to accept a medical exemption that is based on other contraindications or precautions, including the consideration of family medical history if the issuing physician and surgeon provides written documentation to support the medical exemption that is consistent with the relevant standard of care.

12) Requires any medical exemption that DPH's reviewing immunization staff member determines to be inappropriate or otherwise invalid, under the review specified in 10) and 11) above, to also be reviewed by the SPHO or a physician and surgeon designee of the SPHO. Permits, under this review, the SPHO or physician and surgeon designee to deny or revoke a medical exemption, as applicable.

13) Requires DPH to notify the issuing physician and surgeon, the school or institution, and the LHO with jurisdiction over the school or institution of a denial or revocation of a medical exemption that is subject to review.

14) Requires a child to comply with the conditional admission schedule for immunization and continued attendance requirements specified in regulations in the case of a medical exemption that is denied, revoked, or pending appeal.

15) Prohibits DPH from accepting a medical exemption form from a physician and surgeon if it determines that a physician and surgeon poses a risk to the public's health in one or more communities until the physician and surgeon demonstrates to DPH that the risk no longer exists, but in no event will a physician be barred from submitting their forms for less than two years.

16) Prohibits DPH from accepting medical exemption forms from a physician and surgeon with a pending accusation with the MBC or OMB relating to immunization standards of care until the accusation is resolved in favor of the physician and surgeon.

17) Requires DPH to notify the MBC and OMB, as appropriate, of the following:

 a) Physicians and surgeons that have issued medical exemption forms that have been denied or revoked under this bill; or,

 b) Physicians and surgeons who qualify under 15) above.

18) Permits a DPH clinically trained immunization staff member to review any exemption in CAIR as necessary to protect public health.

19) Requires DPH, MBC, and OMB to enter into a memorandum of understanding or similar agreement to ensure compliance with this bill.

20) Requires DPH and the independent review panel specified in 23) below, to comply with all applicable state and federal privacy and confidentiality laws and permits disclosure only in accordance with existing state and federal privacy and confidentiality laws.

21) Permits DPH, if it determines that contracts are required to implement this bill, to award these contracts on a single-source or sole-source basis and exempt from the public contract requirements, as specified. Permits DPH to implement and administer the provisions of this bill through provider bulletins or similar instructions without taking regulatory action.

22) Permits a parent or guardian to appeal the denial or revocation of a medical exemption to the California Health and Human Services (CHHS) Secretary. Permits parents and guardians to provide necessary information to the independent review panel for the appeal.

23) Requires the Secretary of CHHS to appoint an independent expert review panel, consisting of three licensed physicians and surgeons who are PCP or immunization experts, to review appeals. Requires CHHS to establish requirements, including conflict-of-interest standards, as specified, that a physician and surgeon is required to meet in order to qualify for an appointment to the panel.

24) Requires the independent expert review panel to evaluate appeals consistent with the CDC and ACIP guidelines and the relevant standard of care, as applicable.

25) Requires the independent expert review panel to submit its findings and recommendations to the secretary. Requires the CHHS Secretary's final decision to be consistent with the findings of the independent expert review panel, and is not subject to further administrative review.

26) Requires the existing report filed by the governing authority of each school or institution of new entrants to be filed annually.

27) Makes other technical and conforming changes.

28) Finds and declares the importance of vaccines.

**EXISTING LAW**:

1) Establishes DPH to, among other functions, examine the causes of communicable diseases occurring or likely to occur in this state and as the entity mainly responsible for the prevention of communicable diseases.

2) Authorizes the SPHO, as the director of DPH, broad authority to detect, monitor, and prevent the spread of communicable disease in the state, including the ability to:

    a) Require the reporting of communicable diseases that DPH identifies, on timelines and in a manner determined by the DPH;

    b) Adopt and enforce regulations requiring strict or modified isolation, or quarantine, for any of the contagious, infectious, or communicable diseases, if in the opinion of DPH, the action is necessary for the protection of the public health;

    c) Take measures as are necessary to ascertain the nature of the disease and prevent its spread; and, allows DPH to take possession or control of the body of any living person, or the corpse of any deceased person, as specified;

    d) Quarantine, isolate, inspect, and disinfect persons, animals, houses, rooms, other property, places, cities, or localities, whenever in its judgment the action is necessary to protect or preserve the public health; and,

    e) Destroy such objects as bedding, carpets, household goods, furnishings, materials, clothing, or animals, when ordinary means of disinfection are considered unsafe, and when the property is in its judgment, an imminent menace to the public health.

3) Requires the SPHO to be a licensed physician and surgeon who has demonstrated medical, public health, and management experience.

4) Requires a LHO knowing or having reason to believe that any case of reportable diseases, or any other contagious, infectious or communicable disease exists, or has recently existed, within the territory under his or her jurisdiction, to take measures as may be necessary to prevent the spread of the disease or occurrence of additional cases.

5) Prohibits the governing authority of a school or other institution from unconditionally admitting any person as a pupil of any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless, prior to his or her first admission to that institution, he or she has been fully immunized against the following diseases, as specified:

    a) Diphtheria;
    b) Haemophilus influenzae type b (Hib);
    c) Measles;
    d) Mumps;
    e) Pertussis;
    f) Poliomyelitis;
    g) Rubella;

   h)  Tetanus;

   i)  Hepatitis b (except after 7th grade); and,

   j)  Chickenpox.

6) Requires the governing authority of each school or institution to require documentary proof of each entrant's immunization status.

7) Requires the governing authority to record the immunizations of each new entrant in the entrant's permanent enrollment and scholarship record on a form provided by DPH.

8) Requires the immunization record of each new entrant admitted conditionally to be reviewed periodically by the governing authority to ensure that they have been fully immunized against appropriate communicable diseases. Requires immunizations received after entry to be added to the pupil's immunization record.

9) Prohibits any further admittance to school for a pupil admitted conditionally who failed to obtain the required immunizations within the time limits allowed in the regulations of DPH unless the pupil has obtained an authorized medical exemption. Permits admittance to a school or institution for a pupil that has become up to date with required immunizations.

10) Requires the governing authority to file a written report on the immunization status of new entrants to the school or institution under their jurisdiction with DPH and the local health department at times and on forms prescribed by DPH.

11) Requires the governing authority to cooperate with the county health officer in carrying out programs for the immunization of persons applying for admission to any school or institution under its jurisdiction. Permits the governing board of any school district to use funds, property, and personnel of the district for that purpose. Permits the governing authority of any school or other institution to permit any licensed physician or any qualified registered nurse to administer immunizing agents to any person seeking admission to any school or institution under its jurisdiction.

12) Permits DPH to add to the list of required immunizations any other disease deemed appropriate, taking into consideration the recommendations of the CDC, ACIP, and the AAP Committee on Infectious Diseases.

13) Waives the above immunization requirements if the parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances including, but not limited to, family medical history, for which the physician does not recommend immunization.

14) Permits a child for whom the requirement has been waived, if there is good cause to believe that a child has been exposed to one of the specified communicable diseases and the child's proof of immunization status does not show proof of immunization against that disease, to be temporarily excluded from the school or institution until the LHO is satisfied that the child is no longer at risk of developing or transmitting the disease.

15) Establishes the MBC, under the Medical Practice Act, and the OMB, under the Osteopathic Act, which, among other authorities, is the entity that conducts investigations of complaints against physicians and surgeon, including those relating to immunization practice standards of care.

**FISCAL EFFECT**: According to the Senate Appropriations Committee, up to $9.4 million in fiscal year (FY) 2019-20; $9.97 million in FY 2020-21; $10.8 million in FY 2021-22; $10.2 million in FY 2022-23, and $10.15 million in FY 2023-24. All costs to be borne by General Fund for DPH workload and staff to promulgate regulations, prepare appeals, and review exemption requests. In addition, staff anticipates possible contract costs, and ongoing operations costs, for the development and maintenance of a database and its security.

**COMMENTS**:

1) **PURPOSE OF THIS BILL**. According to the author, since the start of 2019, 1,044 measles cases have been reported across 28 states, far surpassing last year's number of cases. This is the greatest number of cases since 1992 and since 2000 when measles was declared eliminated. The author states that SB 277 (Pan and Allen), Chapter 35, Statutes of 2015, eliminated all non-medical exemptions for immunizations required for school entry. While SB 277 was successful in raising immunization rates, the number of medical exemptions issued more than tripled since the law went into effect. According to the author, many of the exemptions are clustered in the same schools, creating concentrated pockets of unvaccinated individuals. At almost 60 schools in the state, more than 10% of kindergarteners had medical exemptions. The rise in medical exemptions is associated with an increase in physicians issuing exemptions for children without medically-justified contraindications. While the vast majority of physicians uphold standards of care, a small number of unethical physicians have monetized their license by selling medical exemptions for profit. Currently, California law requires no state-level oversight or standardization of exemptions. As a result, medical exemptions often contain incomplete information and may be issued for reasons other than medically-justified contraindications. The author concludes that this bill will restore integrity to California's immunization exemption process.

2) **BACKGROUND**. According to the CDC, diseases that used to be common in the U.S. and around the world, including polio, measles, diphtheria, pertussis (whooping cough), rubella (German measles), mumps, tetanus, rotavirus and Hib can now be prevented by vaccination. Due to vaccines, one of the most terrible diseases in history – smallpox – no longer exists outside the laboratory because of vaccines. Over the years vaccines have prevented countless cases of diseases and saved millions of lives. Vaccines work by utilizing the body's own immune system to protect against dangerous pathogens to build immunity to that disease. Immunity means that the body has an existing defense system specific to a disease that protects a person from getting sick if they come into contact with that disease. According to the World Health Organization, vaccines have been estimated to have saved at least 10 million lives between 2010 and 2015 alone.

For the vast majority of individuals, vaccines have been shown to be safe and effective. This is a key component to why vaccinating as much of the population as possible is crucial for the operability of vaccines in fighting infectious disease. Herd immunity, also referred to as community immunity, is when a largely vaccinated population (95% of a community for the most contagious of diseases) can actually suppress a disease to the point of eradication,

which greatly protects the most vulnerable population who cannot receive vaccines because of age or medical condition that renders vaccines unsafe for that individual. For example, newborn babies are immune to many diseases because they have antibodies they got from their mothers. However, this immunity goes away during the first year of life. If an unvaccinated child is exposed to a disease germ, the child's body may not be strong enough to fight the disease. Before vaccines, many children died from diseases that vaccines now prevent, such as whooping cough, measles, and polio. Those same germs exist today, but because babies are protected by vaccines, we do not see these diseases nearly as often.

a)  **Current Public Health Threats**. Although vaccines have been an incredible success in protecting communities from some of the most dangerous communicable diseases, in recent years there has been an uptick in the number of measles cases across the U.S., including in California. Highly contagious viruses, like the measles, can be contracted by individuals traveling to regions where it has not been eliminated and bring it back to the U.S. When this occurs, vulnerable, unvaccinated individuals are at risk of contracting the disease. Measles is one of the most contagious communicable diseases, nine out of 10 susceptible individuals that come into contact with the measles will develop the disease. The last large outbreak of the measles in California was in 2014-2015 in the Disneyland outbreak. According to DPH, at least 131 California residents contracted the measles either at Disneyland or from contact with an individual who contracted the disease at Disneyland in December 2014 according to DPH. Those infected included approximately 45% unvaccinated individuals and approximately 43% individuals with unknown vaccination records, according to a Morbidity and Mortality Weekly Report published by the CDC. Since 2015, according to the data from the CDC, there has been a steady increase in identified measles cases nationwide. To date in 2019, the CDC has reported 1,022 new cases of the measles. In California, there have been 51 cases of the measles across the state. It is worthwhile to note that 40 of these cases were in adults. This is likely because adults born prior to the 1989 recommendation of a second dose of the measles vaccine (MMR), have less immunity and are left susceptible to the disease. Nevertheless, the contagiousness of the measles leaves infants and children that are not vaccinated at great risk for contracting the disease which can lead to hospitalization and even death. In the pre-vaccine era, according to the CDC, nearly all children contracted the measles before they were 15 years old and an estimated 48,000 children were hospitalized and 400 to500 children died from this disease annually. That is the detriment communities face if community immunity is insufficient.

b)  **Immunization Requirements**. All 50 states in the U.S. have enacted laws or regulations that require children to receive certain vaccines before they enter certain childcare facilities and/or school. Exceptions to these laws vary by state, and can include medical, religious, and/or philosophical objections. In California, where vaccine laws are some of the strictest in the nation, personal belief exemptions (PBEs) based on religious or philosophical objections are no longer permitted since the passage of SB 277. Two other states, West Virginia and Mississippi, have also passed laws to ban PBEs. Medical exemptions from a licensed physician, however, continue to be accepted in schools.

Current state law mandates immunization of school-aged children against 10 specific diseases as specified in 4) under existing law above. Each of the 10 diseases were added to California code through legislative action, after careful consideration of the public health risks of these diseases, costs to the state and health system, communicability, and

rates of transmission. All of the diseases for which California requires school vaccinations are serious conditions that pose very real health risks to children. Most of the diseases can be spread by contact with other infected children. Tetanus does not spread from student to student, but because it is such a serious potentially fatal disease, and it is easily preventable by vaccine, it is a required vaccination for school enrollment in children.

c) **California Immunization Status Report 2018-2019.** California schools are required to annually submit to DPH a report of the immunization status of their students. According to the 2018-2019 Kindergarten Immunization Assessment report published by the DPH Immunization Branch, 94.8% of all children entering kindergarten for the 2018-2019 school year were up to date and on time with all of the required immunizations. This is a 0.3% decrease in the immunization rate from the previous year. However, approximately 20% of schools and institutions have been identified to have immunization rates under 95%. These include day care centers (2,031/9,212 institutions), kindergartens (1,548/6,758 schools) and middle schools (331/3,362 schools) that have an immunization rate less of than 95%.

Although schools or institutions are required to report the immunization status of their students to DPH at least annually, in 2018-2019, there were approximately 1,000 schools and institutions that did not comply with this requirement.

In 2018 a group of researchers published two peer-reviewed articles (one in the journal *Pediatrics* and the other in the *Journal of Research and Practice*) detailing the experiences of LHOs and immunization staff in addressing medical exemptions after the passage of SB 277. One of the major concerns raised by these groups identified by the studies was the lack of a centralized review of medical exemptions. The LHOs and immunization staff interviewed (representing 35/61 local health departments) identified that the medical exemptions their jurisdictions received being accepted were, from their perspectives, problematic and not always consistent with trusted guidelines for immunization practices, including the CDC, ACIP, and AAP guidelines referenced in this bill.

d) **MBC Investigation.** Following the implementation of SB 277, there was, as reported above, an increase in medical exemptions in California. According to the MBC, since the passage of SB 277, there have been 173 confirmed complaints against 66 physicians regarding suspect medical exemptions according to the MBC. Additionally, there are 104 pending complaints among 52 physicians. The MBC has taken action against one physician. However, the MBC states that the investigations into complaints related to immunization standard of care, have been dismissed because of insufficient evidence, since patients that received the medical exemptions do not provide authorization of their medical exemption that are necessary to support the MBC's accusation.

e) **Best Practice Guidelines for Administering Vaccines.** The CDC, in coordination with the recommendations from ACIP, publishes the best practice guidelines for immunization schedules and for medical exemption decisions, including guidance on appropriate contraindications or precautions to administering vaccines. The ACIP is a committee of medical and public health experts that develop public health and safety-based recommendations on the public use of vaccines and related biological products. The ACIP includes 15 voting members responsible for making vaccine recommendations.

The Secretary of the U.S. Department of Health and Human Services (DHHS) selects these members following an application and nomination process. Fourteen of the members have expertise in vaccinology, immunology, pediatrics, internal medicine, nursing, family medicine, virology, public health, infectious diseases, and/or preventive medicine; one member is a consumer representative who provides perspectives on the social and community aspects of vaccination. In addition to the 15 voting members, ACIP includes eight ex officio members who represent other federal agencies with responsibility for immunization programs in the United States, and 30 non-voting representatives of liaison organizations that bring related immunization expertise. Professional organizations work with ACIP to develop the annual childhood and adult schedules. These organizations include the AAP, the American Academy of Family Physicians, the American College of Obstetricians and Gynecologists, and the American College of Physicians. The 2019 Recommended Immunization Schedules for Persons Aged zero through 18 Years state: "children under six are recommended to receive vaccines for: hepatitis b; rotavirus; diphtheria, tetanus, and pertussis (DTaP); Hib; pneumococcal; polio; influenza; MMR; varicella; hepatitis a; and meningococcal."

f) **Public Vaccine Safety Concerns:** Safety studies, both throughout the Federal Drug Administration (FDA) drug trials process, and in ongoing studies show that vaccines are safe for the vast majority of the population. In California, 95.1% of all school-aged children have their full course of vaccination completed according to the CDC recommended schedule. As with all drugs, vaccines do not come without any side effects. The mild, acute reactions to vaccines include injection site redness, soreness, and a fever. These reactions have not been found to lead to any long term detriment. More severe reactions, such as encephalopathy and severe allergic reactions are considered valid contraindications of vaccines under CDC/ACIP/AAP guidelines. In addition to the antigen, or microbe specific to the disease a vaccine protects against, vaccines also include a number of other ingredients. The vaccine ingredient that causes much of the concerns or vaccine hesitancy are the adjuvants.

According to the FDA, for over 70 years, adjuvants have been components of non-live vaccines that stimulate the body to protect again the antigen being injected as part of the vaccine. Alum, or aluminum salts are the most commonly used adjuvants in the U.S. for vaccines, and illicit a defense immune response against the antigen (disease microbe). The use of adjuvants allows less antigen to be used in the vaccine and also allows vaccines to be safe and effective for immunocompromised individuals. This is why in the CDC/ACIP/AAP best practice guidelines, only live vaccines such as MMR and Varicella, are contraindicated for individuals without sufficient immunocompetence. The National Institutes for Health branch National Institute of Allergy and Infectious Disease, in 2018, refined and published their research goals for a Strategic Plan for Research on Vaccine Adjuvants, which include improving the efficacy and understanding of long-term safety of existing and novel adjuvants used in vaccines.

g) **Federal Vaccine Injury Programs.**

   i) **Vaccine Adverse Event Reporting System (VAERS).** The CDC and FDA run VAERS, a national surveillance program to detect possible safety issues with U.S. vaccines by collecting information related to adverse events and side effects that occur after vaccination. VAERS was created in 1990 as part of the National

Childhood Vaccine Injury Act. The major goals of this reporting system are to monitor vaccine reactions and to apply that knowledge to assess the safety of vaccines while monitoring public health emergencies relating to vaccines. Anyone may submit their adverse reactions to this program.

ii) **The National Vaccine Injury Compensation Program (NVICP).** NVICP was established in the 1980s after lawsuits against vaccine companies and health care providers threatened to cause vaccine shortages and reduce U.S. vaccination rates. A consequence of vaccine shortages could have been a resurgence of vaccine preventable diseases. NVCIP is a no-fault alternative to the traditional legal system for resolving vaccine injury petitions and is paid for by vaccine manufacturers through a $0.75 per dose tax.

NVICP permits any individual who received a covered vaccine and believes they were injured as a result, to file a petition. Parents, legal guardians and legal representatives are permitted to file on behalf of children, disabled adults, and individuals who are deceased.

To get compensation, an individual must file a petition with the U.S. Court of Federal Claims. DHHS medical staff reviews the petition, determines if it meets the medical criteria for compensation and makes a preliminary recommendation. The U.S. Department of Justice develops a report that includes the medical recommendation and legal analysis and submits it to the Court. The report is presented to a court-appointed special master, who decides whether the petitioner should be compensated, often after holding a hearing in which both parties can present evidence. If compensation is awarded, the special master determines the amount and type of compensation. The Court then orders DHHS to award compensation. Even if the petition is dismissed, if certain requirements are met, the Court can order DHHS to pay attorneys' fees and costs. The special master's decision may be appealed and petitioners who reject the decision of the court (or withdraw their petitions within certain timelines) may file a claim in civil court against the vaccine company and/or the health care provider who administered the vaccine. This process takes about two to three years to complete.

According to a NVICP compensation report updated on June 1, 2019, from 2006 to 2017 over 3.4 billion doses of covered vaccines were distributed in the U.S. For petitions filed in this time period, 6,314 petitions were adjudicated by the Court, and of those 4,328 were compensated. This means for every 1 million doses of vaccine that were distributed, approximately 1 individual was compensated. Since 1988, over 20,728 petitions have been filed with the NVICP. Over that 30-year time period, 17,923 petitions have been adjudicated, with 6,597 of those determined to be compensable, while 11,326 were dismissed. Total compensation paid over the life of the program is approximately $4.1 billion.

3) **Major Provisions of this Bill:**

a) **Standardized Medical Exemption Form.** This bill requires DPH to develop a standardized form for medical exemptions. This form must include the following information:

i)  *Physician Information.* Name and California medical license number, business address and telephone number, of the PCP and the physician issuing the medical exemption;

ii)  **Child Information.** Name of the child, and the name and address of the child's parents or guardians;

iii)  *Physical examination and evaluation.* A statement certifying that the issuing physician physically examined and evaluated the child according to standards of care;

iv)  *PCP.* Whether the issuing physician is the child's PCP. If the physician issuing the medical exemption has not been treating the child for at least one year, then the issuing physician must attest that the PCP has been contacted and advised of the submission of the medical exemption;

v)  *Medical reason.* A description of the medical reason for which the medical exemption is sought. The form must have space for each specific, required immunization;

vi)  *Permanent or temporary.* Whether the medical exemption is permanent or temporary. For temporary medical exemptions, the form must also include the duration, specified to be up to one year, of the exemption;

vii) *Authorization.* An authorization for the release of medical records related to the medical exemption to the DPH, the MBC, and OMB;

viii) *Penalty of Perjury.* The physician issuing the form must certify under penalty of law that the information included on the form is accurate; and,

ix)  *Form fee.* The physician is prohibited from charging a fee for filling out the medical exemption and for follow up examinations regarding temporary exemptions.

b)  **Review of Medical Exemptions Obtained On or After January 1, 2021**.

i)  This bill requires DPH to annually review immunization reports from all schools and institutions and identify those that are subject to review. A clinically trained immunization staff from DPH shall review all medical exemptions from CAIR under either of the following circumstances:

(1)  Schools or institutions which are found to have an immunization rate of less than 95%; or,

(2)  Physicians and surgeons who have submitted five or more medical exemptions annually.

ii)  There are two criteria established for the review, as follows:

(1) DPH will identify those medical exemption forms that do not meet applicable CDC, ACIP, or AAP criteria for appropriate medical exemptions. DPH may contact the PCP or issuing physician to request additional information to support the medical exemption.

(2) DPH, based on the medical discretion of the clinically trained immunization staff member, may accept a medical exemption that is based on other contraindications or precautions, including consideration of family medical history, if the issuing physician provides written documentation to support the medical exemption that is consistent with the relevant standard of care.

If a medical exemption is determined under either of the above circumstances as inappropriate or invalid, the SPHO or physician designee will also review these exemptions to determine whether to deny or revoke a medical exemption.

c) **Notification.** If a medical exemption is denied or revoked, DPH must notify the issuing physician, school or institution and the LHO where the school is located of this denial or revocation;

d) **Conditional Admission.** Consistent with existing regulations, if a medical exemption is denied or revoked, a child must comply with the conditional admission schedule for immunizations and continued attendance requirements specified in existing regulations;

e) **Prohibition on issuing medical exemptions for two years.** This bill prohibits DPH from accepting medical exemptions from physicians under one or both of the following circumstances:

   i) If DPH determines that a physician poses a risk to the public's health in one or more communities until the physician demonstrates to DPH that the risk no longer exist, but in no event should DPH accept medical exemptions from this physician and surgeon for at least two years; and,

   ii) If there is a pending accusation against a physician with the MBC or OMB relating to immunization standards of care until the accusation is resolved in favor of the physician.

f) **Appeals.** This bill permits a medical exemption denied or revoked, as specified, to be appealed by a parent or guardian to the Secretary CHHS. Allows parents or guardians to provide necessary information to the independent expert review panel for purposes of the appeal. The appeals process is as follows:

   i) The CHHS Secretary is required to appoint an independent panel of experts to hear the appeal. The panel must consist of three clinically licensed physicians that are PCPs or immunization experts. CHHS must establish requirements, including conflict of interest standards that the three panelist must meet in order to qualify for an appointment to the panel;

ii) The independent review panel is required to evaluate appeals consistent with CDC/ACIP guidelines and the relevant standard of care as applicable;

iii) The independent expert review panel will submit its findings and recommendations to the CHHS Secretary; and,

iv) The CHHS Secretary's final decision will be consistent with the findings of the independent expert review panel and is not subject to further administrative review.

g) **Medical exemptions issued before January 1, 2021**. This bill requires parents and guardians with medical exemptions issued prior to the creation of the standardized medical exemption certification form to submit their existing medical exemptions to DPH to be included in CAIR. This bill does not require DPH to review medical exemptions obtained prior to January 1, 2021, however, it does permit review of these medical exemptions.

h) **Public Health.** This bill permits DPH to review any exemption in CAIR as necessary to protect public health.

4) **SUPPORT**. According to one of the sponsors of this bill, the California Medical Association (CMA), high levels of immunization are necessary to, through a process called "community immunity," protect those who are unable to be immunized against vaccine-preventable illness. Given the highly contagious nature of diseases such as measles, vaccination rates of up to 95% are necessary. CMA states that since the passage of SB 277, the use of medical exemptions has more than tripled, putting many communities below the required protective immunization level.

The AAP, a cosponsor of this bill, states that this bill would create a partnership between state public health, schools and doctors to help keep children safe at school and to protect vulnerable community members, including babies too young to be immunized and people who are immunocompromised, from the risks associated with contracting these diseases. It would also protect the community at large from outbreaks of vaccine-preventable disease.

5) **OPPOSITION**. According to the National Vaccine Information Center (NVIC), it is inappropriate for DPH, a state agency, to be given legal authority to hijack the private patient physician relationship by being placed in the position to reject doctor issued medical vaccine exemptions. Confining vaccine exemptions to narrow and incomplete CDC guidelines hurts children. NVIC states that forcing physicians to violate their professional judgment and their conscience is a form of state-sponsored tyranny that should not be part of public health law in any state.

Advocates for Physicians' Rights (APR), another organization opposed to this bill states that the CDC guidelines generally do not recognize family health history of allergic reactions or side effects as a valid reason upon which to base a medical exemption (and the only time they do recognize such is for altered immuno-incompetence in relation to MMR and Varicella). APR concludes that this runs counter to long-accepted medical standards of care, which recognize family history as a strong predictor of medical outcomes, and will negate physicians' clinical judgment regarding statistically-likely harm to members of a family that share the same gene pool.

6) **PREVIOUS LEGISLATION**.

a) SB 277 eliminated the personal belief exemption from the requirement that children receive vaccines for certain infectious diseases prior to being admitted to any public or private elementary or secondary school or day care center.

b) SB 2109 (Pan), Chapter 821, Statutes of 2012, requires a separate form prescribed by DPH to accompany a letter or affidavit to exempt a child from immunization requirements under existing law on the basis that an immunization is contrary to beliefs of the child's parent or guardian.

c) AB 2064 (V. Manuel Pérez) of 2012, would have required a health care service plan or health insurer that provides coverage for childhood and adolescent immunizations to reimburse a physician or physician group in an amount not less than the actual cost of acquiring the vaccine plus the cost of administration of the vaccine. AB 2064 was held in the Assembly Appropriations Committee on the suspense file.

d) SB 614 (Kehoe), Chapter 123, Statutes of 2011, allowed a pupil in grades seven through 12, to conditionally attend school for up to 30 calendar days beyond the pupil's first day of attendance for the 2011-12 school year, if that pupil has not been fully immunized with all pertussis boosters appropriate for the pupil's age if specified conditions are met.

e) AB 354 (Arambula), Chapter 434, Statutes of 2010, allows DPH to update vaccination requirements for children entering schools and child care facilities and adds the American Academy of Family Physicians to the list of entities whose recommendations DPH must consider when updating the list of required vaccinations. Required children entering grades 7 through 12 receive a TDaP booster prior to admittance to school.

f) AB 1201 (V. Manuel Pérez) of 2009, would have required a health care service plan or health insurer that provides coverage for childhood and adolescent immunizations to reimburse a physician or physician group the entire cost of acquiring and administering the vaccine, and prohibits a health plan or insurer from requiring cost-sharing for immunizations. AB 1202 was held on the Assembly Appropriations Committee suspense file.

g) SB 1179 (Aanestad) of 2008, would have deleted DPH's authority to add diseases to the list of those requiring immunizations prior to entry to any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center. SB 1179 died in the Senate Health Committee.

h) AB 2580 (Arambula) of 2008, would have required pupils entering the seventh grade to be fully immunized against pertussis by receiving any necessary adolescent booster immunization. AB 2580 was held on the Senate Appropriations Committee suspense file.

i) SB 676 (Ridley-Thomas) of 2007, would have required pupils entering the seventh grade to be fully immunized against pertussis. SB 676 was held on suspense in Assembly Appropriations Committee.

**j)** SB 533 (Yee) of 2007, would have added pneumococcus to the list of diseases that pupils are required to be immunized against before entry into any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, except for children who are 24 months of age or older. SB 533 was vetoed by the Governor.

**k)** SB 574 (Wolk), Chapter 329, Statutes of 2005, authorized the creation of an immunization information system, a system that is currently known as the California Immunization Registry that is overseen by DPH.

**7) PROPOSED AMENDMENTS**. The Committee recommends the following amendments:

**a)** Clarify that if the issuing physician is not the child's PCP, the issuing physician must also provide an explanation on why the issuing physician and not the PCP is filling out the medical exemption form.

**b)** Require the form to include how long the physician has been treating the child.

**c)** Clarify attendance requirements for students whose medical exemptions are revoked or whose medical exemption is pending appeal.

**d)** Clarify the limitation on charging for examination related to temporary medical exemption.

**e)** Clarify the requirement for DPH to notify the MBC or OMB when a physician submits five or more medical exemptions forms in a school year that are revoked.

**f)** Delete the authorization for the LHO to determine if a medical exemption granted prior to January 1, 2021 is fraudulent or inconsistent with CDC criteria, as specified, and instead require DPH to review medical forms submitted prior to January 1, 2021 if: the school or institution has 95% overall immunization rate, or the physician has submitted five or more medical exemptions in a calendar year.

**g)** Require DPH to clearly establish and communicate the process for the review of medical exemptions conducted under this bill.

**h)** Require DPH to review school or institutions that do not submit immunization reports or medical exemption forms to DPH.

**i)** Require DPH to also notify the parent or guardian if a medical exemption is revoked.

**j)** Require the DHHS to establish process and guidelines for the appeal process.

**k)** Clarify that the physicians who serve on the independent expert review panel have relevant knowledge, training or experience relating to primary care or immunization.

**l)** Makes other, technical and conforming changes.

**REGISTERED SUPPORT / OPPOSITION**:

**Support**

California  Medical  Association  (cosponsor)
American  Academy of Pediatrics,  California  (cosponsor)
Vaccinate  California  (cosponsor)
AIDS Healthcare  Foundation
American  College  of Physicians  - California  Chapter
California  Academy of Eye Physicians  & Surgeons
California  Academy of Family  Physicians
California  Academy of Pain  Medicine
California  Academy of Preventive  Medicine
California  Association  of Hospitals  and Health  Systems
California  Chapter  American  College  of Cardiology
California  Children's  Hospital  Association
California  Hospital  Association
California  Life  Sciences  Association
California  Medical  Association
California  Optometric  Association
California  Orthopedic  Association
California  School Nurses  Organization
California  Society for Allergy,  Asthma  and Immunology
California  Society of Health  System  Pharmacists
California  Society of Physical  Medicine  and Rehabilitation
California  State Association  of Counties
California  State PTA
Children  Now
Children's  Defense  Fund-California
Children's  Specialty  Care Coalition
County  Health  Executives  Association  of California
County  of Los Angeles  Board Of Supervisors
County  of Marin
County  of Santa Clara
Donate  Life  California
Health  Officers  Association  of California
Infectious  Disease  Association  of California
Kaiser  Permanente
LA Care Health Plan
March  of Dimes
Parent's  For Choice
Sonoma County  Health  Action  Committee  for Healthcare  Improvement
Sutter  Health
Vaccinate  California

**Opposition**

A Voice For Choice Advocacy
Advocates  For Physicians'  Rights

Alliance For Natural Health USA
Amy's Chocolate
Animal Wellness & Veterinary Pain Management, Inc.
Association of American Physicians And Surgeons
Autism International Association, Inc
Breathe Bodyworks Holistic Healing Network
California Health Coalition Advocacy
California Right To Life Committee, Inc.
Californians for Trusted Healthcare
Children's Health Coalition
Concerned Physicians Opposed to SB 276
Drjockers.Com
Eagle Forum of California
Educate.Advocate
Families For Early Autism Treatment
Matrix Mothers
Moms Across America
National Health Freedom Action
National Vaccine Information Center
Orange County Health Choice
Parentalrights.Org
Parents United 4 Kids
Physicians Association For Anthroposophical Medicine
Physicians for Informed Consent
Progressives for Choice
Raphael Medicine & Therapies Pc
SCV For Parental Rights
U Turn For Christ
Vaccine-Injury Awareness League
West Coast Elite Dance
West Virginians For Health Freedom
Numerous Individuals

**Analysis Prepared by**: Marissa Kraynak, Ph.D. / HEALTH / (916) 319-2097

# Exhibit 11

**Kindergarten Immunization Assessment, 2020-2021 and 2021-2022**
**First Grade Immunization Assessment, 2021-2022**

## Executive summary

Immunization requirements for school entry help protect children and communities from vaccine-preventable diseases. Schools in California are required to report student immunization status to the California Department of Public Health (CDPH) every year. This report summarizes California student immunization rates reported at kindergarten in the 2020-2021 and 2021-2022 school years and at first grade in 2021-2022.

Events potentially affecting immunization and reporting during this period included:

- The Coronavirus 2019 (COVID-19) pandemic has disrupted routine primary health care and education.
- Beginning January 1, 2021 Senate Bills (SB) 276 and SB 714 have required that all new medical exemptions to requirements for school entry be issued through a statewide database accessed at the California Immunization Registry Medical Exemption (CAIR-ME) website.

Reported immunization rates in 2021-2022 decreased slightly from before the pandemic. The proportion of kindergarten students reported to have received all required immunizations was 94.3% in 2019-2020 and 94.0% in 2021-2022. An interim rate for kindergarten students in 2020-2021, when immunization or reporting might have been affected by delayed immunization and widespread school closures, was 92.8%. The rate for this cohort during first grade in 2021-2022 was 96.0%. The rate of kindergarteners reported as having received 2 doses of Measles, Mumps and Rubella (MMR) in 2021-2022 was 96.3%, with 16 (28%) of California counties reporting MMR rates below 95%. The rate of kindergarteners reported with permanent medical exemptions decreased from 1.0% in 2019-2020 to 0.3% in 2021-2022, the lowest level since 2015-2016.

CDPH and local health departments in California continue to closely monitor immunization coverage and to support schools in protecting the health of their students and communities.

---

**Introduction**

All schools with kindergartens in California are required to report annually on student compliance per California Health and Safety Code Sections 120325-120375. This report summarizes the 2020-2021 and 2021-2022 school year data for kindergarteners. In 2021-2022, an additional reporting requirement was added for first grade students to follow immunization trends during the COVID-19 pandemic, associated with delayed primary healthcare, lengthy school closures, shifts from in-person to virtual and hybrid learning, and, in concert with smaller birth cohorts, a decreased kindergarten student enrollment of 10% between 2019-2020 and 2021–2022 per California Department of Education data.

California laws over the past decade have modified:

- Medical exemptions to required immunization: Starting January 1, 2021, Senate Bills SB 276 and SB 714 have required that all new medical exemptions for school and child care entry be issued through CAIR-ME, an electronic, statewide database. Medical exemptions can only be issued by physicians and surgeons licensed with the Medical Board or Osteopathic Medical Board of California and must meet criteria for appropriate exemptions from the Centers for Disease Control and Prevention, Advisory Committee on Immunization Practices and American Academy of Pediatrics.
- Personal beliefs exemptions (PBEs): PBEs have not been permitted since 2016 per SB 277.
- Required doses: Since 2019, students entering kindergarten are required to receive two rather than one dose of Varicella (chickenpox) vaccine due to changes in the California Code of Regulations.

Download Data

## Methods

California schools registered with the California Department of Education reported to CDPH data on enrolled kindergarteners during the winter of the 2020-2021 and 2021-2022 school years. In 2021-2022, schools reporting kindergarten enrollment were also required to report the immunization status of first grade students to monitor their vulnerability to vaccine-preventable diseases during the pandemic.

Based on their immunization status, students were classified by school staff into the following categories:

- Received <u>all required immunizations</u>, including the following doses:
  - o 5 or more of Diphtheria, Tetanus and Pertussis (DTP) vaccine (4 doses are acceptable if at least 1 dose was received on or after the fourth birthday): ['4+DTP'];
  - o 4 or more of Polio vaccine (3 doses are acceptable if at least 1 dose was received on or after the fourth birthday): ['3+ Polio'];
  - o 2 or more of Measles-containing and Mumps-containing vaccines received on or after the first birthday, and 1 or more of Rubella vaccine, typically combined as Measles, Mumps and Rubella (MMR) vaccine: ['2+ MMR'].
  - o 3 or more of Hepatitis B (Hep B) vaccine: ['3+ Hep B'], and
  - o 2 or more of Varicella (Var): ['2+ Var']. From 2000-2019, the requirement was for 1 or more doses of Varicella vaccine or a history documented by a physician of having had chickenpox disease. History of disease is currently reported as a permanent medical exemption.
- <u>Conditional entrants</u> who had:
  - o Not received all required doses but were not overdue for required doses, or
  - o A temporary medical exemption to one or more required immunizations.
  Conditional entrants are required to receive additional doses after entry.
- Have a <u>permanent medical exemption</u> (PME) to one or more required immunizations.
- <u>Other students lacking immunizations</u>. Under SB 277, entrants since the 2016-2017 school year have not been required to have immunizations if they attend:
  - o A home-based private school or
  - o A public independent study program and do not receive classroom-based instruction.
  - o In addition, students who have an individualized education program (IEP) may continue to receive all necessary services identified in their IEP regardless of their immunization status.
  Students in these settings were classified in this category if they lacked required immunizations and did not meet the criteria for other categories.
- Children <u>overdue</u> for one or more required immunizations and subject to exclusion from school until the overdue requirements have been met.

Under SB 277, since the 2016-2017 school year <u>personal beliefs exemptions</u> (PBEs) have no longer been an option for children entering kindergarten.

Starting in 2016-2017 school year, any immunizations received by children with PBEs or PMEs for different immunizations are reported in the completion rates of each specific required immunization series (e.g., 4+ DTP, 2+ MMR, etc.).

Due to rounding, figures may differ from the sums of their components. Differences were calculated between exact figures, varying at times by 0.1% from the differences between rounded figures.

**Results**

In 2021-2022, 7,824 schools reported immunization status for 503,722 kindergarten students, and 7,598 schools reported on 431,819 first grade students (Table 1 and 2). Compared to 2019-2020, the number of kindergarten schools that reported in 2021-2022 decreased by 2% and number of reported kindergarteners decreased by 9%. Between 2019-2020 and 2021-2022, the number of private schools reporting kindergarten education decreased 10% from 1,891 to 1,693 schools, while the number of public schools with kindergarten increased slightly from 6,109 to 6,131. Similar to previous years, public schools accounted for 78% of all schools reporting kindergarten education and 92% of all reported kindergarten students in 2021-2022. Among nonreporting schools, 87% (161/185) were private schools.

All required immunizations: Among the 503,722 reported kindergarten students in 2021-2022, 94.0% had received all required immunizations, a decrease of 0.3 percentage points from 2019-2020 (Table 1 and Figure 1); these findings were similar for the subset of public schools.

The interim rate for kindergarten students in 2020-2021 was 92.8%, while the rate for this cohort during first grade in 2021-2022 was 96.0% (Table 2).

Specific immunization series: Completion rates for specific immunization series among kindergarteners in 2021-2022 ranged from 95.7% for DTP to 97.3% for Hep B (Table 1 and Figure 2).  Compared to 2019-2020, in 2021-2022 rates for DTP vaccine decreased from 96.2% to 95.7%, varicella vaccine remained unchanged at 96.0%, polio vaccine decreased from 96.5% to 96.2% and Hep B vaccine decreased from 97.4% to 97.3%.

MMR rates among kindergarteners decreased 0.2 percentage points from 96.5% in 2019-2020 to 96.3% in 2021-2022, including 96.4% in public schools and 95.5% in private schools.

As with the trend for all required vaccines, the rates reported for each specific vaccine were lower during the first pandemic reporting year of 2020-2021 and similar in 2021-2022 compared to 2019-2020.

PMEs:  The number of kindergarteners reported with permanent medical exemptions was 5,268 (1.0%) in 2019-2020 and 1,366 (0.3%) in 2021-2022 (Table 1, Figures 3 and 4). Among first grade students in 2021-2022, 1,675 students (0.4%) were reported with PMEs, compared to 2,865 (0.6%) of kindergarten students in 2020-2021 (Table 2). Both public and private schools reported fewer PMEs in 2021-2022 than previous years.

Conditional entrants: The proportion of kindergarteners reported as conditional entrants decreased from 1.7% in 2019-2020 to 1.3% in 2021-2022 (Table 1, Figure 4), while 0.6% of first grade students were reported as conditional entrants in 2021-2022 (Table 2). 1,097 kindergarteners in 2019-2020 were reported with temporary medical exemptions (0.2% of all students and 12% of conditional entrants), compared to 430 (0.1% of all students and 6% of conditional entrants) in 2021-2022. Among first grade students in 2021-2022, 225 students were reported with temporary medical exemptions (0.1% of all students and 9% of conditional entrants).

For the sum of permanent and temporary medical exemptions during kindergarten, 6,365 (1.1%) were reported in 2019-2020 and 1,796 (0.4%) in 2021-2022.

Overdue: The rates of kindergarteners reported as overdue were 1.5% in 2019-2020, 4.0% in 2020-2021 and 2.3% in 2021-2022 (Table 1 and Figure 4), while 1.3% of first-grade students were reported as overdue in 2021-2022 (Table 2). Between 2019-2020 and 2021-2022, the proportion of overdue kindergarteners increased from 1.4% to 2.2% in public schools and from 2.3% to 3.3% in private schools.

Other students lacking required immunizations: Kindergarteners who were reported as lacking one or more required immunizations who attend a public independent study program and do not receive classroom-based

instruction, attend a home-based private school, or receive IEP services increased from 1.6% in 2019-2020 to 2.1% in 2021-2022 (Table 1 and Figure 4).

County-level immunization rates: Immunization rates varied widely, being lower in some northern and central counties in California (Tables 3 and 4, Figures 5 and 6). In 2021-2022, 13 (22%) of 58 counties reported kindergartens with all required immunizations below 90%, compared to 11 (19%) counties in 2019-2020. In most counties, rates for all required immunizations in first grade students during 2021-2022 were higher than rates in kindergarten students during 2020-2021.

As in prior school years, counties with a higher proportion of kindergarten enrollment in online or virtual schools had lower immunization rates. El Dorado, Glenn, Kern, and Sutter counties reported more than 5% of kindergarten students being enrolled in virtual schools in 2021-2022 and rates of all required vaccines between 78 - 88%. In these counties, there were large differences in all required immunization rates between students in classroom-based schools versus virtual schools (Box).

| % Of Kindergarteners with All Required Immunizations in 2021-2022 | | | For Schools Based in County, % of Pupils Reported as Enrolled in Virtual Schools* |
|---|---|---|---|
| **County** | All Schools Based in County | Classroom-Based Schools | Virtual Schools* |
| Sutter | 77.5% | 96.1% | 35.0% | 30.4% |
| El Dorado | 78.2% | 92.7% | 18.2% | 19.4% |
| Glenn | 85.1% | 96.7% | 23.3% | 15.7% |
| Kern | 88.2% | 93.9% | 21.0% | 7.9% |

*Virtual schools are based in the specified county but may enroll children who reside in other counties.

MMR rates for kindergarteners by county ranged from 79.9% to 99.3% in 2021-2022, with 16 (28%) counties reporting MMR rates lower than 95%, including 5 counties with rates lower than 90%. This is similar to the rates in 2018-2019 and 2019-2020, in which 17 (29%) counties reported fewer than 95% of their kindergarteners as having had at least two MMR doses. For first-grade students in 2021-2022, MMR rates by county ranged from 83.8% to 100%, with 12 (21%) counties with MMR rates lower than 95%.

---

**Discussion**

Despite the demands and disruptions from the pandemic, California schools continue to provide valuable information on the immunity of their students, with public schools reporting immunization status of 97% (449,496/462,172) of kindergarteners counted in CDE enrollment data in 2020-2021 and 98% (461,506/469,928) in 2021-2022. Private school reporting was lower at 91% (36,042/39,392) in 2020-2021 and 94% (42,216/45,037) in 2021-2022.

The rate of all required immunizations reported for kindergarten students was similar at 94.3% in 2019-2020 and 94.0% in 2021-2022. An interim lower rate of 92.8% for kindergarteners during the initial school year of the pandemic in 2020-2021 was followed by a rate of 96.0% during first grade in 2021-2022. As data on first graders had not been collected previously, it is unclear whether the pace of catch-up during first grade in 2021-2022 was unusual. Immunization rates for most individual required vaccines have also decreased slightly during the pandemic. School reporting during the pandemic, especially during 2020-2021, may have been

hampered by closures, shortages or turnover of staff at schools, and delayed care or recordkeeping at clinical sites.

Over the last decade, the rate of all required immunizations rose from 91.0% in 2011-2012 to 95.6% in 2015-2016, and then decreased to 94.0% in 2021-2022. During this period, reasons for increasing immunization rates might have included: public health departments working with schools to improve the application of conditional admission schedules, personal beliefs exemptions no longer being permitted per SB 277 and CDE school audits incorporating immunization compliance review. In contrast, during this period increases were also reported in kindergarteners with medical exemptions or lacking immunizations while in educational programs that are individualized or based outside of the classroom. Since implementation of SB 276 and SB 714, which require medical exemptions to align with national standards and be subject to review by CDPH, the rates of PMEs have decreased from a record high of 1.0% kindergarteners in 2019-2020 to 0.3% of kindergarteners and 0.4% of first graders in 2021-2022.

National trends and rates for kindergarteners during the 2020-2021 school year reported to CDC were similar to California (CA), whether for MMR (93.9% US vs. 95.1% CA), DTaP (93.6% vs 94.7%) or Varicella (93.6% vs. 94.8%).  In 2021-2022, 16 (28%) of California counties had reported MMR rates in kindergarten students below 95%, an approximate threshold necessary to prevent the transmission of measles. Regional differences in immunization rates for school-required vaccines reflect trends for COVID-19 vaccines in California.

Children in schools and communities with lower immunization rates remain at higher risk of contracting and transmitting vaccine preventable diseases. Efforts to monitor, support, and increase immunizations should continue as in-person learning and social activities resume; efforts to protect school communities with required vaccines and COVID-19 vaccines can be complementary and synergistic.

---

**Limitations**

This report is subject to limitations that include:

- o Submission of student immunization records to school staff and reporting by school staff of immunization data to CDPH might have been reduced during the pandemic. Incomplete immunization records might have resulted in underestimates of immunization rates.
- o CDPH does not know how many of the schools that did not report had enrolled kindergarteners or the immunization status of their kindergarten students. In 2020-2021, 342 California elementary schools, including 297 private schools and 45 public schools, did not report. In 2021-2022, 185 California elementary schools, including 161 private schools and 24 public schools, did not report. Underreporting could have biased the reported immunization rates in either direction.
- o As in previous years, private home schools that did not register with the California Department of Education may not have reported data to CDPH, which would result in underestimates of their enrollment.
- o The timing of immunization is often not included in the assessment criteria; if doses were given at inappropriate ages or intervals, reported rates may overestimate levels of immunity.

**Figures**

Figure 1. Percentage of Students with All Required Immunizations by School Year,
Left:  Kindergarten, 2014-2015 to 2021-2022 School Years; Right:  Kindergarten, 2020-2021 School Year,
First Grade, 2021-2022 School Year

Figure 2. Percentage of Students with Specific Required Immunizations by Series and School Year, Left:
Kindergarten, 2014-2015 to 2021-2022 School Years; Right:  Kindergarten, 2020-2021 School Year, First
Grade, 2021-2022 School Year

Figure 3. Percentage of Students with Permanent Medical Exemptions (PME) by School Year,
Left:  Kindergarten, 2014-2015 to 2021-2022 School Years; Right:  Kindergarten, 2020-2021 School Year,
First Grade, 2021-2022 School Year

Figure 4. Percentage of All Kindergarten and First Grade Students by Reported Admission Status by
School Year, Top: Kindergarten, 2014-2015 to 2021-2022 School Years:  Bottom: Kindergarten, 2020-21
School Year and First Grade, 2021-2022 School Year.

Figure 5. Map: Kindergarten and First Grade Students with All Required Immunizations, by County,
Kindergarten, 2019-2020 to 2021-2022 School Years and First Grade, 2021-2022 School Year

Figure 6. Map: Kindergarten and First Grade Students with Two or More Doses of MMR Vaccine, by
County, Kindergarten, 2019-2020 to 2021-2022 School Years and First Grade, 2021-2022 School Year

---

**Tables**

Table 1. Kindergarten Immunization Assessment Summary, 2019-2020 through 2021-2022 School Years

Table 2.  Immunization Assessment Summary of Kindergarten in 2020-2021 and Subsequent 1st Grade in
2021-2022

Table 3.  Total Enrollment and Admission Status of Kindergarten, 2021-2022, 2020-2021 and 2019-2020
School Years and First Grade, 2021-2022 School Year, by County

Table 4.  Total Enrollment and Specific Required Immunizations by Series, Kindergarten, 2021-2022, 2020-
2021, 2019-2020 and First Grade, 2021-2022, by County

**Figure 1. Percentage of Students with All Required Immunizations by School Year**

**Left: Kindergarteners in the 2014-2015 to 2021-2022 School Years**

**Right: Kindergarteners in the 2020-2021 School Year and First Graders in the 2021-2022 School Year**



\* Immunization and data collection potentially affected by the COVID-19 pandemic.

**Figure 2. Percentage of Students with Specific Required Immunizations by Series and School Year**
**Left: Kindergarteners in the 2014-2015 to 2021-2022 School Years**
**Right: Kindergarteners in the 2020-2021 School Year and First Graders in the 2021-2022 School Year**



*Immunization and data collection potentially affected by the COVID-19 pandemic.

**Figure 3. Percentage of Students with Permanent Medical Exemptions (PME) by School Year**
**Left: Kindergarteners in the 2014-2015 to 2021-2022 School Years**
**Right: Kindergarteners in the 2020-2021 School Year and First Graders in the 2021-2022 School Year**



*Immunization and data collection potentially affected by the COVID-19 pandemic.



**Figure 4. Percentage of All Kindergarten and First Grade Students by Reported Admission Status by School Year**

**Top: Kindergarteners in the 2014-2015 to 2021-2022 School Years**

**Bottom: Kindergarteners in the 2020-2021 School Year and First Graders in the 2021-2022 School Year**

In the 2014-2015 and 2015-2016 school years, entrants were subject to AB 2109. Since the 2016-2017 school year, entrants have been subject to SB 277. In the 2019-20 school year, the varicella requirement changed from one or more to two or more doses.

^ Other children lacking required immunizations under criteria specified in SB 277.

*Immunization and data collection potentially affected by the COVID-19 pandemic.

**Figure C.4(a). California Kindergarten Students with all Required Vaccinations, by County, for Kindergarteners in the 2019-2020 to 2021-2022 School Years First Graders in the 2021-2022 School Year**



*Immunization and data collection potentially affected by the COVID-19 pandemic.

11 of 24

**Figure 6. Kindergarten and First Grade Students with Two or More Doses of MMR Vaccine, by County**
Kindergarteners in the 2019-2020 to 2021-2022 School Years
First Graders in the 2021-2022 School Year



*Immunization and data collection potentially affected by the COVID-19 pandemic.

12 of 24

**Table 1: Kindergarten Immunization Assessment Summary, 2019-2020 through 2021-2022 School Years**

| | Kindergarten | | | | | | | | | Kindergarten: 2021-22 and 2019-20 2-Year Percentage Point Change** | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 2021-2022 | | | 2020-2021 | | | 2019-2020 | | | | | |
| | All | Public | Private | All | Public | Private | All | Public | Private | All | Public | Private |
| Number of Schools Reporting Kindergarten* | 7,824 | 6,131 | 1,693 | 7,749 | 6,070 | 1,679 | 8,000 | 6,109 | 1,891 | -2% | 0% | -10% |
| Number of Kindergarten Students | 503,722 | 461,506 | 42,216 | 485,538 | 449,496 | 36,042 | 554,250 | 511,104 | 43,146 | -9% | -10% | -2% |
| All Required Immunizations | 94.0% | 94.1% | 93.1% | 92.8% | 92.9% | 92.6% | 94.3% | 94.4% | 92.4% | -0.3% | -0.4% | 0.7% |
| Conditional Entrants | 1.3% | 1.3% | 1.8% | 0.8% | 0.8% | 1.7% | 1.7% | 1.6% | 2.4% | -0.3% | -0.3% | -0.6% |
| Permanent Medical Exemptions | 0.3% | 0.2% | 1.0% | 0.6% | 0.5% | 1.9% | 1.0% | 0.8% | 2.5% | -0.7% | -0.6% | -1.6% |
| Personal Beliefs Exemptions | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking immunizations† | 2.1% | 2.2% | 0.9% | 1.7% | 1.8% | 0.9% | 1.6% | 1.7% | 0.3% | 0.5% | 0.5% | 0.5% |
| Overdue^ | 2.3% | 2.2% | 3.3% | 4.0% | 4.1% | 2.8% | 1.5% | 1.4% | 2.3% | 0.8% | 0.8% | 1.0% |
| 4+ DTP | 95.7% | 95.7% | 95.3% | 94.7% | 94.7% | 94.6% | 96.2% | 96.3% | 94.6% | -0.5% | -0.6% | 0.7% |
| 3+ Polio | 96.2% | 96.3% | 95.6% | 95.2% | 95.3% | 94.9% | 96.5% | 96.7% | 94.8% | -0.3% | -0.4% | 0.8% |
| 2+ MMR | 96.3% | 96.4% | 95.5% | 95.1% | 95.1% | 94.7% | 96.5% | 96.7% | 94.7% | -0.2% | -0.3% | 0.8% |
| 3+ Hep B | 97.3% | 97.4% | 97.1% | 97.0% | 97.1% | 96.3% | 97.4% | 97.5% | 96.1% | 0.0% | -0.1% | 1.0% |
| 2+ Var (or physician-documented disease)^^ | 96.0% | 96.1% | 95.3% | 94.8% | 94.8% | 94.6% | 96.0% | 96.2% | 94.4% | 0.0% | -0.1% | 0.9% |

* Number of schools reporting kindergarten students.

** Differences between exact percentages; may vary from the differences between the rounded percentages listed to the left in table.

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more required immunizations.

^^ In the 2019-20 school year, the varicella requirement changed from one or more to two or more doses.

**Table 2. Immunization Assessment Summary of Kindergarten in 2020-2021 and Subsequent 1st Grade in 2021-2022**

| | 1st Grade 2021-2022 | | | Kindergarten 2020-2021 | | | 1st Grade 2021-22 and Kindergarten 2020-21 1-Year Percentage Point Change** | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | All | Public | Private | All | Public | Private | All | Public | Private |
| Number of Schools Reporting Students* | 7,598 | 6,064 | 1,534 | 7,749 | 6,070 | 1,679 | -2% | 0% | -9% |
| Number of Students | 431,819 | 398,465 | 33,354 | 485,538 | 449,496 | 36,042 | -11% | -11% | -7% |
| All Required Immunizations | 96.0% | 96.1% | 94.9% | 92.8% | 92.9% | 92.6% | 3.2% | 3.3% | 2.3% |
| Conditional Entrants | 0.6% | 0.6% | 0.8% | 0.8% | 0.8% | 1.7% | -0.3% | -0.2% | -0.9% |
| Permanent Medical Exemptions | 0.4% | 0.3% | 1.3% | 0.6% | 0.5% | 1.9% | -0.2% | -0.2% | -0.7% |
| Personal Beliefs Exemptions | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking immunizations† | 1.7% | 1.7% | 1.2% | 1.7% | 1.8% | 0.9% | 0.0% | -0.1% | 0.3% |
| Overdue^ | 1.3% | 1.3% | 1.8% | 4.0% | 4.1% | 2.8% | -2.7% | -2.8% | -1.0% |
| 4+ DTP | 97.1% | 97.2% | 96.4% | 94.7% | 94.7% | 94.6% | 2.5% | 2.5% | 1.7% |
| 3+ Polio | 97.4% | 97.5% | 96.4% | 95.2% | 95.3% | 94.9% | 2.1% | 2.2% | 1.6% |
| 2+ MMR | 97.5% | 97.6% | 96.5% | 95.1% | 95.1% | 94.7% | 2.4% | 2.5% | 1.8% |
| 3+ Hep B | 98.0% | 98.0% | 97.1% | 97.0% | 97.1% | 96.3% | 0.9% | 0.9% | 0.7% |
| 2+ Var (or physician-documented disease)^^ | 97.2% | 97.3% | 96.3% | 94.8% | 94.8% | 94.6% | 2.4% | 2.4% | 1.7% |

* Number of schools reporting kindergarten students during the 2020-2021 school year and first grade students during the 2021-2022 school year.

** Differences between exact percentages; may vary from the differences between the rounded percentages listed to the left in table.

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more required immunizations.

^^ In the 2019-20 school year, the varicella requirement changed from one or more to two or more doses.

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 3: Total Enrollment and Admission Status of Kindergarten, 2021-2022, 2020-2021 and 2019-2020 School Years
and First Grade, 2021-2022 School Year, By County*

| | School Year | Grade | Total Students | Students with All Required Immunizations | Conditional Entrants | Students with a Permanent Medical Exemption | Others Lacking Required Immunizations† | Overdue^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 96.0% | 0.6% | 0.4% | 1.7% | 1.3% |
| | | Kindergarten | 503,722 | 94.0% | 1.3% | 0.3% | 2.1% | 2.3% |
| | 2020-21 | Kindergarten | 485,538 | 92.8% | 0.8% | 0.6% | 1.7% | 4.0% |
| | 2019-20 | Kindergarten | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| ALAMEDA | 2021-22 | 1st Grade | 16,710 | 96.8% | 0.4% | 0.3% | 0.2% | 2.3% |
| | | Kindergarten | 19,422 | 95.1% | 0.7% | 0.4% | 0.3% | 3.6% |
| | 2020-21 | Kindergarten | 19,752 | 90.3% | 0.6% | 0.3% | 0.7% | 8.2% |
| | 2019-20 | Kindergarten | 21,622 | 96.5% | 1.1% | 0.7% | 0.2% | 1.6% |
| ALPINE | 2021-22 | 1st Grade | --** | --* | --* | --* | --* | --* |
| | | Kindergarten | --** | --* | --* | --* | --* | --* |
| | 2020-21 | Kindergarten | --** | --* | --* | --* | --* | --* |
| | 2019-20 | Kindergarten | 9 | --* | --* | --* | --* | --* |
| AMADOR | 2021-22 | 1st Grade | 350 | 93.7% | 0.6% | 0.0% | 0.6% | 5.1% |
| | | Kindergarten | 355 | 91.0% | 0.3% | 0.0% | 1.4% | 7.3% |
| | 2020-21 | Kindergarten | 367 | 93.2% | 1.4% | 1.9% | 0.3% | 3.3% |
| | 2019-20 | Kindergarten | 308 | 91.2% | 4.2% | 1.9% | 0.6% | 1.9% |
| BUTTE | 2021-22 | 1st Grade | 2,248 | 97.1% | 0.6% | 0.4% | 1.2% | 0.7% |
| | | Kindergarten | 2,590 | 94.2% | 2.0% | 0.2% | 2.0% | 1.6% |
| | 2020-21 | Kindergarten | 2,470 | 94.5% | 1.4% | 0.9% | 1.5% | 1.7% |
| | 2019-20 | Kindergarten | 2,742 | 95.1% | 2.7% | 0.8% | 1.0% | 0.4% |
| CALAVERAS | 2021-22 | 1st Grade | 407 | 93.9% | 0.0% | 0.7% | 3.7% | 1.7% |
| | | Kindergarten | 417 | 92.8% | 1.2% | 0.0% | 4.1% | 1.9% |
| | 2020-21 | Kindergarten | 362 | 90.9% | 1.7% | 0.6% | 5.5% | 1.4% |
| | 2019-20 | Kindergarten | 455 | 93.8% | 1.8% | 1.5% | 1.8% | 1.1% |
| COLUSA | 2021-22 | 1st Grade | 322 | ≥99.0% | ≤1.0% | 0.0% | 0.0% | 0.9% |
| | | Kindergarten | 392 | 98.0% | 1.0% | 0.3% | 0.5% | 0.3% |
| | 2020-21 | Kindergarten | 346 | 94.5% | 0.0% | 0.0% | 0.0% | 5.5% |
| | 2019-20 | Kindergarten | 372 | 96.8% | 0.3% | 0.0% | 0.0% | 3.0% |
| CONTRA COSTA | 2021-22 | 1st Grade | 12,459 | 97.1% | 0.6% | 0.4% | 0.4% | 1.5% |
| | | Kindergarten | 14,248 | 95.1% | 1.0% | 0.2% | 0.8% | 2.9% |
| | 2020-21 | Kindergarten | 14,400 | 94.8% | 0.6% | 0.5% | 0.5% | 3.6% |
| | 2019-20 | Kindergarten | 15,692 | 96.2% | 1.6% | 0.8% | 0.3% | 1.2% |
| DEL NORTE | 2021-22 | 1st Grade | 282 | 94.7% | 0.4% | 1.8% | 1.8% | 1.4% |
| | | Kindergarten | 351 | 88.6% | 2.3% | 1.4% | 4.6% | 3.1% |
| | 2020-21 | Kindergarten | 282 | 93.3% | 0.7% | 2.5% | 2.1% | 1.4% |
| | 2019-20 | Kindergarten | 394 | 97.0% | 0.8% | 0.0% | 0.8% | 1.5% |
| EL DORADO | 2021-22 | 1st Grade | 2,213 | 85.9% | 0.5% | 2.2% | 10.6% | 0.8% |
| | | Kindergarten | 2,721 | 78.2% | 1.7% | 0.4% | 17.2% | 2.5% |
| | 2020-21 | Kindergarten | 2,373 | 82.0% | 1.8% | 2.9% | 11.6% | 1.7% |
| | 2019-20 | Kindergarten | 2,909 | 79.7% | 2.2% | 4.3% | 13.5% | 0.3% |
| FRESNO | 2021-22 | 1st Grade | 14,941 | 97.7% | 0.3% | 0.1% | 1.3% | 0.5% |
| | | Kindergarten | 16,906 | 95.6% | 0.9% | 0.1% | 2.0% | 1.5% |
| | 2020-21 | Kindergarten | 16,220 | 97.3% | 0.5% | 0.1% | 1.3% | 0.7% |
| | 2019-20 | Kindergarten | 18,461 | 96.4% | 1.0% | 0.3% | 1.6% | 0.7% |
| GLENN | 2021-22 | 1st Grade | 491 | 88.0% | 0.4% | 0.0% | 11.4% | 0.2% |
| | | Kindergarten | 572 | 85.1% | 0.5% | 0.0% | 13.1% | 1.2% |
| | 2020-21 | Kindergarten | 544 | 88.4% | 0.6% | 0.2% | 8.8% | 2.0% |
| | 2019-20 | Kindergarten | 576 | 86.1% | 1.4% | 0.7% | 10.9% | 0.9% |
| HUMBOLDT | 2021-22 | 1st Grade | 1,260 | 90.0% | 0.8% | 3.4% | 2.3% | 3.5% |
| | | Kindergarten | 1,526 | 85.5% | 2.5% | 3.7% | 3.0% | 5.4% |
| | 2020-21 | Kindergarten | 1,447 | 87.8% | 1.0% | 3.9% | 2.0% | 5.3% |
| | 2019-20 | Kindergarten | 1,715 | 88.0% | 2.7% | 5.6% | 0.7% | 3.0% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022

Table 3: Total Enrollment and Admission Status of Kindergarten, 2021-2022, 2020-2021 and 2019-2020 School Years
and First Grade, 2021-2022 School Year, By County*

| | School Year | Grade | Total Students | Students with All Required Immunizations | Conditional Entrants | Students with a Permanent Medical Exemption | Others Lacking Required Immunizations† | Overdue^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 96.0% | 0.6% | 0.4% | 1.7% | 1.3% |
| | | Kindergarten | 503,722 | 94.0% | 1.3% | 0.3% | 2.1% | 2.3% |
| | 2020-21 | Kindergarten | 485,538 | 92.8% | 0.8% | 0.6% | 1.7% | 4.0% |
| | 2019-20 | Kindergarten | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| IMPERIAL | 2021-22 | 1st Grade | 2,511 | 96.3% | 0.2% | 0.2% | 0.8% | 2.5% |
| | | Kindergarten | 2,754 | 95.2% | 1.1% | 0.8% | 1.0% | 1.9% |
| | 2020-21 | Kindergarten | 2,762 | 93.2% | 1.4% | 0.0% | 0.7% | 4.7% |
| | 2019-20 | Kindergarten | 3,117 | 95.7% | 2.5% | 0.2% | 0.4% | 1.2% |
| INYO | 2021-22 | 1st Grade | 207 | 94.7% | 1.0% | 0.0% | 0.0% | 4.3% |
| | | Kindergarten | 151 | 91.4% | 0.7% | 0.7% | 0.0% | 7.3% |
| | 2020-21 | Kindergarten | 187 | 96.3% | 0.5% | 0.0% | 0.5% | 2.7% |
| | 2019-20 | Kindergarten | 271 | 97.0% | 2.6% | 0.4% | 0.0% | 0.0% |
| KERN | 2021-22 | 1st Grade | 14,092 | 91.1% | 0.6% | 0.3% | 6.7% | 1.3% |
| | | Kindergarten | 16,369 | 88.2% | 1.8% | 0.6% | 6.7% | 2.7% |
| | 2020-21 | Kindergarten | 15,354 | 88.0% | 1.4% | 0.5% | 7.2% | 3.0% |
| | 2019-20 | Kindergarten | 18,327 | 88.6% | 1.4% | 0.7% | 8.0% | 1.3% |
| KINGS | 2021-22 | 1st Grade | 2,055 | 97.8% | 0.5% | 0.1% | 0.8% | 0.8% |
| | | Kindergarten | 2,458 | 96.1% | 1.7% | 0.1% | 1.1% | 0.9% |
| | 2020-21 | Kindergarten | 2,341 | 97.8% | 0.9% | 0.3% | 0.6% | 0.5% |
| | 2019-20 | Kindergarten | 2,576 | 96.9% | 2.0% | 0.2% | 0.4% | 0.4% |
| LAKE | 2021-22 | 1st Grade | 754 | 95.8% | 1.5% | 0.7% | 0.8% | 1.3% |
| | | Kindergarten | 886 | 93.9% | 3.4% | 0.0% | 1.0% | 1.7% |
| | 2020-21 | Kindergarten | 768 | 91.7% | 0.9% | 0.8% | 0.8% | 5.9% |
| | 2019-20 | Kindergarten | 796 | 90.8% | 3.1% | 0.8% | 0.8% | 4.5% |
| LASSEN | 2021-22 | 1st Grade | 309 | 92.6% | 1.3% | 1.0% | 1.3% | 3.9% |
| | | Kindergarten | 315 | 89.5% | 0.6% | 0.0% | 3.2% | 6.7% |
| | 2020-21 | Kindergarten | 335 | 92.2% | 1.8% | 1.2% | 1.5% | 3.3% |
| | 2019-20 | Kindergarten | 350 | 92.0% | 5.4% | 1.4% | 0.9% | 0.3% |
| LOS ANGELES | 2021-22 | 1st Grade | 95,509 | 96.6% | 0.5% | 0.3% | 0.8% | 1.8% |
| | | Kindergarten | 116,937 | 94.3% | 1.2% | 0.2% | 1.2% | 3.0% |
| | 2020-21 | Kindergarten | 114,141 | 91.6% | 0.7% | 0.4% | 1.1% | 6.2% |
| | 2019-20 | Kindergarten | 133,622 | 94.5% | 1.7% | 0.6% | 0.8% | 2.4% |
| MADERA | 2021-22 | 1st Grade | 2,328 | 97.9% | 0.2% | 0.0% | 0.6% | 1.3% |
| | | Kindergarten | 2,636 | 95.3% | 1.5% | 0.1% | 0.8% | 2.3% |
| | 2020-21 | Kindergarten | 2,586 | 96.8% | 0.4% | 0.2% | 0.8% | 1.9% |
| | 2019-20 | Kindergarten | 2,727 | 96.1% | 1.5% | 0.3% | 0.8% | 1.4% |
| MARIN | 2021-22 | 1st Grade | 2,643 | 97.7% | 0.7% | 1.3% | 0.1% | 0.3% |
| | | Kindergarten | 2,847 | 96.6% | 1.8% | 0.5% | 0.1% | 0.9% |
| | 2020-21 | Kindergarten | 2,832 | 96.3% | 0.7% | 2.0% | 0.1% | 0.9% |
| | 2019-20 | Kindergarten | 3,252 | 93.9% | 2.3% | 2.9% | 0.3% | 0.6% |
| MARIPOSA | 2021-22 | 1st Grade | 146 | 91.1% | 2.1% | 1.4% | 2.1% | 3.4% |
| | | Kindergarten | 171 | 91.8% | 4.1% | 0.6% | 0.0% | 3.5% |
| | 2020-21 | Kindergarten | 163 | 80.4% | 4.3% | 0.0% | 5.5% | 9.8% |
| | 2019-20 | Kindergarten | 160 | 93.1% | 5.6% | 0.0% | 1.3% | 0.0% |
| MENDOCINO | 2021-22 | 1st Grade | 976 | 93.0% | 1.0% | 0.9% | 1.0% | 4.0% |
| | | Kindergarten | 1,183 | 88.8% | 2.6% | 0.7% | 0.7% | 7.3% |
| | 2020-21 | Kindergarten | 1,084 | 87.3% | 4.5% | 2.7% | 0.6% | 5.0% |
| | 2019-20 | Kindergarten | 1,218 | 85.7% | 7.2% | 3.0% | 0.6% | 3.4% |
| MERCED | 2021-22 | 1st Grade | 4,161 | 97.2% | 0.6% | 0.1% | 0.9% | 1.1% |
| | | Kindergarten | 5,007 | 95.4% | 1.6% | 0.0% | 1.3% | 1.7% |
| | 2020-21 | Kindergarten | 4,566 | 94.4% | 1.1% | 0.1% | 0.6% | 3.8% |
| | 2019-20 | Kindergarten | 5,321 | 96.7% | 1.6% | 0.1% | 0.6% | 1.1% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 3: Total Enrollment and Admission Status of Kindergarten, 2021-2022, 2020-2021 and 2019-2020 School Years
and First Grade, 2021-2022 School Year, By County*

| | School Year | Grade | Total Students | Students with All Required Immunizations | Conditional Entrants | Students with a Permanent Medical Exemption | Others Lacking Required Immunizations† | Overdue^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 96.0% | 0.6% | 0.4% | 1.7% | 1.3% |
| | | Kindergarten | 503,722 | 94.0% | 1.3% | 0.3% | 2.1% | 2.3% |
| | 2020-21 | Kindergarten | 485,538 | 92.8% | 0.8% | 0.6% | 1.7% | 4.0% |
| | 2019-20 | Kindergarten | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| MODOC | 2021-22 | 1st Grade | 120 | 96.7% | 2.5% | 0.0% | 0.0% | 0.8% |
| | | Kindergarten | 102 | 94.1% | 2.0% | 0.0% | 0.0% | 3.9% |
| | 2020-21 | Kindergarten | 117 | 94.9% | 0.9% | 0.0% | 0.0% | 4.3% |
| | 2019-20 | Kindergarten | 120 | 95.8% | 0.8% | 0.8% | 0.0% | 2.5% |
| MONO | 2021-22 | 1st Grade | 116 | ≥99.0% | ≤1.0% | 0.0% | 0.0% | 0.0% |
| | | Kindergarten | 148 | 96.6% | 2.7% | 0.0% | 0.7% | 0.0% |
| | 2020-21 | Kindergarten | 124 | 96.8% | 0.8% | 0.0% | 0.0% | 2.4% |
| | 2019-20 | Kindergarten | 138 | 90.6% | 5.1% | 2.9% | 0.0% | 1.4% |
| MONTEREY | 2021-22 | 1st Grade | 5,150 | 98.4% | 0.5% | 0.2% | 0.1% | 0.9% |
| | | Kindergarten | 6,357 | 97.5% | 0.8% | 0.1% | 0.2% | 1.4% |
| | 2020-21 | Kindergarten | 6,220 | 97.4% | 0.8% | 0.4% | 0.2% | 1.2% |
| | 2019-20 | Kindergarten | 6,733 | 97.1% | 1.4% | 0.8% | 0.1% | 0.6% |
| NAPA | 2021-22 | 1st Grade | 1,449 | 96.8% | 0.4% | 0.6% | 1.7% | 0.6% |
| | | Kindergarten | 1,581 | 96.5% | 1.1% | 0.3% | 0.9% | 1.1% |
| | 2020-21 | Kindergarten | 1,596 | 95.7% | 1.1% | 0.9% | 1.7% | 0.6% |
| | 2019-20 | Kindergarten | 1,746 | 96.6% | 0.8% | 1.4% | 0.3% | 0.9% |
| NEVADA | 2021-22 | 1st Grade | 696 | 84.8% | 1.9% | 3.7% | 6.3% | 3.3% |
| | | Kindergarten | 927 | 82.4% | 4.2% | 2.7% | 7.9% | 2.8% |
| | 2020-21 | Kindergarten | 834 | 81.9% | 3.0% | 9.0% | 3.8% | 2.3% |
| | 2019-20 | Kindergarten | 985 | 79.5% | 3.4% | 13.1% | 3.0% | 1.0% |
| ORANGE | 2021-22 | 1st Grade | 32,231 | 97.5% | 0.5% | 0.4% | 0.8% | 0.8% |
| | | Kindergarten | 38,034 | 96.0% | 1.0% | 0.3% | 1.2% | 1.4% |
| | 2020-21 | Kindergarten | 36,305 | 94.7% | 0.9% | 0.8% | 0.8% | 2.8% |
| | 2019-20 | Kindergarten | 41,381 | 95.5% | 1.5% | 1.1% | 0.8% | 1.1% |
| PLACER | 2021-22 | 1st Grade | 5,261 | 94.6% | 1.1% | 1.7% | 1.6% | 1.0% |
| | | Kindergarten | 6,549 | 92.9% | 2.0% | 0.8% | 2.5% | 1.8% |
| | 2020-21 | Kindergarten | 5,628 | 92.7% | 1.8% | 2.2% | 0.7% | 2.6% |
| | 2019-20 | Kindergarten | 6,709 | 90.5% | 2.4% | 3.3% | 1.3% | 2.5% |
| PLUMAS | 2021-22 | 1st Grade | 155 | 93.5% | 1.9% | 1.3% | 1.9% | 1.3% |
| | | Kindergarten | 202 | 91.1% | 3.0% | 0.5% | 3.5% | 2.0% |
| | 2020-21 | Kindergarten | 191 | 91.1% | 0.5% | 1.6% | 5.8% | 1.0% |
| | 2019-20 | Kindergarten | 208 | 92.3% | 3.8% | 1.4% | 0.5% | 1.9% |
| RIVERSIDE | 2021-22 | 1st Grade | 29,235 | 96.0% | 0.5% | 0.3% | 2.1% | 1.0% |
| | | Kindergarten | 33,796 | 93.8% | 1.6% | 0.2% | 2.4% | 2.1% |
| | 2020-21 | Kindergarten | 31,555 | 92.2% | 0.7% | 0.5% | 2.8% | 3.8% |
| | 2019-20 | Kindergarten | 36,134 | 93.6% | 1.9% | 0.9% | 2.6% | 1.1% |
| SACRAMENTO | 2021-22 | 1st Grade | 18,030 | 95.0% | 1.1% | 0.8% | 1.5% | 1.7% |
| | | Kindergarten | 19,897 | 92.7% | 1.9% | 0.3% | 2.1% | 3.0% |
| | 2020-21 | Kindergarten | 19,509 | 91.5% | 1.1% | 0.9% | 2.0% | 4.5% |
| | 2019-20 | Kindergarten | 21,495 | 93.3% | 2.2% | 1.6% | 1.9% | 1.0% |
| SAN BENITO | 2021-22 | 1st Grade | 846 | 97.8% | 0.1% | 0.4% | 0.0% | 1.8% |
| | | Kindergarten | 983 | 97.0% | 0.5% | 0.2% | 0.1% | 2.1% |
| | 2020-21 | Kindergarten | 991 | 91.2% | 1.4% | 0.1% | 0.0% | 7.3% |
| | 2019-20 | Kindergarten | 1,099 | 96.3% | 1.3% | 0.5% | 0.1% | 1.8% |
| SAN BERNARDINO | 2021-22 | 1st Grade | 28,985 | 94.7% | 0.5% | 0.2% | 3.1% | 1.5% |
| | | Kindergarten | 32,198 | 92.1% | 1.5% | 0.2% | 3.8% | 2.4% |
| | 2020-21 | Kindergarten | 30,438 | 90.4% | 0.6% | 0.3% | 2.1% | 6.6% |
| | 2019-20 | Kindergarten | 34,542 | 93.9% | 1.8% | 0.4% | 2.5% | 1.4% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022

Table 3: Total Enrollment and Admission Status of Kindergarten, 2021-2022, 2020-2021 and 2019-2020 School Years and First Grade, 2021-2022 School Year, By County*

| | School Year | Grade | Total Students | Students with All Required Immunizations | | Conditional Entrants | Students with a Permanent Medical Exemption | Others Lacking Required Immunizations† | Overdue^ |
|---|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 96.0% | | 0.6% | 0.4% | 1.7% | 1.3% |
| | | Kindergarten | 503,722 | 94.0% | | 1.3% | 0.3% | 2.1% | 2.3% |
| | 2020-21 | Kindergarten | 485,538 | 92.8% | | 0.8% | 0.6% | 1.7% | 4.0% |
| | 2019-20 | Kindergarten | 554,250 | 94.3% | | 1.7% | 1.0% | 1.6% | 1.5% |
| SAN DIEGO | 2021-22 | 1st Grade | 36,235 | 95.3% | | 0.7% | 0.3% | 3.1% | 0.6% |
| | | Kindergarten | 41,632 | 93.3% | | 1.4% | 0.2% | 3.9% | 1.1% |
| | 2020-21 | Kindergarten | 40,748 | 93.9% | | 1.0% | 0.7% | 3.3% | 1.1% |
| | 2019-20 | Kindergarten | 45,956 | 93.0% | | 1.5% | 1.4% | 3.6% | 0.5% |
| SAN FRANCISCO | 2021-22 | 1st Grade | 5,519 | 95.6% | | 0.2% | 0.2% | 0.1% | 3.9% |
| | | Kindergarten | 6,068 | 94.5% | | 0.7% | 0.4% | 0.0% | 4.4% |
| | 2020-21 | Kindergarten | 6,325 | 92.0% | | 0.3% | 0.5% | 0.1% | 7.1% |
| | 2019-20 | Kindergarten | 6,963 | 95.3% | | 1.1% | 0.7% | 0.0% | 2.8% |
| SAN JOAQUIN | 2021-22 | 1st Grade | 10,750 | 96.7% | | 0.5% | 0.1% | 2.0% | 0.8% |
| | | Kindergarten | 11,902 | 94.9% | | 1.3% | 0.1% | 2.3% | 1.3% |
| | 2020-21 | Kindergarten | 10,791 | 95.1% | | 1.1% | 0.3% | 1.8% | 1.7% |
| | 2019-20 | Kindergarten | 12,320 | 95.0% | | 1.7% | 0.4% | 1.4% | 1.4% |
| SAN LUIS OBISPO | 2021-22 | 1st Grade | 2,451 | 97.1% | | 0.5% | 0.8% | 0.7% | 0.9% |
| | | Kindergarten | 2,846 | 94.1% | | 2.0% | 0.6% | 1.0% | 2.2% |
| | 2020-21 | Kindergarten | 2,466 | 95.2% | | 1.3% | 0.9% | 0.8% | 1.9% |
| | 2019-20 | Kindergarten | 3,095 | 94.2% | | 1.8% | 2.2% | 0.8% | 0.9% |
| SAN MATEO | 2021-22 | 1st Grade | 7,250 | 97.5% | | 0.4% | 0.3% | 0.4% | 1.5% |
| | | Kindergarten | 8,028 | 96.4% | | 0.6% | 0.2% | 0.6% | 2.3% |
| | 2020-21 | Kindergarten | 8,140 | 97.1% | | 0.6% | 0.5% | 0.3% | 1.6% |
| | 2019-20 | Kindergarten | 9,168 | 96.6% | | 1.3% | 0.7% | 0.1% | 1.3% |
| SANTA BARBARA | 2021-22 | 1st Grade | 5,232 | 97.2% | | 0.6% | 0.5% | 1.2% | 0.4% |
| | | Kindergarten | 6,066 | 96.3% | | 1.1% | 0.3% | 1.1% | 1.2% |
| | 2020-21 | Kindergarten | 5,473 | 95.5% | | 0.7% | 0.6% | 0.9% | 2.3% |
| | 2019-20 | Kindergarten | 6,500 | 96.2% | | 1.4% | 1.4% | 0.4% | 0.5% |
| SANTA CLARA | 2021-22 | 1st Grade | 19,070 | 97.6% | | 0.3% | 0.4% | 0.4% | 1.2% |
| | | Kindergarten | 21,901 | 96.5% | | 0.8% | 0.2% | 0.4% | 2.0% |
| | 2020-21 | Kindergarten | 21,759 | 96.0% | | 0.6% | 0.3% | 0.4% | 2.6% |
| | 2019-20 | Kindergarten | 24,963 | 96.4% | | 1.3% | 0.7% | 0.2% | 1.4% |
| SANTA CRUZ | 2021-22 | 1st Grade | 2,938 | 92.2% | | 0.8% | 0.9% | 5.7% | 0.4% |
| | | Kindergarten | 3,307 | 91.1% | | 2.0% | 0.3% | 5.9% | 0.8% |
| | 2020-21 | Kindergarten | 3,097 | 88.8% | | 1.1% | 1.7% | 6.3% | 2.1% |
| | 2019-20 | Kindergarten | 3,415 | 89.3% | | 2.2% | 2.8% | 4.6% | 1.2% |
| SHASTA | 2021-22 | 1st Grade | 1,959 | 93.0% | | 0.7% | 1.6% | 3.3% | 1.4% |
| | | Kindergarten | 2,511 | 89.5% | | 3.1% | 1.0% | 3.7% | 2.7% |
| | 2020-21 | Kindergarten | 2,189 | 88.6% | | 2.1% | 2.5% | 3.6% | 3.2% |
| | 2019-20 | Kindergarten | 2,525 | 89.5% | | 3.2% | 2.7% | 2.9% | 1.7% |
| SIERRA | 2021-22 | 1st Grade | 34 | ≥95.0% | | ≤5.0% | 0.0% | 0.0% | 0.0% |
| | | Kindergarten | 32 | 96.9% | | 0.0% | 0.0% | 0.0% | 3.1% |
| | 2020-21 | Kindergarten | 23 | ≥95.0% | | ≤5.0% | 0.0% | 0.0% | 0.0% |
| | 2019-20 | Kindergarten | 25 | ≥95.0% | | ≤5.0% | 0.0% | 0.0% | 0.0% |
| SISKIYOU | 2021-22 | 1st Grade | 383 | 88.8% | | 2.6% | 0.3% | 6.8% | 1.6% |
| | | Kindergarten | 500 | 87.6% | | 5.2% | 0.0% | 4.6% | 2.6% |
| | 2020-21 | Kindergarten | 463 | 89.0% | | 1.5% | 0.4% | 6.7% | 2.4% |
| | 2019-20 | Kindergarten | 530 | 94.9% | | 1.9% | 1.1% | 0.6% | 1.5% |
| SOLANO | 2021-22 | 1st Grade | 4,451 | 98.2% | | 0.7% | 0.2% | 0.3% | 0.6% |
| | | Kindergarten | 5,236 | 96.5% | | 1.9% | 0.1% | 0.5% | 1.0% |
| | 2020-21 | Kindergarten | 5,036 | 94.7% | | 1.0% | 0.5% | 0.5% | 3.3% |
| | 2019-20 | Kindergarten | 5,966 | 94.5% | | 1.5% | 0.5% | 0.1% | 3.4% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 3: Total Enrollment and Admission Status of Kindergarten, 2021-2022, 2020-2021 and 2019-2020 School Years
and First Grade, 2021-2022 School Year, By County*

| | School Year | Grade | Total Students | Students with All Required Immunizations | Conditional Entrants | Students with a Permanent Medical Exemption | Others Lacking Required Immunizations† | Overdue^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 96.0% | 0.6% | 0.4% | 1.7% | 1.3% |
| | | Kindergarten | 503,722 | 94.0% | 1.3% | 0.3% | 2.1% | 2.3% |
| | 2020-21 | Kindergarten | 485,538 | 92.8% | 0.8% | 0.6% | 1.7% | 4.0% |
| | 2019-20 | Kindergarten | 554,250 | 94.3% | 1.7% | 1.0% | 1.6% | 1.5% |
| SONOMA | 2021-22 | 1st Grade | 4,657 | 94.0% | 1.2% | 0.9% | 2.1% | 1.7% |
| | | Kindergarten | 5,931 | 92.6% | 1.6% | 0.4% | 2.6% | 2.7% |
| | 2020-21 | Kindergarten | 5,566 | 91.6% | 1.1% | 1.9% | 0.8% | 4.6% |
| | 2019-20 | Kindergarten | 6,043 | 92.3% | 2.1% | 3.1% | 0.7% | 1.8% |
| STANISLAUS | 2021-22 | 1st Grade | 7,858 | 96.1% | 0.8% | 0.2% | 1.5% | 1.4% |
| | | Kindergarten | 8,707 | 94.0% | 1.6% | 0.1% | 1.9% | 2.4% |
| | 2020-21 | Kindergarten | 8,619 | 94.5% | 1.1% | 0.5% | 0.4% | 3.6% |
| | 2019-20 | Kindergarten | 9,366 | 95.7% | 2.0% | 0.7% | 0.3% | 1.4% |
| SUTTER | 2021-22 | 1st Grade | 1,691 | 81.5% | 0.2% | 0.7% | 17.1% | 0.6% |
| | | Kindergarten | 2,222 | 77.5% | 1.5% | 0.2% | 19.7% | 1.0% |
| | 2020-21 | Kindergarten | 1,764 | 81.7% | 0.6% | 0.9% | 15.1% | 1.6% |
| | 2019-20 | Kindergarten | 2,017 | 85.3% | 0.6% | 0.9% | 13.0% | 0.1% |
| TEHAMA | 2021-22 | 1st Grade | 834 | 97.6% | 0.4% | 0.6% | 1.0% | 0.5% |
| | | Kindergarten | 962 | 94.6% | 2.0% | 0.1% | 1.0% | 2.3% |
| | 2020-21 | Kindergarten | 838 | 95.1% | 1.6% | 0.2% | 0.8% | 2.3% |
| | 2019-20 | Kindergarten | 1,073 | 93.6% | 2.1% | 0.7% | 1.2% | 2.4% |
| TRINITY | 2021-22 | 1st Grade | 115 | 88.7% | 0.9% | 4.3% | 1.7% | 4.3% |
| | | Kindergarten | 117 | 89.7% | 5.1% | 0.0% | 0.9% | 4.3% |
| | 2020-21 | Kindergarten | 134 | 85.8% | 3.0% | 4.5% | 1.5% | 5.2% |
| | 2019-20 | Kindergarten | 138 | 87.0% | 4.3% | 5.1% | 0.7% | 2.9% |
| TULARE | 2021-22 | 1st Grade | 7,322 | 97.8% | 0.3% | 0.2% | 1.2% | 0.5% |
| | | Kindergarten | 8,542 | 96.1% | 1.0% | 0.1% | 1.7% | 1.2% |
| | 2020-21 | Kindergarten | 8,344 | 96.6% | 0.4% | 0.2% | 1.3% | 1.4% |
| | 2019-20 | Kindergarten | 9,535 | 96.5% | 1.2% | 0.2% | 1.8% | 0.3% |
| TUOLUMNE | 2021-22 | 1st Grade | 469 | 89.1% | 4.7% | 1.3% | 3.2% | 1.7% |
| | | Kindergarten | 566 | 86.9% | 2.1% | 6.2% | 2.1% | 2.7% |
| | 2020-21 | Kindergarten | 474 | 81.9% | 8.6% | 2.3% | 3.6% | 3.6% |
| | 2019-20 | Kindergarten | 584 | 90.2% | 3.6% | 3.6% | 1.4% | 1.2% |
| VENTURA | 2021-22 | 1st Grade | 9,403 | 96.9% | 0.6% | 0.5% | 1.4% | 0.7% |
| | | Kindergarten | 10,540 | 95.1% | 1.4% | 0.2% | 1.6% | 1.7% |
| | 2020-21 | Kindergarten | 10,410 | 94.9% | 1.1% | 0.7% | 1.3% | 2.1% |
| | 2019-20 | Kindergarten | 11,466 | 95.5% | 1.7% | 1.1% | 0.6% | 1.1% |
| YOLO | 2021-22 | 1st Grade | 2,383 | 94.6% | 0.9% | 0.5% | 2.0% | 2.0% |
| | | Kindergarten | 2,746 | 94.1% | 0.9% | 0.3% | 2.4% | 2.3% |
| | 2020-21 | Kindergarten | 2,535 | 92.6% | 0.9% | 0.6% | 2.4% | 3.6% |
| | 2019-20 | Kindergarten | 2,959 | 94.3% | 2.0% | 1.6% | 0.9% | 1.1% |
| YUBA | 2021-22 | 1st Grade | 1,167 | 94.3% | 2.2% | 0.1% | 1.4% | 2.0% |
| | | Kindergarten | 1,372 | 90.3% | 4.7% | 0.3% | 2.3% | 2.3% |
| | 2020-21 | Kindergarten | 1,154 | 88.8% | 0.9% | 0.1% | 3.0% | 7.2% |
| | 2019-20 | Kindergarten | 1,361 | 92.8% | 2.4% | 0.4% | 2.1% | 2.2% |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten. For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%; 50-99 enrollees, values of 98% or higher are listed as ≥98%; 100 or more enrollees, values of 99% or higher are listed as ≥99%.

** Schools did not report.

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for one or more required immunizations.

19 of 24

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 4: Total Enrollment and Specific Required Immunizations by Series,
Kindergarten, 2021-2022, 2020-2021, 2019-2020 and First Grade, 2021-2022, By County*

| | School Year | Grade | Total Students | DTP 4+ | Polio 3+ | MMR 2+ | HepB 3+ | Var 2+ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 97.1% | 97.4% | 97.5% | 98.0% | 97.2% |
| | | Kindergarten | 503,722 | 95.7% | 96.2% | 96.3% | 97.3% | 96.0% |
| | 2020-21 | Kindergarten | 485,538 | 94.7% | 95.2% | 95.1% | 97.0% | 94.8% |
| | 2019-20 | Kindergarten | 554,250 | 96.2% | 96.5% | 96.5% | 97.4% | 96.0% |
| ALAMEDA | 2021-22 | 1st Grade | 16,710 | 98.0% | 98.3% | 98.4% | 98.6% | 97.7% |
| | | Kindergarten | 19,422 | 96.7% | 97.2% | 97.2% | 97.8% | 96.6% |
| | 2020-21 | Kindergarten | 19,752 | 92.0% | 92.5% | 92.6% | 93.5% | 92.2% |
| | 2019-20 | Kindergarten | 21,622 | 98.1% | 98.4% | 98.5% | 98.7% | 97.7% |
| ALPINE | 2021-22 | 1st Grade | --** | --* | --* | --* | --* | --* |
| | | Kindergarten | --** | --* | --* | --* | --* | --* |
| | 2020-21 | Kindergarten | --** | --* | --* | --* | --* | --* |
| | 2019-20 | Kindergarten | 9 | --* | --* | --* | --* | --* |
| AMADOR | 2021-22 | 1st Grade | 350 | 94.6% | 95.7% | 96.3% | 96.6% | 95.4% |
| | | Kindergarten | 355 | 91.5% | 93.2% | 94.1% | 97.2% | 93.5% |
| | 2020-21 | Kindergarten | 367 | 94.6% | 94.8% | 94.6% | 96.7% | 94.3% |
| | 2019-20 | Kindergarten | 308 | 93.8% | 95.1% | 94.5% | 94.8% | 93.2% |
| BUTTE | 2021-22 | 1st Grade | 2,248 | 97.8% | 98.1% | 98.1% | 98.5% | 97.9% |
| | | Kindergarten | 2,590 | 95.9% | 96.9% | 97.9% | 97.8% | 97.2% |
| | 2020-21 | Kindergarten | 2,470 | 96.0% | 96.3% | 97.0% | 98.0% | 97.0% |
| | 2019-20 | Kindergarten | 2,742 | 96.5% | 97.2% | 97.5% | 97.8% | 97.2% |
| CALAVERAS | 2021-22 | 1st Grade | 407 | 95.1% | 95.8% | 95.8% | 97.1% | 95.3% |
| | | Kindergarten | 417 | 93.8% | 94.2% | 96.4% | 96.9% | 95.9% |
| | 2020-21 | Kindergarten | 362 | 92.8% | 93.4% | 92.8% | 95.6% | 92.3% |
| | 2019-20 | Kindergarten | 455 | 95.4% | 95.4% | 95.6% | 96.9% | 94.9% |
| COLUSA | 2021-22 | 1st Grade | 322 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% |
| | | Kindergarten | 392 | 98.5% | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% |
| | 2020-21 | Kindergarten | 346 | 97.1% | 96.8% | 96.5% | 98.0% | 96.5% |
| | 2019-20 | Kindergarten | 372 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | 97.6% |
| CONTRA COSTA | 2021-22 | 1st Grade | 12,459 | 98.0% | 98.4% | 98.5% | 98.7% | 98.1% |
| | | Kindergarten | 14,248 | 96.9% | 97.3% | 97.5% | 98.2% | 97.0% |
| | 2020-21 | Kindergarten | 14,400 | 96.2% | 96.7% | 96.4% | 98.2% | 96.3% |
| | 2019-20 | Kindergarten | 15,692 | 97.5% | 97.8% | 97.9% | 98.5% | 97.5% |
| DEL NORTE | 2021-22 | 1st Grade | 282 | 95.0% | 95.7% | 96.1% | 96.8% | 95.4% |
| | | Kindergarten | 351 | 94.0% | 95.4% | 95.2% | 97.2% | 90.3% |
| | 2020-21 | Kindergarten | 282 | 93.3% | 94.0% | 94.3% | 96.5% | 94.3% |
| | 2019-20 | Kindergarten | 394 | 98.0% | ≥99.0% | 98.5% | 98.7% | 98.2% |
| EL DORADO | 2021-22 | 1st Grade | 2,213 | 90.0% | 90.1% | 89.3% | 91.1% | 89.0% |
| | | Kindergarten | 2,721 | 83.9% | 84.0% | 83.6% | 87.0% | 82.7% |
| | 2020-21 | Kindergarten | 2,373 | 84.7% | 85.3% | 84.8% | 88.2% | 85.0% |
| | 2019-20 | Kindergarten | 2,909 | 82.4% | 83.3% | 82.6% | 86.6% | 81.7% |
| FRESNO | 2021-22 | 1st Grade | 14,941 | 98.6% | 98.8% | 98.8% | ≥99.0% | 98.7% |
| | | Kindergarten | 16,906 | 97.0% | 97.4% | 97.5% | 98.0% | 97.4% |
| | 2020-21 | Kindergarten | 16,220 | 97.9% | 98.3% | 98.3% | 98.8% | 98.2% |
| | 2019-20 | Kindergarten | 18,461 | 97.3% | 97.7% | 97.9% | 98.4% | 97.7% |
| GLENN | 2021-22 | 1st Grade | 491 | 89.0% | 88.8% | 89.4% | 90.0% | 88.4% |
| | | Kindergarten | 572 | 87.2% | 88.1% | 87.4% | 89.5% | 86.2% |
| | 2020-21 | Kindergarten | 544 | 89.9% | 89.9% | 90.6% | 92.3% | 89.7% |
| | 2019-20 | Kindergarten | 576 | 87.8% | 88.5% | 88.5% | 90.8% | 88.0% |
| HUMBOLDT | 2021-22 | 1st Grade | 1,260 | 93.1% | 93.3% | 93.7% | 94.0% | 93.8% |
| | | Kindergarten | 1,526 | 91.1% | 90.9% | 91.5% | 92.7% | 91.6% |
| | 2020-21 | Kindergarten | 1,447 | 92.7% | 92.5% | 92.6% | 93.8% | 92.0% |
| | 2019-20 | Kindergarten | 1,715 | 92.2% | 92.0% | 92.3% | 92.2% | 91.5% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 4:  Total Enrollment and Specific Required Immunizations by Series,
Kindergarten, 2021-2022, 2020-2021, 2019-2020 and First Grade, 2021-2022, By County*

| | School Year | Grade | Total Students | DTP 4+ | Polio 3+ | MMR 2+ | HepB 3+ | Var 2+ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 97.1% | 97.4% | 97.5% | 98.0% | 97.2% |
| | | Kindergarten | 503,722 | 95.7% | 96.2% | 96.3% | 97.3% | 96.0% |
| | 2020-21 | Kindergarten | 485,538 | 94.7% | 95.2% | 95.1% | 97.0% | 94.8% |
| | 2019-20 | Kindergarten | 554,250 | 96.2% | 96.5% | 96.5% | 97.4% | 96.0% |
| IMPERIAL | 2021-22 | 1st Grade | 2,511 | 98.1% | 98.0% | 98.5% | ≥99.0% | 98.6% |
| | | Kindergarten | 2,754 | 96.4% | 97.4% | 97.2% | ≥99.0% | 98.0% |
| | 2020-21 | Kindergarten | 2,762 | 95.4% | 97.1% | 94.8% | 98.3% | 96.1% |
| | 2019-20 | Kindergarten | 3,117 | 97.9% | 98.8% | 98.0% | ≥99.0% | 97.9% |
| INYO | 2021-22 | 1st Grade | 207 | 96.1% | 96.6% | 95.2% | ≥99.0% | 96.1% |
| | | Kindergarten | 151 | 94.7% | 94.0% | 95.4% | 98.0% | 94.7% |
| | 2020-21 | Kindergarten | 187 | 97.9% | 98.4% | 96.8% | 98.9% | 96.8% |
| | 2019-20 | Kindergarten | 271 | 97.8% | 98.5% | 98.9% | 98.9% | 98.5% |
| KERN | 2021-22 | 1st Grade | 14,092 | 92.7% | 93.2% | 93.5% | 95.1% | 92.9% |
| | | Kindergarten | 16,369 | 90.1% | 91.3% | 91.6% | 93.7% | 91.6% |
| | 2020-21 | Kindergarten | 15,354 | 89.9% | 91.0% | 90.9% | 94.1% | 90.4% |
| | 2019-20 | Kindergarten | 18,327 | 93.6% | 91.4% | 91.3% | 94.0% | 90.8% |
| KINGS | 2021-22 | 1st Grade | 2,055 | 98.5% | 98.7% | 98.7% | ≥99.0% | 98.3% |
| | | Kindergarten | 2,458 | 96.9% | 98.3% | 98.1% | 98.6% | 97.8% |
| | 2020-21 | Kindergarten | 2,341 | 98.4% | 98.5% | 98.6% | ≥99.0% | 98.6% |
| | 2019-20 | Kindergarten | 2,576 | 97.8% | 98.9% | ≥99.0% | ≥99.0% | 98.7% |
| LAKE | 2021-22 | 1st Grade | 754 | 96.9% | 97.1% | 97.9% | 98.1% | 97.3% |
| | | Kindergarten | 886 | 95.4% | 96.5% | 97.0% | 97.9% | 97.4% |
| | 2020-21 | Kindergarten | 768 | 93.6% | 95.2% | 95.6% | 96.6% | 95.2% |
| | 2019-20 | Kindergarten | 796 | 92.7% | 94.7% | 95.4% | 96.7% | 95.1% |
| LASSEN | 2021-22 | 1st Grade | 309 | 93.5% | 94.5% | 94.8% | 93.2% | 94.8% |
| | | Kindergarten | 315 | 89.8% | 90.5% | 89.8% | 91.1% | 89.8% |
| | 2020-21 | Kindergarten | 335 | 93.1% | 94.6% | 95.5% | 95.2% | 94.6% |
| | 2019-20 | Kindergarten | 350 | 94.0% | 96.3% | 96.3% | 96.3% | 94.9% |
| LOS ANGELES | 2021-22 | 1st Grade | 95,509 | 97.9% | 98.0% | 98.1% | 98.6% | 97.7% |
| | | Kindergarten | 116,937 | 96.3% | 96.6% | 96.7% | 98.0% | 96.3% |
| | 2020-21 | Kindergarten | 114,141 | 94.0% | 94.5% | 94.4% | 97.3% | 93.9% |
| | 2019-20 | Kindergarten | 133,622 | 96.8% | 97.1% | 97.0% | 98.2% | 96.4% |
| MADERA | 2021-22 | 1st Grade | 2,328 | 98.2% | 98.2% | 98.4% | 98.7% | 98.4% |
| | | Kindergarten | 2,636 | 96.7% | 97.3% | 97.5% | 97.8% | 97.7% |
| | 2020-21 | Kindergarten | 2,586 | 97.4% | 97.6% | 97.8% | 97.9% | 97.6% |
| | 2019-20 | Kindergarten | 2,727 | 97.2% | 97.7% | 98.0% | 98.1% | 97.8% |
| MARIN | 2021-22 | 1st Grade | 2,643 | 98.6% | 98.6% | 98.6% | 98.7% | 98.3% |
| | | Kindergarten | 2,847 | 98.5% | 98.6% | ≥99.0% | 98.5% | 98.3% |
| | 2020-21 | Kindergarten | 2,832 | 97.4% | 97.6% | 97.7% | 97.9% | 97.2% |
| | 2019-20 | Kindergarten | 3,252 | 96.0% | 96.6% | 96.9% | 96.8% | 95.8% |
| MARIPOSA | 2021-22 | 1st Grade | 146 | 92.5% | 95.2% | 95.9% | 95.9% | 93.8% |
| | | Kindergarten | 171 | 93.6% | 97.7% | 97.7% | 97.1% | 95.3% |
| | 2020-21 | Kindergarten | 163 | 87.1% | 89.0% | 90.2% | 92.0% | 89.0% |
| | 2019-20 | Kindergarten | 160 | 95.0% | 95.6% | 95.6% | 97.5% | 95.6% |
| MENDOCINO | 2021-22 | 1st Grade | 976 | 94.6% | 95.5% | 96.2% | 96.1% | 95.5% |
| | | Kindergarten | 1,183 | 92.1% | 93.7% | 93.7% | 94.3% | 92.6% |
| | 2020-21 | Kindergarten | 1,084 | 90.6% | 91.4% | 91.9% | 92.7% | 90.6% |
| | 2019-20 | Kindergarten | 1,218 | 88.8% | 89.9% | 89.7% | 89.7% | 88.7% |
| MERCED | 2021-22 | 1st Grade | 4,161 | 98.2% | 98.3% | 98.5% | ≥99.0% | 98.1% |
| | | Kindergarten | 5,007 | 96.7% | 97.4% | 97.4% | 98.4% | 97.2% |
| | 2020-21 | Kindergarten | 4,566 | 96.0% | 96.5% | 96.8% | 98.9% | 96.4% |
| | 2019-20 | Kindergarten | 5,321 | 97.6% | 98.7% | 98.7% | ≥99.0% | 98.2% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 4: Total Enrollment and Specific Required Immunizations by Series,
Kindergarten, 2021-2022, 2020-2021, 2019-2020 and First Grade, 2021-2022, By County*

| | School Year | Grade | Total Students | DTP 4+ | Polio 3+ | MMR 2+ | HepB 3+ | Var 2+ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 97.1% | 97.4% | 97.5% | 98.0% | 97.2% |
| | | Kindergarten | 503,722 | 95.7% | 96.2% | 96.3% | 97.3% | 96.0% |
| | 2020-21 | Kindergarten | 485,538 | 94.7% | 95.2% | 95.1% | 97.0% | 94.8% |
| | 2019-20 | Kindergarten | 554,250 | 96.2% | 96.5% | 96.5% | 97.4% | 96.0% |
| MODOC | 2021-22 | 1st Grade | 120 | 96.7% | 98.3% | ≥99.0% | ≥99.0% | ≥99.0% |
| | | Kindergarten | 102 | 94.1% | 98.0% | 98.0% | ≥99.0% | ≥99.0% |
| | 2020-21 | Kindergarten | 117 | 97.4% | 96.6% | 96.6% | ≥99.0% | 96.6% |
| | 2019-20 | Kindergarten | 120 | 96.7% | 96.7% | 97.5% | ≥99.0% | 96.7% |
| MONO | 2021-22 | 1st Grade | 116 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% |
| | | Kindergarten | 148 | 98.0% | 98.0% | ≥99.0% | 98.0% | 98.6% |
| | 2020-21 | Kindergarten | 124 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | 97.6% |
| | 2019-20 | Kindergarten | 138 | 92.0% | 90.6% | 92.8% | 92.0% | 92.8% |
| MONTEREY | 2021-22 | 1st Grade | 5,150 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | 98.9% |
| | | Kindergarten | 6,357 | 98.6% | 98.7% | 98.8% | ≥99.0% | 98.5% |
| | 2020-21 | Kindergarten | 6,220 | 98.4% | 98.4% | 98.8% | ≥99.0% | 98.6% |
| | 2019-20 | Kindergarten | 6,733 | 98.2% | 98.4% | 98.6% | 98.8% | 98.2% |
| NAPA | 2021-22 | 1st Grade | 1,449 | ≥99.0% | 97.5% | ≥99.0% | 98.8% | 98.9% |
| | | Kindergarten | 1,581 | 98.5% | 98.0% | 98.8% | ≥99.0% | 98.7% |
| | 2020-21 | Kindergarten | 1,596 | 96.6% | 96.5% | 96.7% | 96.9% | 96.6% |
| | 2019-20 | Kindergarten | 1,746 | 98.3% | 98.3% | 98.0% | 97.8% | 97.9% |
| NEVADA | 2021-22 | 1st Grade | 696 | 86.5% | 87.1% | 87.1% | 87.9% | 86.6% |
| | | Kindergarten | 927 | 86.3% | 87.1% | 86.9% | 89.1% | 86.9% |
| | 2020-21 | Kindergarten | 834 | 84.8% | 84.9% | 85.4% | 87.9% | 85.0% |
| | 2019-20 | Kindergarten | 985 | 83.5% | 83.1% | 83.2% | 83.6% | 81.5% |
| ORANGE | 2021-22 | 1st Grade | 32,231 | 98.3% | 98.5% | 98.5% | 98.9% | 98.3% |
| | | Kindergarten | 38,034 | 97.3% | 97.8% | 97.7% | 98.7% | 97.4% |
| | 2020-21 | Kindergarten | 36,305 | 96.2% | 96.9% | 96.8% | 98.3% | 96.6% |
| | 2019-20 | Kindergarten | 41,381 | 97.2% | 97.5% | 97.4% | 98.1% | 97.1% |
| PLACER | 2021-22 | 1st Grade | 5,261 | 95.8% | 96.0% | 96.3% | 96.6% | 96.1% |
| | | Kindergarten | 6,549 | 94.5% | 95.1% | 95.4% | 96.0% | 95.1% |
| | 2020-21 | Kindergarten | 5,628 | 94.1% | 94.9% | 94.6% | 96.0% | 94.3% |
| | 2019-20 | Kindergarten | 6,709 | 93.9% | 94.5% | 93.7% | 95.0% | 93.3% |
| PLUMAS | 2021-22 | 1st Grade | 155 | 96.1% | 96.8% | 96.8% | 97.4% | 96.1% |
| | | Kindergarten | 202 | 96.0% | 95.5% | 96.0% | 96.5% | 93.6% |
| | 2020-21 | Kindergarten | 191 | 93.7% | 93.7% | 94.8% | 97.9% | 93.7% |
| | 2019-20 | Kindergarten | 208 | 96.2% | 95.2% | 96.6% | 96.6% | 93.8% |
| RIVERSIDE | 2021-22 | 1st Grade | 29,235 | 97.0% | 97.5% | 97.5% | 97.9% | 97.4% |
| | | Kindergarten | 33,796 | 95.3% | 96.2% | 96.4% | 97.4% | 96.3% |
| | 2020-21 | Kindergarten | 31,555 | 94.2% | 95.1% | 94.6% | 97.1% | 94.7% |
| | 2019-20 | Kindergarten | 36,134 | 95.1% | 95.7% | 95.8% | 96.1% | 95.3% |
| SACRAMENTO | 2021-22 | 1st Grade | 18,030 | 96.1% | 96.7% | 97.1% | 97.5% | 96.7% |
| | | Kindergarten | 19,897 | 94.3% | 95.5% | 95.8% | 96.5% | 95.6% |
| | 2020-21 | Kindergarten | 19,509 | 93.7% | 94.6% | 94.5% | 96.3% | 94.2% |
| | 2019-20 | Kindergarten | 21,495 | 95.0% | 95.9% | 95.8% | 96.5% | 95.5% |
| SAN BENITO | 2021-22 | 1st Grade | 846 | 98.1% | 98.6% | ≥99.0% | ≥99.0% | 98.9% |
| | | Kindergarten | 983 | 98.0% | 98.3% | 98.9% | ≥99.0% | 98.8% |
| | 2020-21 | Kindergarten | 991 | 93.8% | 93.8% | 93.8% | 98.3% | 95.8% |
| | 2019-20 | Kindergarten | 1,099 | 97.8% | 97.8% | 97.4% | 98.7% | 97.9% |
| SAN BERNARDINO | 2021-22 | 1st Grade | 28,985 | 95.7% | 96.1% | 96.3% | 97.0% | 96.0% |
| | | Kindergarten | 32,198 | 93.9% | 94.8% | 94.9% | 96.1% | 94.8% |
| | 2020-21 | Kindergarten | 30,438 | 92.6% | 93.2% | 93.1% | 96.2% | 93.0% |
| | 2019-20 | Kindergarten | 34,542 | 95.2% | 96.0% | 96.2% | 97.5% | 96.1% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 4:  Total Enrollment and Specific Required Immunizations by Series,
Kindergarten, 2021-2022, 2020-2021, 2019-2020 and First Grade, 2021-2022, By County*

| | School Year | Grade | Total Students | DTP 4+ | Polio 3+ | MMR 2+ | HepB 3+ | Var 2+ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 97.1% | 97.4% | 97.5% | 98.0% | 97.2% |
| | | Kindergarten | 503,722 | 95.7% | 96.2% | 96.3% | 97.3% | 96.0% |
| | 2020-21 | Kindergarten | 485,538 | 94.7% | 95.2% | 95.1% | 97.0% | 94.8% |
| | 2019-20 | Kindergarten | 554,250 | 96.2% | 96.5% | 96.5% | 97.4% | 96.0% |
| SAN DIEGO | 2021-22 | 1st Grade | 36,235 | 96.3% | 96.5% | 96.6% | 97.1% | 96.3% |
| | | Kindergarten | 41,632 | 94.7% | 95.3% | 95.3% | 96.4% | 94.9% |
| | 2020-21 | Kindergarten | 40,748 | 95.2% | 95.6% | 95.4% | 96.7% | 95.2% |
| | 2019-20 | Kindergarten | 45,956 | 94.5% | 94.9% | 94.8% | 95.5% | 94.4% |
| SAN FRANCISCO | 2021-22 | 1st Grade | 5,519 | 96.6% | 96.9% | 97.3% | 97.4% | 97.8% |
| | | Kindergarten | 6,068 | 95.9% | 96.3% | 96.4% | 97.0% | 95.8% |
| | 2020-21 | Kindergarten | 6,325 | 94.2% | 94.9% | 95.1% | 95.5% | 94.8% |
| | 2019-20 | Kindergarten | 6,963 | 97.3% | 97.7% | 97.6% | 97.9% | 96.9% |
| SAN JOAQUIN | 2021-22 | 1st Grade | 10,750 | 97.3% | 97.8% | 97.8% | 98.4% | 97.8% |
| | | Kindergarten | 11,902 | 96.1% | 96.6% | 96.8% | 97.8% | 96.7% |
| | 2020-21 | Kindergarten | 10,791 | 96.3% | 97.3% | 97.0% | 98.4% | 96.8% |
| | 2019-20 | Kindergarten | 12,320 | 96.5% | 97.5% | 97.5% | 98.5% | 96.9% |
| SAN LUIS OBISPO | 2021-22 | 1st Grade | 2,451 | 98.0% | 97.9% | 98.3% | 98.8% | 98.2% |
| | | Kindergarten | 2,846 | 95.7% | 96.3% | 96.2% | 97.8% | 96.4% |
| | 2020-21 | Kindergarten | 2,466 | 96.8% | 96.8% | 96.9% | 98.3% | 96.6% |
| | 2019-20 | Kindergarten | 3,095 | 95.9% | 96.3% | 96.2% | 97.2% | 95.7% |
| SAN MATEO | 2021-22 | 1st Grade | 7,250 | 98.6% | 98.9% | 98.9% | 98.9% | 98.2% |
| | | Kindergarten | 8,028 | 97.8% | 98.4% | 98.2% | 98.7% | 97.5% |
| | 2020-21 | Kindergarten | 8,140 | 98.1% | 98.5% | 98.3% | ≥99.0% | 97.9% |
| | 2019-20 | Kindergarten | 9,168 | 97.9% | 98.1% | 98.1% | 98.6% | 97.4% |
| SANTA BARBARA | 2021-22 | 1st Grade | 5,232 | 98.2% | 98.4% | 98.5% | 98.6% | 98.0% |
| | | Kindergarten | 6,066 | 97.6% | 97.8% | 98.0% | 98.4% | 97.5% |
| | 2020-21 | Kindergarten | 5,473 | 96.7% | 97.4% | 97.0% | 98.1% | 96.7% |
| | 2019-20 | Kindergarten | 6,500 | 97.6% | 98.0% | 97.9% | 98.2% | 97.4% |
| SANTA CLARA | 2021-22 | 1st Grade | 19,070 | 98.5% | 98.7% | 98.7% | 98.9% | 98.3% |
| | | Kindergarten | 21,901 | 97.8% | 98.3% | 98.1% | 98.7% | 97.8% |
| | 2020-21 | Kindergarten | 21,759 | 97.3% | 97.7% | 97.6% | 98.6% | 97.1% |
| | 2019-20 | Kindergarten | 24,963 | 98.1% | 98.5% | 98.2% | 98.8% | 97.6% |
| SANTA CRUZ | 2021-22 | 1st Grade | 2,938 | 93.9% | 93.6% | 93.9% | 94.6% | 93.5% |
| | | Kindergarten | 3,307 | 93.5% | 93.3% | 94.1% | 94.6% | 93.5% |
| | 2020-21 | Kindergarten | 3,097 | 93.3% | 93.3% | 92.2% | 93.5% | 92.4% |
| | 2019-20 | Kindergarten | 3,415 | 92.4% | 92.4% | 92.6% | 93.1% | 93.1% |
| SHASTA | 2021-22 | 1st Grade | 1,959 | 94.2% | 94.6% | 94.8% | 95.5% | 94.8% |
| | | Kindergarten | 2,511 | 91.0% | 92.0% | 92.6% | 94.5% | 92.9% |
| | 2020-21 | Kindergarten | 2,189 | 91.2% | 92.3% | 91.9% | 94.7% | 92.1% |
| | 2019-20 | Kindergarten | 2,525 | 93.1% | 93.3% | 93.8% | 95.2% | 92.9% |
| SIERRA | 2021-22 | 1st Grade | 34 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% |
| | | Kindergarten | 32 | ≥99.0% | ≥99.0% | 96.9% | ≥99.0% | ≥99.0% |
| | 2020-21 | Kindergarten | 23 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% |
| | 2019-20 | Kindergarten | 25 | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% | ≥99.0% |
| SISKIYOU | 2021-22 | 1st Grade | 383 | 94.0% | 92.7% | 93.7% | 95.0% | 93.7% |
| | | Kindergarten | 500 | 92.4% | 93.0% | 93.0% | 93.8% | 93.8% |
| | 2020-21 | Kindergarten | 463 | 91.1% | 91.6% | 90.7% | 91.6% | 91.8% |
| | 2019-20 | Kindergarten | 530 | 97.2% | 97.4% | 97.5% | 97.7% | 97.5% |
| SOLANO | 2021-22 | 1st Grade | 4,451 | 98.8% | ≥99.0% | ≥99.0% | ≥99.0% | 98.9% |
| | | Kindergarten | 5,236 | 97.6% | 98.2% | 98.3% | 98.7% | 98.0% |
| | 2020-21 | Kindergarten | 5,036 | 96.4% | 97.3% | 96.7% | 98.0% | 96.5% |
| | 2019-20 | Kindergarten | 5,966 | 97.3% | 98.0% | 98.1% | 98.4% | 97.6% |

Kindergarten and 1st Grade Immunization Assessment - California, 2021-2022
Table 4:  Total Enrollment and Specific Required Immunizations by Series,
Kindergarten, 2021-2022, 2020-2021, 2019-2020 and First Grade, 2021-2022, By County*

| | School Year | Grade | Total Students | DTP 4+ | Polio 3+ | MMR 2+ | HepB 3+ | Var 2+ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| STATE TOTAL | 2021-22 | 1st Grade | 431,819 | 97.1% | 97.4% | 97.5% | 98.0% | 97.2% |
| | | Kindergarten | 503,722 | 95.7% | 96.2% | 96.3% | 97.3% | 96.0% |
| | 2020-21 | Kindergarten | 485,538 | 94.7% | 95.2% | 95.1% | 97.0% | 94.8% |
| | 2019-20 | Kindergarten | 554,250 | 96.2% | 96.5% | 96.5% | 97.4% | 96.0% |
| SONOMA | 2021-22 | 1st Grade | 4,657 | 95.7% | 96.0% | 96.3% | 96.4% | 95.7% |
| | | Kindergarten | 5,931 | 94.4% | 94.7% | 95.0% | 95.8% | 94.6% |
| | 2020-21 | Kindergarten | 5,566 | 93.4% | 93.9% | 94.0% | 96.1% | 93.4% |
| | 2019-20 | Kindergarten | 6,043 | 94.7% | 94.8% | 94.7% | 95.3% | 94.3% |
| STANISLAUS | 2021-22 | 1st Grade | 7,858 | 97.0% | 97.5% | 97.7% | 98.3% | 97.5% |
| | | Kindergarten | 8,707 | 95.3% | 96.2% | 96.3% | 97.8% | 96.1% |
| | 2020-21 | Kindergarten | 8,619 | 95.5% | 96.6% | 96.2% | 98.1% | 95.7% |
| | 2019-20 | Kindergarten | 9,366 | 96.7% | 97.7% | 97.8% | 98.2% | 97.6% |
| SUTTER | 2021-22 | 1st Grade | 1,691 | 83.3% | 83.3% | 83.9% | 86.6% | 83.2% |
| | | Kindergarten | 2,222 | 79.2% | 80.0% | 79.9% | 84.4% | 79.7% |
| | 2020-21 | Kindergarten | 1,764 | 83.8% | 84.6% | 84.3% | 88.7% | 83.6% |
| | 2019-20 | Kindergarten | 2,017 | 86.7% | 87.3% | 87.9% | 89.8% | 88.5% |
| TEHAMA | 2021-22 | 1st Grade | 834 | 98.3% | 98.7% | 98.6% | 98.8% | 98.6% |
| | | Kindergarten | 962 | 96.0% | 96.7% | 97.2% | 98.2% | 96.4% |
| | 2020-21 | Kindergarten | 838 | 96.1% | 97.4% | 97.4% | 98.2% | 97.3% |
| | 2019-20 | Kindergarten | 1,073 | 95.4% | 96.7% | 96.6% | 97.9% | 95.6% |
| TRINITY | 2021-22 | 1st Grade | 115 | 91.3% | 89.6% | 90.4% | 93.9% | 89.6% |
| | | Kindergarten | 117 | 94.0% | 93.2% | 93.2% | 92.3% | 91.5% |
| | 2020-21 | Kindergarten | 134 | 89.6% | 89.6% | 89.6% | 90.3% | 90.3% |
| | 2019-20 | Kindergarten | 138 | 89.1% | 87.7% | 91.3% | 92.0% | 92.0% |
| TULARE | 2021-22 | 1st Grade | 7,322 | 98.9% | ≥99.0% | 98.9% | ≥99.0% | 98.7% |
| | | Kindergarten | 8,542 | 97.9% | 98.1% | 98.2% | 98.6% | 97.8% |
| | 2020-21 | Kindergarten | 8,344 | 97.5% | 97.7% | 97.8% | 98.7% | 97.7% |
| | 2019-20 | Kindergarten | 9,535 | 97.3% | 97.9% | 97.9% | 98.4% | 97.7% |
| TUOLUMNE | 2021-22 | 1st Grade | 469 | 91.7% | 94.2% | 93.0% | 94.2% | 92.8% |
| | | Kindergarten | 566 | 89.6% | 92.4% | 93.5% | 94.5% | 93.1% |
| | 2020-21 | Kindergarten | 474 | 89.0% | 90.1% | 91.8% | 92.8% | 90.5% |
| | 2019-20 | Kindergarten | 584 | 92.6% | 93.8% | 93.7% | 95.0% | 93.5% |
| VENTURA | 2021-22 | 1st Grade | 9,403 | 97.6% | 97.7% | 97.8% | 98.1% | 97.4% |
| | | Kindergarten | 10,540 | 96.6% | 97.1% | 97.1% | 98.0% | 96.8% |
| | 2020-21 | Kindergarten | 10,410 | 96.3% | 96.5% | 96.6% | 97.6% | 96.4% |
| | 2019-20 | Kindergarten | 11,466 | 96.9% | 97.3% | 97.3% | 98.0% | 96.7% |
| YOLO | 2021-22 | 1st Grade | 2,383 | 96.3% | 96.7% | 96.6% | 97.0% | 96.3% |
| | | Kindergarten | 2,746 | 95.4% | 96.2% | 95.8% | 96.8% | 95.5% |
| | 2020-21 | Kindergarten | 2,535 | 94.6% | 95.2% | 95.3% | 96.6% | 95.2% |
| | 2019-20 | Kindergarten | 2,959 | 96.1% | 96.3% | 96.6% | 97.5% | 96.0% |
| YUBA | 2021-22 | 1st Grade | 1,167 | 95.6% | 95.7% | 96.1% | 96.5% | 95.8% |
| | | Kindergarten | 1,372 | 92.7% | 93.2% | 93.2% | 95.0% | 93.4% |
| | 2020-21 | Kindergarten | 1,154 | 93.0% | 94.6% | 93.9% | 96.6% | 91.7% |
| | 2019-20 | Kindergarten | 1,361 | 95.2% | 96.0% | 95.6% | 96.8% | 95.4% |

* Additional precautions for student de-identification are based on jurisdiction enrollment for kindergarten.  For jurisdictions with: Fewer than 20 enrollees, the data are omitted; 20-49 enrollees, values of 95% or higher are listed as ≥95%;  50-99 enrollees, values of 98% or higher are listed as ≥98%;  100 or more enrollees, values of 99% or higher are listed as ≥99%.
** Schools did not report.

# Exhibit 12

**2020-2021 and 2021-2022 Seventh Grade Immunization Assessment**

**Executive summary**

Immunization requirements for school entry help protect children and communities from vaccine-preventable diseases. Schools in California are required to report student immunization status to the California Department of Public Health (CDPH) every year. This report summarizes California student immunization rates reported at 7th grade in the 2020-2021 and 2021-2022 school years and at 8th grade in 2021-2022.

Events potentially affecting immunization and reporting during this period included:
- The Coronavirus 2019 (COVID-19) pandemic disrupted routine primary health care and education.
- Beginning January 1, 2021 Senate Bills [SB) 276](#) and [SB 714](#) have required that all new medical exemptions to requirements for school entry be issued through a statewide database, the California Immunization Registry Medical Exemption (CAIR-ME) website.

Reported immunization rates for Tdap decreased slightly in 2021-2022 from 2019-2020, while Varicella rates remained similar. The proportion of 7th grade students reported to have received Tdap immunization was 97.3% in 2019-2020 and 95.9% in 2021-2022. An interim 7th grade Tdap rate in 2020-2021, during the height of the COVID-19 pandemic which likely affected immunization delivery and school reporting, was 88.6%. The Tdap rate for this cohort during 8th grade in 2021-2022 was 97.1%. Reported rate of Varicella immunizations among 7th graders was 97.1% in 2019-2020 and 97.2% in 2021-2022. The proportion of 7th graders reported with permanent medical exemptions decreased for Tdap from 0.4% in 2019-2020 to 0.1% in 2021-2022 and for Varicella from 0.9% in 2019-2020 to 0.4% in 2021-2022.

CDPH and local health departments in California continue to closely monitor immunization coverage and to support schools in protecting the health of their students and communities.

**Introduction**

All schools with 7th grade students in California are required to report annually on student compliance per California Health and Safety Code Sections 120325-120375. This report summarizes the 2020-2021 and 2021-2022 school year data for 7th graders. In 2021-2022, an additional reporting requirement was added for 8th grade students to monitor immunization trends during the COVID-19 pandemic, associated with lengthy school closures, shifts from in-person to virtual and hybrid learning, and delays in routine health care. In addition, [California Department of Education data](#) show that 7th grade student enrollment decreased by 7% during the 2-year interval between 2019-2020 and 2021-2022.

California laws over the past decade have modified:
- Required doses: Since 2019, students entering 7th grade are required to receive two doses of Varicella (chickenpox) vaccine due to changes in the [California Code of Regulations](#).
- Medical exemptions to required immunization: Starting January 1, 2021, Senate Bills [SB) 276](#) and [SB 714](#) require that all new medical exemptions for school and child care entry be issued through CAIR-ME, an electronic, statewide database. Medical exemptions can only be issued

by physicians and surgeons licensed with the Medical Board or Osteopathic Medical Board of California and must meet criteria for appropriate exemptions from the Centers for Disease Control and Prevention, Advisory Committee on Immunization Practices, and American Academy of Pediatrics.
- Personal beliefs exemptions (PBEs): PBEs have not been permitted since 2016 per SB 277.

---

**Methods**

California schools registered with the California Department of Education reported to CDPH data on enrolled 7th grade students during the winter of the 2020-2021 and 2021-2022 school years. In 2021-2022, schools reporting 7th grade enrollment were also required to report the immunization status of 8th grade students to monitor their vulnerability to vaccine-preventable diseases during the pandemic.

Based on their immunization status, students were classified by school staff into the following categories:
- Students immunized with required vaccines:
  - 1 or more doses of Tetanus, diphtheria and pertussis booster (Tdap) vaccine
  - 2 or more doses of Varicella vaccine ['2+ Var'].
- Conditional entrants who had a temporary medical exemption (TME) to Tdap or Varicella vaccine or were not yet due for their second dose of Varicella vaccine.
- Students with a permanent medical exemption (PME) to either Tdap or Varicella vaccine. For Varicella vaccine, PMEs were further distinguished between
  - Physician (MD/DO) verification of varicella disease
  - Medical reasons other than varicella disease
- Other students lacking required immunizations: Under SB 277, entrants since the 2016-2017 school year have not been required to have immunizations if they attend:
  - A home-based private school or
  - An independent study program and do not receive classroom-based instruction.
  - In addition, students who have an individualized education program (IEP) may continue to receive all necessary services identified in their IEP regardless of their immunization status.
  Students in these settings were classified in this category if they lacked required immunizations and did not meet the criteria for other categories.
- Students overdue for required immunizations and subject to exclusion from school until the overdue requirement has been met.

Under SB 277, personal belief exemptions (PBEs) have no longer been an option for 7th graders since the 2016-2017 school year.

Due to rounding, total figures may differ from the sums of their components. Differences were calculated between exact figures, varying at times by 0.1% from the differences between rounded figures.

**Results**

In 2021-2022, 4,654 schools reported immunization status for 463,512 seventh grade students and 4,524 schools reported immunization status for 480,613 eighth grade students (Tables 1 and 2). Compared to 2019-2020, the number of schools with 7th grade that reported decreased by 2% in 2021-2022. The number of 7th grade students with reported immunization status decreased from 2019-2020 to 2021-2022 by 8.2%, compared to decreases in enrollment, per CDE data, of 7%. Between 2019-2020 and 2021-2022, the number of private schools reporting 7th graders decreased by 7%, while the number of public schools increased slightly by 0.9%. Similar to previous years, public schools accounted for 65% of all schools reporting 7th grade education and 92% of all reported 7th grade students in 2021-2022. Among nonreporting schools in 2021-2022, 78% (153 out of 195) were private schools.

Immunized with Tdap: Among 463,512 7th grade students reported in 2021-2022, 95.9% had received Tdap immunization, a decrease of 1.4% compared to 2019-2020 (Table 1 and Figure 1). As in prior years, a higher proportion of students in public compared to private schools were reported as being immunized with Tdap (96.1% public vs. 93.5% private).

The interim Tdap immunization rate for 7th grade students in 2020-2021 was 88.6% while the rate for this cohort in 8th grade in 2021-2022 increased to 97.1% (Table 2).

Immunized with Varicella vaccine: In 2021-2022, 97.2% of 7th grade students were reported as having received 2 doses of Varicella vaccine, a 0.1% decrease compared to 2019-2020 (Table 1 and Figure 2). A higher proportion of students in public compared to private schools were reported as being immunized with Varicella (97.4% public vs. 95.0% private).

The interim Varicella immunization rate for 7th grade students in 2020-2021 was 96.3% while the rate for this cohort in 8th grade in 2021-2022 was 97.7% (Table 2).

Permanent Medical Exemptions: Both public and private schools reported fewer PMEs in 2021-2022 than previous years (Table 1, Figures 3 and 4). The proportion of 7th grade students reported with PMEs for Tdap vaccine has decreased from a peak of 0.5% in 2018-2019 to 0.1% in 2021-2022.

The proportion of 7th graders with PMEs for Varicella decreased from 0.9% in 2019-2020 to 0.4% in 2021-2022. Among 1,687 PMEs for Varicella, 58% (980) reported physician verification of varicella disease and 42% (707) reported other medical reasons for exemption.

Among 8th grade students in 2021-2022, 769 students (0.2%) were reported with PMEs for Tdap and 2,157 students (0.4%) with PMEs for Varicella.

Conditional entrants: The proportion of 7th grade students in all schools reported as conditional entrants because of a temporary medical exemption for Tdap immunization decreased from 0.1% in 2019-2020 to <0.1% in 2021-2022 (Table 1, Figures 5 and 6).

For Varicella immunization, the proportion of 7th graders reported as conditional entrants decreased between 2019-2020 and 2021-2022 from 0.3% to 0.2% in all schools and in public schools, and 0.6% to 0.4% in private schools (Table 1, Figures 5 and 7). The majority were reported as students not yet due for their second dose of Varicella vaccine (856 out of 975 students in 2021-2022) as compared to having a temporary medical exemption (119 out of 975).

The proportion of 8th graders in 2021-2022 reported as conditional entrants was 0.1% for Varicella immunization and <0.1% for Tdap immunization.

Other students lacking required immunizations: Seventh graders reported as attending an independent study program without classroom-based instruction, attending home-based private school, or receiving services in an IEP and lacking immunizations have increased over the past 6 years. Students in this category lacking Tdap immunization increased from 1.5% in 2019-2020 to 2.2% in 2021-2022, including 2.2% for public schools and 2.5% for private schools. Seventh graders in this category reported as lacking two doses of Varicella vaccine increased from 1.0% in 2019-2020 to 1.3% in 2021-2022, including 1.2% in public schools and 2.2% in private schools. Similar to prior years, most students in this category were reported as being enrolled in independent study programs in 2021-2022 (6,620 out of 10,089 students lacking Tdap immunization and 4,095 out of 5,905 students lacking Varicella immunization).

The interim proportion of 7th graders in independent study without classroom-based instruction, home-based private school or receiving IEP services and lacking immunizations was 2.6% for Tdap and 1.2% for Varicella in 2020-2021, while the rates for this cohort in 8th grade in 2021-2022 were 1.6% for lacking Tdap and 1.1% for lacking Varicella.

Overdue: The percentage of 7th grade students reported as being overdue for Tdap immunization has been increasing over the past 7 years, including an increase in 1.1 percentage points from 0.7% in 2019-2020 to 1.8% in 2021-2022. Students reported as overdue for Tdap immunization increased in both public and private schools, 1.7% in public and 3.3% in private schools in 2021-2022. The proportion of 8th graders in 2021-2022 reported as overdue for Tdap immunization was 1.1%, decreased from 8.5% in the corresponding 7th grade cohort in 2020-2021.

Seventh grade students reported as being overdue for Varicella immunization increased from 0.7% in 2019-2020 to 0.9% to 2021-2022, including 0.8% in public schools and 1.7% in private schools. The proportion of 8th graders in 2021-2022 reported as overdue for Varicella immunization was 0.7%, decreased from 1.8% in the corresponding 7th grade cohort in 2020-2021.

County-level immunization rates: Immunization rates varied widely by county in California, including lower rates in some northern and central counties (Tables 3 and 4, Figures 8 and 9). In 2021-2022, 22 (38%) of 58 counties reported 7th grade Tdap immunization rates below 95%, compared to 12 (21%) counties in 2019-2020.

Counties with higher proportion of students enrolled in online or virtual schools had lower Tdap immunization rates, similar to prior years. Four counties, El Dorado, Glenn, Kern, and Sutter, reported more than 5% of seventh grade students enrolled in virtual schools and corresponding lower Tdap immunization rates among students in virtual schools versus classroom-based schools (Box).

| % of 7th graders with Tdap immunization in 2021-2022 | | | |
|---|---|---|---|
| County | All Schools Based in County | Classroom-Based Schools | Virtual Schools* | For Schools Based in County, % of pupils reported as enrolled in virtual schools |
| Sutter | 79.9% | 96.4% | 32.4% | 19.4% |
| El Dorado | 83.3% | 95.8% | 14.2% | 15.0% |
| Glenn | 89.4% | 98.0% | 16.0% | 10.6% |
| Kern | 91.8% | 98.1% | 10.5% | 6.8% |

*Virtual schools are based in the specified county but may enroll children who reside in other counties.

Varicella immunization rates below 95% were reported by 12 (21%) counties in 2021-2022, compared to 16 (28%) in 2019-2020.

In most counties, rates for Tdap and varicella immunization in 8th grade students in 2021-2022 were higher than rates in the corresponding 7th grade cohort in 2020-2021.

---

**Discussion**

In the midst of the COVID-19 pandemic, California schools continued to report essential immunization information about their students. Public schools reported the immunization status of 97% (447,943/460,703) of 7th graders counted in CDE public school enrollment data in 2020-2021 and 98% (428,603/435,773) in 2021-2022. Private school reporting was lower at 88% (32,770/37,079) in 2020-2021 and 92% (34,909/37,747) in 2021-2022 per CDE private school enrollment data.

The Tdap immunization rate among 7th graders was 95.9% in 2021-2022, below rates ranging from 96.6% to 98.4% during the 10 years before the pandemic. An interim lower rate of 88.6% for 7th graders in 2020-2021 was followed by a rate of 97.1% among 8th graders in 2021-2022. Data on 8th grade students have not been collected previously, thus it is unclear whether the pace of catch-up in 2021-2022 was unusual. Compared to 2019-2020, the proportion of 7th graders reported in 2021-2022 categorized as overdue for Tdap immunization more than doubled from 0.7% to 1.8%, which may reflect disruptions in immunization, attendance, or reporting capacity during the pandemic.

The Varicella immunization rate among 7th graders in 2021-2022 was 97.2%, similar to a rate of 97.1% in 2019-2020. An interim lower rate of 96.3% for 7th graders in 2020-2021 was followed by a rate of 97.7% among 8th graders in 2021-2022. In California during 2021-2022, varicella immunization rates were higher among 7th graders than kindergarteners in public schools (7th grade 97.4%; kindergarten 96.1%), but not private schools (7th grade 95.0%; kindergarten 95.3%).

The proportion of 7th grade students with PMEs has decreased after implementation of SB 276 and SB 714, which require medical exemptions to align with national standards and be subject to review by CDPH: PMEs for Tdap decreased from 0.4% in 2019-2020 to 0.1% in 2021-2022 and PMEs for Varicella decreased from 0.9% in 2019-2020 to 0.4% in 2021-2022. This trend is similar to decreasing PMEs reported among kindergarteners. By contrast, the proportion of students exempted from

immunization requirements per criteria in SB 277 has been increasing among 7th graders. Most of these 7th graders are reported as being in independent study programs (1.4% IEP of 2.2% lacking Tdap; 0.9% IEP of 1.3% lacking Varicella).

Adolescents in schools and communities with lower immunization rates remain at higher risk of contracting and transmitting vaccine preventable diseases. In 2021-2022, rates of immunization less than 95% were reported for Tdap in 22 (38%) counties in California and for Varicella vaccine in 12 (21%) counties. Regional differences in reported school-required immunization rates reflect trends for COVID-19 vaccines in California. Encouraging immunization throughout childhood and adolescence should continue as our school communities return to routine in-person learning. Ongoing efforts to protect school communities with required vaccines and COVID-19 vaccines can be complementary and synergistic.

---

**Limitations**

This report is subject to limitations that include:
- Submission of student immunization records to school staff and reporting by school staff of immunization data to CDPH might have been reduced during the pandemic. Incomplete immunization records might have resulted in underestimates of immunization rates.
- CDPH does not know how many of the schools that did not report had enrolled 7th grade students or the immunization status of their students. In 2020-2021, 473 California schools, including 381 private schools and 92 public schools did not report. In 2021-2022, 195 California schools, including 153 private schools and 42 public schools did not report. Underreporting could have biased the reported immunization rates in either direction.
- As in previous years, private home schools that did not register with the California Department of Education may not have reported data to CDPH, which would result in continued underestimates of their enrollment.
- It is possible that medical exemption records provided to schools were incomplete or under review during initial implementation of SB 276 and SB 714 on January 1, 2021, when documentation of medical exemptions transitioned from paper-based records to CAIR-ME, an electronic, statewide database. The presence of incomplete records could have biased the reported medical exemption rates in either direction.

Download the 7th Grade Immunization Assessment Summary data workbook for more information (XLS)

---

## Figures

1. Percentage of Students with 1+ Doses of Tdap Vaccine by School Year

2. Percentage of Students with 2+ Doses of Varicella Vaccine by School Year

3. Percentage of All 7th Grade and 8th Grade Students with Permanent Medical Exemptions (PMEs) to Tdap Vaccine by School Year

4. Percentage of All 7th Grade and 8th Grade Students with Permanent Medical Exemptions (PMEs) to Varicella Vaccine by School Year

5. Percentage of All 7th Grade Students by Reported Admission Status, Tdap and Varicella Vaccine, 2021-2022

6. Percentage of All 7th Grade Students with 1+ Doses of Tdap Vaccine, by Reported Admission Status, by School Year, 2014-2015 to 2021-2022

7. Percentage 7th Grade Students with 2+ Doses of Varicella Vaccine, by Reported Admission Status, by School Year, 2019-2020 to 2021-2022

8. Map: 7th Grade and 8th Grade Students with 1+ Doses of Tdap Vaccine, by County, 7th Grade, 2019-2020 to 2021-2022 School Years and 8th Grade 2021-2022 School Year

9. Map: 7th Grade and 8th Grade Students with 2+ Doses of Varicella Vaccine, by County, 7th Grade, 2019-2020 to 2021-2022 School Years and 8th Grade 2021-2022 School Year

## Tables

1. 7th Grade Immunization Assessment Summary, 2019-2020 through 2021-2022 School Years

2. Immunization Assessment Summary of 7th Grade in 2020-2021 and Subsequent 8th Grade in 2021-2022

3. Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022, 2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year, by County

4. Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022, 2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year, by County

**Figure 1.  Top: Percentage of Students with 1+ Doses of Tdap Vaccine by School Year**
**Figure 2. Bottom:  Percentage of Students with 2+ Doses of Varicella Vaccine by School Year**
**Left:  7th Graders in the 2017-2018 to 2021-2022 School Years**
**Right: 7th Graders in the 2020-2021 School Year and 8th Graders in the 2021-2022 School Year**





*Immunization and data collection potentially affected by the COVID-19 Pandemic.

**Figure 3. Top: Percentage of All 7th Grade and 8th Grade Students with Permanent Medical Exemptions (PMEs) to Tdap Vaccine, by School Year**

**Figure 4. Bottom: Percentage of All 7th Grade and 8th Grade Students with Permanent Medical Exemptions (PMEs) to Varicella Vaccine by School Year, by School Year.**

Left:  7th Graders in the 2017-2018 to 2021-2022 School Years

Right:  7th Graders in the 2020-2021 School Year and 8th Graders in the 2021-2022 School Year





*Immunization and data collection potentially affected by the COVID-19 Pandemic.

**Figure 5. Percentage of All 7th Grade Students by Reported Admission Status, Tdap and Varicella Vaccine, 2021-2022 School Year†**



† Immunization and data collection potentially affected by the COVID-19 Pandemic.

* Other children lacking required immunizations under criteria specified in SB 277

^ Conditional Entrants – TMEs <0.1%

**Figure 6. Percentage of 7th Grade Students with 1+ Doses of Tdap Vaccine, by Reported Admission Status by School Year, 2014-2015 to 2021-2022**



*Other children lacking required immunizations under criteria specified in SB 277.

† Immunization and data collection potentially affected by the COVID-19 Pandemic.

**Figure 7. Percentage 7th Grade Students with 2+ Doses of Varicella Vaccine, by Reported Admission Status by School Year, 2019-20 to 2021-22**
Top: 7th Graders in the 2019-2020 to 2021-2022 School Years
Bottom: 7th Graders in the 2020-2021 School Year and 8th Graders in the 2021-2022 School Year



† Immunization and data collection potentially affected by the COVID-19 Pandemic.

* Other children lacking required immunizations under criteria specified in SB 277

^ Conditional Entrants – TMEs <0.1%

**Figure 8. 7ᵗʰ and 8ᵗʰ Grade Students with 1+ Doses of Tdap Vaccine, by County**
7ᵗʰ Graders in the 2019-2020 to 2021-2022 School Years
8ᵗʰ Graders in the 2021-2022 School Year



*Immunization and data collection potentially affected by the COVID-19 pandemic

**Figure 9. 7th and 8th Grade Students with 2+ Doses of Varicella Vaccine, by County**
**7th Graders in the 2019-2020 to 2021-2022 School Years**
**8th Graders in the 2021-2022 School Year**



*Immunization and data collection potentially affected by the COVID-19 pandemic

**Table 1. 7th Grade Immunization Assessment Summary, 2019-20 through 2021-2022 School Years**

| | 7th Grade | | | | | | | | | 7th Grade: 2021-22 and 2019-20 2-Year Percentage Point Change | | |
| --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- | --- |
| | 2021-2022 | | | 2020-2021 | | | 2019-2020 | | | | | |
| | All | Public | Private | All | Public | Private | All | Public | Private | All | Public | Private |
| Number of Schools | 4,654 | 3,038 | 1,616 | 4,454 | 2,925 | 1,529 | 4,750 | 3,012 | 1,738 | -2.0% | 0.9% | -7.0% |
| Number of Students | 463,512 | 428,603 | 34,909 | 480,713 | 447,943 | 32,770 | 505,017 | 468,248 | 36,769 | -8.2% | -8.5% | -5.1% |
| **Received Tdap*** | 95.9% | 96.1% | 93.5% | 88.6% | 88.3% | 91.8% | 97.3% | 97.6% | 94.2% | -1.4% | -1.5% | -0.7% |
| Conditional Entrants for Tdap | 0.0% | 0.0% | 0.2% | 0.1% | 0.0% | 0.3% | 0.1% | 0.1% | 0.4% | 0.0% | 0.0% | -0.2% |
| Permanent Medical Exemptions for Tdap | 0.1% | 0.1% | 0.5% | 0.3% | 0.3% | 0.8% | 0.4% | 0.4% | 1.3% | -0.3% | -0.3% | -0.8% |
| Personal Belief Exemptions for Tdap | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking Tdap† | 2.2% | 2.2% | 2.5% | 2.6% | 2.6% | 2.4% | 1.5% | 1.5% | 1.8% | 0.7% | 0.7% | 0.7% |
| Overdue for Tdap Vaccine^ | 1.8% | 1.7% | 3.3% | 8.5% | 8.7% | 4.6% | 0.7% | 0.5% | 2.3% | 1.1% | 1.1% | 1.0% |
| **Received 2+ Varicella**** | 97.2% | 97.4% | 95.0% | 96.3% | 96.4% | 94.7% | 97.1% | 97.3% | 94.7% | 0.2% | 0.2% | 0.3% |
| Conditional Entrants for Varicella | 0.2% | 0.2% | 0.4% | 0.2% | 0.1% | 0.5% | 0.3% | 0.3% | 0.6% | -0.1% | -0.1% | -0.2% |
| Permanent Medical Exemptions for Varicella | 0.4% | 0.3% | 0.7% | 0.6% | 0.6% | 1.2% | 0.9% | 0.8% | 1.8% | -0.5% | -0.5% | -1.0% |
| Personal Belief Exemptions for Varicella | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking Varicella† | 1.3% | 1.2% | 2.2% | 1.2% | 1.1% | 2.0% | 1.0% | 1.0% | 1.7% | 0.2% | 0.2% | 0.5% |
| Overdue for 2+ Varicella Vaccine^^ | 0.9% | 0.8% | 1.7% | 1.8% | 1.8% | 1.7% | 0.7% | 0.6% | 1.3% | 0.2% | 0.2% | 0.4% |

* Received pertussis-containing immunization on or after 7th birthday.

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Tdap immunization.

** Received 2 doses of Varicella immunization.

^^ Overdue for 2 doses of Varicella immunization.

**Table 2.   Immunization Assessment Summary of 7th Grade in 2020-21 and Subsequent 8th Grade in 2021-2022**

| | 8th Grade 2021-2022 | | | 7th Grade 2020-2021 | | | 8th Grade 2021-22 and 7th Grade 2020-21 1-Year Percentage Point Change | | |
|---|---|---|---|---|---|---|---|---|---|
| | All | Public | Private | All | Public | Private | All | Public | Private |
| Number of Schools | 4,524 | 2,981 | 1,543 | 4,454 | 2,925 | 1,529 | 1.6% | 1.9% | 0.9% |
| Number of Students | 480,613 | 445,896 | 34,717 | 480,713 | 447,943 | 32,770 | 0.0% | -0.5% | 5.9% |
| **Received Tdap*** | 97.1% | 97.3% | 94.6% | 88.6% | 88.3% | 91.8% | 8.5% | 8.9% | 2.8% |
| Conditional Entrants for Tdap | 0.0% | 0.0% | 0.1% | 0.1% | 0.0% | 0.3% | 0.0% | 0.0% | -0.2% |
| Permanent Medical Exemptions for Tdap | 0.2% | 0.1% | 0.6% | 0.3% | 0.3% | 0.8% | -0.1% | -0.1% | -0.3% |
| Personal Belief Exemptions for Tdap | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking Tdap† | 1.6% | 1.6% | 2.5% | 2.6% | 2.6% | 2.4% | -1.0% | -1.0% | 0.0% |
| Overdue for Tdap Vaccine^ | 1.1% | 1.0% | 2.2% | 8.5% | 8.7% | 4.6% | -7.4% | -7.7% | -2.4% |
| **Received 2+ Varicella**** | 97.7% | 97.8% | 95.5% | 96.3% | 96.4% | 94.7% | 1.4% | 1.4% | 0.9% |
| Conditional Entrants for Varicella | 0.1% | 0.1% | 0.2% | 0.2% | 0.1% | 0.5% | -0.1% | 0.0% | -0.2% |
| Permanent Medical Exemptions for Varicella | 0.4% | 0.4% | 0.9% | 0.6% | 0.6% | 1.2% | -0.1% | -0.1% | -0.3% |
| Personal Belief Exemptions for Varicella | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Others Lacking Varicella† | 1.1% | 1.0% | 2.2% | 1.2% | 1.1% | 2.0% | -0.1% | -0.1% | 0.2% |
| Overdue for 2+ Varicella Vaccine^^ | 0.7% | 0.7% | 1.1% | 1.8% | 1.8% | 1.7% | -1.1% | -1.1% | -0.6% |

* Received pertussis-containing immunization on or after 7th birthday.

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Tdap immunization.

** Received 2 doses of Varicella immunization.

† Received 2 doses of Varicella immunization.

^^ Overdue for 2 doses of Varicella immunization.

Table 3: Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year,
By County

| | School Year | Grade | Total Students | Entrants with Tdap Vaccine | Conditional Entrants | Entrants with PME | Others Lacking Tdap Vaccine† | Overdue for Tdap Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| State Total | 2021-22 | 8 | 480,613 | 97.1% | 0.0% | 0.2% | 1.6% | 1.1% |
| | | 7 | 463,512 | 95.9% | 0.0% | 0.1% | 2.2% | 1.8% |
| | 2020-21 | 7 | 480,713 | 88.6% | 0.1% | 0.3% | 2.6% | 8.5% |
| | 2019-20 | 7 | 505,017 | 97.3% | 0.1% | 0.4% | 1.5% | 0.7% |
| Alameda | 2021-22 | 8 | 17,728 | 97.7% | 0.0% | 0.1% | 0.6% | 1.6% |
| | | 7 | 17,351 | 95.9% | 0.0% | 0.0% | 0.8% | 3.2% |
| | 2020-21 | 7 | 18,393 | 89.8% | 0.1% | 0.2% | 1.1% | 8.7% |
| | 2019-20 | 7 | 18,849 | 98.0% | 0.1% | 0.3% | 0.2% | 1.5% |
| Alpine | 2021-22 | 8 | ---* | ---* | ---* | ---* | ---* | ---* |
| | | 7 | ---* | ---* | ---* | ---* | ---* | ---* |
| | 2020-21 | 7 | ---* | ---* | ---* | ---* | ---* | ---* |
| | 2019-20 | 7 | ---* | ---* | ---* | ---* | ---* | ---* |
| Amador | 2021-22 | 8 | 334 | 85.3% | 0.0% | 0.0% | 3.3% | 11.4% |
| | | 7 | 293 | 57.3% | 1.7% | 0.0% | 10.9% | 30.0% |
| | 2020-21 | 7 | 328 | 78.4% | 0.0% | 1.5% | 6.1% | 14.0% |
| | 2019-20 | 7 | 325 | 94.2% | 0.0% | 1.8% | 3.4% | 0.6% |
| Butte | 2021-22 | 8 | 2,214 | 96.9% | 0.0% | 0.4% | 2.3% | 0.5% |
| | | 7 | 2,208 | 96.2% | 0.0% | 0.1% | 2.6% | 1.0% |
| | 2020-21 | 7 | 2,172 | 92.7% | 0.0% | 0.6% | 3.0% | 3.7% |
| | 2019-20 | 7 | 2,396 | 97.3% | 0.2% | 0.6% | 1.3% | 0.6% |
| Calaveras | 2021-22 | 8 | 395 | 89.9% | 0.0% | 0.8% | 8.9% | 0.5% |
| | | 7 | 411 | 93.4% | 0.0% | 0.2% | 4.9% | 1.5% |
| | 2020-21 | 7 | 368 | 84.0% | 0.3% | 0.8% | 14.1% | 0.8% |
| | 2019-20 | 7 | 403 | 95.0% | 0.0% | 1.5% | 2.7% | 0.7% |
| Colusa | 2021-22 | 8 | 423 | 97.9% | 0.0% | 0.0% | 0.5% | 1.7% |
| | | 7 | 336 | 94.3% | 0.0% | 0.0% | 0.3% | 5.4% |
| | 2020-21 | 7 | 406 | 92.4% | 0.0% | 0.0% | 0.0% | 7.6% |
| | 2019-20 | 7 | 394 | 98.5% | 0.0% | 0.0% | 0.0% | 1.5% |
| ContraCosta | 2021-22 | 8 | 13,513 | 98.6% | 0.0% | 0.1% | 0.5% | 0.8% |
| | | 7 | 13,353 | 96.1% | 0.1% | 0.1% | 0.7% | 3.1% |
| | 2020-21 | 7 | 14,209 | 90.8% | 0.0% | 0.2% | 1.0% | 8.1% |
| | 2019-20 | 7 | 14,765 | 98.3% | 0.0% | 0.3% | 0.5% | 0.8% |
| Del Norte | 2021-22 | 8 | 301 | 96.0% | 0.0% | 0.7% | 2.7% | 0.7% |
| | | 7 | 290 | 97.9% | 0.0% | 0.0% | 1.4% | 0.7% |
| | 2020-21 | 7 | 305 | 93.1% | 0.0% | 0.7% | 3.3% | 3.0% |
| | 2019-20 | 7 | 331 | 97.3% | 0.0% | 0.0% | 0.3% | 2.4% |
| El Dorado | 2021-22 | 8 | 2,336 | 88.4% | 0.0% | 0.4% | 10.1% | 1.0% |
| | | 7 | 2,253 | 83.3% | 0.1% | 0.4% | 12.8% | 3.4% |
| | 2020-21 | 7 | 2,161 | 86.2% | 0.3% | 0.6% | 11.5% | 1.4% |
| | 2019-20 | 7 | 2,644 | 88.8% | 0.7% | 1.5% | 8.9% | 0.2% |

Table 3: Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year,
By County

| | School Year | Grade | Total Students | Entrants with Tdap Vaccine | Conditional Entrants | Entrants with PME | Others Lacking Tdap Vaccine† | Overdue for Tdap Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Fresno | 2021-22 | 8 | 15,770 | 98.7% | 0.0% | 0.1% | 1.1% | 0.1% |
| | | 7 | 15,423 | 98.1% | 0.0% | 0.0% | 1.4% | 0.4% |
| | 2020-21 | 7 | 16,082 | 96.9% | 0.0% | 0.1% | 1.2% | 1.7% |
| | 2019-20 | 7 | 15,839 | 98.3% | 0.0% | 0.1% | 1.3% | 0.2% |
| Glenn | 2021-22 | 8 | 494 | 91.5% | 0.0% | 0.2% | 7.3% | 1.0% |
| | | 7 | 472 | 89.4% | 0.0% | 0.0% | 9.5% | 1.1% |
| | 2020-21 | 7 | 484 | 87.2% | 0.0% | 0.0% | 9.5% | 3.3% |
| | 2019-20 | 7 | 442 | 94.3% | 0.0% | 0.0% | 5.0% | 0.7% |
| Humboldt | 2021-22 | 8 | 1,442 | 91.7% | 0.1% | 1.6% | 1.7% | 4.9% |
| | | 7 | 1,347 | 89.3% | 0.2% | 1.3% | 2.8% | 6.4% |
| | 2020-21 | 7 | 1,427 | 86.9% | 0.0% | 2.2% | 2.8% | 8.1% |
| | 2019-20 | 7 | 1,380 | 90.7% | 0.7% | 3.2% | 1.5% | 3.9% |
| Imperial | 2021-22 | 8 | 2,881 | 97.5% | 0.0% | 0.0% | 0.4% | 2.0% |
| | | 7 | 2,830 | 96.6% | 0.0% | 0.0% | 1.0% | 2.4% |
| | 2020-21 | 7 | 2,905 | 87.1% | 0.0% | 0.0% | 0.5% | 12.4% |
| | 2019-20 | 7 | 2,935 | 99.1% | 0.1% | 0.0% | 0.2% | 0.5% |
| Inyo | 2021-22 | 8 | 190 | 97.4% | 0.0% | 0.0% | 0.0% | 2.6% |
| | | 7 | 233 | 97.9% | 0.0% | 0.0% | 0.0% | 2.1% |
| | 2020-21 | 7 | 192 | 92.7% | 0.0% | 0.0% | 0.0% | 7.3% |
| | 2019-20 | 7 | 213 | 98.6% | 0.0% | 0.9% | 0.5% | 0.0% |
| Kern | 2021-22 | 8 | 15,738 | 93.7% | 0.0% | 0.2% | 5.4% | 0.6% |
| | | 7 | 15,067 | 91.8% | 0.0% | 0.3% | 6.9% | 0.9% |
| | 2020-21 | 7 | 15,505 | 87.2% | 0.0% | 0.2% | 6.6% | 6.0% |
| | 2019-20 | 7 | 15,219 | 94.0% | 0.0% | 0.2% | 5.2% | 0.5% |
| Kings | 2021-22 | 8 | 2,341 | 99.4% | 0.0% | 0.0% | 0.6% | 0.0% |
| | | 7 | 2,274 | 98.2% | 0.0% | 0.0% | 1.4% | 0.4% |
| | 2020-21 | 7 | 2,364 | 98.3% | 0.1% | 0.0% | 1.0% | 0.6% |
| | 2019-20 | 7 | 2,294 | 98.7% | 0.2% | 0.0% | 1.0% | 0.1% |
| Lake | 2021-22 | 8 | 579 | 96.0% | 0.2% | 0.2% | 1.9% | 1.7% |
| | | 7 | 768 | 95.8% | 0.0% | 0.3% | 2.7% | 1.2% |
| | 2020-21 | 7 | 755 | 86.4% | 0.1% | 0.5% | 2.5% | 10.5% |
| | 2019-20 | 7 | 736 | 95.4% | 0.1% | 1.1% | 2.2% | 1.2% |
| Lassen | 2021-22 | 8 | 300 | 94.3% | 0.0% | 2.7% | 2.7% | 0.3% |
| | | 7 | 275 | 92.4% | 0.0% | 0.7% | 4.0% | 2.9% |
| | 2020-21 | 7 | 299 | 88.6% | 0.0% | 2.7% | 3.7% | 5.0% |
| | 2019-20 | 7 | 288 | 95.1% | 0.0% | 3.8% | 1.0% | 0.0% |
| Los Angeles | 2021-22 | 8 | 112,288 | 97.0% | 0.0% | 0.1% | 1.2% | 1.7% |
| | | 7 | 106,833 | 95.6% | 0.0% | 0.1% | 1.7% | 2.5% |
| | 2020-21 | 7 | 109,967 | 85.1% | 0.0% | 0.3% | 2.0% | 12.5% |
| | 2019-20 | 7 | 119,392 | 98.0% | 0.1% | 0.3% | 0.9% | 0.7% |

Table 3: Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year,
By County

| | School Year | Grade | Total Students | Entrants with Tdap Vaccine | Conditional Entrants | Entrants with PME | Others Lacking Tdap Vaccine† | Overdue for Tdap Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Madera | 2021-22 | 8 | 2,491 | 98.3% | 0.0% | 0.0% | 0.6% | 1.0% |
| | | 7 | 2,295 | 98.1% | 0.0% | 0.0% | 0.5% | 1.4% |
| | 2020-21 | 7 | 2,556 | 94.5% | 0.0% | 0.1% | 0.7% | 4.7% |
| | 2019-20 | 7 | 2,014 | 96.9% | 0.0% | 0.2% | 1.1% | 1.7% |
| Marin | 2021-22 | 8 | 3,016 | 99.2% | 0.0% | 0.3% | 0.1% | 0.4% |
| | | 7 | 2,885 | 98.7% | 0.1% | 0.2% | 0.1% | 0.8% |
| | 2020-21 | 7 | 3,075 | 96.9% | 0.1% | 0.4% | 0.4% | 2.2% |
| | 2019-20 | 7 | 3,245 | 97.7% | 0.4% | 1.3% | 0.3% | 0.4% |
| Mariposa | 2021-22 | 8 | 165 | 95.2% | 0.0% | 0.6% | 1.8% | 2.4% |
| | | 7 | 142 | 93.7% | 0.0% | 1.4% | 1.4% | 3.5% |
| | 2020-21 | 7 | 154 | 84.4% | 0.0% | 0.6% | 7.8% | 7.1% |
| | 2019-20 | 7 | 130 | 98.5% | 0.0% | 0.8% | 0.8% | 0.0% |
| Mendocino | 2021-22 | 8 | 971 | 86.2% | 0.0% | 0.4% | 2.2% | 11.2% |
| | | 7 | 1,030 | 85.9% | 0.0% | 0.1% | 2.4% | 11.6% |
| | 2020-21 | 7 | 1,003 | 79.7% | 0.2% | 0.6% | 4.5% | 15.1% |
| | 2019-20 | 7 | 1,039 | 95.0% | 0.5% | 1.1% | 1.6% | 1.8% |
| Merced | 2021-22 | 8 | 4,463 | 97.2% | 0.0% | 0.2% | 1.6% | 1.0% |
| | | 7 | 4,483 | 95.6% | 0.0% | 0.0% | 2.1% | 2.3% |
| | 2020-21 | 7 | 4,453 | 86.2% | 0.0% | 0.1% | 2.4% | 11.3% |
| | 2019-20 | 7 | 4,597 | 98.5% | 0.0% | 0.1% | 0.9% | 0.5% |
| Modoc | 2021-22 | 8 | 118 | 94.9% | 0.0% | 0.0% | 0.0% | 5.1% |
| | | 7 | 102 | 90.2% | 0.0% | 0.0% | 3.9% | 5.9% |
| | 2020-21 | 7 | 123 | 99.2% | 0.0% | 0.0% | 0.0% | 0.8% |
| | 2019-20 | 7 | 102 | 96.1% | 0.0% | 1.0% | 0.0% | 2.9% |
| Mono | 2021-22 | 8 | 111 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| | | 7 | 100 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| | 2020-21 | 7 | 109 | 88.1% | 0.0% | 0.0% | 0.0% | 11.9% |
| | 2019-20 | 7 | 125 | 97.6% | 0.0% | 2.4% | 0.0% | 0.0% |
| Monterey | 2021-22 | 8 | 6,044 | 98.9% | 0.1% | 0.1% | 0.4% | 0.6% |
| | | 7 | 5,799 | 98.6% | 0.0% | 0.1% | 0.4% | 0.9% |
| | 2020-21 | 7 | 6,042 | 95.1% | 0.1% | 0.2% | 0.5% | 4.1% |
| | 2019-20 | 7 | 6,397 | 99.2% | 0.0% | 0.4% | 0.2% | 0.3% |
| Napa | 2021-22 | 8 | 1,606 | 97.8% | 0.0% | 0.1% | 1.2% | 0.9% |
| | | 7 | 1,641 | 97.4% | 0.0% | 0.1% | 1.3% | 1.2% |
| | 2020-21 | 7 | 1,591 | 97.3% | 0.0% | 0.3% | 1.9% | 0.5% |
| | 2019-20 | 7 | 1,682 | 98.5% | 0.0% | 0.3% | 0.9% | 0.4% |
| Nevada | 2021-22 | 8 | 833 | 90.2% | 0.0% | 2.3% | 6.0% | 1.6% |
| | | 7 | 843 | 90.2% | 0.2% | 0.5% | 7.2% | 1.9% |
| | 2020-21 | 7 | 806 | 82.5% | 0.0% | 5.5% | 6.1% | 6.0% |
| | 2019-20 | 7 | 842 | 89.2% | 0.7% | 5.5% | 4.3% | 0.4% |

Table 3: Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year,
By County

| | School Year | Grade | Total Students | Entrants with Tdap Vaccine | Conditional Entrants | Entrants with PME | Others Lacking Tdap Vaccine† | Overdue for Tdap Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Orange | 2021-22 | 8 | 38,554 | 98.1% | 0.0% | 0.2% | 1.1% | 0.6% |
| | | 7 | 36,105 | 97.3% | 0.0% | 0.1% | 1.5% | 1.0% |
| | 2020-21 | 7 | 38,419 | 94.2% | 0.1% | 0.3% | 1.6% | 3.8% |
| | 2019-20 | 7 | 39,699 | 97.9% | 0.1% | 0.5% | 1.0% | 0.5% |
| Placer | 2021-22 | 8 | 5,220 | 96.2% | 0.0% | 0.8% | 2.4% | 0.7% |
| | | 7 | 5,778 | 95.9% | 0.0% | 0.2% | 2.6% | 1.3% |
| | 2020-21 | 7 | 5,618 | 94.7% | 0.1% | 1.1% | 1.2% | 2.9% |
| | 2019-20 | 7 | 5,990 | 95.9% | 0.1% | 1.4% | 2.0% | 0.6% |
| Plumas | 2021-22 | 8 | 175 | 97.1% | 0.0% | 0.6% | 2.3% | 0.0% |
| | | 7 | 171 | 94.2% | 0.0% | 0.0% | 4.7% | 1.2% |
| | 2020-21 | 7 | 174 | 87.4% | 0.6% | 1.7% | 9.8% | 0.6% |
| | 2019-20 | 7 | 197 | 98.0% | 0.0% | 1.0% | 1.0% | 0.0% |
| Riverside | 2021-22 | 8 | 33,475 | 97.6% | 0.0% | 0.1% | 1.6% | 0.6% |
| | | 7 | 32,331 | 96.5% | 0.0% | 0.1% | 2.2% | 1.2% |
| | 2020-21 | 7 | 33,652 | 80.5% | 0.0% | 0.2% | 5.7% | 13.6% |
| | 2019-20 | 7 | 35,413 | 97.6% | 0.0% | 0.3% | 1.5% | 0.5% |
| Sacramento | 2021-22 | 8 | 19,002 | 97.1% | 0.0% | 0.2% | 1.8% | 1.0% |
| | | 7 | 18,232 | 95.6% | 0.0% | 0.2% | 2.6% | 1.6% |
| | 2020-21 | 7 | 19,321 | 89.3% | 0.3% | 0.2% | 3.0% | 7.2% |
| | 2019-20 | 7 | 19,967 | 96.9% | 0.1% | 0.6% | 2.1% | 0.4% |
| San Benito | 2021-22 | 8 | 893 | 98.3% | 0.0% | 0.2% | 0.2% | 1.2% |
| | | 7 | 834 | 97.2% | 0.0% | 0.4% | 0.6% | 1.8% |
| | 2020-21 | 7 | 900 | 78.2% | 0.0% | 0.6% | 0.2% | 21.0% |
| | 2019-20 | 7 | 955 | 99.7% | 0.0% | 0.2% | 0.1% | 0.0% |
| San Bernardino | 2021-22 | 8 | 31,290 | 96.8% | 0.0% | 0.1% | 1.7% | 1.4% |
| | | 7 | 30,777 | 96.0% | 0.0% | 0.1% | 2.0% | 1.9% |
| | 2020-21 | 7 | 30,092 | 79.4% | 0.0% | 0.3% | 3.4% | 16.9% |
| | 2019-20 | 7 | 32,605 | 96.6% | 0.0% | 0.2% | 2.4% | 0.8% |
| San Diego | 2021-22 | 8 | 38,574 | 96.5% | 0.0% | 0.2% | 2.8% | 0.5% |
| | | 7 | 37,579 | 95.3% | 0.0% | 0.1% | 3.6% | 1.0% |
| | 2020-21 | 7 | 38,918 | 93.1% | 0.1% | 0.3% | 3.4% | 3.0% |
| | 2019-20 | 7 | 41,159 | 96.2% | 0.1% | 0.7% | 2.8% | 0.2% |
| San Francisco | 2021-22 | 8 | 5,509 | 95.0% | 0.0% | 0.1% | 0.5% | 4.4% |
| | | 7 | 5,440 | 92.7% | 0.0% | 0.1% | 0.8% | 6.4% |
| | 2020-21 | 7 | 5,621 | 90.4% | 0.0% | 0.1% | 1.3% | 8.2% |
| | 2019-20 | 7 | 6,118 | 96.7% | 0.1% | 0.3% | 0.5% | 2.4% |
| San Joaquin | 2021-22 | 8 | 11,920 | 97.2% | 0.0% | 0.1% | 2.3% | 0.4% |
| | | 7 | 11,433 | 96.7% | 0.0% | 0.1% | 2.7% | 0.5% |
| | 2020-21 | 7 | 11,807 | 93.7% | 0.0% | 0.1% | 2.8% | 3.3% |
| | 2019-20 | 7 | 12,155 | 97.6% | 0.0% | 0.2% | 1.6% | 0.5% |

Table 3: Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year,
By County

| | School Year | Grade | Total Students | Entrants with Tdap Vaccine | Conditional Entrants | Entrants with PME | Others Lacking Tdap Vaccine† | Overdue for Tdap Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| San Luis Obispo | 2021-22 | 8 | 2,676 | 98.2% | 0.0% | 0.3% | 1.0% | 0.4% |
| | | 7 | 2,570 | 98.1% | 0.0% | 0.2% | 1.0% | 0.7% |
| | 2020-21 | 7 | 2,661 | 92.0% | 0.1% | 0.5% | 3.5% | 3.9% |
| | 2019-20 | 7 | 3,151 | 97.3% | 0.0% | 1.0% | 1.0% | 0.7% |
| San Mateo | 2021-22 | 8 | 7,555 | 98.3% | 0.0% | 0.1% | 0.6% | 1.0% |
| | | 7 | 7,486 | 97.6% | 0.0% | 0.1% | 0.7% | 1.5% |
| | 2020-21 | 7 | 8,047 | 94.5% | 0.0% | 0.1% | 0.4% | 4.9% |
| | 2019-20 | 7 | 8,234 | 97.8% | 0.1% | 0.3% | 0.5% | 1.3% |
| Santa Barbara | 2021-22 | 8 | 5,608 | 97.7% | 0.1% | 0.3% | 1.0% | 0.9% |
| | | 7 | 5,298 | 98.0% | 0.0% | 0.2% | 0.8% | 1.0% |
| | 2020-21 | 7 | 5,582 | 94.1% | 0.1% | 0.4% | 0.8% | 4.6% |
| | 2019-20 | 7 | 5,670 | 98.1% | 0.1% | 0.9% | 0.7% | 0.2% |
| Santa Clara | 2021-22 | 8 | 21,781 | 98.4% | 0.0% | 0.1% | 0.6% | 0.9% |
| | | 7 | 20,367 | 97.9% | 0.0% | 0.0% | 0.8% | 1.3% |
| | 2020-21 | 7 | 22,414 | 92.8% | 0.1% | 0.2% | 1.1% | 5.9% |
| | 2019-20 | 7 | 22,852 | 98.7% | 0.1% | 0.3% | 0.3% | 0.6% |
| Santa Cruz | 2021-22 | 8 | 3,211 | 96.2% | 0.1% | 0.3% | 3.1% | 0.3% |
| | | 7 | 3,224 | 96.2% | 0.0% | 0.2% | 3.1% | 0.6% |
| | 2020-21 | 7 | 3,278 | 86.7% | 0.1% | 1.0% | 7.7% | 4.5% |
| | 2019-20 | 7 | 3,539 | 91.5% | 0.0% | 1.5% | 6.3% | 0.7% |
| Shasta | 2021-22 | 8 | 2,164 | 94.2% | 0.1% | 0.7% | 4.0% | 0.9% |
| | | 7 | 1,984 | 92.3% | 0.2% | 0.4% | 4.8% | 2.4% |
| | 2020-21 | 7 | 2,080 | 90.7% | 0.1% | 1.2% | 6.8% | 1.2% |
| | 2019-20 | 7 | 2,130 | 93.3% | 0.4% | 1.7% | 3.5% | 1.0% |
| Sierra | 2021-22 | 8 | 37 | 97.3% | 0.0% | 0.0% | 0.0% | 2.7% |
| | | 7 | 40 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| | 2020-21 | 7 | 33 | 97.0% | 0.0% | 0.0% | 3.0% | 0.0% |
| | 2019-20 | 7 | 28 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Siskiyou | 2021-22 | 8 | 448 | 97.5% | 0.0% | 0.2% | 2.2% | 0.0% |
| | | 7 | 446 | 93.0% | 0.0% | 0.2% | 4.9% | 1.8% |
| | 2020-21 | 7 | 467 | 93.4% | 0.0% | 0.6% | 4.9% | 1.1% |
| | 2019-20 | 7 | 499 | 96.8% | 0.2% | 0.6% | 1.6% | 0.8% |
| Solano | 2021-22 | 8 | 4,534 | 99.6% | 0.0% | 0.0% | 0.2% | 0.2% |
| | | 7 | 4,359 | 98.6% | 0.0% | 0.0% | 0.7% | 0.7% |
| | 2020-21 | 7 | 4,610 | 94.3% | 0.2% | 0.2% | 0.6% | 4.7% |
| | 2019-20 | 7 | 5,130 | 98.8% | 0.0% | 0.4% | 0.1% | 0.6% |
| Sonoma | 2021-22 | 8 | 5,288 | 96.2% | 0.0% | 0.3% | 1.7% | 1.7% |
| | | 7 | 5,234 | 94.4% | 0.0% | 0.2% | 3.1% | 2.3% |
| | 2020-21 | 7 | 5,452 | 82.8% | 0.1% | 0.6% | 1.9% | 14.7% |
| | 2019-20 | 7 | 5,422 | 95.9% | 0.2% | 1.4% | 1.6% | 0.9% |

Table 3: Total Enrollment and Tdap Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year,
By County

| | School Year | Grade | Total Students | Entrants with Tdap Vaccine | Conditional Entrants | Entrants with PME | Others Lacking Tdap Vaccine† | Overdue for Tdap Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Stanislaus | 2021-22 | 8 | 8,576 | 96.7% | 0.0% | 0.1% | 1.8% | 1.5% |
| | | 7 | 8,150 | 94.7% | 0.0% | 0.1% | 2.5% | 2.7% |
| | 2020-21 | 7 | 8,565 | 84.8% | 0.0% | 0.2% | 1.8% | 13.1% |
| | 2019-20 | 7 | 8,837 | 97.6% | 0.0% | 0.4% | 0.3% | 1.6% |
| Sutter | 2021-22 | 8 | 1,819 | 83.8% | 0.0% | 0.5% | 14.8% | 0.8% |
| | | 7 | 1,703 | 79.9% | 0.0% | 0.4% | 18.7% | 1.1% |
| | 2020-21 | 7 | 1,899 | 74.1% | 0.0% | 0.3% | 17.8% | 7.8% |
| | 2019-20 | 7 | 1,927 | 82.8% | 0.0% | 0.4% | 16.7% | 0.2% |
| Tehama | 2021-22 | 8 | 899 | 96.3% | 0.0% | 0.4% | 0.9% | 2.3% |
| | | 7 | 798 | 93.5% | 0.0% | 0.0% | 1.5% | 5.0% |
| | 2020-21 | 7 | 659 | 95.8% | 0.0% | 0.6% | 1.4% | 2.3% |
| | 2019-20 | 7 | 870 | 98.0% | 0.0% | 0.7% | 0.2% | 1.0% |
| Trinity | 2021-22 | 8 | 112 | 92.9% | 0.0% | 3.6% | 0.0% | 3.6% |
| | | 7 | 100 | 93.0% | 0.0% | 0.0% | 0.0% | 7.0% |
| | 2020-21 | 7 | 103 | 93.2% | 0.0% | 2.9% | 1.9% | 1.9% |
| | 2019-20 | 7 | 115 | 92.2% | 0.0% | 4.3% | 2.6% | 0.9% |
| Tulare | 2021-22 | 8 | 7,676 | 98.7% | 0.0% | 0.1% | 0.9% | 0.3% |
| | | 7 | 7,529 | 98.1% | 0.0% | 0.0% | 1.3% | 0.6% |
| | 2020-21 | 7 | 7,663 | 92.0% | 0.0% | 0.1% | 1.8% | 6.1% |
| | 2019-20 | 7 | 8,232 | 98.2% | 0.0% | 0.6% | 0.9% | 0.2% |
| Tuolumne | 2021-22 | 8 | 489 | 94.1% | 0.2% | 0.2% | 3.3% | 2.2% |
| | | 7 | 466 | 91.2% | 0.0% | 0.0% | 4.3% | 4.5% |
| | 2020-21 | 7 | 398 | 95.0% | 0.3% | 0.3% | 2.0% | 2.5% |
| | 2019-20 | 7 | 481 | 93.8% | 0.2% | 1.5% | 3.3% | 1.2% |
| Ventura | 2021-22 | 8 | 10,546 | 96.9% | 0.0% | 0.2% | 2.3% | 0.6% |
| | | 7 | 10,229 | 96.1% | 0.0% | 0.2% | 2.6% | 1.1% |
| | 2020-21 | 7 | 10,512 | 91.8% | 0.0% | 0.4% | 1.8% | 6.0% |
| | 2019-20 | 7 | 11,004 | 97.0% | 0.2% | 0.8% | 1.2% | 0.8% |
| Yolo | 2021-22 | 8 | 2,389 | 95.1% | 0.1% | 0.2% | 1.5% | 3.1% |
| | | 7 | 2,405 | 92.4% | 0.0% | 0.3% | 2.8% | 4.5% |
| | 2020-21 | 7 | 2,429 | 89.3% | 0.0% | 0.4% | 2.1% | 8.2% |
| | 2019-20 | 7 | 2,416 | 96.9% | 0.1% | 0.7% | 0.6% | 1.7% |
| Yuba | 2021-22 | 8 | 1,108 | 95.0% | 0.2% | 0.0% | 2.9% | 1.9% |
| | | 7 | 1,107 | 95.0% | 0.1% | 0.0% | 2.3% | 2.6% |
| | 2020-21 | 7 | 1,105 | 77.1% | 0.2% | 0.3% | 4.8% | 17.6% |
| | 2019-20 | 7 | 1,194 | 96.9% | 0.0% | 0.2% | 1.6% | 1.3% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Tdap immunization.

* County reporting fewer than 20 children in 7th grade and did not report

Table 4: Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year
By County

| | School Year | Grade | Total Students | Entrants with 2+ Varicella Vaccine | Conditional Entrants | Entrants with PME | Others Lacking 2+ Varicella Vaccine† | Overdue for 2+ Varicella Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| State Total | 2021-22 | 8 | 480,613 | 97.7% | 0.1% | 0.4% | 1.1% | 0.7% |
| | | 7 | 463,512 | 97.2% | 0.2% | 0.4% | 1.3% | 0.9% |
| | 2020-21 | 7 | 480,713 | 96.3% | 0.2% | 0.6% | 1.2% | 1.8% |
| | 2019-20 | 7 | 505,017 | 97.1% | 0.3% | 0.9% | 1.0% | 0.7% |
| Alameda | 2021-22 | 8 | 17,728 | 97.8% | 0.1% | 0.4% | 0.4% | 1.3% |
| | | 7 | 17,351 | 97.5% | 0.1% | 0.4% | 0.5% | 1.5% |
| | 2020-21 | 7 | 18,393 | 96.5% | 0.2% | 0.6% | 0.3% | 2.4% |
| | 2019-20 | 7 | 18,849 | 97.1% | 0.3% | 0.7% | 0.1% | 1.8% |
| Alpine | 2021-22 | 8 | ---* | ---* | ---* | ---* | ---* | ---* |
| | | 7 | ---* | ---* | ---* | ---* | ---* | ---* |
| | 2020-21 | 7 | ---* | ---* | ---* | ---* | ---* | ---* |
| | 2019-20 | 7 | ---* | ---* | ---* | ---* | ---* | ---* |
| Amador | 2021-22 | 8 | 334 | 94.0% | 0.0% | 0.0% | 1.2% | 4.8% |
| | | 7 | 293 | 89.1% | 0.0% | 0.0% | 2.0% | 8.9% |
| | 2020-21 | 7 | 328 | 92.7% | 0.6% | 1.5% | 1.5% | 3.7% |
| | 2019-20 | 7 | 325 | 92.3% | 1.8% | 2.2% | 3.7% | 0.0% |
| Butte | 2021-22 | 8 | 2,214 | 97.6% | 0.0% | 0.5% | 1.6% | 0.3% |
| | | 7 | 2,208 | 97.7% | 0.2% | 0.3% | 1.3% | 0.4% |
| | 2020-21 | 7 | 2,172 | 97.2% | 0.1% | 0.9% | 1.1% | 0.7% |
| | 2019-20 | 7 | 2,396 | 97.1% | 0.5% | 1.0% | 0.7% | 0.8% |
| Calaveras | 2021-22 | 8 | 395 | 96.2% | 0.0% | 0.8% | 2.3% | 0.8% |
| | | 7 | 411 | 97.3% | 0.0% | 0.2% | 1.9% | 0.5% |
| | 2020-21 | 7 | 368 | 94.6% | 0.5% | 0.8% | 3.3% | 0.8% |
| | 2019-20 | 7 | 403 | 97.0% | 0.0% | 1.5% | 1.0% | 0.5% |
| Colusa | 2021-22 | 8 | 423 | 97.9% | 0.0% | 0.0% | 0.2% | 1.9% |
| | | 7 | 336 | 98.8% | 0.0% | 0.3% | 0.0% | 0.9% |
| | 2020-21 | 7 | 406 | 96.3% | 0.2% | 0.5% | 0.0% | 3.0% |
| | 2019-20 | 7 | 394 | 96.7% | 0.0% | 0.8% | 0.0% | 2.5% |
| Contra Costa | 2021-22 | 8 | 13,513 | 98.0% | 0.1% | 0.4% | 0.4% | 1.0% |
| | | 7 | 13,353 | 97.5% | 0.5% | 0.5% | 0.4% | 1.1% |
| | 2020-21 | 7 | 14,209 | 96.9% | 0.1% | 0.6% | 0.5% | 1.9% |
| | 2019-20 | 7 | 14,765 | 97.9% | 0.3% | 0.9% | 0.4% | 0.5% |
| Del Norte | 2021-22 | 8 | 301 | 95.7% | 0.0% | 2.7% | 1.3% | 0.3% |
| | | 7 | 290 | 98.3% | 0.3% | 0.3% | 0.7% | 0.3% |
| | 2020-21 | 7 | 305 | 95.7% | 0.0% | 2.0% | 1.0% | 1.3% |
| | 2019-20 | 7 | 331 | 97.6% | 0.3% | 0.0% | 0.3% | 1.8% |
| El Dorado | 2021-22 | 8 | 2,336 | 91.6% | 0.1% | 0.6% | 6.9% | 0.8% |
| | | 7 | 2,253 | 91.1% | 0.3% | 0.4% | 6.7% | 1.5% |
| | 2020-21 | 7 | 2,161 | 89.6% | 0.6% | 0.9% | 8.0% | 1.0% |
| | 2019-20 | 7 | 2,644 | 91.7% | 0.8% | 1.6% | 5.4% | 0.5% |

Table 4: Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year
By County

| | School Year | Grade | Total Students | Entrants with 2+ Varicella Vaccine | Conditional Entrants | Entrants with PME | Others Lacking 2+ Varicella Vaccine† | Overdue for 2+ Varicella Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Fresno | 2021-22 | 8 | 15,770 | 98.9% | 0.0% | 0.2% | 0.8% | 0.1% |
| | | 7 | 15,423 | 98.7% | 0.1% | 0.2% | 0.9% | 0.2% |
| | 2020-21 | 7 | 16,082 | 98.6% | 0.1% | 0.3% | 0.8% | 0.2% |
| | 2019-20 | 7 | 15,839 | 98.5% | 0.2% | 0.4% | 0.7% | 0.2% |
| Glenn | 2021-22 | 8 | 494 | 93.3% | 0.4% | 0.2% | 5.9% | 0.2% |
| | | 7 | 472 | 93.2% | 0.0% | 0.0% | 6.4% | 0.4% |
| | 2020-21 | 7 | 484 | 93.4% | 0.0% | 0.0% | 5.8% | 0.8% |
| | 2019-20 | 7 | 442 | 94.8% | 0.2% | 0.5% | 3.8% | 0.7% |
| Humboldt | 2021-22 | 8 | 1,442 | 92.6% | 0.5% | 2.1% | 1.3% | 3.4% |
| | | 7 | 1,347 | 92.4% | 0.5% | 1.7% | 1.7% | 3.7% |
| | 2020-21 | 7 | 1,427 | 90.9% | 1.1% | 2.5% | 2.3% | 3.2% |
| | 2019-20 | 7 | 1,380 | 92.5% | 1.7% | 3.4% | 0.7% | 1.7% |
| Imperial | 2021-22 | 8 | 2,881 | 96.8% | 0.2% | 0.0% | 0.3% | 2.7% |
| | | 7 | 2,830 | 95.4% | 0.4% | 0.1% | 0.2% | 3.9% |
| | 2020-21 | 7 | 2,905 | 94.5% | 1.6% | 0.5% | 0.4% | 2.9% |
| | 2019-20 | 7 | 2,935 | 98.2% | 0.5% | 0.3% | 0.1% | 0.9% |
| Inyo | 2021-22 | 8 | 190 | 98.9% | 0.0% | 0.0% | 0.0% | 1.1% |
| | | 7 | 233 | 97.9% | 0.9% | 0.0% | 0.0% | 1.3% |
| | 2020-21 | 7 | 192 | 99.5% | 0.0% | 0.0% | 0.0% | 0.5% |
| | 2019-20 | 7 | 213 | 97.2% | 0.5% | 1.9% | 0.5% | 0.0% |
| Kern | 2021-22 | 8 | 15,738 | 96.1% | 0.0% | 0.2% | 3.3% | 0.3% |
| | | 7 | 15,067 | 95.4% | 0.0% | 0.3% | 3.9% | 0.4% |
| | 2020-21 | 7 | 15,505 | 95.4% | 0.1% | 0.3% | 3.7% | 0.6% |
| | 2019-20 | 7 | 15,219 | 95.4% | 0.2% | 0.4% | 3.5% | 0.5% |
| Kings | 2021-22 | 8 | 2,341 | 99.4% | 0.0% | 0.3% | 0.3% | 0.1% |
| | | 7 | 2,274 | 99.1% | 0.1% | 0.1% | 0.6% | 0.1% |
| | 2020-21 | 7 | 2,364 | 99.4% | 0.1% | 0.0% | 0.4% | 0.1% |
| | 2019-20 | 7 | 2,294 | 99.4% | 0.2% | 0.0% | 0.3% | 0.1% |
| Lake | 2021-22 | 8 | 579 | 97.4% | 0.0% | 0.2% | 0.7% | 1.7% |
| | | 7 | 768 | 97.0% | 0.3% | 0.3% | 2.1% | 0.4% |
| | 2020-21 | 7 | 755 | 96.3% | 0.7% | 0.8% | 0.5% | 1.7% |
| | 2019-20 | 7 | 736 | 94.8% | 0.7% | 2.2% | 1.0% | 1.4% |
| Lassen | 2021-22 | 8 | 300 | 96.0% | 0.0% | 2.3% | 1.7% | 0.0% |
| | | 7 | 275 | 93.1% | 0.0% | 0.7% | 3.3% | 2.9% |
| | 2020-21 | 7 | 299 | 94.3% | 0.3% | 2.3% | 2.0% | 1.0% |
| | 2019-20 | 7 | 288 | 95.1% | 0.0% | 4.2% | 0.7% | 0.0% |
| Los Angeles | 2021-22 | 8 | 112,288 | 97.7% | 0.1% | 0.4% | 0.7% | 1.1% |
| | | 7 | 106,833 | 97.3% | 0.2% | 0.3% | 0.9% | 1.3% |
| | 2020-21 | 7 | 109,967 | 95.8% | 0.1% | 0.4% | 0.8% | 2.9% |
| | 2019-20 | 7 | 119,392 | 97.4% | 0.3% | 0.7% | 0.7% | 0.9% |

Table 4: Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022, 2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year
By County

| | School Year | Grade | Total Students Number | Entrants with 2+ Varicella Vaccine Percent | Conditional Entrants Percent | Entrants with PME Percent | Others Lacking 2+ Varicella Vaccine† Percent | Overdue for 2+ Varicella Vaccine^ Percent |
|---|---|---|---|---|---|---|---|---|
| Madera | 2021-22 | 8 | 2,491 | 98.6% | 0.0% | 0.0% | 0.5% | 0.8% |
| | | 7 | 2,295 | 98.1% | 0.0% | 0.1% | 0.4% | 1.4% |
| | 2020-21 | 7 | 2,556 | 96.9% | 0.2% | 0.2% | 0.6% | 2.2% |
| | 2019-20 | 7 | 2,014 | 97.4% | 0.1% | 0.3% | 0.7% | 1.4% |
| Marin | 2021-22 | 8 | 3,016 | 98.1% | 0.2% | 1.2% | 0.1% | 0.4% |
| | | 7 | 2,885 | 98.1% | 0.5% | 0.9% | 0.1% | 0.4% |
| | 2020-21 | 7 | 3,075 | 97.3% | 0.1% | 1.6% | 0.2% | 0.7% |
| | 2019-20 | 7 | 3,245 | 94.9% | 1.1% | 3.3% | 0.3% | 0.4% |
| Mariposa | 2021-22 | 8 | 165 | 92.1% | 0.6% | 2.4% | 1.8% | 3.0% |
| | | 7 | 142 | 92.3% | 1.4% | 2.1% | 0.7% | 3.5% |
| | 2020-21 | 7 | 154 | 89.0% | 0.6% | 1.3% | 3.9% | 5.2% |
| | 2019-20 | 7 | 130 | 94.6% | 3.1% | 1.5% | 0.8% | 0.0% |
| Mendocino | 2021-22 | 8 | 971 | 86.9% | 0.1% | 0.8% | 2.0% | 10.2% |
| | | 7 | 1,030 | 86.7% | 0.2% | 0.2% | 1.2% | 11.7% |
| | 2020-21 | 7 | 1,003 | 91.6% | 0.6% | 0.8% | 2.6% | 4.4% |
| | 2019-20 | 7 | 1,039 | 94.1% | 1.1% | 1.6% | 1.3% | 1.9% |
| Merced | 2021-22 | 8 | 4,463 | 98.7% | 0.2% | 0.3% | 0.6% | 0.3% |
| | | 7 | 4,483 | 98.4% | 0.1% | 0.0% | 1.1% | 0.4% |
| | 2020-21 | 7 | 4,453 | 97.2% | 0.0% | 0.2% | 0.7% | 1.8% |
| | 2019-20 | 7 | 4,597 | 99.1% | 0.3% | 0.2% | 0.2% | 0.2% |
| Modoc | 2021-22 | 8 | 118 | 96.6% | 0.0% | 0.0% | 0.0% | 3.4% |
| | | 7 | 102 | 96.1% | 0.0% | 0.0% | 2.0% | 2.0% |
| | 2020-21 | 7 | 123 | 99.2% | 0.0% | 0.0% | 0.0% | 0.8% |
| | 2019-20 | 7 | 102 | 96.1% | 1.0% | 1.0% | 0.0% | 2.0% |
| Mono | 2021-22 | 8 | 111 | 98.2% | 0.0% | 1.8% | 0.0% | 0.0% |
| | | 7 | 100 | 97.0% | 1.0% | 2.0% | 0.0% | 0.0% |
| | 2020-21 | 7 | 109 | 97.2% | 0.0% | 0.0% | 0.0% | 2.8% |
| | 2019-20 | 7 | 125 | 97.6% | 0.0% | 2.4% | 0.0% | 0.0% |
| Monterey | 2021-22 | 8 | 6,044 | 99.1% | 0.0% | 0.4% | 0.1% | 0.3% |
| | | 7 | 5,799 | 98.8% | 0.1% | 0.5% | 0.2% | 0.4% |
| | 2020-21 | 7 | 6,042 | 98.8% | 0.1% | 0.6% | 0.1% | 0.3% |
| | 2019-20 | 7 | 6,397 | 98.6% | 0.3% | 0.7% | 0.1% | 0.4% |
| Napa | 2021-22 | 8 | 1,606 | 97.8% | 0.1% | 0.3% | 1.2% | 0.7% |
| | | 7 | 1,641 | 97.5% | 0.3% | 0.2% | 1.3% | 0.6% |
| | 2020-21 | 7 | 1,591 | 97.3% | 0.1% | 0.6% | 1.9% | 0.1% |
| | 2019-20 | 7 | 1,682 | 97.3% | 0.2% | 1.2% | 1.0% | 0.3% |
| Nevada | 2021-22 | 8 | 833 | 91.8% | 0.5% | 2.8% | 4.3% | 0.6% |
| | | 7 | 843 | 90.3% | 1.3% | 1.2% | 5.8% | 1.4% |
| | 2020-21 | 7 | 806 | 87.3% | 0.5% | 6.7% | 4.0% | 1.5% |
| | 2019-20 | 7 | 842 | 88.6% | 1.5% | 6.3% | 3.0% | 0.6% |

Table 4: Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year
By County

| | School Year | Grade | Total Students | Entrants with 2+ Varicella Vaccine | Conditional Entrants | Entrants with PME | Others Lacking 2+ Varicella Vaccine† | Overdue for 2+ Varicella Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Orange | 2021-22 | 8 | 38,554 | 98.2% | 0.2% | 0.6% | 0.6% | 0.3% |
| | | 7 | 36,105 | 98.1% | 0.2% | 0.5% | 0.7% | 0.5% |
| | 2020-21 | 7 | 38,419 | 97.4% | 0.2% | 0.8% | 0.6% | 1.0% |
| | 2019-20 | 7 | 39,699 | 97.5% | 0.5% | 1.0% | 0.7% | 0.3% |
| Placer | 2021-22 | 8 | 5,220 | 96.6% | 0.1% | 1.4% | 1.5% | 0.5% |
| | | 7 | 5,778 | 97.1% | 0.3% | 0.7% | 1.3% | 0.6% |
| | 2020-21 | 7 | 5,618 | 96.2% | 0.6% | 1.8% | 0.6% | 0.9% |
| | 2019-20 | 7 | 5,990 | 95.0% | 0.6% | 1.8% | 1.7% | 0.9% |
| Plumas | 2021-22 | 8 | 175 | 97.1% | 0.0% | 1.7% | 1.1% | 0.0% |
| | | 7 | 171 | 98.2% | 0.6% | 0.0% | 1.2% | 0.0% |
| | 2020-21 | 7 | 174 | 94.3% | 2.3% | 2.9% | 0.6% | 0.0% |
| | 2019-20 | 7 | 197 | 96.4% | 1.5% | 2.0% | 0.0% | 0.0% |
| Riverside | 2021-22 | 8 | 33,475 | 98.2% | 0.1% | 0.3% | 1.1% | 0.4% |
| | | 7 | 32,331 | 97.6% | 0.1% | 0.2% | 1.6% | 0.6% |
| | 2020-21 | 7 | 33,652 | 96.1% | 0.1% | 0.5% | 1.6% | 1.8% |
| | 2019-20 | 7 | 35,413 | 97.3% | 0.2% | 0.6% | 0.9% | 0.9% |
| Sacramento | 2021-22 | 8 | 19,002 | 97.8% | 0.2% | 0.4% | 0.9% | 0.8% |
| | | 7 | 18,232 | 97.1% | 0.3% | 0.4% | 1.1% | 1.0% |
| | 2020-21 | 7 | 19,321 | 94.8% | 0.2% | 0.7% | 1.4% | 2.9% |
| | 2019-20 | 7 | 19,967 | 96.5% | 0.4% | 1.1% | 1.6% | 0.3% |
| San Benito | 2021-22 | 8 | 893 | 98.4% | 0.1% | 0.2% | 0.1% | 1.1% |
| | | 7 | 834 | 98.9% | 0.0% | 0.4% | 0.4% | 0.4% |
| | 2020-21 | 7 | 900 | 97.8% | 0.0% | 0.9% | 0.2% | 1.1% |
| | 2019-20 | 7 | 955 | 99.5% | 0.1% | 0.3% | 0.1% | 0.0% |
| San Bernardino | 2021-22 | 8 | 31,290 | 98.2% | 0.1% | 0.2% | 1.0% | 0.5% |
| | | 7 | 30,777 | 97.3% | 0.2% | 0.2% | 1.6% | 0.6% |
| | 2020-21 | 7 | 30,092 | 96.1% | 0.1% | 0.3% | 1.4% | 2.1% |
| | 2019-20 | 7 | 32,605 | 97.0% | 0.2% | 0.3% | 1.8% | 0.7% |
| San Diego | 2021-22 | 8 | 38,574 | 96.9% | 0.1% | 0.6% | 2.0% | 0.3% |
| | | 7 | 37,579 | 96.5% | 0.3% | 0.4% | 2.4% | 0.3% |
| | 2020-21 | 7 | 38,918 | 95.9% | 0.3% | 0.7% | 2.0% | 1.2% |
| | 2019-20 | 7 | 41,159 | 96.4% | 0.4% | 1.2% | 1.9% | 0.2% |
| San Francisco | 2021-22 | 8 | 5,509 | 95.6% | 0.2% | 0.4% | 0.1% | 3.6% |
| | | 7 | 5,440 | 94.0% | 0.4% | 0.4% | 0.2% | 4.9% |
| | 2020-21 | 7 | 5,621 | 94.8% | 0.1% | 0.6% | 0.5% | 4.1% |
| | 2019-20 | 7 | 6,118 | 96.6% | 0.4% | 0.9% | 0.2% | 1.9% |
| San Joaquin | 2021-22 | 8 | 11,920 | 97.9% | 0.0% | 0.3% | 1.6% | 0.2% |
| | | 7 | 11,433 | 97.8% | 0.0% | 0.3% | 1.5% | 0.4% |
| | 2020-21 | 7 | 11,807 | 97.6% | 0.0% | 0.4% | 1.2% | 0.8% |
| | 2019-20 | 7 | 12,155 | 97.7% | 0.1% | 0.4% | 1.1% | 0.8% |

Table 4: Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year
By County

| | School Year | Grade | Total Students | Entrants with 2+ Varicella Vaccine | Conditional Entrants | Entrants with PME | Others Lacking 2+ Varicella Vaccine† | Overdue for 2+ Varicella Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| San Luis Obispo | 2021-22 | 8 | 2,676 | 98.8% | 0.0% | 0.3% | 0.5% | 0.4% |
| | | 7 | 2,570 | 98.4% | 0.3% | 0.3% | 0.5% | 0.4% |
| | 2020-21 | 7 | 2,661 | 97.6% | 0.2% | 0.5% | 0.5% | 1.3% |
| | 2019-20 | 7 | 3,151 | 96.7% | 0.3% | 1.6% | 0.5% | 0.9% |
| San Mateo | 2021-22 | 8 | 7,555 | 98.2% | 0.1% | 0.6% | 0.3% | 0.8% |
| | | 7 | 7,486 | 97.3% | 0.2% | 0.6% | 0.4% | 1.5% |
| | 2020-21 | 7 | 8,047 | 97.4% | 0.2% | 0.6% | 0.2% | 1.7% |
| | 2019-20 | 7 | 8,234 | 98.0% | 0.4% | 1.0% | 0.2% | 0.4% |
| Santa Barbara | 2021-22 | 8 | 5,608 | 97.4% | 0.1% | 0.8% | 1.3% | 0.5% |
| | | 7 | 5,298 | 97.9% | 0.2% | 0.3% | 0.9% | 0.7% |
| | 2020-21 | 7 | 5,582 | 97.6% | 0.2% | 0.8% | 0.4% | 0.9% |
| | 2019-20 | 7 | 5,670 | 97.4% | 0.5% | 1.2% | 0.5% | 0.4% |
| Santa Clara | 2021-22 | 8 | 21,781 | 98.2% | 0.0% | 1.0% | 0.5% | 0.3% |
| | | 7 | 20,367 | 98.1% | 0.1% | 0.6% | 0.6% | 0.6% |
| | 2020-21 | 7 | 22,414 | 97.0% | 0.1% | 1.1% | 0.6% | 1.3% |
| | 2019-20 | 7 | 22,852 | 97.7% | 0.3% | 1.4% | 0.3% | 0.4% |
| Santa Cruz | 2021-22 | 8 | 3,211 | 96.1% | 0.1% | 1.0% | 2.4% | 0.4% |
| | | 7 | 3,224 | 96.9% | 0.1% | 0.7% | 1.8% | 0.4% |
| | 2020-21 | 7 | 3,278 | 93.8% | 0.3% | 1.7% | 3.1% | 1.0% |
| | 2019-20 | 7 | 3,539 | 93.9% | 0.5% | 2.5% | 2.9% | 0.3% |
| Shasta | 2021-22 | 8 | 2,164 | 95.1% | 0.1% | 0.7% | 2.9% | 1.2% |
| | | 7 | 1,984 | 94.4% | 0.4% | 0.6% | 3.4% | 1.3% |
| | 2020-21 | 7 | 2,080 | 92.1% | 0.6% | 1.4% | 5.0% | 0.9% |
| | 2019-20 | 7 | 2,130 | 92.8% | 1.0% | 2.2% | 2.6% | 1.5% |
| Sierra | 2021-22 | 8 | 37 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| | | 7 | 40 | 95.0% | 0.0% | 0.0% | 0.0% | 5.0% |
| | 2020-21 | 7 | 33 | 97.0% | 0.0% | 0.0% | 3.0% | 0.0% |
| | 2019-20 | 7 | 28 | 100.0% | 0.0% | 0.0% | 0.0% | 0.0% |
| Siskiyou | 2021-22 | 8 | 448 | 97.1% | 0.0% | 0.2% | 2.2% | 0.4% |
| | | 7 | 446 | 95.7% | 0.7% | 0.4% | 2.9% | 0.2% |
| | 2020-21 | 7 | 467 | 92.7% | 0.4% | 0.9% | 4.7% | 1.3% |
| | 2019-20 | 7 | 499 | 94.6% | 1.6% | 1.0% | 1.6% | 1.2% |
| Solano | 2021-22 | 8 | 4,534 | 99.5% | 0.0% | 0.1% | 0.2% | 0.2% |
| | | 7 | 4,359 | 98.9% | 0.3% | 0.0% | 0.5% | 0.3% |
| | 2020-21 | 7 | 4,610 | 98.4% | 0.2% | 0.3% | 0.3% | 0.8% |
| | 2019-20 | 7 | 5,130 | 97.8% | 0.2% | 0.4% | 0.0% | 1.5% |
| Sonoma | 2021-22 | 8 | 5,288 | 96.9% | 0.0% | 0.6% | 1.3% | 1.2% |
| | | 7 | 5,234 | 95.7% | 0.2% | 0.6% | 1.9% | 1.7% |
| | 2020-21 | 7 | 5,452 | 94.6% | 0.3% | 1.1% | 0.9% | 3.1% |
| | 2019-20 | 7 | 5,422 | 95.3% | 0.8% | 2.0% | 1.0% | 0.9% |

Table 4: Total Enrollment and Varicella Immunization Status of 7th Grade, 2021-2022,
2020-2021 and 2019-2020 School Years and 8th Grade, 2021-2022 School Year
By County

| | School Year | Grade | Total Students | Entrants with 2+ Varicella Vaccine | Conditional Entrants | Entrants with PME | Others Lacking 2+ Varicella Vaccine† | Overdue for 2+ Varicella Vaccine^ |
|---|---|---|---|---|---|---|---|---|
| | | | Number | Percent | Percent | Percent | Percent | Percent |
| Stanislaus | 2021-22 | 8 | 8,576 | 98.3% | 0.1% | 0.2% | 0.9% | 0.6% |
| | | 7 | 8,150 | 98.1% | 0.1% | 0.2% | 0.8% | 0.7% |
| | 2020-21 | 7 | 8,565 | 97.5% | 0.2% | 0.4% | 0.4% | 1.5% |
| | 2019-20 | 7 | 8,837 | 97.2% | 0.4% | 0.8% | 0.4% | 1.3% |
| Sutter | 2021-22 | 8 | 1,819 | 87.7% | 0.2% | 0.7% | 10.7% | 0.8% |
| | | 7 | 1,703 | 86.0% | 0.1% | 0.3% | 12.9% | 0.7% |
| | 2020-21 | 7 | 1,899 | 88.3% | 0.0% | 0.3% | 11.0% | 0.4% |
| | 2019-20 | 7 | 1,927 | 88.0% | 0.2% | 0.5% | 11.2% | 0.2% |
| Tehama | 2021-22 | 8 | 899 | 97.9% | 0.0% | 0.6% | 0.3% | 1.2% |
| | | 7 | 798 | 97.5% | 0.3% | 0.1% | 0.9% | 1.3% |
| | 2020-21 | 7 | 659 | 97.3% | 0.3% | 0.9% | 0.8% | 0.8% |
| | 2019-20 | 7 | 870 | 97.8% | 0.3% | 1.4% | 0.2% | 0.2% |
| Trinity | 2021-22 | 8 | 112 | 92.0% | 0.0% | 3.6% | 0.0% | 4.5% |
| | | 7 | 100 | 94.0% | 0.0% | 0.0% | 0.0% | 6.0% |
| | 2020-21 | 7 | 103 | 95.1% | 0.0% | 3.9% | 1.0% | 0.0% |
| | 2019-20 | 7 | 115 | 92.2% | 0.0% | 4.3% | 2.6% | 0.9% |
| Tulare | 2021-22 | 8 | 7,676 | 99.2% | 0.1% | 0.1% | 0.4% | 0.1% |
| | | 7 | 7,529 | 99.0% | 0.1% | 0.1% | 0.5% | 0.3% |
| | 2020-21 | 7 | 7,663 | 97.8% | 0.1% | 0.1% | 0.8% | 1.3% |
| | 2019-20 | 7 | 8,232 | 99.1% | 0.2% | 0.2% | 0.5% | 0.1% |
| Tuolumne | 2021-22 | 8 | 489 | 95.7% | 0.8% | 0.4% | 2.2% | 0.8% |
| | | 7 | 466 | 94.8% | 0.6% | 0.2% | 3.0% | 1.3% |
| | 2020-21 | 7 | 398 | 95.7% | 1.8% | 0.3% | 1.3% | 1.0% |
| | 2019-20 | 7 | 481 | 94.0% | 1.0% | 1.7% | 2.1% | 1.2% |
| Ventura | 2021-22 | 8 | 10,546 | 97.1% | 0.1% | 0.4% | 2.0% | 0.5% |
| | | 7 | 10,229 | 97.2% | 0.1% | 0.4% | 1.9% | 0.4% |
| | 2020-21 | 7 | 10,512 | 96.8% | 0.2% | 0.6% | 1.4% | 1.0% |
| | 2019-20 | 7 | 11,004 | 96.6% | 0.5% | 1.1% | 1.0% | 0.8% |
| Yolo | 2021-22 | 8 | 2,389 | 97.0% | 0.1% | 0.5% | 1.5% | 0.9% |
| | | 7 | 2,405 | 95.3% | 0.1% | 0.3% | 2.7% | 1.6% |
| | 2020-21 | 7 | 2,429 | 95.6% | 0.2% | 0.6% | 1.9% | 1.8% |
| | 2019-20 | 7 | 2,416 | 96.0% | 0.4% | 1.7% | 0.6% | 1.2% |
| Yuba | 2021-22 | 8 | 1,108 | 97.3% | 0.2% | 0.1% | 1.3% | 1.2% |
| | | 7 | 1,107 | 98.0% | 0.1% | 0.2% | 0.7% | 1.0% |
| | 2020-21 | 7 | 1,105 | 93.6% | 0.3% | 0.3% | 3.2% | 2.7% |
| | 2019-20 | 7 | 1,194 | 97.1% | 0.2% | 0.2% | 0.4% | 2.2% |

† Includes students reported as attending independent study who do not receive classroom-based instruction or home-based private schools or receiving IEP services.

^ Overdue for Tdap immunization.

* County reporting fewer than 20 children in 7th grade and did not report

# Exhibit 13

SENATE JUDICIARY COMMITTEE
**Senator Hannah-Beth Jackson, Chair**
**2015 - 2016  Regular  Session**

SB 277 (Pan and Allen)
Version: April 22, 2015
Hearing Date:  April 28, 2015
Fiscal: Yes
Urgency: No
RD

## SUBJECT

Public health:  vaccinations

## DESCRIPTION

This bill would eliminate the personal belief exemption from the requirement that children receive specified vaccines for certain infectious diseases (including diphtheria, hepatitis B, haemophilus influenzae type b, measles, mumps, pertussis, poliomyelitis, rubella, tetanus, and chicken pox) prior to being admitted to any public or private elementary or secondary school, child care center, day nursery, nursery schools, family day care home, or developmental centers, and would make other conforming changes. This bill would specify that this mandatory vaccination requirement (for which the bill would only leave a medical exemption) does not apply to a home-based private school or a student enrolled in an independent study program.

This bill would, in certain circumstances, permit a child to be temporarily excluded from the school or institution until the local health officer is satisfied that the child is no longer at risk of developing or transmitting a communicable disease for which immunization is otherwise required by law.

This bill would add to existing notifications that school districts must give to parents, the immunization rates for the school in which a pupil is enrolled for each of the immunizations required.

## BACKGROUND

According to the Center for Disease Control and Prevention (CDC), it is always better to prevent a disease than to treat it after it occurs.  Immunity is the body's way of preventing disease.  The immune system recognizes germs that enter the body as "foreign invaders" (called antigens) and produces proteins called antibodies to fight them. Vaccines contain the same antigens, or parts thereof, that cause diseases, but the antigens in vaccines are either killed or greatly weakened.  As such, vaccine antigens are not strong enough to cause disease but they are strong enough to make the immune system produce antibodies against them.  Memory cells prevent re-infection when they

encounter that disease again in the future. According to the CDC, "a vaccine is a safer substitute for a child's first exposure to a disease." (CDC, *Why are Childhood Diseases so Important?* <http://www.cdc.gov/vaccines/vac-gen/howvpd.htm> [as of Apr. 19, 2015].) Vaccines are responsible for the control of many infectious diseases that were once common around the world, including polio, measles, diphtheria, pertussis (whooping cough), rubella (German measles), mumps, tetanus, and Hib. In fact, vaccine eradicated smallpox, one of the most devastating diseases in history. Over the years, vaccines have prevented countless cases of infectious diseases and saved literally millions of lives. (*Id*.) According to the California Department of Public Health (CDPH), implementation of statewide immunization requirements has been effective in maintaining a 92 percent immunization rate among children in child care facilities and kindergartens. (CDPH, *2011-2012 Child Care and School Fact Sheet* (Jul. 2012) <http://www.cdph.ca.gov/programs/immunize/Documents/ChildCareAndSchoolFa ctSheet2011-2012.pdf> [as of Apr. 19, 2015].)

Recently, California witnessed an outbreak of measles, a vaccine-preventable disease. According to CDPH, "[i]n December 2014, a large outbreak of measles started in California when at least 40 people who visited or worked at Disneyland theme park in Orange County contracted measles; the outbreak also spread to at least half a dozen other states. On April 17, 2015, the outbreak was declared over, since at least two 21-day incubation periods (42 days) have elapsed from the end of the infectious period of the last known outbreak-related measles case." (CDPH, *Measles* <http://www.cdph.ca.gov/HealthInfo/discond/Pages/Measles.aspx> [as of Apr. 19, 2015].)

Under California law, before being admitted to any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or developmental center, a child must be vaccinated for 10 separate diseases (diphtheria, hepatitis B, haemophilus influenzae type b, measles, mumps, pertussis, poliomyelitis, rubella, tetanus, and chicken pox), as well as any other disease deemed appropriate by the California Department of Public Health, as specified. (Health & Saf. Code Sec. 120335(b).) California law also, however, currently recognizes exemptions from the mandatory immunization law for both medical reasons and because of personal beliefs (personal belief exemptions or PBEs). (*See* Health & Saf. Code Sec. 120325(c).) In order to exercise a medical reason exemption, the parent or guardian must obtain a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, and indicating the specific nature and probable duration of the medical condition or circumstances that contraindicate immunization. Once the physician statement is filed with the governing authority, that person (i.e. child) shall be exempt from specified requirements to the extent indicated by the physician's statement. (*See* Health & Saf. Code Sec. 120370.)

In 2012, in response to concerns of increased PBEs, the Legislature passed AB 2109 (Pan, Ch. 821, Stats. 2012) to modify the process for obtaining exemptions to one or more

immunizations required for child care or school based on personal beliefs. Under that law, PBEs now require documentation that health care practitioners have informed the parents about vaccines and diseases. Notably, that form requires that the parent check one of two boxes: (1) that he or she has received information from an authorized health care practitioner regarding the benefits and risks of immunizations, as well as the health risks to the student and to the community of the communicable diseases for which immunization is required in California; or (2) that he or she is a member of a religion which prohibits seeking medical advice or treatment from authorized health care practitioners.

This bill would now remove the personal belief exemption, thus, requiring all children entering into private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or developmental center to be vaccinated as a condition of entry into those institutions, unless a medical reason exemption applies. This bill would also exempt from mandatory immunization a home-based private school or student enrolled in independent study, as specified.

This bill was triple-referred, with the Senate Health Committee and Senate Education Committee hearing the bill prior to this Committee. Those committees passed out the bill on a vote of 6-2 and 7-2, respectively.

## CHANGES TO EXISTING LAW

1. Existing law, the Education Code, requires that certain notifications be made by school districts to parents. (Educ. Code Sec. 48980.)

   This bill would require such notification to include immunization rates for the school in which a pupil is enrolled for each of the immunizations mandated by law.

2. Existing law provides that each person between the ages of 6 and 18 years not exempted, as specified, is subject to compulsory full-time education. Existing law provides that each person subject to compulsory full-time education and each person subject to compulsory continuation education not exempted, as specified, must attend the public full-time day school or continuation school or classes and for the full time designated as the length of the schoolday by the governing board of the school district in which the residency of either the parent or legal guardian is located. Existing law requires that each parent, guardian, or other person having control or charge of the pupil send the pupil to the public full-time day school or continuation school or classes and for the full time designated as the length of the schoolday by the governing board of the school district in which the residence of either the parent or legal guardian is located. (Educ. Code Sec. 48200.)

   Existing law authorizes the governing board of a school district or a county office of education to offer independent study to meet the educational needs of pupils in accordance with specified requirements. (Educ. Code Sec. 51745 et seq.) Existing

law provides that the independent study by each pupil shall be coordinated, evaluated, and, notwithstanding specified law, shall be under the general supervision of an employee of the school district, charter school, or county office of education who possesses a valid certification document or an emergency credential as required by law. (Educ. Code Sec. 51745.7(a).)

<u>Existing law</u> prohibits the unconditional admission of a student to any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, unless, prior to the child's first admission to that institution, the child has been fully immunized against: diphtheria; haemophilus influenzae type b; measles; mumps; pertussis; poliomyelitis; rubella; tetanus; hepatitis B; varicella; and any other disease deemed appropriate by the California Department of Public Health, taking into consideration the recommendations of the Advisory Committee on Immunization Practices of the U.S. DHHS, the American Academy of Pediatrics, and the American Academy of Family Physicians. (Health & Saf. Code Sec. 120335(b).)

<u>Existing law</u> provides the intent of the Legislature to provide exemptions from immunization for medical reasons or because of personal beliefs. (Health & Saf. Code Sec. 120325(b).)

<u>Existing law</u> provides that if a parent or guardian files with the governing authority a written statement by a licensed physician to the effect that the physical condition of the child is such, or medical circumstances relating to the child are such, that immunization is not considered safe, indicating the specific nature and probable duration of the medical condition or circumstances that contraindicate immunization, that child shall be exempt from the immunization requirements to the extent indicated by the physician's statement. (Health & Saf. Code Sec. 120370.)

<u>Existing law</u> requires, on and after January 1, 2014, that a separate form prescribed by the California Department of Public Health accompany a letter or affidavit to exempt a child from immunization requirements on the basis that an immunization is contrary to beliefs of the child's parent or guardian. The form must include:

- A signed attestation from a health care practitioner that indicates that the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, was provided with information regarding the benefits and risks of the immunization and the health risks of the communicable diseases listed above to the person and to the community.
- A written statement signed by the parent or guardian of the person who is subject to the immunization requirements, the adult who has assumed responsibility for the care and custody of the person, or the person if an emancipated minor, that indicates that the signer has received the information provided by the health care practitioner pursuant to the provision above. (Health & Saf. Code Sec. 120365(b).)

SB 277 (Pan and Allen)
Page 5 of 24

Existing law provides, in relation to children exempted from immunization under the personal belief exemption, when there is good cause to believe that the person (i.e. child) has been exposed to one of the specified communicable diseases, that person may be temporarily excluded from the school or institution until the local health officer is satisfied that the person is no longer at risk of developing the disease. (Health & Saf. Code Sec. 120365(e).)

This bill would repeal the personal belief exemption and provisions relating to the exercise of the personal belief exemption above, leaving only a medical exemption to the immunization requirements above.

This bill would provide that the mandatory immunization provisions above do not apply to a home-based private school or to a student who is enrolled in an independent study program pursuant to the Education Code, as specified.

This bill would provide that when there is good cause to believe that a child whose documentary proof of immunization status does not show proof of immunization against the communicable diseases required has been exposed to one of those diseases, that child may be temporarily excluded from the school or institution until the local health officer is satisfied that the child is no longer at risk of developing or transmitting the disease.

## COMMENT

1. Stated need for the bill

According to the authors:

In early 2015, California became the epicenter of a measles outbreak which was the result of unvaccinated individuals infecting vulnerable individuals including children who are unable to receive vaccinations due to health conditions or age requirements. According to the Centers for Disease Control and Prevention, there were more cases of measles in January 2015 in the United States than in any one month in the past 20 years. Measles has spread through California and the United States, in large part, because of communities with large numbers of unvaccinated people. Between 2000 and 2012, the number of Personal Belief Exemptions (PBE) from vaccinations required for school entry that were filed rose by 337 [percent]. In 2000, the PBE rate for Kindergartners entering California schools was under 1 [percent]. However, as of 2012, that number rose to 2.6 [percent]. From 2012 to 2014, the number of children entering Kindergarten without receiving some or all of their required vaccinations due to their parent's personal beliefs increased to 3.15 [percent]. In certain pockets of California, exemption rates are as high as 21 [percent] which places our communities at risk for preventable diseases. Given the highly contagious nature of diseases such as measles, vaccination rates of up to 95 [percent] are necessary to preserve herd immunity and prevent future outbreaks.

This bill removes the ability for parents to file a personal belief exemption from the requirement that children receive vaccines for specific communicable diseases prior to being admitted to any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center. It further provides a home school exemption for students who are of a single household or family.

The sponsor of this bill, Vaccinate California, writes that they believe it is "unfair and unreasonable for a small minority to put the rest of us at risk [ . . . ] Those who can vaccinate their children but refuse are jeopardizing their own children as well as the rest of us. [ . . . ] We ought to be able to send our kids to daycare and school without fear they will come home with measles or whooping cough."

In support, an individual law professor, writes that "[w]hile California's courts found that education is a fundamental interest under our constitution, that finding has been used in the wealth and race contexts; it has never been applied to prevent the state from regulating to make schools safer, as SB 277 tries to do. Safe schools are a precondition to education; and it's well established that the state can act to obtain that goal: there are few interests more compelling than the health and safety of the students entrusted to our system. SB 277 helps protect this compelling interest, and by increasing herd immunity, would also protect the vaccine-deprived children themselves from disease." This professor adds that the bill does not prevent children from getting an education: the bill "exempts a variety of homeschooling options, some with support from our private schools. If the parents are unwilling to protect children from disease, they have choices—even if those would not be their first choice." Additionally, she adds that school immunization requirements have been upheld as constitutional, even without religious exemptions, "by every court—federal and state—that ruled on the issue, since the seminal case of *Prince v. Massachusetts*, 321 U.S. 158, 170 (1944). Most recently, two circuit courts upheld them [in the 4th and 2nd Circuits] [citations omitted]. That's because religious freedom do[es] not justify putting other states at risk of disease. [ . . .]"

Multiple supporters, including the California State Association of Counties (CSAC), write that "California has seen an increase in the number of personal belief exemptions (PBE) from vaccinations. In fact, from 2010 to 2012, the number of children entering Kindergarten without receiving some or all of their required vaccinations rose by 25 percent. Vaccine coverage at the community level is vitally important for people too young to receive immunizations and those unable to receive immunizations due to medical reasons. States that easily permit personal belief exemptions from immunizations have significantly higher rates of exemptions and consequently a larger unimmunized population than states with more complex exemption approvals. However, school and child care immunization requirements have been shown to effectively increase immunization coverage, limit the spread of disease, and provide an overall public health benefit." California Hepatitis Alliance (CalHEP) shares similar statistics, adding that "[s]ince 2000, the number of California families requesting a [PBE] from vaccinations required for school entry has risen by 337 [percent]. In 2000, the PBE

rate for Kindergarteners entering California Schools was under 1 [percent] (0.77 [percent]).” CalHEP writes that “[p]rotecting the individual and the community from communicable diseases such as measles, mumps, and pertussis, is a core function of public health.”

The American Academy of Pediatrics argues that “[i]f there is a single place that children must be kept safe as humanly possible it is at school/child care.” California Academy of Family Physicians writes in support that while AB 2109 (Pan, Ch. 821, Stats 2012) “resulted last year in the first decrease in PBE use in a decade, the recent measles outbreak underscored the need to do more.  In 2000, the Centers for Disease Control determined that measles had been eradicated in the United States. However, since December 2014, California has had 134 confirmed cases of measles across [13] counties. Twenty percent of those cases have required hospitalization.  Efforts to contain the outbreak have resulted in mandatory quarantines and the redirection of public health resources to investigations into exposure. [ . . . ] Removing the PBE will protect the most vulnerable, babies too young to be immunized, and people who are immunocompromised, from the risks associated with contracting these diseases.  It will also protect the community at large from increased outbreaks of vaccine-preventable disease.”  The California School Nurses Association also writes in support that they know “certain schools and school districts have high rates of unvaccinated children [ . . .]  Having ‘community immunity’ varies by vaccine but it provides protection for those students and staff who for medical reasons are unable to be vaccinated or are immunocompromised.” [Footnote omitted.]

In support, the California Immunization Coalition adds that while AB 2109 “helped to tighten up the [PBE] process—it is not enough.  We do not want to see a child die from measles before we take this important step to prevent additional outbreaks and spread of diseases.  California needs to take stronger measures to protect children in our schools and in our communities.”

2.  <u>Liberty rights and parental rights balanced against the police powers of the state</u>

According to the National Conference of State Legislatures (NCSL), California is one of 20 states that currently provides for a philosophical or personal belief exemption. Almost all states provide a religious exemption.  There are also two states, Mississippi and West Virginia, that provide neither a religious, nor a philosophical, exemption. (NCSL, *States with Religious and Philosophical Exemptions from School Immunization Requirements* (Mar. 3, 2015) <http://www.ncsl.org/research/health/school-immunization-exemption-state-laws.aspx> [as of Apr. 19, 2015].)

This bill seeks to repeal California’s personal belief exemption to the state’s mandatory vaccination law as a condition upon entrance into public and private schools, as well as child care centers, and like institutions, leaving only a medical exemption to the existing immunization requirements.  For parents electing to not vaccinate their children, the bill would provide that the mandatory immunization requirement does not apply to a

home-based private school or to a student enrolled in an independent study program, as specified.  Additionally, where there is good cause to believe that a child whose documentary proof of immunization status does not show proof of immunization against a communicable disease for which immunization is otherwise required by law and that the child has been exposed to the disease, this bill would allow for the child to be temporarily excluded from the school or institution until the local health officer is satisfied that the child is no longer at risk of developing or transmitting that disease.

Committee staff recognizes that there has been significant public debate over the propriety of mandating vaccinations.  That debate has been reflected in both the support and opposition to this bill.  Moving beyond the health arguments, and into the legal arguments, on the one hand, many people feel very strongly that they have the right, as parents, to make these medical decisions for their children with their children's doctor, and that any effort to limit their authority to do so would infringe not only upon that right, but the right to education for their children, and potentially even their religious beliefs.  On the other hand, many other people believe that parents do not have the right to make choices that place other children and the larger public at risk, particularly when it comes to sending their children to schools where other children are placed at greater risk.  This side also tends to believe that the state has both the authority and obligation to ensure the public health and safety against communicable diseases so that their children can safely go to school, as they are required to do.  Each side, notably, relies heavily on "rights" and "liberties" in making their arguments against the other side.

As a matter of constitutional law, rights do not exist in a vacuum; in fact, they often clash with other rights, if not the rights of others around them.  As such, when assessing whether certain actions are protected as a valid exercise of one's rights—or alternatively, when assessing the validity of limitations inherent to or placed upon that right by the government—the issue is, in actuality, trifold: does a constitutionally or statutorily cognizable right exist, either under federal or state law? Where does the right begin? And where does it end? Further, if the state does have the authority to place limits upon the exercise of that right, how extensive can those limits be?  At what point does the state interest outweigh the right?

At the outset, the rights implicated by this bill include the right of the individual (or his or her parent, in the case of minors) to refuse a specific treatment or to exercise religious beliefs against the treatment—namely, vaccinations.  Inversely, the bill also implicates the liberty interests of other students and members of the public to be free of harm that could be avoided by way of vaccination.  It also implicates the right to education for all involved.  With those issues in mind, this bill arguably seeks to exercise the police power authority of the state, and the state's *parens patriae* authority to step in to protect persons legally unable to act on their own behalf in order to prevent the spread of communicable diseases.

a. Supreme Court has recognized that states' police powers include the power to stop the spread of communicable diseases

In 1905 the U.S. Supreme Court, in the case of *Jacobson v. Massachusetts* (197 U.S. 11), upheld a Massachusetts law mandating vaccinations for adults, holding that the police power of a state must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and safety (such as by stopping the spread of communicable diseases). In that case, the state required in the inhabitants of a city or town to be vaccinated only when, in the opinion of the Board of Health, vaccination was necessary for the public health or safety. There, the Court upheld the Massachusetts compulsory vaccination law despite arguments that such laws violate personal liberty rights protected under the 14th Amendment to the U.S. Constitution and that vaccines can cause injuries or dangerous effects. As expressed by the Court, it is within the police power of a State to enact a compulsory vaccination law, and it is for the legislature, not for the courts, to determine in the first instance whether vaccination is or is not the best mode for the prevention of smallpox and the protection of the public health. "The possibility that the belief may be wrong, and that science may yet show it to be wrong, is not conclusive; for the legislature has the right to pass laws which, according to the common belief of the people, are adapted to prevent the spread of contagious diseases." (*Id*. at 35.)

In rendering its decision, the Court recognized the legitimate police power of the state to enact reasonable regulations to protect the public health and public safety in this fashion, but also acknowledged that the regulations cannot contravene the federal Constitution or infringe on rights granted or secured by the Constitution:

> The authority of the State to enact this statute is to be referred to what is commonly called the police power—a power which the State did not surrender when becoming a member of the Union under the Constitution. [ . . . ] According to settled principles the police power of a State must be held to embrace, at least, such reasonable regulations established directly by legislative enactment as will protect the public health and the public safety. [ . . . ] The mode or manner in which those results are to be accomplished within the discretion of the State, subject, of course, so far as Federal power is concerned, only to the condition that no rule prescribed by a State, nor any regulation adopted by a local governmental agency acting under the sanction of state legislation, shall contravene the Constitution of the United States or infringe any right granted or secured by that instrument. (*Id*. at 24-25.)

In *Jacobson*, the defendant argued that the Massachusetts compulsory vaccination law invaded his liberty rights by subjecting him "to fine or imprisonment for neglecting or refusing to submit to vaccination; that a compulsory vaccination law is unreasonable, arbitrary and oppressive, and, therefore, hostile to the inherent right of every freeman to care for his own body and health in such way as to him seems

best; and that the execution of such a law against one who objects to vaccination, no matter for what reason, is nothing short of an assault upon his person." (*Id.* at 26.) The Court, however, disagreed, writing that:

> The liberty secured by the Constitution of the United States does not import an absolute right to each person to be at all times, and in all circumstances wholly freed from restraint. There are manifold restraints to which every person is necessarily subject for the common good. . . . In *Crowley v. Christenson*, 137 U.S. 86, 89, we said: "The possession and enjoyment of all rights are subject to such reasonable conditions as may be deemed by the governing authority of the country essential to the safety, health, peace, good order and morals of the community. Even liberty itself, the greatest of all rights, is not unrestricted license to act according to one's own will. It is only freedom from restraint under conditions essential to the equal enjoyment of the same right by others. It is then liberty regulated by law." (*Id.* at 26-27.)

While the Court recognized that there is, of course, "a sphere within which the individual may assert the supremacy of his own will and rightfully dispute the authority of any human government, especially of any free government existing under a written constitution, to interfere with the exercise of that will," the Court also recognized it is "equally true that in every well-ordered society charged with the duty of serving the safety of its members the rights of the individual in respect of his liberty may at times, under the pressure of great dangers, be subjected to such restraint, to be enforced by reasonable regulations, as the safety of the general public may demand." (*Id.* at 29.)

The Court expressed that the power of the judiciary in reviewing legislative action in respect of a matter affecting the general welfare arises when "a statute purporting to have been enacted to protect the public health, the public morals or the public safety, has no real or substantial relation to those objects, or is, beyond all question, a plain, palpable invasion of rights secured by the fundamental law." (*Id.* at 31 (internal citations omitted).) The Court held that this was not such a situation where there was no real or substantial relation between the law to the protection of public health and safety, or that the law was, beyond question, in palpable conflict with the Constitution. (*Id.* at 31-32.) Additionally, the Court declined to hold that "liberty" as secured by the U.S. Constitution dictated that the concerns of one, or of a minority (regarding vaccine safety), could override laws seeking to protect the public health and safety of all others. (*Id.* at 38.)

b.  Liberty interests of the individual to refuse treatment post-*Jacobson*

While there is a general right to refuse medical treatment for adults encompassed in the liberty interests protected by the 14th Amendment, that right as noted above, is not absolute and can be regulated by the State. (*See Jacobson v. Massachusetts* (1905) 197 U.S. 11; *see also Cruzan v. Director, Missouri Dept. of Health* (1990) 497 U.S. 261,

where the Court held that a competent adult has a fundamental right to accept or reject medical treatment, including the right to withdraw or withhold life-sustaining treatment that may cause or hasten death; *and Washington v. Harper* 494 U.S. 210 (1990) 221-222, 229, recognizing that prisoners have a significant liberty interest under the Due Process Clause of the Fourteenth Amendment to be free of unwanted administration of anti-psychotic medications, but also recognizing that such interests are adequately protected if the inmate has been provided notice and a hearing before a tribunal of medical and prison personnel at which the inmate could challenge the decision to administer the drugs.) Unlike in *Jacobson*, however, the question implicated by this bill involves not the right of the individual to refuse certain medical treatment, but the right of the parent(s) to refuse that treatment on behalf of the child. Whereas competent adults can make even the most reckless of decisions when it comes to their own health care, the same cannot be said of parents or guardians making health care decisions for children. Accordingly, in many instances, the Supreme Court has recognized the authority of the state to step into the family sphere, under the states' inherent *parens patriae* power to protect the health of children and other vulnerable members of society who are legally unable to act on their own behalf. (*See* discussion below for more.)

c.   Parental rights

It is well established by U.S. Supreme Court precedent that the federal Constitution prohibits any state or local government from "depriving any person of life, liberty, or property without due process of the law." (U.S. Const., 14th Amend., Sec. 1.) The Supreme Court has interpreted the due process clause as "a promise of the Constitution that there is a realm of personal liberty which the government may not enter," including the right of parents to direct the upbringing of their children. (*Planned Parenthood v. Casey* (1992) 505 U.S. 833, 847; *see also Truxel v. Granville* (2000) 530 U.S. 57, 65: "We have long recognized that the Amendment's Due Process Clause . . . 'guarantees more than fair process.' [Citation omitted.] The Clause also includes a substantive component that 'provides heightened protection against government interference with certain fundamental rights and liberty interests.'") As stated by the Court, "the interest of parents in the care, custody, and control of their children . . . is perhaps the oldest of the fundamental liberty interests." (*Truxel,* 530 U.S. at 65).)

The Supreme Court first recognized family autonomy and the right of parents to control the upbringing of their children using substantive due process in the 1923 case of *Meyer v. Nebraska* (1923) 262 U.S. 390. That case declared unconstitutional a state law that prohibited teaching in any language other than English in public schools. Two years later, the Court reaffirmed this principle, holding unconstitutional a state law that required children to attend public schools. (*Pierce v. Society of Sisters* (1925) 268 U.S. 510; *see also* Chemerinsky, Constitutional Law Principles and Policies (2011) 4th Edition, p. 829.) And while the Court has given great deference to parents in weighing the competing claims of parents and of the

state on behalf of children in other cases such as *Wisconsin v. Yoder* (1972) 406 U.S. 205 (holding that Amish parents had a constitutional right based on their right to control the upbringing of their children and based on free exercise of religion, to exempt their 14- and 15-year old children from compulsory school attendance law), such deference is not limitless. In fact, some scholars believe that in both *Yoder* and another case involving the procedural due process rights of children when parents seek to have them committed, the Court undervalued the importance of ensuring the children's education and protecting against unneeded institutionalism (which is a massive curtailment of liberty). (*See* Chemerinsky at pp. 830-831.)

Of specific relevance to this bill, in *Prince v. Massachusetts* (1944) 321 U.S. 158, 166, the Court recognized that this right to make parental decisions regarding the care and upbringing of the child is not absolute, and can be interfered with if necessary to protect a child:

> It is cardinal with us that the custody, care and nurture of the child reside first in the parents, whose primary function and freedom include preparation for obligations the state can neither supply nor hinder. *Pierce v. Society of Sisters* [(1925) 268 U.S. 510]. And it is in recognition of this that these decisions have respected the private realm of family life which the state cannot enter.

> But the family itself is not beyond regulation in the public interest, as against a claim of religious liberty. *Reynolds v. United States*, 98 U.S. 145; *Davis v. Beason*, 133 U.S. 333. And neither rights of religion nor rights of parenthood are beyond limitation. Acting to guard the general interest in youth's well being, the state as *parens patriae* may restrict the parent's control by requiring school attendance, regulating or prohibiting the child's labor, and in many other ways. Its authority is not nullified merely because the parent grounds his claim to control the child's course of conduct on religion or conscience. Thus, he cannot claim freedom from compulsory vaccination for the child more than for himself on religious grounds. The right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death. *People v. Pierson*, 176 N. Y. 201, 68 N. E. 243. (*Id.* at 166-167, (internal footnotes omitted).) (*See* Comment 3 below for more discussion on the issue of religious exemptions.)

As reflected in *Prince*, states have already encroached upon the family sphere by creating compulsory education laws, and child labor laws, which are largely accepted today, despite objections about the rights of parents to make these choices for their children regarding their schooling and work when those laws were first enacted.

Similarly, while this bill may be viewed as an unconstitutional encroachment of parental rights by some, it could arguably be viewed as a valid exercise of its police powers and the power of the state to intervene, under the *parens patriae* doctrine, on

behalf of children to ensure that all children in public and private schools (and similar institutions, such as child care centers) maintain adequately high levels of immunization. Staff notes that without the recent broadening of the homeschooling exemption and the addition of the independent study option, many parents might not have been able to feasibly exercise any choice, due to the combination of financial constraints and compulsory education laws.

Thus, stated in another way, insofar as police powers must still be "reasonable" regulations, in order to be constitutional, this bill must strike a reasonable balance that furthers public health and safety without unduly encroaching on the private family sphere. Again, such balancing is important because even fundamental rights are not absolute; they do not, in other words, operate as "on/off" switches. Nor do state interests, for that matter. Instead, as one slides up, the other slides down; at some point, the right outweighs the state interest and at another point the state interest outweighs the right. Further, if the courts were to apply strict scrutiny to the bill (as it generally does with laws that impinge upon fundamental rights), the bill would survive if it is found to serve a compelling state interest (to ensure that the school and community vaccination levels overall remain sufficiently high) but at the same time is narrowly tailored to that purpose ( it neither requires compulsory vaccination where children might have a medical condition that makes vaccination unsafe for that child, nor when children would otherwise be homeschooled or enrolled in independent study programs).

d. <u>Fundamental interest in education under state law</u>

While under the federal constitution, the U.S. Supreme Court has declined to find a fundamental right in education (*see San Antonio Independent School District v. Rodriguez* (1973) 411 U.S. 1), pursuant to a state Supreme Court decision, education is recognized as a fundamental right in California, fully protected and guaranteed under the California Constitution. Accordingly, the state must therefore provide children equal access to education subject to the equal protection clause of the state constitution. That being said, as much as education is a fundamental right under California law, it is also a requirement. California's compulsory education laws require that children between six and 18 years of age to attend school, with a limited number of specified exceptions. (*See* Educ. Code Sec. 48200 et seq.; exceptions exist, for example, for children attending private schools; child being tutored by person with state credential for grade being taught; children holding work permits (subject to compulsory part-time classes); among other things).

For individuals on both sides of this larger debate, the bill implicates questions as to the fundamental interests of children, both vaccinated and unvaccinated alike, in education. While parents against vaccination would be forced to choose whether to vaccinate their child and send them to public or private school, or not vaccinate their child and exercise the home school or independent study option, parents who fear their child might be placed at an increased risk of harm as a result of being

surrounded by unvaccinated children in a fairly confined environment, five days a week, must make a similar choice under existing law.

The American Civil Liberties Union (ACLU) writes a letter of concern, indicating that while it understands "the legitimate concerns that underlie the bill, and the potential harms of highly contagious diseases that present serious public health risks if 'herd immunity' levels are not reached or sustained" and appreciates "that vaccination against childhood diseases is a prudent step that should be promoted for the general welfare," the ACLU "does not believe there has been a sufficient showing of need at present to warrant conditioning access to education on mandatory vaccination for each of the diseases covered by this bill for every school district in the state." The ACLU further cautions that "[u]nlike other states, public education is a fundamental right under the California Constitution. (*Serrano v. Priest*, 5 Cal.3d 584 (1971)["*Serrano I*"]; *Serrano v. Priest*, 18 Cal.3d 728 (1976)["*Serrano II*"].) Equal access to education must therefore not be limited or denied unless the State demonstrates that its actions are 'necessary to achieve a compelling state interest.' [*Serrano*, 18 Cal.3d at 768.]" To this end, ACLU recommends that if there is, in fact, a compelling governmental interest in mandating that students in every school be vaccinated against each of the enumerated diseases except for medical reasons, "the bill should be amended to explain specifically what that interest is, where it exists, and under what conditions and circumstances it exists."

Staff notes, first, that this letter pre-dates the most recent amendments to expand the homeschooling exemption and add an exemption for children enrolled in independent study programs. Second, assuming that the ACLU maintains its concerns with respect to the current version of the bill, while education is indeed recognized as a fundamental interest in California fully protected and guaranteed under the state Constitution pursuant to *Serrano*,[1] and the state must therefore provide access to children equally to education subject to the equal protection clause of the federal and state constitutions, the bill does not facially discriminate against a suspect class. As stated by the *Serrano* court, in the case of legislation involving "suspect classifications," or touching on "fundamental interests," judicial review under the equal protection clause "requires active and critical analysis, subjecting the classification to strict scrutiny." (*Id.* at 597.) Specifically, "[u]nder the strict

---

[1] As stated by the *Serrano I* court: "We are convinced that the distinctive and priceless function of education in our society warrants, indeed compels, our treating it as a 'fundamental interest.' In dicta, the court relied in part on the recognition of the California Constitution, which states in Article IX, section 1: "A general diffusion of knowledge and intelligence being essential to the preservation of the rights and liberties of the people, the Legislature shall encourage by all suitable means the promotion of intellectual, scientific, moral, and agricultural improvement." (*Id.* at 608.) Note that the Court in "*Serrano II*" recognized that the majority of the U.S. Supreme Court in cases subsequent to *Serrano* I, did not find a fundamental right to education protected, either implicitly or explicitly, under the Equal Protection Clause of the 14th Amendment to the U.S. Constitution; instead the "interest of children in education was explicitly and implicitly protected and guaranteed by the terms of California Constitution" – the state constitution's equal protection provisions under Article IV, sec. 16, and Article I, sec. 7. *See Serrano v. Priest* 18 Cal.3d. 768, 749-750 (including footnotes 19, 20), citing *San Antonio School District v. Rodriguez* (1973) 411 U.S. 1.

standard applied in such cases, the state bears the burden of establishing not only that it has a *compelling* interest that justifies the law but also that the distinctions drawn by the law are *necessary* to further its purpose." (*Id*. at 597 (internal citations omitted, emphases in original).)

The intent of the bill for all intents and purposes appears to be to protect the health and safety of the public by preventing the spread of communicable diseases that can have devastating, if not potentially fatal effects. At the same time, the bill seeks to provide children with access to education even if their parents elect to not vaccinate them, by way of homeschooling or independent study programs. Opponents argue (*see* Comment 5 for more) that most parents neither have the economic resources to leave gainful employment, nor the academic acumen to teach in the home, "rendering the application of SB 277 particularly punitive for all those not in the highest income brackets." Many of the opponents raise concerns regarding the lack of options that are appropriate for children with exceptional needs or disabilities. To block unvaccinated children from a free, adequate, public education from the viewpoint of the opposition, is discriminatory and in violation of their rights.

As argued by the author, "California public school students have a right to education in California, but also that their schools be clean, safe, and functional. A safe school for many children is a school with a high level of community immunity which would protect them from known diseases. This legislation provides the most comprehensive measure to ensure high vaccination rates- by limiting the presence of those who are not vaccinated from a campus where children mingle and may be at risk of exposure to vaccine-preventable diseases. The students however are not barred from enrolling in a public education, they may do so, with the curriculum and assistance of the school, which allows them this option but strikes the balance of minimizing the exposure of unvaccinated students to a school campus."

As currently drafted, it should be also noted that this bill raises a question as to what happens come January 1, 2016, to the unvaccinated students who are currently enrolled in a private or public elementary or secondary school or other covered institutions pursuant to an existing PBE, if this bill is signed into law. Potentially, these students can be brought into compliance pursuant to existing law, Section 120340 of the Health and Safety Code, which provides that a person who has not been fully immunized against one or more of the diseases may be admitted by the governing authority on condition that within time periods designated by regulation of the department he or she presents evidence that he or she has been fully immunized against all of these diseases. The author states:

> Vaccination requirements under SB 277 should apply to students whose first enrollment in one of the mandated settings or whose 7th grade enrollment is after January 1, 2016. The bill will require some additional clarification, which we are committed to including.

3. <u>Repeal of statutory personal belief exemption effectively repeals any possible religious exemptions</u>

As noted in Comment 2 above, California is one of 20 states that provide a "philosophical" exemption to its mandatory vaccination law for school age children. All but two states also provide a religious exemption. Most of those states do so separately from the philosophical exemption, whereas some, including California, Minnesota and Louisiana, do not explicitly recognize religion as a reason for claiming an exemption, though it is recognized that, as a practical matter, the non-medical exemption may encompass religious beliefs. (*See* NCSL, *States with Religious and Philosophical Exemptions from School Immunization Requirements* (Mar. 3, 2015) <http://www.ncsl.org/research/health/school-immunization-exemption-state-laws.aspx> [as of Apr. 19, 2015].) Accordingly, while California law does not expressly provide for a religious exemption, any possible claim of religious exemption that might be encompassed within the "personal belief" exemption would hereinafter be eliminated by the repeal of the statutory personal belief exemption. While *Jacobson v. Massachusetts* (see Comment 2a) suggests that it is a valid exercise of police powers to prevent the spread of communicable diseases, that case was decided prior to the application of the First Amendment's Free Exercise Clause to the states. (*See Cantwell v. Connecticut*, 310 U.S. 296, 303, 60 S. Ct. 900, 84 L. Ed. 1213 (1940).)

An objection has been raised by many of the opponents to this bill that this bill violates the constitutional right to freedom of religion, relying in part on cases such as *Wisconsin v. Yoder*. (*See* Comment 2c above.) The authors point to the case of *Phillips v. City of New York* (2012) 775 F.3d 538 to illustrate why compulsory vaccination laws are valid, even without a religious exemption. In that case, the Second Circuit Court of Appeal held that New York could constitutionally require that all children be vaccinated to attend public school and that the New York law actually "goes beyond what the Constitution requires by allowing an exemption for parents with genuine and sincere religious beliefs," citing the U.S. Supreme Court decision in *Prince v. Massachusetts*, where the Supreme Court held that "the right to practice religion freely does not include liberty to expose the community or the child to communicable disease or the latter to ill health or death." (*Id.* at 533.)

Additionally, whereas under pre-1990 Supreme Court precedents, government actions burdening religions would only be upheld if they were necessary to achieve a compelling governmental purpose, in 1990, the Court held in *Employment Div., Dept. of Human Resources of Oregon v. Smith* (1990) 474 U.S. 772, that the free exercise clause cannot be used to challenge neutral laws of general applicability. In that case, the Oregon law prohibiting the consumption of peyote, a hallucinogenic substance, was deemed neutral because it was not motivated by a desire to interfere with religion and it was a law of general applicability because it applied to everyone. Thus, as interpreted in more recent Supreme Court cases, *Smith* "largely repudiated the method of analysis used in prior free exercise cases like *Wisconsin v. Yoder* [internal citation omitted] and *Sherbert v. Verner* [(1963) 374 U.S. 398]" where the Court "employed a balancing test that

considered whether a challenged government action that substantially burdened the exercise of religion was necessary to further a compelling state interest." (*Holt v. Hobbs* (2015) 135 S. Ct. 853, 859; *see also Burwell v. Hobby Lobby Inc*. (2014) 134 S.Ct. 2751, 2760.) While Congress has taken actions to supersede *Smith*, as reflected in cases such as *Hobby Lobby*, and thereby ensure that strict scrutiny is applied when the law substantially burdens religion, those later decisions appear based on federal law, the Religious Freedom Restoration Act, to which California has no counterpart.

Staff notes that in Mississippi, one of the two states that does not provide for either a philosophical or religious exemption to its compulsory vaccine law, the Supreme Court of that state has held that, "requiring immunization against certain crippling and deadly diseases particularly dangerous to children before they may be admitted to school serves an override and compelling public interest, and that such interest extends to the exclusion of a child until such immunization has been effected, not only as a protection of that child but as a protection of the large number of other children comprising the school community and with whom he will be in daily close contact in the school room." (*Brown v. Stone* (1979) 378 So.2d 218, 222.)  In discussing parental rights and duties, the court warned that "[i]t must not be forgotten that a child is indeed himself an individual, although under certain disabilities until majority, with rights in his own person which must be respected and may be enforced.  Where its safety, morals, and health are involved, it becomes a legitimate concern of the state. [ . . . ] To the extent that [the compelling public purpose of the state law] may conflict with the religious beliefs of a parent, however sincerely, entertained, the interests of the school children must prevail." (*Id*. at 222-223.)  Accordingly, the court upheld Mississippi's statute mandating vaccination before entry into school as a reasonable and constitutional exercise of its police power, but struck down the statute's religious exemption.  The court wrote that to give effect to the religious exception, "which would provide for the exemption of children of parents whose religious beliefs conflict with the immunization requirements, would discriminate against the great majority of children who have no such religious conviction" in violation of the 14th Amendment's Equal Protection Clause, "in that it would require the great body of school children to be vaccinated and at the same time expose them to the hazard of associating in school with children exempted under the religious exemption who had not been immunized as required by the statute" (*Id*. at 223.)

4.  <u>Amendment to further narrow the bill to the compelling state interest</u>

As noted above, given the above constitutional issues, it is important that the bill be narrowly tailored to a compelling state interest in the event that reviewing courts apply strict scrutiny in light of the rights that could be potentially impinged upon by this bill. Despite the recent amendments, there is an argument that the bill is too broad with respect to the "catch all" type provision ("paragraph 11") that would require that the child be immunized against "any other disease deemed appropriate by the California Department of Public Health, taking into consideration the recommendations of the Advisory Committee on Immunization Practices of the U.S. DHHS, the American

Academy of Pediatrics, and the American Academy of Family Physicians" before being granted unconditional entry into schools, day care centers, or developmental centers. (Health & Saf. Code Sec. 120335(b)(11).)  In other words, paragraph 11 has the potential to dramatically expand the scope of the bill and disrupts the careful balancing of the various rights involved, as discussed above.  Accordingly, the following amendment would be suggested to maintain the status quo policy decision made in allowing for this 11th category of vaccines, but limit the bill to only those 10 listed vaccines currently reflected in the Health and Safety Code.

Suggested amendment:

Add a new provision to the Health and Safety Code, following Section 120335, that provides: "Notwithstanding Section 120325 and Section 120335, any immunizations required for diseases added pursuant to paragraph 11 of subdivision (a) of Section 120325 or paragraph 11 of subdivision (b) of Section 120335, may only be mandated prior to a pupil's first admission to any private or public elementary or secondary school, child care center, day nursery, nursery school, family day care home, or development center, if exemptions are allowed for both medical reasons and personal beliefs.

Some opponents have raised questions as to whether the bill is actually "narrowly tailored" if the issue of public health could be addressed by mandating vaccines on a community by community or school district or school district basis.  (*See* Comment 7 for example).  In response, the authors assert that a statewide approach is the correct approach because:

[t]his legislation aims to prevent outbreaks, and pockets of unimmunized individuals may appear at any district at any time. To provide a statewide standard, allows for a consistent policy that can be publicized in a uniform manner, so districts and educational efforts may be enacted with best practices for each district. While pockets cluster in regionalized area, districts may have one school which does not reach community immunity, and therefore should have a policy which they can easily implement. Further in consultation with various health officers, they believe a statewide policy provides them the tools to protect all children equally from an outbreak.

5.  Opposition

Staff notes that the Committee received thousands of letters on this bill.  To the extent possible, the following summary seeks to summarize the arguments made in the letters.

Families for Early Autism Treatment (FEAT) writes that "the denial of an effective, appropriate education is damage that cannot be mitigated.  The denial of childcare to families will result in economic hardship that will not be overcome by most, and will create segregation based upon a characteristic of an individual's private health record."

FEAT urges this Committee to consider that: a free public education is a fundamental right provided in the State Constitution; the equal protection clause further upholds a fundamental right to freedom from the threat of bias or discriminatory consequence imposed by government; the right to exercise the free expression of religion and core beliefs is protected by both the State and U.S. Constitutions. FEAT believes that because of these issues, "California Parents are soundly protected to make personal beliefs decisions for vaccinations."

FEAT argues (and other opponents similarly assert) that the majority of parents do not have economic resources to leave gainful employment nor do they possess the academic acumen to teach in the home rendering the application of SB 277 particularly punitive for all those not in the highest income brackets. FEAT also argues, among other things, that independent study under the direction of the public school is voluntary. Specifically, individuals with exceptional needs (as defined under the Education Code to mean a child with a disability as defined under federal law whose impairment requires instruction and services which cannot be provided with modification of the regular school program in order to ensure that the individual is provided a free appropriate public education, as specified, and who comes within one of specified age categories, including between the ages of five and 18 years, inclusive) may only participate when indicated in the student's individualized education program.

FEAT raises a host of other arguments that relate to: informed consent and the availability of medical exemptions; religious discrimination; least restrictive environments for those with special needs required under the Education Code and the Federal I.D.E.A. [Individuals with Disabilities Education Act]; the Developmental Disabilities Assistance and Bill of Rights Act of 2000; Welfare and Institutions Code, the Lanterman Act's maximal participation and choice requirements for medical, community, and education services from agencies receiving state funds; home based education misconceptions; absence of public funding of education for student who is excluded or dis-enrolled from school; and issues surrounding necessary approvals to access home-based education.

Homeschool Association of California (HSC) opposes this bill because it "would negatively impact the freedom to homeschool in the state of California and would *make it impossible for many families to choose to homeschool legally*." (Emphasis in original.) HSC comments that while private tutoring is a third legal option, the tutor must hold a currently valid state teaching credential for the grades and subjects taught under California law and hiring such tutors would be very expensive and most parents do not hold such credentials. Thus, "telling families whose children have not been fully vaccinated on schedule that they can homeschool using the tutoring option is not meaningful or realistic." Additionally, HSC contends that the choice of "vaccinate or homeschool" is not true because the bill "prohibits children from attending any private or public school, even if the child spends most education time in the family home." Innumerable letters from individuals write to raise relatively similar points regarding various constitutional rights, inform consent, vaccine safety/injuries, absence of a

health crisis, lack of real choice for parents/inadequacy of the current exemptions in the bill, and the like. One such letter reflects the following:

- AB 2109 from 2012 is working and that there has already been a 20 percent decline in PBEs, thereby eliminating the need for sweeping legislation that removes a parent's right to informed consent.
- The California Constitution states that a free public education is a right for all children. Even children who are positive for HIV or Hepatitis B are allowed to attend public school. Denying a child this right based upon vaccination status is discriminatory and unconstitutional, adding that there will be social ramifications if vaccinated and under/unvaccinated children are forced to be segregated.
- This bill removes freedom of religion as well as parental rights as they cannot afford to homeschool their children and would otherwise be forced to submit their child to medical procedures with risks or leave the state.
- California vaccination rates are high—higher than the national average for each disease listed on the CDC schedule.
- The U.S. Supreme Court has recognized that vaccines are "unavoidably unsafe," citing the case of *Bruescewitz v. Wyeth LLC* (2011) 131 S.Ct. 1068.
- Parents should have the right to determine for themselves what substances are injected into their child's body without giving up their children's right to a free public education.
- Any law that compels the public "to use a pharmaceutical product which carries an unpredictable risk of injury/death for a minority of vulnerable individuals is not humane."

Californians for Medical Freedom—Tahoe, raises similar points, also arguing that the bill removes federally mandated rights of services to students with disabilities under the federal IDEA. This group, like many others, points to the National Childhood Vaccine Injury Act (NVIC) and the fact that the U.S. government "has paid out more than $3 billion to the victims of vaccine injury" as support for why medical choice is appropriate. "If there is risk of injury or death there must be a choice." In contrast, they argue that "[v]accination rates of California schoolchildren are high at 98.64 [percent]" and cite the success of recent legislation, AB 2109, which they write has resulted "in a 19 [percent] decrease in exemptions amongst kindergarteners in just one year. The public health concern," they write, "is already adequately addressed with current California laws." In other words, as stated by the California Chiropractic Association, "SB 277 is a solution in search of a problem."

Educate.Advocate. raises many similar points and adds that PBEs "DO NOT represent the number of unvaccinated individuals in the state. A PBE must be obtained for any child who misses one dose of a vaccine or is on a staggered vaccine schedule. The state does not keep track of this information; it treats all PBE's equally." Educate.Advocate. writes that the children served by their organization are all in special education and on an individualized education plan. "Many of these children also have pre-existing medical conditions (mitochondrial dysfunction, compromised immune system) making it impossible to vaccinate them without hurting them further. Obtaining a medical

exemption is very difficult to receive as the CDC's pink book guidelines are incredibly narrow and trump patient and doctor reasons. [ . . . ] The only option for these children has been the personal belief exemption. Stripping families such as these of the right to get a personal belief exemption is discriminatory and in violation of the Americans with Disabilities Act."

ParentalRights.Org writes in opposition that "[w]hile we appreciate the intent of the amendment to exempt homeschoolers from the vaccination requirement, it is not sufficient to protect the rights of parents and children in California. While there are many parents with strong convictions that the risks of vaccines to their child (as reflected in lengthy disclaimers which accompany these products) outweigh the potential benefits, many of these same parents are also deeply convinced that the best educational opportunity they can provide their child is in the public schools. These parents should not be forced to give up their rights in one area to exercise their rights in another. No child should have to forego the best available education for the sake of his best health, nor give up his best health for the sake of a better education."

6.  Oppose unless amended

The California Naturopathic Doctors Association (CNDA) states that it supports immunization for the prevention of disease and the public health objective of achieving high rates of immunity to infectious disease but opposes this bill unless it is amended to include Naturopathic Doctors as providers who can sign medical waivers for vaccination. CNDA argues that as licensed primary care doctors who can diagnose medical conditions such as anaphylaxis and immunodeficiency, reasons outlined in the CDC's list of contraindications to common pediatric vaccinations, naturopathic doctors must also be able to sign medical waivers for vaccination, when such medical conditions exist.

7.  Concerns

A San Lorenzo Valley Unified School District (SLVUSD) superintendent writes a letter of concerns, based in large part on points raised in the Senate Health Committee hearing. Noting both the ACLU's letter of concern and recent successes of AB 2109 (see Background), SLVUSD comments that "[t]here are some geographic pockets in the state where PBE rates are higher than average. We understand the concerns this raises, but alternatives to SB 277, including 'educate and encourage' efforts could address those concerns." These efforts, they note, are the focus of the federal government's National Adult Immunization Plan, as opposed to mandate. SLVUSD also questions what public health risk these PBE rates represent given that only 0.7 percent of children nationwide are fully vaccinated and that most parents request a PBE to "selectively" vaccinate (for example, choosing to vaccinate against pertussis, tetanus, and measles but opting out of those they consider unnecessary like Hepatitis B.) "PBE rates," it writes, "do not equate to a public health risk for a specific disease. SLVUSD believes the "educate and encourage" efforts used in conjunction with better data on actual vaccination opt-out by

disease in each area would be a better legislative solution than statewide mandates. SLVUSD is concerned about the education options left for children under SB 277 and the fact that the bill allows parents to homeschool on their own (private school affidavit)—not through public or private school satellite programs.

8.  <u>Author's technical and clarifying amendments</u>

This bill currently provides that when there is good cause to believe that a child whose documentary proof of immunization status does not show proof of immunization against a disease listed in subdivision (b) of Section 120335 has been exposed to one of those diseases, that child may be temporarily excluded from the school or institution until the local health officer is satisfied that the child is no longer at risk of developing or transmitting the disease.  The first amendment would clarify that this temporary exclusion authority applies only if there is good cause to believe that a student has been exposed to a disease listed under the mandatory vaccination law and his or her documentary proof of immunization status does not show proof of immunization against that specific disease.

The author is also making a second, technical amendment that would place the homeschooling and independent study exemption within a separate subdivision to ensure that the exemption also applies to seventh grade level checks for pertussis.

<u>Author's amendments</u>:

(1) On page 5, strike lines 26-29, inclusive and on line 30 strike "disease," and insert: "(b) When there is good cause to believe that a child has been exposed to a disease listed in subdivision (b) of Section 120335 and the child's documentary proof of immunization status does not show proof of immunization against that disease,"

(2) On page 4, strike lines 16-20 and on page 5 after line 10, insert: "(f) This section does not apply to a home-based private school or a pupil who is enrolled in an independent study program pursuant to Article 5.5 (commencing with Section 51745) of Chapter 5 of Part 28 of the Education Code."

<u>Support</u>:  Alameda County Board of Supervisors; American Federation of State, County and Municipal Employees (AFSCME) AFL-CIO; American Academy of Pediatrics; American Lung Association; American Nurses Association\ California; Biocom; California Academy of Family Physicians (CAFP); California Association of Nurse Practitioners (CANP); CAPG; California Chapter of the American College of Emergency Physicians (California ACEP); California Children's Hospital Association; California Coverage and Health Initiatives; California Health Care Institute; California Health Executives Association of California (CHEAC);  California Hepatitis Alliance (CalHEP); California Immunization Coalition; California Hospital Association; California Medical

Association; California School Nurses Association; California Pharmacists Association; California Optometric Association; California Primary Care Association; California School Boards Association (CSBA); California School Employees Association (CSEA); California School Nurses Organization; California State Association of Counties (CSAC); California State PTA; Child Care Law Center; Children Now; Children's Defense Fund-California; Children's Specialty Care Coalition; City of Beverly Hills; City of Pasadena; County Health Executives Association of California; County of Los Angeles; County of Santa Clara Board of Supervisors; County of Santa Cruz Board of Supervisors; County of Yolo Board of Supervisors; First 5 Association of California; Health Officers Association of California; Kaiser Permanente; Insurance Commissioner Dave Jones; Kaiser Permanente; Los Angeles County Board of Supervisors; March of Dimes California Chapter; Marin County Board of Supervisors (support if amended); National Coalition of Black Women; Osteopathic Physicians and Surgeons of California (OPSC); Providence Health and Services Southern California; Reed Union School District; San Dieguito Unified School District; San Francisco Unified School District; Secular Coalition for California; Silicon Valley Leadership Group; Solana Beach School District; The Children's Partnership; UAW Local 5810; numerous individuals

Opposition:  Alder Grove Charter School – Director; American Civil Liberties Union (concern); Association of American Physicians & Surgeons; Association of Personalized Learning Schools & Services (APLUS); AWAKE California; California Chiropractic Association; California Coalition for Health Choice; California Coalition for Health Choice, the Central Valley and Central Sierra Chapters; California Naturopathic Doctors Association (oppose unless amended); California Nurses for Ethical Standards; California ProLife Council; California Right to Life Committee, Inc.; Californians for Freedom of Choice; Californians for Medical Freedom-Tahoe; Canary Party; Capitol Resource Institute; Children's Healthcare is a Legal Duty, Inc. (CHILD); Connecting Waters Charter School; Educate. Advocate.; Families for Early Autism Treatment (FEAT); Homeschool Association of California; Libertarian Party of Sacramento County; National Autism Association of California;  National Vaccine Information Center; Our Kids, Our Choice (OKOC); Pacific Justice Institute Center for Public Policy; ParentalRights.Org; Plumas Charter School's Executive Director; Pro-Parental Rights; Safe Minds; Saint Andrew Orthodox Christian Church – Pastor; San Lorenzo Valley Unified School District – Superintendent (concerns); UnblindMyMind; Vaccine-Injury Awareness League; numerous individuals

## **HISTORY**

Source:  Vaccinate California

Related Pending Legislation:  SB 792 (Mendoza) would prohibit a person from being employed at a day care center or day care home unless he or she has been immunized against influenza, pertussis, and measles.

SB 277 (Pan and Allen)
Page 24 of 24

Prior Legislation:

AB 2109 (Pan, Ch. 821, Stats. 2012) *See* Background.

Prior Vote:

Senate Education Committee (Ayes 7, Noes 2)

Senate Health Committee: (Ayes 6, Noes 2)

**************

# CERTIFICATE OF SERVICE

Case Name: **Free Now Foundation, et al. v. Pan**    Case No. **2:24-cv-03523-DJC-SCR**

I hereby certify that on <u>July 16, 2025,</u> I electronically filed the following documents with the Clerk of the Court by using the CM/ECF system:

**DEFENDANT CDPH'S REQUEST FOR JUDICIAL NOTICE IN SUPPORT OF MOTION TO DISMISS PLAINTIFFS' SECOND AMENDED COMPLAINT**

I certify that **all** participants in the case are registered CM/ECF users, and that service will be accomplished by the CM/ECF system.

I declare under penalty of perjury under the laws of the State of California and the United States of America the foregoing is true and correct, and that this declaration was executed on <u>July 16, 2025,</u> at Los Angeles, California.

| Anthony Conklin | *Anthony Conklin* |
|:---:|:---:|
| Declarant | Signature |

SF2024804250
67765285.docx